**ROTHENBERG & CAMPBELL**
Ryan P. Campbell, Esq. (#317838)
Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889 || Fax: 570.207.3991
E-mail: Hrlaw04@gmail.com || Hrlaw06@gmail.com

*Attorneys for the Defendants*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILIP GODLEWSKI,<br><br>         Plaintiff,<br>v.<br><br>EDUARDO NICOLAS ALVEAR GONZALEZ, *AKA* ALVEAR GONZALEZ EDUARDO NICOLAS, *AKA* NICOLAS ALVEAR; and GOOD LION TV, LLC,<br><br>         Defendants | CIVIL ACTION—LAW<br>*(HON. JULIA K. MUNLEY)*<br><br>**JURY TRIAL DEMANDED**<br><br>No.: 3:24—CV—00344 |

### MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR
### MOTION TO STRIKE PARAGRAPHS 41, 44 AND 55—63

**AND NOW COME** Defendants, Eduardo Nicolas Alvear Gonzalez, *aka* Alvear Gonzalez Eduardo Nicolas, *aka* Nicolas Alvear (collectively, "Individual Defendant") and Good Lion TV, LLC ("Corporate Defendant"), by and through their counsel, Rothenberg & Campbell, hereby move to dismiss Plaintiff's Complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted or, alternatively, to strike paragraphs 41, 44, and 53—63 *incl.* from same pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), or 12(f), averring as follows:

1

## PRELIMINARY STATEMENT

1. Defendants move to dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2); specifically, dismissal is appropriate here as this Honorable Court lacks general, specific and effective personal jurisdiction over Defendants, both being citizens of Tennessee with such minimal and unfocused respective contacts with the Commonwealth of Pennsylvania such that being sued therein was not reasonably foreseeable and "offends traditional notions of fair play and substantial justice."

2. Additionally, dismissal is appropriate pursuant to Rule 12(b)(6) as Plaintiff cannot properly establish wrongful conduct, causation or damages – essential ternary elements to each of Plaintiff's quaternary state-law tort claims.

3. The particular language, events, and circumstances Plaintiff alleges Defendants to have wrongfully published, each address Plaintiff as a public figure and/or are matters of public concern substantiated by documents of public record made available to Defendants by Plaintiff's own litigiousness; this fact, coupled with Plaintiff's own admission that he is unable and unwilling to prove the falsity of these publications, doom his ability to recover civil damages.

4. Alternatively, Defendants move to strike paragraphs 41, 44, and 53–63 *incl.* of Plaintiff's Complaint as immaterial, scandalous and/or impertinent pursuant to Rule 12(f).

## OPERATIVE FACTUAL & PROCEDURAL BACKGROUND

5. Plaintiff, Philip Godlewski ("Plaintiff") initiated the instant matter by filing a Complaint in the United States District Court for the Middle District of Pennsylvania

against Eduardo Nicolas Alvear Gonzalez, *aka* Nicolas Alvear ("Individual Defendant"), Good Lion TV, LLC ("Corporate Defendant"), and Good Lion Films, LLC ("Dismissed Defendant") on February 28, 2024. (See ECF Doc. No. 2, *generally*).

6. Plaintiff is a resident and citizen of the Commonwealth of Pennsylvania with a listed address of 1235 Lantern Hill Road, Shavertown, Luzerne County, Pennsylvania 18708. (Id. at ¶ 2).

7. Individual Defendant is a resident and citizen of the State of Tennessee and has had very few physical or digital contacts with the Commonwealth of Pennsylvania, residing at 1009 8th Avenue S., Nashville, Tennessee 37203 and acting Chief Executive Officer and duly authorized agent of Corporate Defendant. A true and accurate copy of Individual Defendant's Affidavit is attached hereto, incorporated herein, and marked as Exhibit "A".

8. Corporate Defendant is a limited liability company organized and existing under the laws of the State of Wyoming with Company ID Number 2022—001070783 and a Registered Agent listed as Cloud Peak Law, LLC, with an address of 1095 Sugar View Drive, Ste. 500, Sheridan, Wyoming 82801. (See Exh. "A", at ¶¶ 4-6.)

9. Defendants, individually and/or jointly, have minimum contacts with Pennsylvania, no continued or systemic physical presence therein, nor have they deliberately focused any activities toward the forum state to such an extent as to reasonably foresee being sued in Pennsylvania. (See Exh. "A", at ¶¶ 10—14).

10. In his Complaint, Plaintiff alleges causes of action sounding in tort including "defamation [...] libel, slander, libel *per se* [...] false light, intentional interference with

contractual relationships [sic], and intentional infliction of emotional distress." (ECF Doc. No. 2 at ¶ 1).

11. Plaintiff argues that Defendants collectively engaged in "false, defamatory, and malicious publications and broadcasts on billboard postings, social media, and radio which declare that Plaintiff is a convicted pedophile, a fraud, a sexual groomer of minors and that he had a sexual relationship with a girl when he was 25, and she was 15." (Id.).

12. More specifically, Plaintiff alleges that Defendants followed the lawsuit that Plaintiff filed against the "Scranton Times and Chris Kelly," and continued a "torrent of defamatory publication" stating that Plaintiff had sex with a minor. (Id. at ¶ 15). A true and accurate copy of Chris Kelly's February 2021 Scranton Times article is attached hereto and marked as Exhibit "B".

13. Plaintiff alleges that Defendants have referred to Plaintiff as "Pedo, a Pedophile, a fraudster, a grifter, a criminal, and a convicted pedophile," and have also produced, disseminated, and advertised an entire film featuring Plaintiff entitled, "the Greatest Fraud on Earth. Walking [sic]." (Id. at ¶¶ 16, 17).

14. Plaintiff's Complaint also contains a dozen paragraphs that appear to personally insult and attack Individual Defendant. (Id. at ¶¶ 41, 44, and 53—63 *incl.* and Exh. "4").

15. Collectively, Plaintiff argues that these purported defamatory statements were made maliciously and recklessly, placing "Plaintiff's business in jeopardy" and otherwise causing him personal injuries including "depression, anxiety, isolation, insomnia, irreparable damage to their [sic] reputation, and loss of standing in the community." (Id. at ¶¶ 20, 101).

16. However, Plaintiff's Complaint is silent as to what specific "business" has been placed in "jeopardy"; as of December 22, 2022, the Pennsylvania State Real Estate Commission revoked Plaintiff's associate broker license and broker-multi license for five (5) years due to Plaintiff's guilty pleas to charges of tampering with records and bad checks. A true and accurate copy of the Commission's 12/22/22 Order is attached hereto, incorporated herein, and marked as Exhibit "C".

17. Beginning as early as 2018, Plaintiff began using social media to broadcast several theories surrounding QAnon[1] accompanied often by his own personal thoughts and beliefs.[2]

18. By 2021, Plaintiff had established himself within the QAnon community, cultivating followers numbering in the hundreds of thousands[3]. (See ECF Doc. No. 2 at ¶ 2).

19. Plaintiff used his new-found online popularity and self-proclaimed messianic[4] influence to make over a million dollars in advertising revenue and content-based subscriptions, including soliciting multi-level marketing schemes[5] to his followers.[6]

---

[1] Originating in 2017, QAnon is a far-right American political conspiracy theory and political movement focused on fabricated claims made by an anonymous individual or individuals known as "Q" which are relayed and developed by online communities and influences. QAnon's core belief is that a cabal of Satanic, cannibalistic child molesters operate a global sex trafficking ring who conspired against then-President Donald Trump, often portrayed as a hero and antagonist to the movement. See Wikipedia.org accessed on March 28, 2024 citing Wendling, Mike (July 22, 2020). "QAnon: What is it and where did it come from" BBC.
[2] N. M. Ramirez. "QAnon Influencer Sues Newspaper, Gets Exposed as Alleged Child Predator." *Rolling Stone® Magazine*. (November 30, 2022).
[3] Ramirez, (November 30, 2022).
[4] Plaintiff states that his popularity and newfound wealth during this period was his "reward" from "God" for "helping us get to where we are" and "once it concludes [...] God would reward [him] for the rest of [his] life and that is what He has done." (See "Greatest Fraud on Earth: the Phil Godlewski Story").
[5] One of the more successful multi-level marketing schemes recommended by Plaintiff involved the purchase and sale of silver from 7k Metals; this method involves the "upline," or upside down "V", recruiter profiting off the "downline," or base, recruit's sales and subsequent recruitment of additional downline recruits.
[6] W. Sommer. "QAnon Leaders Push Followers Into Multi-Level Marketing." *The Daily Beast*. (April 15, 2022).

20. Plaintiff admits as much in his Complaint, calling himself a "public figure" with a "large following." (See ECF Doc. No. 2 at ¶ 2).

21. In early 2021, Chris Kelly of the Scranton Times-Tribune published an editorial entitled, "QAnon Realtor Sells Rabbit Holes on YouTube." Mr. Kelly's article reads, in part:

> [...] In 2011, the former Riverside High School baseball coach [Plaintiff] pleaded guilty to corruption of minors and admitted to having a sexual relationship with a 15-year-old girl.
>
> Lackawanna County detectives said [Plaintiff] had sex with the girl in cars and homes he had access to as a real estate agent. [Plaintiff], 28 at the time, was sentenced to three to 23 months, with the first three months to be served under house arrest and the balance as probation.
>
> Last February, [Plaintiff] was charged with theft by deception, forgery and related charges. Police said [Plaintiff] kited a check to an area building supplier and forged bank statements to cover it up. [...]

See Defs.' Exh. "B".

22. Upon reviewing Mr. Kelly's editorial, Plaintiff brought a five-count civil lawsuit against him, the paper's executive editor and corporate owners in the Lackawanna County Court of Common Pleas docketed at number 2021—CV—2195 ("Times-Tribune Lawsuit").

23. As fact discovery progressed during the Times-Tribune Lawsuit, more information regarding Plaintiff's past criminal activity was revealed, including Plaintiff's prior criminal

convictions[7], guilty plea colloquies[8] and the sworn testimonies of Plaintiff[9], his ex-wife Dori Gallagher[10], and Brienna L. DuBorgel ("Brienna"), the girl with which Plaintiff allegedly had sex when she was fifteen (15) years-old. A true and accurate copy of Brienna's October 31, 2022 affidavit is attached hereto and marked as Exhibit "J".

24. In her October 31, 2022 affidavit, Brienna testified that she engaged in an approximately year-long sexual relationship with Plaintiff beginning when she was a fifteen-year-old freshman at Riverside High School and he was twenty-five (25) years old where Plaintiff purchased her gifts and communicated with her regularly. See Defs.' Exh. "J" at ¶¶ 6—8.

25. Brienna also testified that Plaintiff continued to speak with her *after* he was charged with eight (8) criminal counts, urging her to stop cooperating with the Lackawanna County District Attorney's Office and threatening suicide if Brienna testified against him, prompting her to stop cooperating in the investigation.[11] Three years later, they resumed their sexual relationship, when Brienna was of legal age to consent. See Defs.' Exh. "J" at ¶¶ 10—13.

---

[7] True and accurate copies of Plaintiff's prior criminal docket sheets are attached hereto and marked as Exhibits "D," "E" and "F", respectively.
[8] A true and accurate copy of Plaintiff's guilty plea colloquy from the 2010 case involving inappropriate sexual contact with a minor is attached hereto and marked as Exhibit "G".
[9] A redacted and accurate copy of Plaintiff's sworn deposition is attached hereto and marked as Exhibit "H".
[10] A redacted and accurate copy of Dori Gallagher's sworn deposition is attached hereto and marked as Exhibit "I".
[11] The Docket Sheet evidences Plaintiff's Motion to Withdraw Guilty Plea filed by his then-attorney, Joseph D'Andrea, Esquire just shy of the sixty (60) day deadline but after Brienna decided not to testify against him. See Defs.' Exh. "D".

7

26. Upon review of Brienna's 2022 Affidavit, Plaintiff brought a two-count civil lawsuit against Brienna in the Lackawanna County Court of Common Pleas docketed at number 2023—CV—1354 (the "DuBorgel Lawsuit").

27. On May 3, 2023, Brienna's counsel filed her Answer to Plaintiff's Complaint with New Matter and a six-count Counterclaim, to which she attached an Affidavit dated March 28, 2023. A true and accurate copy of Brienna's 2023 Affidavit is attached hereto and marked as Exhibit "K".

28. In support of her testimony, Brienna attached over 2,300 textual messages[12] purportedly exchanged between her and Plaintiff over a two-week period from February 24, 2010 through March 12, 2010. See Defs.' Exh. "K" pp. ST 2790—2905.

29. This information – made public by the parties' various filings in the Times-Tribune and DuBorgel Lawsuits[13] – coupled with Plaintiff's notoriety in the QAnon universe and related outspoken opinions, attracted national attention, culminating in several articles about Plaintiff, his criminal past, conspiracy theorist present, and litigious future.[14]

---

[12] In this two-week period, Plaintiff refers to sex with Brienna at least two (2) dozen times, telling Brienna that he "loves" her more than 100 times. See Defs.' Exh. "K", *generally*. For example, on page ST 2840, the number associated with Plaintiff sends a text on March 2, 2010 that reads: "I'm going to fuck you so hard you'll probably split in half". The next day, Plaintiff's texts read "[...] love you <3" and "I love fucking you <3" followed by "[w]hoops, I mean I fucking love you <3". Id. at pp. ST 2840—2841.

[13] See Public Docket Sheets for the Times-Tribune and DuBorgel Lawsuits and their respective filings.

[14] In 2022, dozens of media companies including The Daily Beast™, Rolling Stone™ Magazine, The Independent™, George Magazine™, Yahoo News™, The Daily Kos™, Jezebel™, and the Scranton Times-Tribune, each published respective articles on Plaintiff, reporting on subjects including Plaintiff's criminal history, involvement with QAnon, the Times-Tribune Lawsuit and his multi-level marketing campaigns directed at his followers. These stories were then posted, re-posted, commented on, and further virally disseminated by users on social media platforms like FaceBook®, Reddit®, TikTok®, Tumblr®, InstaGram®, X™ and others.

30.     Almost immediately, these articles went "viral," exponentially disseminated and shared by thousands of users on dozens of national and international online communities and becoming a matter of public record and concern.[15]

31.     Individual Defendant – a documentary filmmaker and fellow outspoken social media figure – came to know about Plaintiff during this time.

32.     The perceived irony[16] in reconciling Plaintiff's present interest in QAnon with his criminal past seemed to Individual Defendant the perfect subject for a documentary film.

33.     So, he made one.

---

[15] See United States v. Thomas, 905 F.3d 276, 280 (3d Cir. 2018); Dombrowski v. Bell Atlantic Corp., 128 F.Supp.2d 216, 217 (E.D. Pa. 2000) (*quoting* Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984)); and Zdrok v. Zdrok, 829 A.2d 697, 699 (Pa. Super. 2003).

[16] Defendants attach true, accurate and redacted copies of selected pages from Plaintiff's sworn testimony taken from the respective dockets for the Times-Tribune and DuBorgel Lawsuits, collectively marked as Exhibit "L". Often, when Plaintiff is asked a direct question where independent evidence suggests he previously provided an answer inconsistent with his current theory of the case, he re-frames the initial question by injecting some "truth" or "fact" known only to him, then uses that presumption to attack the evidence as unreliable. After inciting enough doubt, Plaintiff provides his opinion answer to ***his own*** question, seemingly confirming that he "sees more than everyone else". Stated differently, Plaintiff is smart enough to understand the persuasive effectiveness of this rhetorical technique –the fallacy of misplaced presumption – but not strong enough to refrain himself from proselytizing *his own particular viewpoint* on the matter. Admittedly, he's quite good at it. But these rhetorical devices are old hat, employed by propagandists throughout history. Darius I utilized a similar method to deify himself as the "King of Kings", earning him the Persian throne in 515 BCE. Five centuries later, both the Gracchi brothers and Julius Caesar each employed similar tactics to gain political control over the *populares* in ancient Rome. Reformation protestants used propaganda to eliminate their Catholic rivals, and even Benjamin Franklin hawked pamphlets of misinformation about non-existent Native American violence against colonists to stoke fear and support for the American Revolution. Perhaps most well-known, Benito Mussolini and Joseph Goebbels used this technique to spread fascism in their respective European countries. Plaintiff's version invokes the same rhetorical devices used in propaganda (fear, glittering generalities, misplaced presumption, name calling, bandwagon, etc.) But, unlike those historical figures who adeptly employed propaganda in the service of power, Plaintiff is unable to hide his ultimate goal: benefitting himself. Plaintiff's uncontrollable desire for respect, attention, wealth and notoriety unintentionally ruins the ruse, revealing this true goal: it's always about him. He made a similar mistake in the QAnon community, transgressing the norm by exploiting his popularity to promote himself over the "cause". QAnon followers perceived this as a "sell-out," both insulting the movement and damaging to its credibility. Plaintiff, perceived as more interested in himself than the "cause", ignored the criticism and attacked back, alienating himself from other "Truthers" and priming the eventual backlash from members of the QAnon community. Subsequent resentment towards Plaintiff grew exponentially, and later exploded after the Times-Tribune and DuBrogel lawsuits.

34. "The Greatest Fraud on Earth: The Phil Godlewski Story" is a film created and directed by Individual Defendant and produced by Corporate Defendant that includes scenes depicting Plaintiff's own words, postings and videos inter-cut with visual and audio depictions of the evidence produced during the Times-Tribune and DuBorgel Lawsuits, respectively. (See ECF Doc. No. 1-10).

35. Individual Defendant also participated in general online discussion and commentary regarding Plaintiff as a public figure on several social media accounts.

36. This public information served as the basis for all of Defendants' conduct Plaintiff cites as wrongful in his Complaint.[17]

37. Taken together information divulged and publicized in Plaintiff's *other* lawsuits[18], defeat his request for civil damages *in this* lawsuit.

38. Put another way, Plaintiff's failure to articulate his specific injury caused by Defendants *in this lawsuit* coupled with the public information revealed in Plaintiff's *prior lawsuits*, result in Plaintiff's inability to show the basic three elements of each alleged tort: wrongful conduct, causation and damages.

## MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(2)

39. Defendants reaver, reallege and incorporate their allegations made in Paragraphs one (1) through thirty-eight (38), *supra*, as if more fully set forth at length herein.

---

[17] True and accurate copies of defendants' Motion for Summary Judgment and Brief in Support thereof from the Times-Tribune Lawsuit and Brienna's Answer with New Matter and Counterclaims without their respective exhibits are each attached and incorporated herein, marked as Exhibits "M," "N" and "O", respectively.

40. Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).

41. When raised as a jurisdictional defense, the plaintiff bears the burden of establishing the Court's personal jurisdiction over the moving defendant. D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) (*citing* Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)).

42. Without holding an evidentiary hearing, the plaintiff meets this burden by establishing a *prima facie* case of personal jurisdiction, or "by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (*quoting* Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n., 819 F.2d 434 (3d Cir. 1987)); see also Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).

43. Further, "the ultimate burden remains on the plaintiff to demonstrate the existence of jurisdiction by a preponderance of the evidence." LaSala v. Marfin Popular Bank Pub. Co., Ltd., 410 F. App'x 474, 476 (3d Cir. 2011).

44. Defendants' joint and/or individual contacts with the forum state of Pennsylvania are so scant, minimal and unfocused that this Honorable Court's exercise of personal jurisdiction over them violates their respective constitutional due process rights and "offends traditional notions of fair play and substantial justice." Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 299-300 (3d Cir. 2008) (*quoting* Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

45. Moreover, Defendants' joint and/or individual contacts with the forum state of Pennsylvania do not provide to them an adequate "fair warning" that they may be subject to suit therein. Id. (*citing* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (U.S. 1985)).

46. Defendants, individually and/or jointly, have such minimum contacts with the forum state of Pennsylvania such that they could not reasonably foresee being "hailed into court" therein, having engaged in no deliberately focused activities toward same. See Defs.' Exh. "A", *generally*.

47. As such, this Honorable Court lacks general, specific and effective personal jurisdiction over Defendants, jointly and/or individually and Plaintiff's Complaint should be dismissed as a matter of law pursuant to Federal Rule of Civil Procedure 12(b)(2).

**WHEREFORE**, Defendants, Eduardo Nicolas Alvear Gonzalez, *aka* Alvear Gonzalez Eduardo Nicolas, *aka* Nicolas Alvear and Good Lion TV, LLC, by and through their counsel, Rothenberg & Campbell, respectfully move to dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and seek an Order from this Honorable Court **GRANTING** their Motion to Dismiss and **DISMISSING** Plaintiff's Complaint entirely for want of personal jurisdiction.

## MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 12(B)(6)

48. Defendants reaver, reallege and incorporate their allegations made in Paragraphs one (1) through forty-seven (47), *supra*, as if more fully set forth at length herein.

49. Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted."

F.R.C.P. 12(b)(6); Fraser v. Pennsylvania State University, 654 F.Supp.3d 443, 453 (M.D. Pa. 2023).

50. Following Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. 662, 678 (U.S. 2009) (*quoting* Twombly, 550 U.S. 544, 570 (U.S. 2007)).

51. In deciding a motion to dismiss, courts within the United States Court of Appeals for the Third Circuit must follow three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of all well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. Fraser, 654 F.Supp.3d at 453 ftn. 57 (*citing* Connelly v. Lane Construction Corp., 809 F.3d 780, 787 (3d Cir. 2016)).

52. Counts I (Defamation), II (False Light Invasion of Privacy) and V (Defamation by Innuendo) of Plaintiff's Complaint must be dismissed because Defendants' statements and related publications cited therein are true, not defamatory and/or are protected under the First Amendment of the U.S. Constitution. See Graboff v. Colleran Firm, 744 F.3d 128 (3d Cir. 2014).

53. Alternatively, Plaintiff, a public figure speaking about matters of public concern, is unable to prove by clear and convincing evidence that Defendants' alleged defamatory statements are false or published with actual malice. See Phila. Newspapers. v. Hepps, 475 U.S. 767, 770 (U.S. 1986); Graboff, 744 F.3d at 135—137; McDowell v. Paiewonsky, 769

F.2d 942, 947 (3d Cir. 1985); see also New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (U.S. 1964); Tucker v. Philadelphia Daily News, 848 A.2d 113, 127-128 (Pa. 2004); and Dibella v. Hopkins, 403 F.3d 102 (2d Cir. 2005).

54. Counts III (Tortious Interference with Business Relationships) and IV (Intentional Infliction of Emotional Distress) of Plaintiff's Complaint should be dismissed because Plaintiff is unable to prove Defendants' joint and/or individual wrongful conduct or that such conduct is causally related to Plaintiff's injuries, which, as written, consist of pure speculation, are insufficiently specific and otherwise unrecoverable under the law.

55. Put differently, Defendants' statements and related publications cited in Plaintiff's Complaint are privileged, justified, constitutionally protected and not the type of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Davis v. Wigen, 82 F.4th 204, 216 (3d Cir. 2023) (*quoting* Hoy v. Angelone, 720 A.2d 745, 753 (Pa. 1998)).

56. As such, Plaintiff's quinary Complaint must be dismissed, in whole or in part, for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

**WHEREFORE**, Defendants, Eduardo Nicolas Alvear Gonzalez, *aka* Alvear Gonzalez Eduardo Nicolas, *aka* Nicolas Alvear and Good Lion TV, LLC, by and through their counsel, Rothenberg & Campbell, respectfully move to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and seek an Order from this Honorable Court **GRANTING** their

Motion to Dismiss and **DISMISSING** Plaintiff's Complaint, in whole or in part, with prejudice.

### ALTERNATIVELY, MOTION TO STRIKE PARAGRAPHS 41, 44 AND 53—63 OF PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(F)

57. Defendants reaver, reallege and incorporate their allegations made in Paragraphs one (1) through fifty-six (56), *supra*, as if more fully set forth at length herein.

58. Pursuant to Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading... any redundant, immaterial, impertinent, or scandalous matter." F.R.C.P. 12(f).

59. The burden rests with the moving party to show that the challenged matter should be stricken by demonstrating that the matter falls within one of the categories listed in 12(f). Roamingwood Sewer & Water Assoc. v. National Diversified Sales, Inc., 509 F.Supp.3d 198, 204 (M.D. Pa. 2020) (citation omitted).

60. "Immaterial" matter is that which "has no essential or important relationship to [any] claim[s] for relief." Id. (*citing* Wagner v. Holtzapple, 101 F. Supp. 3d 462, 488 (M.D. Pa. 2015)).

61. "Impertinent" matter consists of "statements that do not pertain, and are not necessary, to the issues in question," and "scandalous" matter is that which "casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court." Id. (*citing* Carone v. Whalen, 121 F.R.D. 231, 232 (M.D. Pa. 1988)).

62. Paragraphs 41, 44 and 53—63 (including Exhibit "4") of Plaintiff's Complaint are crass and neither importantly relate nor pertain to Plaintiff's quinary claims for relief;

15

therefore, Paragraphs 41, 44 and 53—63 *incl.* (including Exhibit "4") should be stricken pursuant to Rule 12(f) as immaterial, scandalous and/or impertinent.

**WHEREFORE**, Defendants, Eduardo Nicolas Alvear Gonzalez, *aka* Alvear Gonzalez Eduardo Nicolas, *aka* Nicolas Alvear and Good Lion TV, LLC, by and through their counsel, Rothenberg & Campbell, respectfully move to strike Paragraphs 41, 44 and 53—63 *incl.* (and Exhibit "4") of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(f) and seek an Order from this Honorable Court **GRANTING** their Motion to Strike and Order same **STRICKEN** from Plaintiff's Complaint.

Respectfully Submitted,

**ROTHENBERG & CAMPBELL**

By: _____
Ryan P. Campbell, Esquire (PAID: 317838)
345 Wyoming Ave., Ste. 210
Scranton, PA 18503
p. 570.207.2889 || e. HRLaw04@gmail.com

& _____
Dave W. Rothenberg, Esquire (PAID: 326483)
345 Wyoming Ave., Ste. 210
Scranton, PA 18503
p. 570.207.2889 || e. HRLaw06@gmail.com

***ATTORNEYS FOR DEFENDANTS***

Date: April 4, 2024

**ROTHENBERG & CAMPBELL**  *Attorneys for the Defendants*
Ryan P. Campbell, Esq. (#317838)
Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889 || Fax: 570.207.3991
E-mail: Hrlaw04@gmail.com || Hrlaw06@gmail.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILIP GODLEWSKI,<br><br>Plaintiff,<br><br>v.<br><br>EDUARDO NICOLAS ALVEAR GONZALEZ, *AKA* ALVEAR GONZALEZ EDUARDO NICOLAS, *AKA* NICOLAS ALVEAR; and GOOD LION TV, LLC,<br><br>Defendants | CIVIL ACTION—LAW & EQUITY<br>*(HON. JULIA K. MUNLEY)*<br><br>**JURY TRIAL DEMANDED**<br><br>No.: 3:24—CV—00344 |

### CERTIFICATE OF NON-CONCURRENCE

I, Ryan P. Campbell, Esquire, on behalf of Defendants, do hereby certify that I sought concurrence in Defendants' Motion to Dismiss Plaintiff's Complaint by phone call on April 2, 2024 to Plaintiff's counsel, Timothy M. Kolman, Esq. and by e-mail on April 2, 2024 and that Plaintiff does not concur in the instant motion.

ROTHENBERG & CAMPBELL

By: /s/ Ryan P. Campbell
Ryan P. Campbell, Esquire
*ATTORNEY FOR DEFENDANTS*

Date: April 4, 2024

**ROTHENBERG & CAMPBELL**
Ryan P. Campbell, Esq. (#317838)
Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889 || Fax: 570.207.3991
E-mail: Hrlaw04@gmail.com || Hrlaw06@gmail.com

*Attorneys for the Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PHILIP GODLEWSKI,**<br><br>         Plaintiff,<br>v.<br><br>**EDUARDO NICOLAS ALVEAR GONZALEZ,** *AKA* **ALVEAR GONZALEZ EDUARDO NICOLAS,** *AKA* **NICOLAS ALVEAR; and GOOD LION TV, LLC,**<br><br>         Defendants | CIVIL ACTION—LAW & EQUITY<br>*(HON. JULIA K. MUNLEY)*<br><br>**JURY TRIAL DEMANDED**<br><br>No.: 3:24—CV—00344 |

## **CERTIFICATE OF SERVICE**

  I, Ryan P. Campbell, Esquire, on behalf of Defendants, do hereby certify that I sent a true and accurate copy of Defendants' Motion to Dismiss Plaintiff's Complaint with appended Exhibits in the above-captioned case on this **4th day of April, 2024** to the below named individuals *via* ECF and Electronic Mail addressed as follows:

    Timothy M. Kolman, Esq.
    e. tkolman@kolmanlaw.com
    ***ATTORNEYS FOR PLAINTIFF***

            **ROTHENBERG & CAMPBELL**

          By: *[signature]* Ryan P. Campbell
            Ryan P. Campbell, Esquire
            ***ATTORNEY FOR DEFENDANTS***

Date: April 5, 2024

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILIP GODLEWSKI,<br><br>           Plaintiff,<br>v.<br><br>EDUARDO NICOLAS ALVEAR GONZALEZ, *AKA* ALVEAR GONZALEZ EDUARDO NICOLAS, *AKA* NICOLAS ALVEAR; and GOOD LION TV, LLC,<br><br>          Defendants | CIVIL ACTION—LAW & EQUITY<br>*(HON. JULIA K. MUNLEY)*<br><br>JURY TRIAL DEMANDED<br><br><br>No.: 3:24—CV—00344 |

## ORDER

AND NOW, this _____ day of _____, 2024, upon consideration of Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and (6) or, Alternatively, Motion to Strike Pursuant to Fed. R. Civ. P. 12(f), responses thereto, and having determined that this Honorable Court lacks personal jurisdiction over Defendants and Plaintiff's Complaint fails to state a claim upon which relief can be granted, it is hereby **ORDERED** and **DECREED** that Defendants' Motion is **GRANTED**.

   **IT IS HEREBY ORDERED** that Plaintiff's Complaint (ECF Doc. No. 2) is hereby **DISMISSED**, due to lack of personal jurisdiction over Defendants by this Honorable Court. But, assuming arguendo that this Honorable Court has personal jurisdiction, Plaintiff's Complaint otherwise fails to state a claim upon which relief can be granted, and would otherwise be **DISMISSED**, with prejudice.

   The Clerk is instructed to amend the docket accordingly to reflect this Order and close the matter.

                         **BY THE COURT:**

                         _____J.
                         HON. JULIA K. MUNLEY, J.