# EXHIBIT "O"

**FELLERMAN & CIARIMBOLI LAW, P.C.**
183 Market Street
Suite 200
Kingston, PA 18704
(570) 714-4878
(570) 714-7255 (Fax)
www.fclawpc.com

Gregory E. Fellerman, Esquire
Attorney I.D. #81568
gef@fclawpc.com

Edward J. Ciarimboli, Esquire
Attorney I.D. #85904
ejc@fclawpc.com

Molly Dempsey Clark, Esquire
Attorney ID# 89367
mclark@fclawpc.com

| | |
|---|---|
| **PHILIP GODLEWSKI**<br><br>**PLAINTIFF,**<br>**V.**<br><br>**BRIENNA L. DUBORGEL**<br><br>**DEFENDANT.** | **IN THE COURT OF COMMON PLEAS**<br>**OF LACKAWANNA COUNTY**<br><br>**CIVIL ACTION - LAW**<br><br>**JURY TRIAL DEMANDED**<br><br>**NO.: CV-2023-1364** |

## NOTICE TO DEFEND

   YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take prompt action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by an attorney and filing a writing with the Court of your defenses objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in this Complaint for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

   YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

## AVISO

   A USTED SE LE HA DEMANDADO EN LA CORTE. Si usted quiere defenderse contra la demanda expuesta en las siguientes páginas, tiene que tomar acción en un plazo de viente (20) dís después que reciba esta demanda y aviso, por presentar una

1



notificación de comparecencia escrita personalmente o por un abogada y radicar por escrito en la Corte sus defensas u objeciones a las demandas presentadas en su contra. Se le advierte que si falla en hacerlo, el caso podría seguir adelante sin usted y un fallo podría ser dictado en su contra por la Corte sin previo aviso por cualquier dinero reclamado en la demanda o por cualquier otro reclamo o desagravio pedido por el/la demandante. Puede que usted perida dinero o propiedad u otros derechos importantes para usted.

USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO, DIRÍJASE O LLAME, POR TELÉFONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ABAJO. ESTA OFICINA PUEDE PROVEERLE CON INFORMACIÓN SOBRE COMO CONTRATAR UN ABOGADO. SI NO TIENE LOS FONDOS SUFICIENTES PARA CONTRATAR UN ABOGADO, ESTA OFICINA PODRÍA PROPORCIONARLE INFORMACIÓN ACERCA DE AGENCIAS QUE PUEDAN OFRECERLES SERVICIOS LEGALES A PERSONAS QUE REÚNAN LOS REQUQUISTITOS A UN HONORARIO REDUCIDO O GRATIS.

| | |
|---|---|
| North Penn Legal Services, Inc. | Servicios Legales de North Penn, Inc. |
| 33 N. Main Street | 33 la Calle Main del Norte |
| Suite 200 | Oficina 200 |
| Pittston, PA 18640 | Pittston, PA 18640 |
| (570) 299-4100 | (570) 299-4100 |
| (877) 953-4250 Toll free | (877)4250 Llamada gratuita |
| (570) 824-0001 Fax | (570) 824-0001 Fax |

**FELLERMAN & CIARIMBOLI LAW, PC**

By:_____
EDWARD J. CIARIMBOLI, ESQUIRE
MOLLY DEMPSEY CLARK, ESQUIRE
*Counsel for Defendant*

Date: May 2, 2023

**FELLERMAN & CIARIMBOLI LAW, P.C.**
183 Market Street
Suite 200
Kingston, PA 18704
(570) 714-4878
(570) 714-7255 (Fax)
www.fclawpc.com

Gregory E. Fellerman, Esquire
Attorney I.D. #81568
gef@fclawpc.com

Edward J. Ciarimboli, Esquire
Attorney I.D. #85904
ejc@fclawpc.com

Molly Dempsey Clark, Esquire
Attorney ID# 89367
mclark@fclawpc.com

| | |
|---|---|
| PHILIP GODLEWSKI | IN THE COURT OF COMMON PLEAS OF LACKAWANNA COUNTY |
| **PLAINTIFF,** | |
| V. | CIVIL ACTION - LAW |
| BRIENNA L. DUBORGEL | JURY TRIAL DEMANDED |
| **DEFENDANT.** | NO.: CV-2023-1354 |

## DEFENDANT'S ANSWER AND NEW MATTER TO PLAINTIFF'S COMPLAINT AND DEFENDANT'S COUNTER-CLAIM

Defendant Brienna L. DuBorgel ("Defendant"), by and through her legal counsel, Fellerman and Ciarimboli Law PC, hereby answers the Complaint filed by Plaintiff Phillip Godlewski ("Plaintiff"), asserts its defenses and new matter and counterclaim against the Plaintiff as follows:

### ANSWER

1. Admitted, upon information and belief available to Defendant.

2. Admitted.

3. Denied in part, admitted in part. Paragraph three (3) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant admits that this court has jurisdiction over the subject matter of this case.

4. Denied in part, admitted in part. Paragraph four (4) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant admits that venue is proper in this Court.

## COUNT I – DEFAMATION – IMPUTATION OF CRIMES VIOLATION OF UNIFORM SINGLE PUBLICATION ACT 42 PA.C.S.A. 8341

5. Paragraph five (5) is an incorporation paragraph to which no response is required. To the extent a response is deemed required, Defendant incorporates the paragraphs of this pleading as though fully set forth.

6. Denied as stated. The Affidavit attached to Plaintiff's Complaint is a writing the terms of which speak for itself.

7. Denied as stated. The Affidavit attached to Plaintiff's Complaint is a writing the terms of which speak for itself.

8. Denied as stated. The Affidavit attached to Plaintiff's Complaint is a writing the terms of which speak for itself.

9. Denied as stated. The Affidavit attached to Plaintiff's Complaint is a writing the terms of which speak for itself.

10. Denied as stated. The Affidavit attached to Plaintiff's Complaint is a writing the terms of which speak for itself.

11. Denied as stated. The Affidavit attached to Plaintiff's Complaint is a writing the terms of which speak for itself.

12. Denied. Strict proof of this allegation is demanded at the time of trial.

13. Denied as stated. The Affidavit attached to Plaintiff's Complaint is a writing the terms of which speak for themselves. It is denied that the Affidavit contains any false statements.

14. Denied as stated. The conviction speaks for itself.

4

15. Denied as stated. The "Information" attached to Plaintiff's Complaint is a writing the terms of which speak for itself.

16. Denied as stated. The "Information" attached to Plaintiff's Complaint is a writing the terms of which speak for itself.

17. Denied as stated. The Guilty Plea Colloquy attached to Plaintiff's Complaint is a writing the terms of which speak for itself.

18. Denied as stated. The Guilty Plea Colloquy attached to Plaintiff's Complaint is a writing the terms of which speak for itself.

19. Denied as stated. The Affidavit attached to Plaintiff's Complaint is a writing the terms of which speak for itself.

20. Paragraph twenty (20) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the Affidavit is "defamatory." Strict proof of this allegation is demanded at the time of trial. In the meantime, and by way of further response, see the text messages between Plaintiff and Defendant attached hereto as Exhibit A. Most notably, please refer to the March 5, 2010, text from Plaintiff to Defendant pertaining to how Plaintiff believes Defendant's mother would view him, stating "I disagree, I think she'll see me as the 25 year old that fucked her 15 year old daughter and lied to her about it" attached as Exhibit B.

21. Paragraph twenty-one (21) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial.

22. Denied as stated. The Affidavit attached to Plaintiff's Complaint is a writing the terms of which speak for itself.

23. Paragraph twenty-three (23) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. By way of further response, the Affidavit is not "defamatory," but instead speaks the truth. <u>See</u> Exhibit A.

24. Paragraph twenty-four (24) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. By way of further response, the Affidavit is not "defamatory," but instead speaks the truth. <u>See</u> Exhibit A.

25. Paragraph twenty-four (24) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

26. Paragraph twenty-four (24) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

27. Paragraph twenty-seven (27) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

28. Paragraph twenty-eight (28) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

29. Paragraph twenty-nine (29) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

30. Paragraph thirty (30) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

31. Paragraph thirty-one (31) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

32. Paragraph thirty-two (32) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

## <u>COUNT II – INVASION OF PRIVACY - FALSE LIGHT</u>

33. Paragraph thirty-three (33) is an incorporation paragraph to which no response is required. To the extent a response is deemed required, Defendant incorporates the paragraphs of this pleading as though fully set forth.

34. Paragraph thirty-four (34) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

35. Paragraph thirty-five (35) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

36. Paragraph thirty-six (36) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

37. Paragraph thirty-seven (37) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

38. Paragraph thirty-eight (38) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

39. Paragraph thirty-nine (39) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

40. Paragraph forty (40) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

41. Paragraph forty-one (41) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

**<u>COUNT III – INVASION OF PRIVACY – PUBLICITY TO PRIVATE LIFE</u>**

42. Paragraph forty-two (42) is an incorporation paragraph to which no response is required. To the extent a response is deemed required, Defendant incorporates the paragraphs of this pleading as though fully set forth.

43. Paragraph forty-three (43) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

44. Denied as stated. The Affidavit attached to Plaintiff's Complaint is a writing the terms of which speak for itself. By way of further response, the Affidavit speaks the truth. <u>See</u> Exhibit A.

45. Denied as stated. The Affidavit attached to Plaintiff's Complaint is a writing the terms of which speak for itself. By way of further response, the Affidavit speaks the truth. <u>See</u> Exhibit A.

46. Paragraph forty-six (46) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

47. Paragraph forty-seven (47) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

48. Paragraph forty-eight (48) contains conclusions of law to which no response is required. To the extent a response is deemed required, Defendant specifically denies the same. Strict proof of this allegation is demanded at the time of trial. <u>See</u> Exhibit A.

**WHEREFORE**, Defendant, Brienna DuBorgel, respectfully requests this Honorable Court enter judgement in her favor and against Plaintiff, dismissing Plaintiff's claims and awarding Defendant whatever additional and equitable relief the Court deems appropriate.

## <u>NEW MATTER</u>

1. The statements complained of are not defamatory or capable of defamatory meaning as a matter of law.

2. The statements complained of are true, or substantially true.

3. Plaintiff is a public figure or limited purpose public figure, and thus must prove that Defendant acted with actual malice.

4. Plaintiff cannot prove Defendant acted with actual malice.

5. The statements complained of were privileged, reasonable and justified.

6. Plaintiff suffered no damage by reason of the statements complained of.

7. The statements complained of are not the legal cause of any injury to Plaintiff.

8. The implications and innuendos alleged by Plaintiff are unreasonable, unfair, strained, and unwarranted.

9. The statements complained of were made in the exercise of Defendant's right to freedom of speech afforded by the First and Fourteenth Amendments to the United States Constitution, and by the Constitution of the Commonwealth of Pennsylvania.

10. A Plaintiff must show that his standing in the community has been "grievously fractured" to prove language was defamatory, and not only are the statements not defamatory, Plaintiff's standing in the community has not been "grievously fractured."

11. Plaintiff is not entitled to punitive damages.

12. An award of punitive damages for speech concerning matters of public concern is prohibited by the Constitution and the laws of the Commonwealth of Pennsylvania.

**WHEREFORE**, Defendant, Brienna DuBorgel, respectfully requests this Honorable Court enter judgement in her favor and against Plaintiff, dismissing Plaintiff's claims and awarding Defendant whatever additional and equitable relief the Court deems appropriate.

## DEFENDANT'S COUNTERCLAIM

## FACTUAL BACKGROUND

1. In and around October 2008, Plaintiff began pursuing a sexual relationship with Defendant – a minor at the time.

2. At or around March 2010, and after Defendant's parents learned said sexual relationship was continuing, Defendant provided a statement to police acknowledging her sexual relationship with Plaintiff.

3. At no point in this statement did Defendant lie, embellish, or otherwise make defamatory statements regarding Plaintiff. Instead, she told the truth.

4. At various times during their sexual relationship, Plaintiff – in his capacity as a realtor – took Defendant to third party homes in order to have sexual relations.

5. On July 11, 2011, Plaintiff pled guilty to corrupting Defendant's morals.

6. On October 31, 2022, Defendant signed an Affidavit (hereinafter "October 2022 Affidavit") attached hereto as Exhibit C outlining her sexual relationship with Plaintiff.

7. At no point in this Affidavit did Defendant lie, embellish, or otherwise make defamatory statements regarding Plaintiff. Instead, the Affidavit is truthful.

8. All factual allegations made in the Affidavit were entirely true, including, but not limited to:

   a. The existence of a sexual relationship between Plaintiff and Defendant when Defendant was fifteen (15) years of age;

   b. The time at which this sexual relationship between Plaintiff and Defendant began;

   c. Plaintiff's purchase of gifts for Defendant;

   d. Plaintiff and Defendant having had sex while Defendant was in ninth (9th) and tenth (10th) grade at Riverside Highschool;

e. Plaintiff's threats of suicide if Defendant were to testify against him during Defendant's criminal proceedings related to his relationship with Plaintiff;

f. Defendant's decision not to testify against Plaintiff during his criminal case partially in response to Plaintiff's pleas; and

g. The resumption of Plaintiff and Defendant's sexual relationship following Defendant's criminal case.

9. On March 28, 2023, Defendant signed an Affidavit (hereinafter "March 2023 Affidavit") attached hereto as Exhibit D accompanied by two attachments -- the first being a record created by Plaintiff of what he did minute-by-minute pertaining to Defendant that day which came with expensive earrings and the second being the collection of text messages between Plaintiff and Defendant (previously attached as Exhibit A).

10. The abovementioned text messages begin on February 24, 2010, but make clear references to an existing sexual relationship prior to the inception of these text messages -- while Defendant was a minor.

11. Plaintiff and Defendant discuss having a relationship "again" numerous times, and Plaintiff indicates that he "is finished having sex with (Defendant) for a long time, if that's okay with (Defendant)" -- all of which evidence the existence of a past relationship. Moreover, and significantly, Plaintiff clearly identifies a past sexual relationship with Defendant while Defendant was underage when he sends the following text message on March 5, 2010, regarding how he believes Defendant's mother would feel about him: "I disagree, I think she'll see me as the 25-year-old that fucked her 15-year-old daughter and lied to her about it." See Exhibit B.

12. As evidenced above, at no point in the March 2023 Affidavit did Defendant lie, embellish, or otherwise make defamatory statements regarding Plaintiff. Instead, she spoke the truth and the Affidavit is truthful.

13. Between November of 2021 and April of 2023, Plaintiff has continuously deliberately and/or recklessly published and spoken defamatory falsehoods concerning Defendant.

14. Plaintiff has channels on at least three streaming platforms -- "Rumble", "DLive", and "Locals" -- where he regularly hosts podcast-like live videos discussing various topics including political ideals, financial opinions, and information about his personal life.

15. Plaintiff simultaneously livestreams to all three platforms to reach a larger audience.

16. According to Plaintiff, his live streams regularly have millions of viewers watching live, reaching 25,000,000 live viewers during one particularly popular video.

17. In addition to the millions of viewers watching live, the videos are posted to Plaintiff's Rumble page, where more viewers can watch recordings of the original livestreams.

18. During multiple livestreams, Plaintiff made implied and/or outright defamatory claims pertaining to Defendant, identifying Plaintiff by name at times in the live streams or otherwise providing sufficient information for Defendant to be identified in the local community.

19. Indeed, in Plaintiff's August 5, 2022, livestream, Plaintiff states that Defendant "filed a false police report" that led to the numerous charges Plaintiff faced in 2010 alleging he had engaged in sexual relations with a minor, and/or corrupted the morals of a minor.

20. In Plaintiff's August 20, 2022, livestream, Plaintiff states that he and Defendant had "no sexual contact or speech," implying that Defendant lied in her 2010 statement to police, and under oath in her October 2022 Affidavit.

21. In Plaintiff's November 26, 2022, livestream, Plaintiff stated that he "never did anything inappropriate" with Defendant, and that Defendant's 2022 Affidavit was "fabricated" implying that Defendant lied under oath in her October 2022 Affidavit.

22. Later in the same livestream, Plaintiff stated that "nothing happened between us" referring to himself and Defendant, again implying that Defendant lied under oath in her October 2022 Affidavit.

23. Again, in the same livestream, Plaintiff states that "the girl lied the first and second time, and this time she perjured herself" referring to Defendant's original statement to police in 2010, and Defendant's October 2022 affidavit.

24. These statements outright state that Defendant lied to the police, and lied again under oath to the Court, ultimately stating that the Defendant committed perjury.

25. Plaintiff proceeds to outright state later in the same live stream that he and Defendant had "never had sexual relations" and that Defendant "lied about it multiple times" then identifies the Defendant as "Brie" shortly thereafter.

26. On November 27, 2022, Plaintiff's attorney, Timothy M. Kolman, Esq. (hereinafter "Attorney Kolman") stated in an email (attached hereto as Exhibit E) on behalf of Plaintiff that Defendant's October 2022 Affidavit was "sudden and improvident". The email then states that "any sexual relationship occurred when the couple were of age, and this has never been denied."

27. The above statement implies that Defendant's October 2022 Affidavit was lies or otherwise fabricated.

28. That same day, Plaintiff posted a screenshot of and reiterated the statement made in the abovementioned email on his page on an app known as Telegram, where Plaintiff had

approximately 285,000 followers at the time the screenshot was posted. The screenshot is attached hereto as Exhibit F.

29. In Plaintiff's February 3, 2023, livestream, Plaintiff stated that "An affidavit doesn't mean an affidavit is true. It just means she swore to a lie."

30. On March 2, 2023, Plaintiff stated in a post on his Telegram page that "they extorted Brie for her affidavit" implying that Defendant lied under oath in her October 2022 Affidavit. The post is attached hereto as Exhibit G.

31. In Plaintiff's April 18, 2023, livestream, Plaintiff identified Defendant as "Brie" then stated that Defendant "swore to an Affidavit that was false... incorrect, and defamatory". He then stated "keep lying. I'm going to get you."

32. In Plaintiff's May 2, 2023, livestream, Plaintiff stated that Defendant "wrote an affidavit that is just completely lies" in reference to the October 2022 affidavit.

33. All above referenced clips from Plaintiff's livestreams on Rumble have been downloaded and are otherwise available online at https://rumble.com/c/PhilGodlewski, but could not be attached here.

34. Upon information and belief, Plaintiff also stated that "Brie was not born in 1993" in a video posted on August 11, 2022, that has since been deleted, or is otherwise unavailable to the public.

35. In making the abovementioned written and verbal statements, Plaintiff knowingly and willfully published and spoke false and defamatory matter about Defendant which:

    a. Imputed to Defendant conduct constituting felonies and other criminal offenses;
    b. Imputed to Defendant conduct that would give a reasonable person grounds to avoid romantic involvement with Defendant;
    c. Imputed to Defendant conduct that would impact Defendant's standing in her religious community and her employment; and

d.  Imputed to Defendant conduct that would impact her reputation generally in her community and across the country.

## COUNT I
## DEFAMATION
## BRIENNA DUBORGEL v. PHILLIP GODLEWSKI

36. The preceding paragraphs are incorporated herein as if fully set forth below.

37. The abovementioned statements made by Plaintiff, Phillip Godlewski, were entirely false insofar as they reflect upon Defendant's conduct, character, and reputation.

38. Plaintiff knew that his statements were false when they were made, but intentionally and maliciously chose to make these false statements to his millions of viewers on Rumble, DLive, and Locals, and his hundreds of thousands of followers on Telegram.

39. The false and defamatory statements made by Plaintiff were understood by his viewers and followers to have a negative and damaging impact on their perception of Defendant and were understood or reasonably understood as intended to be applied to Defendant.

40. The written and verbal false and defamatory statements made by Plaintiff in reference to Defendant have reached and continue to reach a massive audience, and Defendant likewise demands presumed, compensatory, economic, and punitive damages for the harm flowing from any and all such continued circulation of the false and defamatory statements in addition to the harm flowing from the initial livestreams and posts.

41. The abovementioned false and defamatory statements were in no manner privileged.

42. The aforementioned statements, collectively and individually, maliciously, intentionally, recklessly, and falsely, by words, innuendo, and inference, created an atmosphere of public scorn and ridicule against Defendant, and attributed improper conduct to Defendant.

43. The statements and implications outlined above were made with actual malice, and constitute defamation which is actionable *per se* for two separate reasons:

   a. The statements claim Defendant committed perjury, which is a felony offense and thus constitute "words imputing a criminal offense"; and
   b. The statements claim Defendant lied when accusing a man of engaging in illegal sexual activities, which unquestionably constitutes "serious sexual misconduct" by today's standards, as the current climate surrounding sexual misconduct allegation claims has attached a stigma to false accusers that is no less severe than that of sexual predators.

44. The abovementioned statements have caused special harm to Defendant, as they have irreparably damaged her reputation, and exposed her to hatred, contempt, ridicule, and humiliation.

45. As a direct and proximate cause of the intentional and malicious statements identified above, and when considering the massive audience Plaintiff reaches, Defendant's reputation and esteem in and well beyond her community have been severely adversely affected.

46. As a result of the aforementioned defamatory statements, Defendant has suffered, and will sustain in the future, a loss of income and earning capacity.

47. As a result of the aforementioned defamatory statements, Defendant has suffered and will continue to suffer grave mental anguish, humiliation, and loss of enjoyment of life.

48. The conduct of Plaintiff in making the above defamatory statements was outrageous and Plaintiff acted in bad faith and/or with reckless indifference towards the truth, for which Defendant claims additional punitive damages.

**WHEREFORE**, Defendant, Brienna DuBorgel, seeks all damages, including punitive damages, allowed under the Commonwealth of Pennsylvania in an amount in excess of $50,000,

plus cost of suit, which sum is in excess of the amount requiring compulsory arbitration under the applicable statutes of the Commonwealth of Pennsylvania and Local Rules of Court.

### COUNT II
### FALSE LIGHT
### BRIENNA DUBORGEL v. PHILLIP GODLEWSKI

49. The preceding paragraphs are incorporated herein as if fully set forth below.

50. The aforementioned statements contained distortions, misrepresentations, misstatements of fact, and omissions of fact designed to cast Defendant in a false light.

51. The aforementioned statements, collectively and individually, and without regard to their truth or their falsity, created false impressions by repeatedly, widely, and extensively disseminating information which state or implied falsehoods about Defendant and placed her before the public in a false light that would be considered highly offensive to a reasonable person.

52. As a direct and proximate cause of these intentional, malicious, reckless, and/or negligent statements, Defendant has suffered the aforementioned injuries.

**WHEREFORE**, Defendant, Brienna DuBorgel, seeks all damages, including punitive damages, allowed under the Commonwealth of Pennsylvania in an amount in excess of $50,000, plus cost of suit, which sum is in excess of the amount requiring compulsory arbitration under the applicable statutes of the Commonwealth of Pennsylvania and Local Rules of Court.

### COUNT III
### ASSAULT
### BRIENNA DUBORGEL v. PHILLIP GODLEWSKI

53. The preceding paragraphs are incorporated herein as if fully set forth below.

54. Under 42 Pa. C. S. §5533 (2021), "If an individual entitled to bring a civil action arising from sexual abuse is under 18 years of age at the time the cause of action accrues, the

18

individual shall have a period of 37 years after attaining 18 years of age in which to commence an action for damages regardless of whether the individual files a criminal complaint regarding the sexual abuse."

55. Beginning at or around the Fall of 2008 through Spring/Summer 2010, Defendant, a fifteen-sixteen-year-old minor during that time period, engaged in sexual intercourse multiple times with Plaintiff, who upon information and belief, was between twenty-five (25) and twenty-six (26) years of age at the time.

56. During the beginning of this relationship between Plaintiff and Defendant, Plaintiff held a position of authority over Defendant, as Plaintiff was a coach at Defendant's high school.

57. During numerous sexual interactions between Plaintiff and Defendant, Plaintiff intentionally caused offensive and/or harmful bodily contact with Defendant.

58. During numerous sexual interactions between Plaintiff and Defendant, Defendant experienced reasonable apprehension that offensive and/or harmful bodily contact was imminent.

59. As a result of this harmful and/or offensive bodily contact, Defendant suffered injuries including, but not limited to the following:

    a.  Anxiety;

    b.  Depression;

    c.  Stress;

    d.  Embarrassment;

    e.  Humiliation; and

    f.  All other injuries and damages resulting from those injuries listed above.

60. As a result of the aforesaid injuries and natural consequences thereof, Defendant has suffered mental discomfort, inconvenience, anxiety, and limitations on her ability to do normal everyday activities, especially with her ability to engage in healthy sexual relationships, and will continue to suffer into the future.

**WHEREFORE**, Defendant, Brienna DuBorgel, seeks all damages, including punitive damages, allowed under the Commonwealth of Pennsylvania in an amount in excess of $50,000, plus cost of suit, which sum is in excess of the amount requiring compulsory arbitration under the applicable statutes of the Commonwealth of Pennsylvania and Local Rules of Court.

**COUNT IV**
**BATTERY**
**BRIENNA DUBORGEL v. PHILLIP GODLEWSKI**

61. The preceding paragraphs are incorporated herein as if fully set forth below.

62. Beginning at or around the Fall of 2008 through Spring/Summer 2010, Defendant, a fifteen-sixteen-year-old minor during that time period, engaged in sexual intercourse multiple times with Plaintiff, who upon information and belief, was between twenty-five (25) and twenty-six (26) years of age at the time.

63. During numerous sexual interactions between Plaintiff and Defendant, Plaintiff intentionally initiated harmful or offensive physical contact with Defendant who was a minor at all relevant times.

64. During none of these sexual interactions did Plaintiff obtain actual consent, as any consent given was given under duress considering Plaintiff held a position of power as a high school baseball coach at Defendant's high school and Plaintiff preyed upon the

minor Defendant who was suffering due to the sudden and untimely death of her boyfriend.

65. As a result of this harmful and/or offensive bodily contact, Defendant suffered injuries including, but not limited to the following:

    a.  Anxiety;

    b.  Depression;

    c.  Stress;

    d.  Embarrassment;

    e.  Humiliation; and

    f.  All other injuries and damages resulting from those injuries listed above.

66. As a result of the aforesaid injuries and natural consequences thereof, Defendant has suffered mental discomfort, inconvenience, anxiety, and limitations on her ability to do normal everyday activities, especially with her ability to engage in healthy sexual relationships, and will continue to suffer into the future.

**WHEREFORE**, Defendant, Brienna DuBorgel, seeks all damages, including punitive damages, allowed under the Commonwealth of Pennsylvania in an amount in excess of $50,000, plus cost of suit, which sum is in excess of the amount requiring compulsory arbitration under the applicable statutes of the Commonwealth of Pennsylvania and Local Rules of Court.

**COUNT V**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**BRIENNA DUBORGEL v. PHILLIP GODLEWSKI**

67. The preceding paragraphs are incorporated herein as if fully set forth below.

68. Beginning at or around the Fall of 2008 through Spring/Summer 2010, Defendant, a fifteen-sixteen-year-old minor during that time period, engaged in sexual intercourse multiple times with Plaintiff, who upon information and belief, was between twenty-five (25) and twenty-six (26) years of age at the time.

69. Throughout their sexual relationship, Defendant and Plaintiff communicated through texts, phone calls, and through a downloaded application designed for discreet messaging.

70. In the conversations, Plaintiff mentally abused, manipulated, and extorted Defendant, acting extraordinarily possessive towards the minor despite being engaged and living with another woman.

71. Plaintiff repeatedly attempted to control aspects of Defendant's life, including her dating life, her choices, and her relationships with friends and family, using offers of money and gifts to influence Defendant, including a puppy and a car.

72. Defendant's abusive, manipulative, and extortionary text messages must be read in their entirety to fully understand the depth of the outrageous conduct, but by way of example, include the following texts evidenced in Exhibit A:

   a. "I'm going out tonight. Right now actually. I haven't been drunk in over a year and I need to be because of you." (February 27, 2010)

   b. "What kind of puppy (do you want?)... I'll make you sign a paper that says it's mine though, so I can hold it hostage when we're fighting <3" (February 28, 2010)

   c. (In response to Defendant not answering Plaintiff's texts for about an hour) "I don't like that some days you treat me like a piece of annoying garbage. That's either going to change, realllllllll soon, or this is over. Plain and simple. I wanted to talk to you all day and you've done nothing but dismiss me for over an hour now. Like, fuck you. Sorry for loving you and being excited to hear your voice. Fuck you." (March 1, 2010)

d.  "3:00 and no later you bitch. I'll kill you if you're late again." (March 2, 2010)

e.  (After Plaintiff tells Defendant he will buy her a car) "There's going to be rules. The car will be titled to me, not you. If you break the rules I'll pull the car." (March 5, 2010)

f.  "Oh you're with Tom. That's why you aren't talking to me. K… The feeling I have in my stomach when you're with Tom and I'm on the other line trying to talk to you and the pain and awful feeling I'm left with for the rest of the day, is far worse than the thrilling feeling of loving you, being with you, and having sex with you… We need to stop talking Brie… I can't love you knowing you're with someone else who loves you and you shouldn't either. This has to end". (March 6, 2010)

g.  (After an approximately one and a half (1.5) hour conversation where Plaintiff claims he is ending the relationship due to Defendant's choice to have a relationship with another male, claims he will move on from Defendant, and otherwise plays with the emotions of the minor Defendant) "I have no intentions on not talking to you anymore, you retard. I told you I wouldn't. And I meant it. I wanted to see how you reacted to all this… You failed today though. Big time fail. Don't make it seem like you wasn't crying, dumb bitch. I needed to get to the heart of your feelings." (March 6, 2010)

h.  (In response to Defendant telling Plaintiff he makes her life miserable) "By offering to buy you a car, give you money so you don't have to work, keep you clean and off drugs, and fall in love with you? You're right. I'm so terrible." (March 7, 2010)

i.  (Following a fight which started because Plaintiff messaged one of Defendant's friends telling the friend he had a dream about her) "We need a break, period. I can't convey how much I care about because you just do not trust me. Time apart may help (I don't know). Goodbye <3 (I love you)…Fuck you then… Fuck your shopping trip and your car too. I'm not spending a dollar on you until I'm convinced you realize how much a care about you. There's no way I'm buying your love, and right now, I'm the furthest thing from convinced. I temporarily blocked your number from texting me. I need some time to figure this out. I love you Brie <3" (It then appears Plaintiff blocked Defendant's number for approximately ten (10) hours). (March 7, 2010)

j.  "(I don't know) if I can love someone who cares about someone else. I just don't think I can… The difference is, I don't have feelings for (my fiance), but you have feelings for the guy (you're) with… (I don't care anymore). I'm going to limit how much I can care about you from now on." (March 12, 2010)

k.  (Following Defendant saying she wants to tell Plaintiff's fiancé the full extent of their relationship) "And if I got to jail? Your boy comes with me. I've got texts to

show you've admitted to sexual relationship with Tom Nezlo, So go blow your whistle. I'll be ready... The texts were forwarded to my email address and time stamped. I'll print them and mail them to your moms, k?" (March 12, 2010)

73. Although the actions of Plaintiff in sexually, mentally, and emotionally abusing a fifteen-sixteen-year-old constitute extreme and outrageous conduct in and of themselves, Plaintiff's depraved conduct continued when he threatened to commit suicide if Defendant chose to testify against him at his 2010 criminal trial.

74. A threat of suicide by someone a child cares about would cause mental anguish in any child, however, this threat hit Defendant particularly hard, since her previous boyfriend committed suicide a few years earlier.

75. Plaintiff intentionally and/or recklessly used this threat, as he knew it would elicit an extreme emotional response out of Defendant in hopes that it would persuade her against testifying.

76. All of the above stated conduct was done intentionally and/or with reckless disregard for the mental well-being of Defendant.

77. The above stated instances of Plaintiff's conduct, individually and collectively, represent extreme and outrageous conduct, especially when considering his actions were directed at a fifteen/sixteen (15/16) year old girl.

78. As a direct result of Plaintiff's conduct, Defendant suffered severe and permanent emotional distress.

79. As a direct result of Plaintiff's conduct, Defendant suffered the following injuries:

    a.    Anxiety;

    b.    Depression;

    c.    Stress;

    d.    Embarrassment;

    e.    Humiliation; and

    f.    All other injuries and damages resulting from those injuries listed above.

80. As a result of the aforesaid injuries and natural consequences thereof, Defendant has

suffered severe emotional distress, mental discomfort, inconvenience, anxiety, and

limitations on her ability to do normal everyday activities, especially with her ability to

engage in healthy sexual relationships and will continue to suffer into the future.

**WHEREFORE**, Defendant, Brienna DuBorgel, seeks all damages, including punitive

damages, allowed under the Commonwealth of Pennsylvania in an amount in excess of

$50,000, plus cost of suit, which sum is in excess of the amount requiring compulsory

arbitration under the applicable statutes of the Commonwealth of Pennsylvania and Local

Rules of Court.

**COUNT VI**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**BRIENNA DUBORGEL v. PHILLIP GODLEWSKI**

81. The preceding paragraphs are incorporated herein as if fully set forth below.

82. At the beginning of the relationship between Plaintiff and Defendant, Plaintiff was a

baseball coach at Defendant's high school and twenty-five-twenty-six years old.

83. Plaintiff's position as a coach at Defendant's high school constitutes a "Special

Relationship" for purposes of this claim.

84. Further, by Plaintiff's own admission in his Rumble/DLive/Locals livestreams, Plaintiff

took on somewhat of a role of a grief counselor in his capacity as a coach at Defendant's

high school, further clarifying that a "special relationship" existed between Defendant

and Plaintiff.

85. If this Court finds that Plaintiff's infliction of emotional distress on Defendant was not intentional, Defendant pleads that such infliction of emotional distress was at least negligent, and arising from the special relationship between Plaintiff and Defendant.

**WHEREFORE**, Defendant, Brienna DuBorgel, seeks all damages, including punitive damages, allowed under the Commonwealth of Pennsylvania in an amount in excess of $50,000, plus cost of suit, which sum is in excess of the amount requiring compulsory arbitration under the applicable statutes of the Commonwealth of Pennsylvania and Local Rules of Court.

Respectfully submitted,

**FELLERMAN & CIARIMBOLI LAW, PC**

By:_____
EDWARD J. CIARIMBOLI, ESQUIRE
MOLLY DEMPSEY CLARK, ESQUIRE
*Counsel for Defendant*

Date: May 2, 2023

## VERIFICATION

I, __Brianna DuBorgel_____, hereby certify that the facts contained
in the foregoing Answer and Counter Claim_____ are true and correct
to the best of my knowledge, information and belief. I make this statement subject to
the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

DATE: 5/1/2023

CLIENT

27