**ROTHENBERG & CAMPBELL**                            *Attorneys for the Defendants*
Ryan P. Campbell, Esq. (#317838)
Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889 || Fax: 570.207.3991
E-mail:  Hrlaw04@gmail.com || Hrlaw06@gmail.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PHILIP GODLEWSKI,** | |
| Plaintiff, | CIVIL ACTION—LAW |
| v. | *(HON. JULIA K. MUNLEY)* |
| **EDUARDO NICOLAS ALVEAR GONZALEZ,** *AKA* **ALVEAR GONZALEZ EDUARDO NICOLAS,** *AKA* **NICOLAS ALVEAR; and GOOD LION TV, LLC,** | **JURY TRIAL DEMANDED** |
| Defendants | No.:  3:24—CV—00344 |

### DEFENDANTS' BRIEF IN SUPPORT OF
### MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**AND NOW COME** Defendants, Eduardo Nicolas Alvear Gonzalez, *aka* Alvear

Gonzalez Eduardo Nicolas, *aka* Nicolas Alvear (collectively, "Individual Defendant") and

Good Lion TV, LLC ("Corporate Defendant"), by and through their counsel, Rothenberg

& Campbell, hereby file their Brief in Support of their Motion to Dismiss Plaintiff's

Complaint, arguing as follows:

### I.    PRELIMINARY STATEMENT [WIDE SHOT]

Currently, there are at least three (3) active lawsuits initiated by Plaintiff here in

Lackawanna County.  (See ECF Doc. No. 16 at ¶¶ 22, 26).  On the other side of each of

those lawsuits exists a different group of defendants.  All three (3) defendant-groups tell the same story: (1) Plaintiff engaged in sexual relations with a minor (and, admittedly, again when she became of age); (2) Plaintiff is a fraud; and (3) Plaintiff earned his popularity and wealth by exploiting both the truth and those that believed in him.   One defendant wrote an editorial, spurring the discovery of hundreds of pages of documents.  Another shares that story – one involving Plaintiff having sex with her when she was just fifteen (15) years old – by attaching a transcript of text messages purportedly exchanged between her and Plaintiff at that time.  (See ECF Doc. No. 16-9 and 16-10).  Defendants in this case reviewed all of that and made a documentary film, spurring the instant lawsuit.

Plaintiff filed his Complaint on February 28, 2024 and service of process completed *via* paid process server on March 5, 2024.  Exactly twenty-one (21) days later – March 26, 2024 – Plaintiff's counsel filed a document entitled "Motion for Default Judgment," seeking a sneaky win.  Plaintiff filed his Complaint in a state with which Defendants have absolutely no physical connections and little business contacts and dedicates one-eighth of his pleading to personally insulting and defaming Defendant.  (See ECF Doc. No. 1 at ¶¶ 41, 44, 53—63).  A week after filing, Plaintiff published ***his own*** documentary film prosecuting this case and continues to publicly speak about all three (3) civil lawsuits on social media, posting his own thoughts and legal commentary.  (See ECF Doc. No. 20-2).

While these facts bear little on the Motion before the Court, this wider shot poses an important question to the court regarding credibility:  Is Plaintiff an innocent, private citizen who, because of his controversial views, had his reputation wrongfully injured by

Defendants' baseless lies?  Or, is Plaintiff a gaslighting[1] fraud who, after losing his professional license by betraying his clients' trust, engaged in a global campaign disseminating misinformation, assembling a large enough audience from which to profit and later sell out, peddling them pyramidal schemes that evaporated folks' respective lifetime investments, all after betraying his marital vows by having sex with a young woman both **_before_** and **_after_** she was old enough to bed and then betraying[2] her by denying it ever happened?  While admittedly flippant, this distinction is important:  the single word Plaintiff claims as defamatory from the previous sentence is "**_before_**."  That is also the central issue in this case.

Plaintiff's Complaint should be dismissed on the following ternary grounds:  (1) pursuant to Rule 12(b)(2) because this Honorable Court lacks personal jurisdiction over Defendants; or pursuant to Rule 12(b)(6) because (2) admittedly, Plaintiff cannot meet his burden establishing the wrongfulness of Defendants' statements and publications cited in his Complaint; and (3) Plaintiff has failed to establish causation and recoverable injury of each of his quinary state-law tort claims.  Alternatively, paragraphs 41, 44, and 53—63 of Plaintiff's Complaint should be stricken pursuant to Rule 12(f).

---

[1] "Gaslighting" is an insidious form of manipulation and psychological control where proponents deliberately and systematically feed false information to others to lead victims to question what they know to be true, often about themselves.  Gaslighting involves repetitively (and often brazenly) lying to someone to manipulate, and ultimately control, the victim and the relationship, falling into four (4) types: outright lying, manipulation of reality, scapegoating and coercion.

[2] As Dante descends into the final division of hell's Ninth Circle, where traitors to their benefactors are punished, he notices the souls beneath him, transparent like "glass pellucid the frail stem" –metaphorically "seeing right through them."  Alighieri, Dante, Henry Francis Cary, Claire E. Honess, and Stefano Albertini, The Divine Comedy (2009).

## II.    STATEMENT OF THE CASE

Plaintiff, Philip Godlewski ("Plaintiff") initiated the instant matter by filing a Complaint in the United States District Court for the Middle District of Pennsylvania against Eduardo Nicolas Alvear Gonzalez, *aka* Nicolas Alvear ("Individual Defendant"), Good Lion TV, LLC ("Corporate Defendant"), and Good Lion Films, LLC ("Dismissed Defendant") on February 28, 2024.  (See ECF Doc. No. 1, *generally*).  Individual Defendant is a resident and citizen of the State of Tennessee and acting Chief Executive Officer and duly authorized agent of Corporate Defendant, a Wyoming limited liability company.  (See ECF Doc. No. 16-1).

In his Complaint, Plaintiff alleges causes of action sounding in tort including "defamation [...] libel, slander, libel *per se* [Counts I & V] false light [Count II], intentional interference with contractual relationships [sic] [Count III], and intentional infliction of emotional distress [Count IV]."  (ECF Doc. No. 1, *generally*).  Plaintiff argues that Defendants collectively engaged in "false, defamatory, and malicious publications and broadcasts on billboard postings, social media, and radio which declare that Plaintiff is a convicted pedophile, a fraud, a sexual groomer of minors and that he had a sexual relationship with a girl when he was 25, and she was 15."  (Id.).  More specifically, Plaintiff alleges that Defendants, having knowledge of his Times-Tribune Lawsuit, and referred to Plaintiff as "Pedo, a Pedophile, a fraudster, a grifter, a criminal, and a convicted pedophile," and have also produced, disseminated, and advertised an entire film featuring Plaintiff entitled, "the Greatest Fraud on Earth. Walking [sic]."  (Id. at ¶¶ 16, 17).  Plaintiff's

Complaint also contains a dozen paragraphs that appear to personally insult and attack Individual Defendant.  (Id. at ¶¶ 41, 44, and 53—63 incl.).

Collectively, Plaintiff argues that these purported defamatory statements were made maliciously and recklessly, placing "Plaintiff's business in jeopardy" and otherwise causing him personal injuries including "depression, anxiety, isolation, insomnia, irreparable damage to their [sic] reputation, and loss of standing in the community."  (Id. at ¶¶ 20, 101). However, Plaintiff's Complaint is silent as to what specific "business" has been placed in "jeopardy"; as of December 22, 2022, the Pennsylvania State Real Estate Commission revoked Plaintiff's associate broker license and broker-multi license for five (5) years due to Plaintiff's guilty pleas to charges of tampering with records and bad checks.  (See ECF Doc. No. 16-2).

Beginning as early as 2018, Plaintiff began using social media to broadcast several theories surrounding QAnon[3] accompanied often by his own personal thoughts and beliefs.[4] By 2021, Plaintiff had established himself within the QAnon community, cultivating followers numbering in the hundreds of thousands[5].  (See ECF Doc. No. 1 at ¶ 2).  Plaintiff used his new-found online popularity and self-proclaimed messianic[6] influence to make

---

[3] Originating in 2017, QAnon is a far-right American political conspiracy theory and political movement focused on fabricated claims made by an anonymous individual or individuals known as "Q" which are relayed and developed by online communities and influences.  QAnon's core belief is that a cabal of Satanic, cannibalistic child molesters operate a global sex trafficking ring who conspired against then-President Donald Trump, often portrayed as a hero and antagonist to the movement.  See Wikipedia.org accessed on March 28, 2024 citing Wendling, Mike (July 22, 2020). "QAnon: What is it and where did it come from" BBC.
[4] N. M. Ramirez.  "QAnon Influencer Sues Newspaper, Gets Exposed as Alleged Child Predator."  Rolling Stone® Magazine.  (November 30, 2022).
[5] Ramirez, (November 30, 2022).
[6] Plaintiff states that his popularity and newfound wealth during this period was his "reward" from "God" for "helping us get to where we are" and "once it concludes [...] God would reward [him] for the rest of [his] life and that is what He has done." (See "Greatest Fraud on Earth: the Phil Godlewski Story").

over a million dollars in advertising revenue and content-based subscriptions, including soliciting multi-level marketing schemes to his followers.[7]  Plaintiff admits as much in his Complaint, calling himself a "public figure" with a "large following."  (Id. at ¶ 2).

In early 2021, Chris Kelly of the Scranton Times-Tribune published an editorial entitled, "QAnon Realtor Sells Rabbit Holes on YouTube."  Mr. Kelly's article reads, in part:

> [...] In 2011, the former Riverside High School baseball coach [Plaintiff] pleaded guilty to corruption of minors and admitted to having a sexual relationship with a 15-year-old girl.
>
> Lackawanna County detectives said [Plaintiff] had sex with the girl in cars and homes he had access to as a real estate agent.  [Plaintiff], 28 at the time, was sentenced to three to 23 months, with the first three months to be served under house arrest and the balance as probation.
>
> Last February, [Plaintiff] was charged with theft by deception, forgery and related charges.  Police said [Plaintiff] kited a check to an area building supplier and forged bank statements to cover it up.  [...]

(ECF Doc. No. 16-3).

Upon reviewing Mr. Kelly's editorial, Plaintiff brought a five-count civil lawsuit against him, the paper's executive editor and corporate owners in the Lackawanna County Court of Common Pleas docketed at number 2021—CV—2195 ("Times-Tribune Lawsuit").  As fact discovery progressed during the Times-Tribune Lawsuit, more information regarding Plaintiff's past criminal activity was revealed, including Plaintiff's

---

[7] W. Sommer.  "QAnon Leaders Push Followers Into Multi-Level Marketing." *The Daily Beast*. (April 15, 2022).

prior criminal convictions[8], guilty plea colloquies[9] and the sworn testimonies of Plaintiff[10],

his ex-wife Dori Gallagher[11], and Brienna L. DuBorgel ("Brienna"), the girl with which

Plaintiff allegedly had sex when she was fifteen (15) years-old.  (See ECF Doc. No. 16-10).

In her October 31, 2022 affidavit, Brienna testified that she engaged in an

approximately year-long sexual relationship with Plaintiff beginning when she was a fifteen-

year-old freshman at Riverside High School and he was twenty-five (25) years old where

Plaintiff purchased her gifts and communicated with her regularly.  (See ECF Doc. No. 16-

9 at ¶¶ 6—8).  Brienna also testified that Plaintiff continued to speak with her *after* he was

charged with eight (8) criminal counts, urging her to stop cooperating with the Lackawanna

County District Attorney's Office and threatening suicide if Brienna testified against him,

prompting her to stop cooperating in the investigation.[12]  Three years later, they resumed

their sexual relationship, when Brienna was of legal age to consent.  (Id).

Upon review of Brienna's 2022 Affidavit, Plaintiff brought a two-count civil lawsuit

against Brienna in the Lackawanna County Court of Common Pleas docketed at number

2023—CV—1354 (the "DuBorgel Lawsuit").  On May 3, 2023, Brienna's counsel filed her

Answer to Plaintiff's Complaint with New Matter and a six-count Counterclaim, to which

she attached an Affidavit dated March 28, 2023.  (See ECF Doc. No. 16-10).  In support of

her testimony, Brienna attached over 2,300 textual messages purportedly exchanged

---

[8] (See ECF Doc. Nos. 16-4 through 16-6).
[9] (See ECF Doc. No. 16-7).
[10] (See ECF Doc. No. 16-8).
[11] (See ECF Doc. No. 16-9).
[12] The Docket Sheet evidences Plaintiff's Motion to Withdraw Guilty Plea filed just shy of the sixty (60) day deadline, but after Brienna decided not to testify against him.  (See ECF Doc. No. 16-4).

between her and Plaintiff over a two-week period from February 24, 2010 through March 12, 2010.  (See ECF Doc. No. 16-9 at pp. ST 2790—2905).

This information – made public by the parties' various filings in the Times-Tribune and DuBorgel Lawsuits – coupled with Plaintiff's notoriety in the QAnon universe and related outspoken opinions, attracted national attention, culminating in several articles about Plaintiff, his criminal past, conspiracy theorist present, and litigious future.[13]  Almost immediately, these articles went "viral," exponentially disseminated and shared by thousands of users on dozens of national and international online communities and becoming a matter of public record and concern.[14]

Individual Defendant – a documentary filmmaker and fellow outspoken social media figure – came to know about Plaintiff during this time.   The perceived irony in reconciling Plaintiff's present interest in QAnon with his criminal past seemed to Individual Defendant the perfect subject for a documentary film.  "The Greatest Fraud on Earth: The Phil Godlewski Story" is a film created and directed by Individual Defendant and produced by Corporate Defendant that includes scenes depicting Plaintiff's own words, postings and videos inter-cut with visual and audio depictions of the evidence produced during the Times-Tribune and DuBorgel Lawsuits, respectively.  (See ECF Doc. No. 1-10). Individual Defendant also participated in general online discussion and commentary regarding Plaintiff as a public figure on several social media accounts.  This public

---

[13] (See ECF Doc. No. 16 at ¶ 29, ftn. 13).
[14] See United States v. Thomas, 905 F.3d 276, 280 (3d Cir. 2018); Dombrowski v. Bell Atlantic Corp., 128 F.Supp.2d 216, 217 (E.D. Pa. 2000) (quoting Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984)); and Zdrok v. Zdrok, 829 A.2d 697, 699 (Pa. Super. 2003).

information served as the basis for all of Defendants' conduct Plaintiff cites as wrongful in his Complaint.

On April 4, 2024, Defendants' filed their Motion to Dismiss Plaintiff's Complaint or, in the alternative, Motion to Strike Paragraphs 41, 44, 53—63, *incl.* pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), or 12(f).  The instant Brief is filed in support of their Motion.

### III.   <u>STATEMENT OF ISSUES PRESENTED</u>

A. WHETHER PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R.C.P. 12(B)(2) BECAUSE THIS HONORABLE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS?

*SUGGESTED ANSWER:  IN THE AFFIRMATIVE.*

B. ASSUMING *ARGUENDO* THAT PLAINTIFF HAS ESTABLISHED PERSONAL JURISDICTION, WHETHER PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED WHERE PLAINTIFF CANNOT ESTABLISH THAT DEFENDANTS' CONDUCT WAS WRONGFUL, CAUSALLY RELATED TO THE ALLEGED HARM, AND/OR HIS SPECIFIC DAMAGES?

*SUGGESTED ANSWER:  IN THE AFFIRMATIVE.*

C. ASSUMING *ARGUENDO* THAT PLAINTIFF HAS ESTABLISHED BOTH PERSONAL JURISDICTION AND A CLAIM UPON WHICH RELIEF CAN BE GRANTED, WHETHER PARAGRAPHS 41, 44, AND 53-63 OF PLAINTIFF'S COMPLAINT SHOULD BE STRICKEN PURSUANT TO FED. R. CIV. P. 12(F) AS IMMATERIAL, SCANDALOUS AND IMPERTINENT?

*SUGGESTED ANSWER:  IN THE AFFIRMATIVE*

IV.    **ARGUMENT**

### A. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to move to dismiss a complaint for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  When raised as a jurisdictional defense, the plaintiff bears the burden of establishing the Court's personal jurisdiction over the moving defendant.  D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) (*citing* Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)).  Without holding an evidentiary hearing, the plaintiff meets this burden by establishing a *prima facie* case of personal jurisdiction, or "by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'"  Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (*quoting* Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n., 819 F.2d 434 (3d Cir. 1987)).  Further, "the ultimate burden remains on the plaintiff to demonstrate the existence of jurisdiction by a preponderance of the evidence."  LaSala v. Marfin Popular Bank Pub. Co., Ltd., 410 F. App'x 474, 476 (3d Cir. 2011).

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fraser v. Pennsylvania State University, 654 F.Supp.3d 443, 453 (M.D. Pa. 2023).   Following Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. 662, 678 (U.S. 2009) (*quoting* Twombly, 550 U.S. 544, 570 (U.S. 2007)).

In deciding a motion to dismiss, courts within the United States Court of Appeals for the Third Circuit must follow three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of all well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. Fraser, 654 F.Supp.3d at 453 ftn. 57 (*citing* Connelly v. Lane Construction Corp., 809 F.3d 780, 787 (3d Cir. 2016)).  When deciding a motion to dismiss, courts "must consider only the complaint, exhibits attached to the complaint, ***matters of public record as well as undisputedly authentic documents if the complainant's claims are based upon these documents***." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (***emphasis added***).  When appropriate, a court may "convert" the motion to dismiss into a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d) by ensuring that "the materials submitted require conversion" and that "the parties ha[ve] adequate notice of the ... court's intention to convert." In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999); see also Meyer v. Delaware Valley Lift Truck, Inc., 392 F.Supp.3d 483, 489 ftn. 2 (E.D. Pa. 2019).

Pursuant to Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading... any redundant, immaterial, impertinent, or scandalous matter." F.R.C.P. 12(f). This rule is "designed to reinforce the requirement in Rule 8 ... that pleadings be simple, concise, and direct." Roamingwood Sewer & Water Assoc. v. National Diversified Sales, Inc., 509 F.Supp.3d 198, 204 (M.D. Pa. 2020) (*quoting* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2020 update)).  Motions to strike will

only be granted when the allegations have no possible relation to the controversy, may cause prejudice to one of the parties, or confuses the issues.  <u>Balon v. Enhanced Recovery Company, Inc.</u>, 316 F.R.D. 96, 98 (M.D. Pa. 2016) (*quoting* <u>Hanselman v. Olsen</u>, 2006 WL 47655 (M.D. Pa. 2006)).

### B. THIS HONORABLE COURT LACKS GENERAL, SPECIFIC AND EFFECTIVE PERSONAL JURISDICTION OVER DEFENDANTS, NECESSITATING DISMISSAL OF PLAINTIFF'S COMPLAINT.

"[I]n reviewing a motion to dismiss under Rule 12(b)(2), [the Court] 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 368 (3d Cir. 2002) (*citing* <u>Carteret Sav. Bank, FA v. Shushan</u>, 954 F.2d 141, 142 n. 1 (3d Cir. 1992)).  "Once these allegations are contradicted by an opposing affidavit, however, [the] plaintiff must present similar evidence in support of personal jurisdiction." <u>In re Chocolate Confectionary Antitrust Litig.</u>, 674 F. Supp. 2d 580, 595 (M.D. Pa. 2009).  Indeed, the plaintiff will not be able to rely on the bare pleadings alone, and "must respond with actual proofs, not mere allegations." <u>In re Chocolate Confectionary Antitrust Litig.</u>, 674 F. Supp. 2d at 595; <u>Patterson ex rel. Patterson v. F.B.I.</u>, 893 F.2d 595, 604 (3d Cir. 1990) (*quoting* <u>Time Share Vacation Club v. Atlantic Resorts, Ltd.</u>, 735 F.2d 61, 67 n. 9 (3d Cir. 1984)).  Thus, Courts may look beyond the pleadings when ruling on a motion brought under Rule 12(b)(2), as "[c]onsideration of affidavits submitted by the parties is appropriate and, typically, necessary." <u>In re Chocolate Confectionary Antitrust Litig.</u>, 674 F. Supp. 2d at 595; <u>Patterson</u>, 893 F.2d at 603 ("A Rule 12(b)(2) motion ... is inherently a matter which

requires resolution of factual issues outside the pleadings.") (*quoting* <u>Time Share Vacation Club</u>, 735 F.2d at 67 n. 9).

Further, there are two types of personal jurisdiction over non-resident defendants—general jurisdiction and specific jurisdiction. <u>O'Connor v. Sandy Lane Hotel Co.</u>, 496 F.3d 312, 317 (3d Cir. 2007). General jurisdiction may be asserted when a non-resident defendant has maintained "systematic and continuous contacts with the forum state." <u>Marten v. Godwin</u>, 499 F.3d 290, 296 (3d Cir. 2007) (*citing* <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414–15 (1984)). Specifically, general jurisdiction requires that a defendant's contacts with the forum state be "of the sort that approximate physical presence." <u>William Rosenstein & Sons Co. v. BBI Produce, Inc.</u>, 123 F.Supp.2d 268, 274 (M.D. Pa. 2000) (*quoting* <u>Bancroft & Masters, Inc. v. Augusta Nat. Inc.</u>, 223 F.3d 1082, 1086 (9th Cir. 2000), *holding modified by* <u>Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme</u>, 433 F.3d 1199 (9th Cir. 2006)).

On the other hand, "[s]pecific jurisdiction exists when the claim arises from or relates to [a defendant's] conduct purposely directed at the forum state." <u>Marten</u>, 499 F.3d at 296 (*citing* <u>Helicopteros</u>, 466 U.S. at 414–15 n. 9). To determine whether specific jurisdiction over a defendant exists, courts must engage in a three-part inquiry. <u>O'Connor</u>, 496 F.3d at 317. First, a court must consider whether a defendant "purposefully directed [its] activities" at the forum state. <u>O'Connor</u>, 496 F.3d at 317 (*quoting* <u>Burger King</u>, 471 U.S. at 472). Second, "the litigation must 'arise out of or relate to' at least one of those activities." <u>O'Connor</u>, 496 F.3d at 317 (*quoting* <u>Helicopteros</u>, 466 U.S. at 414). Third, if the prior requirements are met, "[a Court] may consider additional factors to ensure that

exercising jurisdiction would be consistent with notions of 'fair play and substantial justice.'" O'Connor, 496 F.3d at 317 (*quoting* Burger King, 471 U.S. at 476).

If unable to satisfy the traditional specific jurisdiction test, a plaintiff may rely on the distinct "effects test" established by the Supreme Court in Calder v. Jones. Calder v. Jones, 465 U.S. 783 (U.S. 1984). Unlike the traditional specific personal jurisdiction inquiry – focusing primarily on defendant's contacts with the forum – the Calder "effects test" prioritizes the location where the plaintiff suffered the brunt of the harm. Id. Specifically, the Third Circuit instructs that the effects test requires a plaintiff to show the following:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Marten, 499 F.3d at 297. By satisfying these three elements, a plaintiff "can demonstrate a court's jurisdiction over a defendant even when the defendant's contacts with the forum alone are far too small to comport with the requirements of due process under [the] traditional analysis." Darien Rowayton Bank v. McGregor, 668 F.Supp.3d 324, 333 (M.D. Pa. 2023) (*quoting* Marten, 499 F.3d at 297).

Preponderantly, this Honorable Court lacks general and specific personal jurisdiction over them. Defendants have no continued and/or systematic contacts with Pennsylvania, having literally no history of physical presence therein. (See ECF Doc. No. 16-1). Furthermore, Defendants' collective contacts with Pennsylvania are so scant, minimal and unfocused that they are tantamount to being "too small to comport with the

requirements of due process under [the] traditional analysis"; put another way, Defendants'

contacts with Pennsylvania are so minimal that Defendants could not reasonably foresee

being sued in Pennsylvania.  See Marten, 499 F.3d at 297; see also (ECF Doc. No. 16-1).

Admittedly, the only possible jurisdiction-type Plaintiff can employ here is effective

personal jurisdiction as outlined in Calder.  Plaintiff's alleged claims here – defamation,

intentional interference with contractual relations, false light, and intentional infliction of

emotional distress – are intentional torts.  See Staub v. Proctor Hosp., 562 U.S. 411, 417

(U.S. 2011).  Defendants concede that the first Calder element has been met.  However, the

remaining two remain problematic and unresolved for Plaintiff.

Plaintiff has failed to establish both that he "felt the brunt of harm in Pennsylvania"

and, most importantly, whether Defendants "expressly aimed their tortious conduct toward

Pennsylvania."  Calder, *supra*. "[T]he plaintiff has to demonstrate the defendant knew that

the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum

and point to specific activity indicating that the defendant expressly aimed its tortious

conduct at the forum."  Marten, 499 F.3d at 297-98.  Since Calder and its progeny,

communication over the internet has become a ubiquity of daily life, further contouring

personal jurisdiction such that a plaintiff must now show that defendant focused his actions

to Pennsylvania itself ***and*** that plaintiff's specific damages exist therein.  Id.  Rather,

Defendants argue that their conduct was focused on Plaintiff himself, whose existence and

specific damages both exist online and unmoored from Pennsylvania soil.  Accordingly,

Third Circuit precedent supports Rule 12(b)(2) dismissal.

In <u>Remick v. Manfredy</u>, the Third Circuit affirmed its District Court's dismissal of plaintiff's complaint alleging defamation and other intentional tort claims for lack of personal jurisdiction despite defendants' letter addressed to plaintiff and published to third parties in Pennsylvania based on plaintiff's failure to establish that defendants aimed their conduct at Pennsylvania such that Pennsylvania was the focal point of the tortious activity. <u>Remick v. Manfredy</u>, 238 F.3d 248, 259 (3d Cir. 2001); <u>see also</u>, <u>Hadnagy v. Moss</u>, 2023 WL 114689 at *7 (E.D. Pa. 2023) (dismissing plaintiff's intentional tort complaint based on lack of personal jurisdiction where defendant published a scathing review of plaintiff and proposed ban of plaintiff to attend a tech seminar and holding that just because something is published on the internet and becomes widely accessible and disseminated, including the forum state, does not satisfy the third element of the <u>Calder</u> test); <u>Mir v. Brod</u>, 2022 WL 16639992 at *29 (E.D. Pa. 2022) (dismissing California and Florida defendants from plaintiff's Federal lawsuit in Pennsylvania for lack of personal jurisdiction and failure to show "purposeful direct[ion of their] activities."); and <u>Babyage.com, Inc. v. Center for Environmental Health</u>, 90 F.Supp.3d348, 354 (M.D. Pa. 2015) (dismissing plaintiff's complaint for lack of personal jurisdiction finding defendant's wrongful actions not expressly aimed at Pennsylvania and "merely show[ing] that [defendant] has a legal dispute with a Pennsylvania resident, which is insufficient as described in <u>Walden</u>").

Like the defendant in the <u>Babyage</u>, Defendants simply have a dispute with Plaintiff *as a Pennsylvania resident*.  Plaintiff fails to articulate the existence of an actual "business" and how his harm are both bound to Pennsylvania.  Defendants advertise their film online – it's possible that hundreds of Pennsylvania eyes have discovered its existence, perhaps even

purchased a copy.   But that fact alone is not enough to establish personal jurisdiction.  <u>See</u>,

*supra*.  Plaintiff must establish both a focused aim towards Pennsylvania by Defendants *and*

that the "brunt" of Plaintiff's harm exists therein.  Plaintiff can establish neither because

Defendants aimed and focused their publications at Plaintiff's **online** followers in the QAnon

community.  Plaintiff's damages, if any, are monetary, entangled with his number of

followers from all around the world.  Additionally, Plaintiff has insufficiently articulated his

specific damages and how his ostensible injuries are tied to the forum state such that this

Honorable Court can exercise jurisdiction.  As such, Plaintiff fails to establish the final two

(2) elements of the <u>Calder</u> test, necessitating his Complaint's dismissal.

    **C.  ASSUMING *ARGUENDO* PLAINTIFF CAN ESTABLISH JURISDICTION,
PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE
12(B)(6) AS PLAINTIFF CANNOT ESTABLISH WRONGFUL CONDUCT,
CAUSATION OR SPECIFIC DAMAGES – TERNARY ELEMENTS OF EACH OF
PLAINTIFF'S QUINARY STATE-LAW TORT CLAIMS.**

        **(1) Plaintiff's Defamation and False Light Claims Must be Dismissed
Because Plaintiff is Unable to Establish the Falsity of Defendants'
Alleged Wrongful Statements or Actual Malice, Admitting Same
Under Oath.**

    "Under Third Circuit jurisprudence, the Court must apply a two-step approach

when presiding over a defamation action.  The Court must determine: '(1) whether the

defendants have harmed the plaintiff's reputation within the meaning of state law; and (2) if

so, whether the First Amendment nevertheless precludes recovery.'"  <u>Mzamane v. Winfrey</u>,

693 F.Supp.2d 442, 476 (E.D. Pa. 2010) (internal quotations omitted).  A claim for

defamation under Pennsylvania law includes the following elements:

(1)  The defamatory character of the communication.

(2)  Its publication by the defendant.

(3) Its application to plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication. [and]

(7) Abuse of a conditionally privileged occasion.

42 Pa. C.S.A. § 8343(a); see also Graboff v. Colleran Firm, 744 F.3d 128, 135 (3d Cir. 2014) (internal citations omitted); Martin v. Finley, 349 F.Supp.3d 391, 423 (M.D. Pa. 2018).  Once a plaintiff has established these elements, the defendant bears the burden of proving:

(2)  The truth of the defamatory communication.

(3) The privileged character of the occasion on which it was published. [or]

(4) The character of the subject matter of defamatory comment as of public concern.

42 Pa. C.S.A. § 8343(b); Martin, 349 F.Supp.3d at 423.

Some communications, even if offensive or distasteful, do not rise to the level of defamation because the law does not extend to mere insult.  Emekekwue v. Offor, 26 F.Supp.3d 348, 359 (Pa. M.D. 2014) (citing Beverly Enters., Inc. v. Trump, 182 F.3d 183, 187 (3d Cir. 1999)).  For example, expressions of opinion, without more, are not actionable. Id.  Likewise, "[s]tatements which are merely annoying or embarrassing or [are] no more than rhetorical hyperbole or a vigorous epithet are not defamatory." Beverly Enters Inc., 182 F.3d at 187.

The tort of false light invasion of privacy is related to defamation.  Pennsylvania has adopted the Restatement (Second) of Torts standard, which "imposes liability on a person

who publishes material that 'is not true, is highly offensive to a reasonable person, and is publicized with knowledge or in reckless disregard of its falsity.'" Graboff, 744 F.3d at 136 (internal quotations and citations omitted). See also Vogel v. W.T. Grant Co., 327 A.2d 133 (Pa. 1974). The torts false light invasion of privacy and defamation are sometimes difficult to distinguish. False light has been described by some as "the right to be left alone," whereas defamation protects one's interest in good reputation. Martin, 349 F.Supp. at 423 (internal quotations omitted); see also Graboff, 744 F.3d at 138 n.8.

Plaintiff's claims for Defamation (Count I), False Light Invasion of Privacy (Count II) and Defamation by Innuendo (Count V) must be dismissed for failure to state claims upon which relief can be granted. Plaintiff cannot establish that Defendants' publications were tortious, directly caused his particular harm, or even the existence of an actual, physical injury. Plaintiff's failure to plead credible evidence showing Defendants' tortious conduct, causation or specific damages – all three (3) necessary components of every common law tort – doom each of his Complaint's quinary tort claims. Regarding causation and specific damages, Defendants adopt and incorporate Defendants' Brief in Opposition to Plaintiff's Motion for Preliminary Injunction filed simultaneously with this Brief pursuant to Rule 10(b) as if more fully set forth herein. (See ECF Doc. No. 20-1, *generally*). Summarily, Plaintiff cannot show that Defendants' specific conduct caused his alleged damages, having occurred amidst dozens of other posted communications regarding Plaintiff's criminal history which were later re-posted thousands of times. (Id.)

As an admitted "public figure[15]" speaking about "matters of public concern," Plaintiff

bears the burden to show, by clear and convincing evidence, the falsity of Defendants'

alleged defamatory statements and that Defendants published those statements with actual

malice.  Phila. Newspapers. v. Hepps, 475 U.S. 767, 770 (U.S. 1986); McDowell v.

Paiewonsky, 769 F.2d 942, 947 (3d Cir. 1985); see also New York Times Co. v. Sullivan,

376 U.S. 254, 279-80 (U.S. 1964); Tucker v. Philadelphia Daily News, 848 A.2d 113, 127-

128 (Pa. 2004); and Dibella v. Hopkins, 403 F.3d 102 (2d Cir. 2005).  The clear and

convincing evidence standard applies even at the summary judgment stage of a defamation

proceeding.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255-56 (U.S. 1986).

Regarding Defendants' statements that Plaintiff is a "fraud, fraudster, a grifter,

[and/or] a criminal," Plaintiff's own criminal record and respective pleas of "guilty" to

perjury, tampering with records and writing bad checks all constitute *crimen falsi*[16] such that

these statements are true for purposes of the torts of defamation and false light invasion of

privacy, admitted by Plaintiff himself where dismissal of each of these statements is

appropriate pursuant to Rule 12(b)(6) for lack of defamatory meaning.  See, e.g., Reilly v.

North Hills News Record, 1998 WL 1113472 at *1 (W.D. Pa. 1998).  The remaining

statements that constitute insults and/or opinions also bear no defamatory character and

should likewise be dismissed.  Beverly Enters., Inc., 182 F.3d at 187; Emekekwue, 26

---

[15] (See ECF Doc. No. 1 at ¶ 2).

[16] *Crimen falsi* is a crime (as perjury or fraud) involving deceit or falsification.  See Merriam-Webster Dictionary.  (2024) (See ECF Doc. No. 16-2, 16-4 through 16-6).

F.Supp.3d at 359.  Therefore, the sole statement that concerns the court for purposes of this section is: **"Plaintiff had sex with Brienna when she was a minor"**.

### a.  Statements Related to Plaintiff Having Sex With Brienna When She was Fifteen (15) Years-Old

Plaintiff claims Defendants' statements about him having sex with a minor and being a "Pedo, a Pedophile, a [...] criminal, sexual groomer of minors and a convicted pedophile" are false. (See ECF Doc. No. 1 at ¶1).  These statements, and their different iterations, all derive from the claim that Plaintiff, while he was twenty-five (25) years old, engaged in a sexual relationship with a minor leading to criminal conviction.  If Plaintiff cannot prove by "clear and convincing evidence" that Defendants published this statement with either knowledge of its falsity or reckless disregard of same, then there cannot be any liability to Defendants.  See *supra*.  Plaintiff must do so by showing that Defendants "entertained serious doubts as to the truth of [their] publication," St. Amant v. Thompson, 390 U.S. 727, 731, (U.S. 1968), or "subjective awareness of probable falsity."  McDowell v. Paiewonsky, 769 F.2d 942, 951 (3d Cir. 1985).  Absent this showing of actual malice, no liability lies for any counts in defamation or false light invasion of privacy.  Id.

The following facts are undisputed and part of the public record in the Times-Tribune Lawsuit[17]:  (1) the Lackawanna County District Attorney's Office arrested Plaintiff on July 9, 2010 pursuant to an eight (8) count Criminal Complaint[18]; (2) on November 12,

---

[17] District Courts may take judicial notice of any matter of public record including court documents, pleadings and related exhibits filed in a plaintiff's other lawsuit stemming from similar facts and circumstances.  See Oran v. Stafford, 226 F.3d 275, 288 (3d Cir. 2000); Fed. R. E. 201(b).
[18] (See ECF Doc. No. 16-4 and 16-7).

2010, Plaintiff pled guilty to a charge of "corruption of minors,"[19] acknowledging the allegations contained in the criminal complaint each involving inappropriate sexual contact with Brienna[20]; (3) detectives at the time said Plaintiff had sex with Brienna in cars and houses which were up for sale[21]; and (4) Plaintiff admitted he did in fact corrupt the morals of Brienna and had sex with her after she was of legal age.[22]  Plaintiff's only contention of fact is that he ***never*** had sex with Brienna ***before*** she reached the age of legal consent.

Brienna executed an Affidavit stating she was in a sexual relationship with Plaintiff when she was 15 and he was 25.  (See ECF Doc. No. 16-10).  Brienne also testified that she engaged in several textual messages with Plaintiff during this time where Plaintiff references sex with her over 25 times and that he loves her over 100 times.  (See ECF Doc. No. 16-11, *generally*).  Plaintiff admits in his sworn deposition that he's known Brienna since 2009, had sex with her when she was 19, and admits "I can't prove that something didn't happen in this case."  (See ECF Doc. No. 16-10 at pp. 212—213 and 251—252).  He also testified, "I can't prove a negative" and "I don't have to prove anything," when questioned about sex with 15-year-old Brienna.  (Id. at p. 252).  In that same deposition, Plaintiff concedes his corruption charge was for ***having sex with a minor child*** and, according to that same guilty plea, ***admitted to "doing" the things he was "charged with"***.  (Id. at pp. 228; 235-241).

---

[19] (Id.) 18 Pa. C.S.A. § 6301 was amended effective December 6, 2010 to include a new section, specifically (a)(1)(ii) relating to sexual offenses and Plaintiff could not be charged under this new section since it was not enacted at the time of his conduct or arrest; instead, law enforcement charged Plaintiff under § 6301(a)(1) for sexual related conduct.

[20] (Id.)

[21] (See ECF Doc. No. 16-14).

[22] (See ECF Doc. No. 16-4 and 16-7).

Assuming all well-pleaded facts contained in Plaintiff's Complaint as true for purposes of this Brief, Plaintiff has not, and cannot, establish that Defendants either "entertained serious doubts as to the truth" of their publications or had "subjective awareness of [their] probable falsity." St. Amant, 390 U.S. at 731; McDowell, 769 F.2d at 951. On the contrary, the exact opposite is true. Plaintiff admits that Defendants knew about the materials submitted in the Times-Tribune Lawsuit and used them when publishing the alleged wrongful statements. (ECF Doc. No. 1 at ¶¶ 13—18, and 42). Plaintiff further admits that Defendants' film contains "much of" of same information revealed in that case and often quotes, verbatim, from that very same record. (Id. at ¶ 18). Defendant's sworn testimony underscores Plaintiff's admissions of fact. (See ECF Doc. No. 16-1). The only "evidence" of falsity of this statement comes from Plaintiff's own mouth, existing somewhere between his thread-bare denials and hazy, unsupported challenges to the authenticity of the textual messages back in 2010. (ECF Doc. No. 1 at ¶¶ 22, 26, and 36).

Moreover, Plaintiff's allegations of actual malice contained in his Complaint are scant, amounting to an ostensible lack of proper investigation and personal *animus* towards Plaintiff on part of the Defendants. (ECF Doc. No. 1 at ¶¶ 13, 25, 40 and 41). Even pretending both are true, neither are enough to meet Plaintiff's burden. A failure to investigate, without more, is not sufficient to show actual malice; neither is a defendant's *personal feelings* toward plaintiff. See Tucker v. Fischbein, 237 F.3d 275, 286 (3d Cir. 2001); Mallory v. S & S Publishers, 260 F.Supp.3d 453, 464 (E.D. Pa. 2017). Plaintiff's evidence is

insufficient and no further discovery is likely to move the needle.[23]  The Court, assuming all

Plaintiff's alleged facts are true, including that Plaintiff never had sex with Brienna while she

was a minor, must answer one question:  whether it is possible that Defendants, having

knowledge of all information related to the Times-Tribune Lawsuit prior to publishing any

allegedly wrongful statements, *had subjective awareness of their probable falsity?*  Defendants

argue that the answer to that question is **"no"**; it is impossible for Plaintiff to meet his

burden in this specific case.  Plaintiff apparently agrees.[24]  Therefore, dismissal of Counts I,

II and V is proper as a matter of law.

> **(2) Plaintiff's Tortious Interference with Contractual Relations and
> IIED Claims Must Both Be Dismissed for Failure to Establish the
> Essential Ternary Elements of Each Tort – Wrongful Conduct,
> Causation and Damages.**

Defendants adopt and incorporate their arguments related to causation and damages

as set forth in their Brief in Opposition to Plaintiff's Motion for Preliminary Injunction filed

simultaneously with this Brief as though set forth herein at length.  (ECF Doc. No. 20-1).

Plaintiff has established no present or future contractual or economic relationship between

himself and a third-party, having failed to specifically cite to his "business" at all.

Furthermore, Defendants' statements and publications are privileged and protected

pursuant to the First Amendment.  Finally, Defendants' statements are not so "extreme and

outrageous" in the context of this case to warrant an IIED claim for unspecific damages.  As

such, Counts III and IV should be dismissed as a matter of law, with prejudice.

---

[23] Plaintiff has had two (2) whole years in the Times-Tribune Lawsuit to come up with substantial evidence supporting his theory of the case; namely, that Brienna is lying.

[24] (See ECF Doc. No. 16-10, *supra*).

To establish a claim for tortious interference with business relations under Pennsylvania law, a plaintiff must show:

> (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring;; (3) the absence of privilege or justification on the part of the defendant; and (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.

Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009).

Specifically, the relationship – prospective or existing – must be "of some substance, some particularity, before an inference can arises to its value to the plaintiff and the defendant's responsibility for its loss." I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko," 500 F.Supp.3d 380, 426 (E.D. Pa. 2020) (*quoting* Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P., 40 A.3d 1261, 1275 n. 14 (Pa. Super. 2012)).  For prospective relations, a plaintiff should plead "additional facts to show 'an objectively reasonable probability that [a prospective relationship would] come into existence.'" Id. (*quoting* Kernaghan v. BCI Comm., Inc., 802 F.Supp.2d 590, 592 n.1 (E.D. Pa. 2011)).

Nowhere in Plaintiff's Complaint does he allege the existence of any portended current or future contractual or business relationship other than mentioning that Defendants' allegedly wrongful statements placed his "business in jeopardy."  (See ECF Doc. No. 1 at ¶16).  Without more, Plaintiff's claim for Tortious Interference with Business Relations must be dismissed as a matter of law.  See Thompson Coal Co. v. Pike Coal Co.,

412 A.2d 466, 471 (Pa. 1979) (dismissing plaintiff's claim for failure to "set forth any contract right on [plaintiffs'] part which was injured through the actions of [the defendant]"); see also Wurth Baer Supply Co., v. Strouse, 627 F.Supp.3d 422 (M.D. Pa. 2022); Rototherm Corp. v. Penn Linen & Uniform Service, Inc., 1997 WL 419627 (E.D. Pa. 1997); Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc. v Hi-Tech Sys., Inc., 801 F.Supp. 1450, 1459 (E.D. 1992) ("The complaint must allege facts that, if true, would give rise to a reasonable probability that particular anticipated contracts would have been entered into."); and Multitherm Corp. v. Fuhr, 1991 WL 146233, at *22 (E.D. Pa. 1991).

Furthermore, even assuming Plaintiff has established some portended business relationship, Defendants' conduct as alleged by Plaintiff in the Complaint is constitutionally privileged by the First Amendment as "speech on matters of public concern" and "public figures" and therefore not recoverable under Pennsylvania law. See Snyder v. Phelps, 562 U.S. 443, 451 (U.S. 2011); Azzaro v. Cnty. Of Allegheny, 110 F.3d 968, 978 (3d Cir. 1991); see also, Tannous v. Cabrini University, 2023 WL 6465842 at *10 (E.D. Pa. 2023); Neish v. Beaver Newspapers, Inc., 581 A.2d 619, 625 (Pa. Super. 1990); and Jones v. City of Philadelphia, 73 Pa. D. & C.4th 246, 273 (Phila. Co. Ct. Com. Pls. 2005). As such, Count III of Plaintiff's Complaint must be dismissed as a matter of law.

To state a claim for IIED under Pennsylvania law, the plaintiff must allege "intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff" and "some type of resulting physical harm due to the defendant's conduct." Davis v. Wigen, 82 F.4th 204, 216 (3d Cir. 2023) (quoting Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. 2005)). When a party seeks to dismiss a claim for

IIED "upon demurrer, the appropriate legal standard to be applied in reviewing the claim is whether the [pleading] sufficiently pleads the claim in a manner that corresponds 'at a minimum' with the provisions of the Restatement (Second) of Torts § 46(1)." Toney v. Chester County Hospital, 961 A.2d 192, 201 (Pa. Super. 2008), aff'd, 36 A.3d 83 (Pa. 2011); Reardon v. Allegheny College, 929 A.2d 477, 487 n. 12 (Pa. Super. 2007), app. denied, 947 A.2d 738 (Pa. 2008).

Given that the definition of "outrageousness" is subjective and nebulous the availability of recovery of IIED is "highly circumscribed." Gray v. Huntzinger, 147 A.2d 924, 927-928 (Pa. Super. 2016) (internal quotation omitted). The type of conduct required to support an IIED claim "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Davis, 82 F.4th at 216 (*quoting* Hoy, 720 A.2d at 754). "[I]t has not been enough that the [tortfeasor] has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by 'malice' or a degree of aggravation that would entitle the [claimant] to punitive damage for another tort." Hoy, 720 A.2d at 754. Potential liability for IIED "clearly does not extend to mere insults, threats, annoyances, petty oppressions, or other trivialities," and claimants "must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind," since "[t]here is no occasion for the law to intervene in every case where [someone's] feelings are hurt." Gray, 147 A.3d at 927, n. 1 (*quoting* Restatement (Second) of Torts § 46, comment d).

Consequently, instances of abhorrent and malevolent conduct have been deemed insufficient as a matter of law to sustain a claim for IIED.  See, e.g., Hoy, 720 A.2d at 754; Piazza v. Young, 403 F.Supp.3d 421 (Pa. M.D. 2019); Miller v. Peraino, 626 A.2d 637, 641 (Pa. Super. 1993).  Additionally, plaintiff must provide competent medical evidence to prove the existence of emotional distress in order to prevail on an IIED cause of action. Doe v. Liberatore, 478 F.Supp.2d 742, 765 (Pa. M.D. 2007) (*citing* Kazatsky v. King David Memorial Park, Inc., 527 A.2d 988, 995 (Pa. 1987)).

In the instant matter, assuming that Defendants' conduct is not constitutionally privileged and protected by the First Amendment, Defendants' statements as alleged in Plaintiff's Complaint and in the context of this particular case simply do not rise to the level as to "be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  Davis, 82 F.4th at 216 (*quoting* Hoy, 720 A.2d at 754).  See Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988); Williams v. Roc Nation, LLC, 2020 WL 6158242 at *7 (E.D. Pa. 2020) (granting documentary filmmaker defendants' motion to dismiss plaintiff's IIED claim despite allegations of alleged lewd and lascivious comments including "dirty, corrupt, immoral, and dishonest"); Cheney v. Daily News, L.P., 102 F.Supp.3d 708, 718 (E.D. Pa. 2015) (granting newspaper defendant's motion to dismiss firefighter plaintiff's IIED claim based on alleged lewd and lascivious conduct and alleged sex scandal).

Assuming Plaintiff has met the threshold requirement and shown "extreme and outrageous conduct" by Defendants, Plaintiff's IIED count should be dismissed for failure

to adequately articulate his actual, physical damages due to Defendants' alleged wrongful comments. See Hines v. Proper, 442 F.Supp.2d 216, 224 (M.D. Pa. 2006).  For those reasons, and the reasons adopted and argued in Defendants' Motion for Preliminary Injunction, Defendants respectfully request that this Honorable Court dismiss Count IV of Plaintiff's Complaint, with prejudice.

### D. ALTERNATIVELY, PARAGRAPHS 41, 44 AND 53—63 *INCL.* MUST BE STRICKEN FROM PLAINTIFF'S COMPLAINT AS IMMATERIAL, SCANDALOUS AND/OR IMPERTINENT.

The burden rests with the moving party to show that the challenged matter should be stricken by demonstrating that the matter falls within one of the categories listed in Rule 12(f). Roamingwood Sewer & Water Assoc., 509 F.Supp.3 at 204.  "Immaterial" matter is that which "has no essential or important relationship to [any] claim[s] for relief." Id. (*citing* Wagner v. Holtzapple, 101 F. Supp. 3d 462, 488 (M.D. Pa. 2015).  "Impertinent" matter consists of "statements that do not pertain, and are not necessary, to the issues in question," and "scandalous" matter is that which "casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court." Id. (*citing* Carone v. Whalen, 121 F.R.D. 231, 232 (M.D. Pa. 1988)).

Paragraphs 41, 44 and 53—63 (including Exhibit "4") of Plaintiff's Complaint are crass and neither importantly relate nor pertain to Plaintiff's quinary claims for relief; therefore, Paragraphs 41, 44 and 53—63 *incl.* (including Exhibit "4") should be stricken pursuant to Rule 12(f) as immaterial, scandalous and/or impertinent.  Defendants' prior criminal record, business ventures and the success and/or failures of same have absolutely

nothing to do with the allegations contained in Plaintiff's Complaint, are irrelevant pursuant to Federal Rule of Evidence 401, and believed to have been stated for the sole purpose of annoyance.  As such, those paragraphs should be stricken from Plaintiff's Complaint, including Exhibit "4".

## V.    **CONCLUSION**

Plaintiff's Complaint should be dismissed on the ternary grounds argued above:  (1) pursuant to Rule 12(b)(2) because this Honorable Court lacks personal jurisdiction over Defendants; or pursuant to Rule 12(b)(6) because (2) admittedly, Plaintiff cannot meet his burden establishing the wrongfulness of Defendants' statements and publications cited in his Complaint; and (3) Plaintiff has failed to establish causation and recoverable injury of each of his quinary state-law tort claims.  If this Honorable Court does not dismiss Plaintiff's Complaint on the basis of jurisdiction agrees with Defendants that the answer to the central question posed herein is "no" – that it is nigh-impossible for Plaintiff to establish that Defendants had subjective knowledge of falsity of their statements despite the wealth of information, most of it admission by Plaintiff himself – then Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6).

Respectfully Submitted,

**ROTHENBERG & CAMPBELL**

By:
Ryan P. Campbell, Esquire (PAID: 317838)
345 Wyoming Ave., Ste. 210
Scranton, PA 18503
p. 570.207.2889  ||  e.  HRLaw04@gmail.com

_/s/ Dave W. Rothenberg_

Dave W. Rothenberg, Esquire (PAID: 326483)
345 Wyoming Ave., Ste. 210
Scranton, PA 18503
p. 570.207.2889 || e. HRLaw06@gmail.com

*ATTORNEYS FOR DEFENDANTS*

Q.   *What do you love about the law, Andrew?*
A.   *I... Many things.  What do I love most about the law?*
Q.   *Yes.*
A.   **It's that every now and again, not often, but occasionally, you get to be a part of justice being done.  That really is quite a thrill when that happens.**

*PHILADELPHIA (Jonathan Demme dir. 1993) (**emphasis added**).*

Date:  April 10, 2024

**ROTHENBERG & CAMPBELL**                    *Attorneys for the Defendants*
Ryan P. Campbell, Esq. (#317838)
Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889 || Fax: 570.207.3991
E-mail:  Hrlaw04@gmail.com || Hrlaw06@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP GODLEWSKI,** | | CIVIL ACTION—LAW & EQUITY |
| | Plaintiff, | *(HON. JULIA K. MUNLEY)* |
| v. | | |
| **EDUARDO NICOLAS ALVEAR** | | |
| **GONZALEZ,** *AKA* **ALVEAR GONZALEZ** | | **JURY TRIAL DEMANDED** |
| **EDUARDO NICOLAS,** *AKA* | | |
| **NICOLAS ALVEAR; and** | | |
| **GOOD LION TV, LLC,** | | |
| | Defendants | No.: 3:24—CV—00344 |

## CERTIFICATE OF COMPLIANCE

I, Ryan P. Campbell, Esquire, on behalf of Defendants, do hereby certify that I performed a word-count on the above Brief using Microsoft® Word Version 16.83 (2024) and that the above-captioned document contains 8,458 words, excepting captions, signatory lines and Certificates of Compliance and Service, respectively.  As such, this filing complies with this Honorable Court's April 9, 2024 Order Authorizing the filing of same.

ROTHENBERG & CAMPBELL

By: _____
Ryan P. Campbell, Esquire
*ATTORNEY FOR DEFENDANTS*

Date:  April 10, 2024

**ROTHENBERG & CAMPBELL**                                     *Attorneys for the Defendants*
Ryan P. Campbell, Esq. (#317838)
Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889 || Fax: 570.207.3991
E-mail:  Hrlaw04@gmail.com || Hrlaw06@gmail.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PHILIP GODLEWSKI,** <br><br> Plaintiff, <br><br> v. <br><br> **EDUARDO NICOLAS ALVEAR GONZALEZ,** *AKA* **ALVEAR GONZALEZ EDUARDO NICOLAS,** *AKA* **NICOLAS ALVEAR; and GOOD LION TV, LLC,** <br><br> Defendants | CIVIL ACTION—LAW & EQUITY <br> *(HON. JULIA K. MUNLEY)* <br><br><br> **JURY TRIAL DEMANDED** <br><br><br> No.:  3:24—CV—00344 |

### CERTIFICATE OF SERVICE

I, Ryan P. Campbell, Esquire, on behalf of Defendants, do hereby certify that I sent a true and accurate copy of Defendants' Brief in Support of their Motion to Dismiss Plaintiff's Complaint with appended Exhibits in the above-captioned case on this **10th day of April, 2024** to the below named individuals *via* ECF and Electronic Mail addressed as follows:

> Timothy M. Kolman, Esq.
> e.  tkolman@kolmanlaw.com
> *ATTORNEYS FOR PLAINTIFF*

**ROTHENBERG & CAMPBELL**

By: _____

Ryan P. Campbell, Esquire
*ATTORNEY FOR DEFENDANTS*

Date:  April 10, 2024