**ROTHENBERG & CAMPBELL**                              *Attorneys for the Defendants*
Ryan P. Campbell, Esq. (#317838)
Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889 || Fax: 570.207.3991
E-mail:  Hrlaw04@gmail.com || Hrlaw06@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PHILIP GODLEWSKI,** <br><br> Plaintiff, <br><br> v. <br><br> **EDUARDO NICOLAS ALVEAR GONZALEZ,** *AKA* **ALVEAR GONZALEZ EDUARDO NICOLAS,** *AKA* **NICOLAS ALVEAR; and GOOD LION TV, LLC,** <br><br> Defendants | CIVIL ACTION—LAW & EQUITY <br> *(HON. JULIA K. MUNLEY)* <br><br><br> **JURY TRIAL DEMANDED** <br><br><br> No.: 3:24—CV—00344 |

## BRIEF IN OPPOSITION TO PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

**AND NOW COME** Defendants, Eduardo Nicolas Alvear Gonzalez, *aka* Alvear

Gonzalez Eduardo Nicolas, *aka* Nicolas Alvear (collectively, "Individual Defendant") and

Good Lion TV, LLC ("Corporate Defendant"), by and through their counsel, Rothenberg

& Campbell, hereby file their Brief in Opposition to Plaintiff, Philip Godlewski's Motion for

Preliminary Injunction, arguing as follows:

### I.   PRELIMINARY STATEMENT

Plaintiff's request for preliminary injunctive relief should be denied on the following

fourfold grounds:  (1) this Honorable Court lacks personal jurisdiction over Defendants; (2)

1

assuming *arguendo* jurisdiction is proper, Plaintiff is unable to establish a likelihood of success on the merits of any of his Complaint's quinary state-law tort claims nor (3) irreparable harm; and (4) assuming *arguendo* that Plaintiff can establish jurisdiction and both "Gateway Factors," the collective First Amendment constitutional rights of Defendants and the public heavily outweigh Plaintiff's allegations of harm.

Even if he establishes a likelihood of success on the merits on just one claim, Plaintiff's allegations of harm are so remote and insufficiently specific that they are tantamount to – at best – mere threats of harm toward Plaintiff and – at worst – pure speculation.  Either way, Plaintiff's allegations of harm fail to meet the Third Circuit's rigorous standard for showing irreparability, being too speculative and remote and compensable by money damages.  Finally, pretending Plaintiff has shown personal jurisdiction, likelihood of success on the merits of one (1) claim *and* irreparable harm, Defendants' constitutional rights of free speech plus those of the public interest, heavily outweigh Plaintiff's necessity for protection *via* injunctive relief.  For those reasons, and the reasons outlined more specifically below, this Honorable Court should deny Plaintiff's request for preliminary injunctive relief.

## II.  <u>COUNTERSTATEMENT OF THE CASE</u>

Defendants adopt their Operative Factual and Procedural Background section of their Motion to Dismiss and incorporate same herein pursuant to Fed. R. Civ. P. 10(c).  (<u>See</u> ECF Doc. No. 16 at ¶¶ 5—38).  On March 8, 2024, Plaintiff, through counsel, filed a document entitled "Motion for Preliminary Injunction," which consisted of a one-page paragraph incorporating an attached Brief in Support of Petitioner's [sic] Motion for a

Preliminary Injunction" ("Motion").  (See ECF Doc. No. 5 and 5-1).  In Plaintiff's Motion, he argues that he is in "imminent danger" and requests preliminary injunctive relief to prevent immediate and irreparable harm to both his person and family.  (ECF Doc. No. 5-1 at pp. 1—3, *incl.*).  In support of his Motion, Plaintiff attaches nine (9) pages evidencing ostensible threats of physical violence against him containing words like "pedophile," "pedo," and "fraud".  (See ECF Doc. No. 5-2 pp. 1—10).  Only two (2) of these documents appear to include threatening language.  One post reads: "Death Penalty for Pedophiles," and the other appears to be a text message from an unknown number with a Kentucky-based area code stating, in part and without more, "[i]f I see you again, I'm going to rearrange your face." (ECF Doc. No. 5-1 at pp. 6 & 8).

Nowhere in his Complaint or Motion does Plaintiff supplement these documents with specific information revealing: (a) the identity of any of the individuals involved in the creation of any of these documents; (b) likelihood of future harm; (c) evidence of prior harm; or (d) exactly how Defendants' publications are causally related to the perceived threats.  (See ECF Doc. Nos. 2 and 5-1, *generally*).  During the timeframe immediately preceding Plaintiff's filing of his Complaint, Plaintiff sent Individual Defendant the following three (3) messages, respectively:





**Phil Godlewski 3.0**

Honestly, and I'm not being arrogant here when I say this.

I don't know why anyone would want to fuck with me. I have enough money to keep you guys tied up in lawsuits for the rest of your miserable lives. I have enough money to make your social media life and presence obsolete.

Luckily, for you, I've been a "good boy" so far, and I haven't stooped to your disgustingly immature level. But keep pushing me.

Nick's 7-year old daughter won't be able to afford new shoes for school, and when she asks me "why are you doing this to us, Phil?", I'll point to her daddy's jail cell and simply say "ask him".

You took your best shot, Nick. Now it's time to see what my best shot looks like. I'm not pulling back any punches. You're going to see my very best, with all of the forces I have mustered over my years.

I have the wealth. I have the time. I have the investigators. I have the attorneys. I have the connections. I have technical support. I have emotional support. I have MILLIONS of Phollowers telling me to rip off your skull and piss down your skinny throat (metaphorically speaking, of course).

You wanted my attention. You got it.

Now be prepared to deal with MY best shot.

By the way, you should close that garage door. Leaving it open is a little sus 🤓

Fair and accurate depictions are attached hereto and marked as Exhibits "A," "B," and "C."

A few days after Plaintiff filed his Complaint on February 28, 2024, Plaintiff posted an approximately hour-long documentary film produced by Quantum Philms [sic] wherein Plaintiff directly addresses Defendants' documentary film referenced in both Plaintiff's Complaint. (See ECF Doc. No. 2). The film, entitled "Beyond the Noise – Truth Over Lies[1]," is available online for free and consists of Plaintiff addressing the statements and publications he alleged Defendants to have wrongfully made, ostensibly causing Plaintiff compensable and irreparable injuries. A day after Defendants filed their Motion to Dismiss Plaintiff's Complaint, Plaintiff posted a communication on social media commenting on the instant matter. A fair and accurate depiction of the post is attached hereto and marked as Exhibit "D".

### III.   STATEMENT OF ISSUES PRESENTED

**A.** WHETHER PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED AND DISMISSED BECAUSE THIS HONORABLE COURT LACKS GENERAL, SPECIFIC AND EFFECTIVE PERSONAL JURISDICTION OVER BOTH DEFENDANTS?

*SUGGESTED ANSWER: IN THE AFFIRMATIVE*

**B.** ASSUMING *ARGUENDO* THAT JURISDICTION IS PROPER, WHETHER PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF SHOULD BE DENIED FOR HIS FAILURE TO ESTABLISH IRREPARABLE HARM WHEN PLAINTIFF'S ALLEGATIONS OF HARM ARE TOO REMOTE, TOO SPECULATIVE AND COMPENSABLE BY MONETARY DAMAGES?

*SUGGESTED ANSWER: IN THE AFFIRMATIVE.*

---

[1] https://quantumphilms.philgodlewski.live/?fbclid=IwAR1Lhl0XcRB6hCSt6V3znyy8RucS9UEb1X0-kc1TR2LZgGf9G6YibxxMDjw_aem_AeBDqWAJiX6DGsJXkYoe10tpXFPq0DbQ8hk1UvMxKHwrmhEWjj6AWQRt7bSNk8gKglrvk4letsRAIq0-CWltnjDa

C. ASSUMING *ARGUENDO* THAT PLAINTIFF'S HARM IS IRREPARABLE, WHETHER PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF SHOULD BE DENIED FOR HIS FAILURES TO ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS OF ANY OF HIS FIVE STATE-LAW TORT CLAIMS AS ALL ALLEGATIONS OF TORTIOUS CONDUCT WERE PRIVILEGED, NOT CAUSALLY RELATED TO PLAINTIFF'S ALLEGED HARM, AND/OR OTHERWISE LEGALLY INSUFFICIENT?

*SUGGESTED ANSWER: IN THE AFFIRMATIVE.*

D. ASSUMING *ARGUENDO* THAT PLAINTIFF HAS ESTABLISHED PERSONAL JURISDICTION AND THE "GATEWAY FACTORS" TO INJUNCTIVE RELIEF, WHETHER PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF SHOULD BE DENIED BECAUSE THE COLLECTIVE CONSTITUTIONAL RIGHTS OF BOTH DEFENDANTS AND THE PUBLIC HEAVILY OUTWEIGH PLAINTIFF'S ALLEGATIONS OF HARM, WHICH ARE MATTERS OF PUBLIC RECORD AND READILY ACCESSIBLE TO INTERESTED INDIVIDUALS?

*SUGGESTED ANSWER: IN THE AFFIRMATIVE*

## IV.   ARGUMENT

Regarding their arguments that this Honorable Court lacks personal jurisdiction and Plaintiff is unable to establish a likelihood of success on the merits of his quinary state-law tort claims, Defendants adopt and incorporate their Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil procedure 10(c).  (See ECF Doc. No. 16—16-15, *incl.*).

Currently, there are at least three (3) active lawsuits initiated by Plaintiff.  (See ECF Doc. No. 16, *generally*).  On the other side of each of those lawsuits are different groups of defendants.  All three (3) defendant-groups tell the same story: (1) Plaintiff engaged in sexual relations with a minor (and, admittedly, again[2] when she became of age); (2) Plaintiff

---

[2] Plaintiff pleaded guilty to corruption of minors.  (See ECF Doc. No. 16-4).

is a fraud[3]; and (3) Plaintiff earned his popularity and wealth by exploiting both the truth[4] and those[5] that believed in him.   One defendant wrote an editorial, spurring the discovery of hundreds of pages of documents.  Another shares that story – one involving Plaintiff having sex with her when she was just fifteen (15) years old – by attaching a transcript of text messages purportedly exchanged between her and Plaintiff at that time.  (See ECF Doc. No. 16-9 and 16-10).  Defendants in this case reviewed all of that and made a documentary film, spurring the instant lawsuit.  (See ECF Doc. No. 16-7 and 16-8).

Plaintiff filed his Complaint on February 28, 2024 and Individual Defendant was served *via* paid process server on March 5, 2024.  Exactly twenty-one (21) days later – March 26, 2024 – Plaintiff's counsel filed a document entitled "Motion for Default Judgment."  Plaintiff's Complaint contains over a dozen paragraphs dedicated to attacking Defendants' reputation and was filed in a state with which Defendants have had little business contacts and absolutely no physical contact.  (See ECF Doc. No. 2 at ¶¶ 41, 44, 53—63).  A week after filing, Plaintiff published his own documentary film prosecuting his case and continues to publicly speak about all three (3) civil lawsuits by posting his own thoughts and legal commentary.  (See Exh. "D").

---

[3] Plaintiff pleaded guilty to *crimen falsi* crimes of perjury, tampering with documents and writing bad checks.  (See ECF Doc. No. 16-5 and 16-6).  *Crimen falsi* is a crime (as perjury or fraud) involving deceit or falsification. Merriam-Webster Dictionary.  (2024)
[4] (See ECF Doc. No. 16 at ¶ 18 ftn. 3).
[5] (See ECF Doc. No. 16 at ¶ 19 ftn. 4).

While these facts bear little on the Motion before the Court, this wider shot poses an important question to the court regarding credibility:  Is Plaintiff an innocent, private citizen who, because of his controversial views, had his reputation wrongfully injured by Defendants' baseless lies?  Or, is Plaintiff a gaslighting[6] fraud who, after losing his professional license by betraying his clients' trust, engaged in a global campaign disseminating misinformation, assembling a large enough audience from which to profit and later sell out, peddling them pyramidal schemes that evaporated folks' respective lifetime investments, all after betraying his marital vows by having sex with a young woman both *before* and *after* she was old enough to bed and then betraying her by denying it ever happened?  While admittedly flippant, this distinction is important:  the single word Plaintiff claims as defamatory from the previous sentence is "*before*."  Defendants argue that this "wider shot" negatively affects Plaintiff's credibility and questions his alleged damages and the real reason the lawsuit was brought.

## A.  LEGAL & EQUITABLE STANDARD

A motion seeking relief in the form of a preliminary injunction is an "extraordinary remedy" and "should be granted only in limited circumstances."  Kos Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (*quoting* American Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994)). Procedurally,

---

[6] "Gaslighting" is an insidious form of manipulation and psychological control where proponents deliberately and systematically feed false information to others to lead victims to question what they know to be true, often about themselves.  Gaslighting involves repetitively (and often brazenly) lying to someone to manipulate, and ultimately control, the victim and the relationship, falling into four (4) types: outright lying, manipulation of reality, scapegoating and coercion.

injunctive relief is governed by Federal Rule of Civil Procedure 65.  Substantially, caselaw mandates that a United States District Court consider all four (4) of the following factors when considering such a motion:

> (1) The likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest.

Siemens USA Holdings Inc. v. Geisenberger, 17 F.4th 393, 407 (3d Cir. 2021) (*quoting* Shire US Inc. v. Barr Labs, Inc., 329 F.3d 348, 352 (3d Cir. 2003)).  The district court – in its sound discretion – should balance those four factors so long as the party seeking the injunction meets the threshold on the first two.  Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017).

In Reilly v. City of Harrisburg, the Third Circuit reconciled a perceived precedential inconsistency in the Court's line of cases, clarifying a movant's burden for establishing preliminary injunctive relief by summarizing:

> Accordingly, we follow our precedent that a movant for preliminary equitable relief must meet the threshold for the first two "most critical" factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief.  If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.  In assessing these factors, Judge Easterbrook's observation bears repeating: "How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief."

858 F.3d at 177-79 (*internal quotations and footnotes omitted*); <u>Brooks v. State College Area School District</u>, 643 F.Supp.3d 499, 504-05 (M.D. Pa. 2022).  Put differently, the movant must establish the first two (2) "Gateway Factors" before the district court may consider the third and fourth factors: the potential for harm to others if relief is granted, and whether the public interest favors injunctive relief.  <u>Id</u>. at 176, 179.  When balancing all four factors, the district court, in its discretion, must determine whether the circumstances favor injunctive relief.  <u>Id</u>. at 179.

Using this standard, a movant must show a "significantly better than negligible," but not necessarily preponderant, likelihood of success on the merits of an underlying claim to successfully establish the first factor.  <u>Id</u>. 858 F.3d at 179 ftn. 3.  Regarding the second factor, irreparable harm, the law is clear in the Third Circuit: "[i]n order to demonstrate irreparable harm the plaintiff must demonstrate ***potential harm which cannot be redressed by a legal or an equitable remedy following a trial***.  The preliminary injunction must be the only way of protecting the plaintiff from harm."  <u>Siemens USA Holdings Inc.</u>, 17 F.4th at 408 (*quoting* <u>Campbell Soup Co. v. ConAgra, Inc.</u>, 977 F.2d 86, 91 (3d Cir. 1992)).  Additionally, "[t]he 'requisite feared injury or harm must be irreparable – not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'"  <u>Id</u>. (*quoting* <u>Campbell Soup Co.</u>, 977 F.2d at 91-92).  Put differently, "the availability of money damages for an injury typically will preclude a finding of irreparable harm."  <u>Reilly</u>, 858 F.3d at n.4.  The movant for preliminary injunction must

show that he is more likely than not to suffer irreparable harm absent his requested relief. Id. at 179.

> **B.  This Honorable Court Must Deny and Dismiss Plaintiff's Request for Preliminary Injunctive Relief Because it Lacks General, Specific and Effective Jurisdiction over Defendants.**

Defendants adopt their arguments contained in their Motion to Dismiss Plaintiff's Complaint and Brief in Support thereof, as if more fully set forth at length herein in support of their arguments for lack of personal jurisdiction over Defendants.  (See ECF Doc. Nos. 16 & 19, *respectively*).

> **C.  Assuming *Arguendo* that Personal Jurisdiction over Defendants Exists, Plaintiff's Request for Preliminary Injunctive Relief Must be Denied Because He Fails to Establish Irreparable Harm by a Preponderance of the Evidence.**

Plaintiff argues that he has presented specific facts that "satisfy the standard for a preliminary injunction." (ECF Doc. 5-1 at p.1).  Specifically, Plaintiff alleges he received several threats of imminent danger against him, ostensibly made by third parties.  Plaintiff argues that these threats were caused by Defendants' publications and insists he is in "imminent danger"[7].  In support of his allegations, Plaintiff attaches nine (9) pages portraying eight (8) different writings from seven (7) unidentified sources across more than three (3) states.  (See ECF 5-2 pp. 1—10).  Without more, Plaintiff's evidence is wholly insufficient to show, more likely than not, immediate and irreparable harm that cannot be

---

[7] "Imminent danger," the term employed by Plaintiff-Petitioner in his five-page Brief in Support, is not associated with any of the factors Federal district courts must consider when ruling on motions for preliminary injunctive relief.  Plaintiff-Petitioner seems to conflate "imminent danger," as defined in the Prison Litigation Reform Act ("PLRA"), 110 Stat. 1321 (1996), and related caselaw with "irreparable harm," as it appears in Fed. R.C.P. 65, and defined *supra*.

compensated by monetary damages.  Rather, Plaintiff's evidence of harm is too speculative, remote and uncertain to establish the immediate nature of irreparability sufficient for injunctive relief.  Moreover, Plaintiff's public persona and comments made about this case greatly diminish his own right to privacy and corresponding need for this Honorable Court's equitable protection from others *via* injunctive relief.

To establish irreparable harm, the Plaintiffs must demonstrate harm that "cannot be redressed by a legal or an equitable remedy following trial." Acierno v. New Castle Cnty., 40 F.3d 645, 653 (3d Cir. 1994). "More than a risk of irreparable harm must be demonstrated." Id. at 655.  Indeed, "[i]ssuing a preliminary injunction based only on a *possibility* of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a *clear showing that the plaintiff is entitled to such relief*." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22, (U.S. 2008) (*emphasis added*).

For almost forty (40) years, the Third Circuit has held that the mere threat or possibility of harm is insufficient to show immediacy; the movant must show that "[t]he preliminary injunction [is] the *only way of protecting the plaintiff from harm*." Better Days Ahead Outreach, Inc. v Borough of Pottstown, 2023 WL 8237255 at *8 (E.D. Pa. 2023) (*quoting* Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989)) (*emphasis added*).  Additionally, "the risk of irreparable harm must not be speculative" and must be based on concrete evidence, not "on the basis of 'bald and conclusory' statements." Cornette v. Graver, 473 F.Supp. 3d 437, 476 (W.D. Pa. 2020) (internal quotations omitted). Furthermore, offending words, insults, "obscene gestures and language," and "foul gossip"

are insufficient to establish a "clear showing of immediate irreparable injury." Boyd v. Larson, 2017 WL 1904278, at *5 (M.D. Pa. 2017) (quoting Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 359 (3d Cir. 1980)).

Plaintiff's Complaint and Motion contain no specific allegations of physical harm associated with Plaintiff's publications. (See ECF 1 & 5-1, generally). Both documents are silent as to evidence of actual harm; Plaintiff fails to cite one specific example of physical harm or injury, let alone one causally linked[8] to Defendants' conduct which exists among thousands of posts derived from dozens of national and international articles revealing Plaintiff's criminal past. This absence of a particularized, articulated injury causally related to Defendants' conduct is tantamount to a mere "possibility of a remote future injury," dooming his request for injunctive relief. Acierno, 40 F.3d at 653; see also Oberheim v. Bason, 565 F.Supp.3d 603, 622 (M.D. Pa. 2021); Cornette, 473 F.Supp. at 476 (holding while damage to a plaintiff's reputation may be the basis for irreparable harm, plaintiff must support said damage by concrete evidence and not "bald and conclusory" statements). The language cited as evidence of irreparable harm constitute mere insults, insufficient for the grant of injunctive relief. See also Calipo v. Wolf, 2018 WL 7412835, at *4 (M.D. Pa. 2018) (holding injunctive relief based on isolated insults, threats and harsh words is plainly unwarranted); Boyd, 2017 WL 1904278, at *5; Hendricks v. Hazzard, 2013 WL 2635729, at *5 (S.D. Oh. 2013) (finding that allegations of ongoing general harassment and threats,

---

[8] As more fully set forth in Defendants' Motion to Dismiss, the instant matter is just the latest of three (3) civil lawsuits filed by Plaintiff in the past three (3) years. The Times-Tribune Lawsuit involved the article that first revealed Plaintiff's prior criminal history on the national stage, spurring the dozens of other national and international articles addressing Plaintiff's criminal record. (See ECF Doc. No. 16—16-15).

13

including specific threats of physical harm, were insufficient to demonstrate irreparable injury).

Of course, credible threats of physical violence are alarming.  This is especially true of private citizens who have not spoken publicly about political or cultural issues.  This class of private citizens – and their right to privacy – deserves the highest protection from unwarranted threats and intimidating language.  But that protection and expectation of privacy becomes diminished when citizens regularly and openly engage the public on discursive platforms such as television, radio or social media to discuss popular political, social, economic and/or cultural issues.  This is especially true for those citizens who engage in some of the more crass and increasingly inflammatory political speech.  Therefore, his expectation of privacy and protection from the same inciteful and often volatile language Plaintiff utilizes becomes greatly diminished.[9]

Stated differently, the documents attached to Plaintiff's Motion might appear more alarming if Plaintiff never took advantage of social media as his bully pulpit.  This is another fact Plaintiff ignores; he is not some "innocent bystander," forced unwillingly into the public eye, shackled hand-to-foot.  He gladly exploited social media as his public forum when he was raking in over a million dollars in advertising revenue by spreading conspiracy theories to the masses.  See Hartleib, 665 F.Supp.3d at 667; Franklin Prescriptions, Inc., v. The New York Times Co., 267 F.Supp.2d 425, 436 (E.D. Pa. 2003) (quoting Steaks

---

[9] See Weiser Law Firm, P.C. v. Hartleib, 665 F.Supp.3d 647, 666—68 (E.D. Pa. 2023) (explaining how a defamation plaintiff who voluntarily injects himself into a [public] controversy assumes the risk and consequent fairness of public figure or limited public figure status).

Unlimited, Inc. v. Deaner, 623 F.2d 264, 273 (3d Cir. 1980)) ("[P]ublic figures effectively have assumed the risk of potential unfair criticism by entering into the public arena and engaging the public's attention.")  Far from being upset by some thrown tomatoes, Plaintiff instead capitalizes on these confrontations to attract and retain viewership.

By having both profited from and engaged in the mass distribution of propagandized misinformation to hundreds of thousands of viewers, Plaintiff aggressively responds to his opposition, whose online anonymity belies both the seriousness of its language and the likelihood of its threats being fulfilled.  Plaintiff, a self-described public figure on a holy mission[10], should expect to receive a certain level of criticism, especially from the largely anonymous online community wherein he operates; but Plaintiff amplifies that critical attention through his aggressive and often insulting responses, attacking and threatening those he deems guilty of unfair disparagement for spectacle.  As a result, Plaintiff's followers usually fall into one of two categories: devoutly engaged or aggressively confrontational.

Defendants fall into the latter category, having been at first critical of Plaintiff and then, upon discovery of Plaintiff's criminal history of fraud, perjury and sexual corruption of minors, castigatory and invective[11].  Plaintiff expects this reaction and, Defendants argue, exploits it to his advantage.  Likely, most of Plaintiff's followers tuning in to his regular posts do so anticipating Plaintiff's reaction to the "most recent drama."  Having not disclosed any QAnon "intel" to his followers in quite some time, Plaintiff's recent postings consist of his

---

[10] Plaintiff claims that "God" has "rewarded" him for his work spreading important "intel" to the QAnon community and that his newfound wealth, popularity and fame is both wholly, and holily, deserved.  (See ECF Doc. 16 at ¶ 19, ftn. 4).

[11] Former President Donald Trump's continued influence on Plaintiff and his followers is relevant here to the extent that the ex-president engages in a substantially similar rhetorical methodology.

musings on current events and his own lawsuits.  (See Exh. "D," *generally*).   Effectively, Plaintiff's online persona has become a reality television show, devolving from holy "Truther" to contestant on "the Apprentice®," an attention Plaintiff must sustain to keep attractive.  If that is true, as Defendants argue, then Plaintiff's allegations of irreparable harm appear less like viable threats of violence and more like the "cost of doing business." Plaintiff knows this and continues to double-down.

In response to Defendants' publications, Plaintiff lashed back, publishing dozens of posts commenting on them and attacking Defendant's credibility.  The week after filing his Complaint, Plaintiff released ***his very own documentary film*** responding to Defendants' film, complimenting Defendants' filmmaking skills while individually defending his theory of the case, even inviting his former criminal defense attorney to opine on the matter.  The day after Defendants filed their Motion to Dismiss, Plaintiff authored a post on social media summarizing the filing and providing legal commentary.  (See Exh. "D").   Plaintiff has no problem speaking about his lawsuits on social media, which invite ***even more*** commentary and reactions.  In addition to his willingness to speak publicly about this lawsuit, Plaintiff's personal threats to Defendant and his daughter also greatly diminish his arguments for irreparability.  Plaintiff's messages to Defendant revealing his knowledge of Defendant's home address and questioning Defendant's safety and the safety of his daughter do not read as someone fearing "imminent danger".  (See Exhs. "A," "B," and "C," *respectively*).

Rather, zooming out for the wider viewpoint, Plaintiff cannot articulate to this Court exactly how any of Defendants statements and/or publications directly caused the threatening language alleged in his Motion or even how any of that language is more than

mere speculation of harm.  Importantly, Plaintiff's evidence cited as "irreparable" and "imminent" harm are un-dated and un-identified, allegedly occurring within the past four (4) years during a timeframe where Plaintiff commenced two (2) other lawsuits, inadvertently making public his entire criminal record spurring the publication of dozens of articles citing his criminal history which were then copied and re-posted thousands of times across the internet.  Amidst that hurricane of information and without any identification information related to these "threats," Plaintiff cannot show that it was Defendants' publications that, more likely than not, caused the threatening language.  Plaintiff's evidence in support of his Motion lacks immediacy, is too speculative and remote and therefore insufficient to show irreparable harm.  Even assuming *arguendo* that Defendants' statements were defamatory and caused the threats cited by Plaintiff, without more, his harm is compensable by monetary damages and cannot be "irreparable".  As such, Plaintiff's request for preliminary injunctive relief should be denied.

> **D.** ASSUMING *ARGUENDO* THAT PLAINTIFF HAS ESTABLISHED PERSONAL JURISDICTION AND IRREPARABLE HARM, PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF SHOULD BE DENIED FOR FAILURE TO ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS OF ANY OF HIS FIVE (5) STATE-LAW TORT CLAIMS.

For purposes of this Brief, Plaintiff cannot establish a likelihood of success on the merits.  Defendants adopt and incorporate their arguments contained in Defendants' Motion to Dismiss and Brief in Support thereof as if more fully set forth at length herein. (See ECF Doc. Nos. 16 and 19, *respectively*).

E. ASSUMING *ARGUENDO* THAT PLAINTIFF HAS ESTABLISHED BOTH PERSONAL JURISDICTION AND THE "GATEWAY FACTORS," THE COLLECTIVE CONSTITUTIONAL RIGHTS OF DEFENDANTS AND THE PUBLIC INTEREST HEAVILY OUTWEIGH PLAINTIFF'S ALLEGATIONS OF HARM, RENDERING DISMISSAL BY THIS HONORABLE COURT APPROPRIATE.

Assuming *arguendo* that Plaintiff has established both personal jurisdiction and the "Gateway Factors," the collective constitutional rights of Defendants and the public interest heavily outweigh Plaintiff's allegations of harm. In balancing the equities, as a factor bearing on the propriety of a preliminary injunction, the court is guided by the principle that if the harm is severe enough, even a weak claim can support an injunction; conversely, a strong enough claim can support an injunction that will not prevent a great deal of harm. Cornett, 473 F.Supp.3d at 477 (*citing* Reilly, 858 F.3d at 179). If, after the balancing of the equities, the injunction would be of limited value, the injunction should not issue. Id. (denying professional wrestling commentator's motion for preliminary injunction to ban defendant professional wrestler's advertising merchandise as disparaging and confusing finding that granting the injunction was not in the public interest and violated First Amendment freedom of speech).

Protecting First Amendment rights unquestionably serves the public interest. Id. at 478 (*citing* McCahon v. Pa. Tpk. Comm'n, 491 F.Supp.2d 522, 528 (M.D. Pa. 2007)). First Amendment law protects Defendants' past speech as well as intended speech under the Daily Mail test. See Smith v. Daily Mail Publishing Co., 443 U.S. 97 (U.S. 1979). Specifically, if one "lawfully obtains truthful information about a matter of public significance[,] then state officials may not constitutionally punish publication of the

information, absent a need to further a state interest of the highest order." <u>Daily Mail</u>, 443

U.S. at 103.  The <u>Daily Mail</u> test applies even when a content-neutral state law seeks to

punish a publisher who is not part of the press.  <u>Schrader v. District Attorney of York Cnty</u>.,

74 F.4th 120 (3d Cir. 2023) (Third Circuit granting plaintiff's request for injunctive relief

against DA who threatened prosecution for threatened publication of lawfully obtained

Children & Youth records in service of public); <u>see</u> <u>also</u> <u>Bartnicki v. Vopper</u>, 532 U.S. 514,

526-28 (U.S. 2001).  Furthermore, a citizen's right to publicity is protected.  <u>Cornett</u>, 473

F.Supp.3d at 473 (*citing* <u>Hart v. Electronic Arts, Inc</u>., 717 F.3d 141, 149 (3d Cir. 2013)).

     In the instant matter, the collective First Amendment rights of Defendants

(including their freedoms of expression and publicity) as well as the public heavily

outweigh Plaintiff's interest in protection from the harm he alleges.  Plaintiff's criminal

history has been a matter of national and international attention since 2022 such that

thousands of individuals around the world have been invited to comment on it.  Granting

Plaintiff's request for injunctive relief would cause actual loss of First Amendment freedoms

to Defendants, which unquestionably constitutes irreparable injury.  <u>Satanic Temple, Inc. v.</u>

<u>Saucon Valley School Dist</u>., 671 F.Supp.3d 555, 579 (E.D. Pa. 2023) (*citing* <u>AT&T v.</u>

<u>Winback & Conserve Program</u>, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994)).  As protection of

First Amendment rights unquestionably serves the public interest, the balance of equities

weighs heavily in favor of Defendants and the public interest and heavily against Plaintiff's

interests in protection *via* injunctive relief.  <u>See</u> <u>Cornett</u>, 473 F.Supp.3d at 477; <u>see also</u>,

<u>American Freedom Defense Initiative v. Southeastern Pennsylvania Transp. Auth</u>., 92

F.Supp3d 314 (E.D. Pa. 2015).

19

V.     **CONCLUSION**

Defendants respectfully argue that Plaintiff's request for preliminary injunctive relief be denied on the fourfold grounds argued above: (1) this Honorable Court lacks personal jurisdiction over Defendants; (2) assuming *arguendo* jurisdiction is proper, Plaintiff is unable to establish a likelihood of success on the merits of any of his Complaint's quinary state-law tort claims nor (3) irreparable harm; and (4) assuming *arguendo* that Plaintiff can establish jurisdiction and both "Gateway Factors," the collective constitutional rights of Defendants and the public heavily outweigh Plaintiff's allegations of harm.  Even assuming Plaintiff can establish personal jurisdiction and a likelihood of success on the merits of just one tort-law claim, Plaintiff's allegations of irreparable harm lack immediacy and are far too remote and speculative, consisting of mere "bald and conclusory" statements and therefore wholly insufficient to show irreparability.

Further diminishing Plaintiff's allegations of irreparable harm are his own actions, commenting on his civil lawsuits in real time, including this one, and threatening Individual Defendant and his young daughter.  Finally, the balance of the equities in this case weight heavily against granting Plaintiff's request for injunctive relief as an unconstitutional restriction of Defendants' and the public's collective First Amendment rights.  For those reasons, Plaintiff's Motion for Preliminary Injunction should be denied.

Respectfully Submitted,

**ROTHENBERG & CAMPBELL**

By: _____

Ryan P. Campbell, Esquire (PAID: 317838)
345 Wyoming Ave., Ste. 210
Scranton, PA 18503
p. 570.207.2889 **||** e.  HRLaw04@gmail.com

&

Dave W. Rothenberg, Esquire (PAID: 326483)
345 Wyoming Ave., Ste. 210
Scranton, PA 18503
p. 570.207.2889 **||** e.  HRLaw06@gmail.com

*ATTORNEYS FOR DEFENDANTS*

*Q.*  *What do you love about the law, Andrew?*
*A.*  *I... Many things.  What do I love most about the law?*
*Q.*  *Yes.*
*A.*  ***It's that every now and again, not often, but occasionally, you get to be a part of justice being done.  That really is quite a thrill when that happens.***

*PHILADELPHIA (Jonathan Demme dir. 1993) (**emphasis added**).*

Date:  April 10, 2024

**ROTHENBERG & CAMPBELL**                    *Attorneys for the Defendants*
Ryan P. Campbell, Esq. (#317838)
Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889 || Fax: 570.207.3991
E-mail:  Hrlaw04@gmail.com || Hrlaw06@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PHILIP GODLEWSKI,** <br><br> Plaintiff, <br><br> v. <br><br> **EDUARDO NICOLAS ALVEAR GONZALEZ**, *AKA* **ALVEAR GONZALEZ EDUARDO NICOLAS,** *AKA* **NICOLAS ALVEAR; and GOOD LION TV, LLC,** <br><br> Defendants | CIVIL ACTION—LAW & EQUITY <br> *(HON. JULIA K. MUNLEY)* <br><br> **JURY TRIAL DEMANDED** <br><br> No.:  3:24—CV—00344 |

## CERTIFICATE OF COMPLIANCE

I, Ryan P. Campbell, Esquire, on behalf of Defendants, do hereby certify that I performed a word-count on the above Brief using Microsoft® Word Version 16.83 (2024) and that the above-captioned document contains 4,997 words, excepting captions, signatory lines and Certificates of Compliance and Service, respectively.  As such, this filing complies with Local Rule 7.8 regarding Contents and Length of Briefs.

**ROTHENBERG & CAMPBELL**

By: _____
Ryan P. Campbell, Esquire
*ATTORNEY FOR DEFENDANTS*

Date:  April 10, 2024

**ROTHENBERG & CAMPBELL**                    *Attorneys for the Defendants*
Ryan P. Campbell, Esq. (#317838)
Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889 || Fax: 570.207.3991
E-mail:  Hrlaw04@gmail.com || Hrlaw06@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP GODLEWSKI,** | | **CIVIL ACTION—LAW & EQUITY** |
| | Plaintiff, | *(HON. JULIA K. MUNLEY)* |
| v. | | |
| **EDUARDO NICOLAS ALVEAR** | | |
| **GONZALEZ,** *AKA* **ALVEAR GONZALEZ** | | **JURY TRIAL DEMANDED** |
| **EDUARDO NICOLAS,** *AKA* | | |
| **NICOLAS ALVEAR; and** | | |
| **GOOD LION TV, LLC,** | | |
| | Defendants | No.:  3:24—CV—00344 |

## CERTIFICATE OF SERVICE

I, Ryan P. Campbell, Esquire, on behalf of Defendants, do hereby certify that I sent a true and accurate copy of Defendants' Response and Brief in Opposition in the above-captioned case on this **10th day of April, 2024** to the below named individuals by ECF and Electronic Mail addressed as follows:

> Timothy M. Kolman, Esq.
> e.  tkolman@kolmanlaw.com
> *ATTORNEYS FOR PLAINTIFF*

**ROTHENBERG & CAMPBELL**

By: _____
     Ryan P. Campbell, Esquire
     *ATTORNEY FOR DEFENDANTS*

Date:  April 10, 2024