## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP GODLEWSKI** | : | |
| | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | NO. 3:24-cv-00344 |
| vs. | : | |
| | : | |
| **EDUARDO NICOLAS ALVEAR** | : | JURY TRIAL DEMANDED |
| **GONZALEZ** | : | |
| **AKA,** | : | |
| **ALVEAR GONZALEZ EDUARDO** | : | |
| **NICOLAS;** | : | |
| **AKA,** | : | |
| **NICOLAS ALVEAR** | : | |
| | : | |
| And, | : | |
| | : | |
| **GOOD LION TV, L.L.C.** | : | |
| | : | |
| *Defendants.* | : | |

## FIRST AMENDED COMPLAINT

Plaintiff, Philip Godlewski (hereinafter referred to as "Plaintiff" and/or "Godlewski"), by and through his undersigned counsel, Kolman Law P.C., hereby files this First Amended Complaint and in support thereof, avers as follows:

### I.   PRELIMINARY STATEMENT

1. This instant action arises from the Defendants' continued defamatory, malicious publications and verbal declarations via social media concerning Mr. Godlewski.

2. Beginning on or around December 24, 2023, and continuing to the present day, Defendants have asserted as true, false, defamatory, and malicious information about Plaintiff via social media platforms, which include but are not limited to Rumble, Telegram, and X (formally known as Twitter).

3.  Specifically, Defendants have and continue to assert that Plaintiff is a convicted pedophile, a fraud, a sexual groomer of minors and that he had a sexual relationship with a girl when she was only fifteen (15) years old and he was twenty-five (25) years old.

4.  Despite these unfounded and untrue allegations, the Defendants have and continue to assert them as truth by publishing countless posts and videos on social media platforms.

5.  Defendants, with help from other "supporters," compiled this untrue and unfounded information concerning Plaintiff and, on or about February 9, 2024, released a ''documentary'' titled "The Greatest Fraud on Earth – The Phil Godlewski Story."

6.  Defendants advertised their ''documentary'' on at least three (3) different highway billboards in Pennsylvania, on a mobile billboard that drove around the Scranton area, on an airplane that flew a banner over the Scranton area, in digital advertisements at the Scranton Airport and they distributed flyers in and around Scranton, and advertised the ''documentary'' on Scranton radio station, Froggy 101.

7.  Defendants' relentless smear campaign of libel continues daily on all media fronts, causing irreparable harm to Plaintiff's reputation, impugning his credibility, causing him and his family severe emotional distress, putting him and his family in imminent danger of physical harm and adversely affecting his employment.

**II.    PARTIES**

8.  Mr. Godlewski is a private citizen, an adult individual, and a citizen of the Commonwealth of Pennsylvania residing at 1235 Lantern Hill Road, Shavertown, Pennsylvania, Luzerne County. For the purposes of this complaint, Mr. Godlewski is a public figure by virtue of his large social media following.

9.  Defendant Eduardo Nicolas Alvear Gonzalez, aka Alvear Gonzalez Eduardo Nicolas Alvear, aka Nicolas Alvear (hereinafter referred to as "Alvear"), is a private individual and a citizen of Tennessee who, upon information and belief, resides at 905 Clay Street, Apt 308, Nashville, Tennessee 37208, and is also the owner and/or Chief Executive Officer of Good Lion TV, L.L.C.

10. Defendant Good Lion TV, L.L.C. (hereinafter referred to as "Good Lion") is a Limited Liability Corporation incorporated in Wyoming on January 17, 2022, with Company Number 2022-001070783. Its Registered Agent is Cloud Peak Law, L.L.C., whose primary address is 1095 Sugar View Drive, Suite 500, Sheridan, Wyoming 82801.

## III.    JURISDICTION AND VENUE

11. This Court properly maintains personal jurisdiction over Defendants because Defendants' contacts with the Commonwealth of Pennsylvania, and this judicial district in particular, are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, which satisfy the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny. More specifically, Defendants have engaged in conduct contacting the Commonwealth of Pennsylvania as follows:

   a. Defendants have maintained web content that was explicitly directed at Plaintiff, a resident of Pennsylvania, and which related to events occurring within the Commonwealth of Pennsylvania;

   b. Defendants have specifically promoted their web content within the Commonwealth of Pennsylvania by placing billboard ads along Pennsylvania interstates for purposes including, but not limited to, promoting their

'documentary', humiliation of Plaintiff, and aiming at Pennsylvanians as their target audience for their web content. True and correct copies of photographs depicting Defendants' billboards have been attached and incorporated hereto as Exhibit "A";

c.   Defendants have specifically promoted their web content within the Commonwealth of Pennsylvania by purchasing electronic billboard space at Wilkes-Barre Scranton International Airport for purposes including, but not limited to, promoting their 'documentary', humiliation of Plaintiff, and aiming at Pennsylvanians as their target audience for their web content. A true and correct photo of the airport billboards has been attached and incorporated hereto as Exhibit "B";

d.   Defendants have specifically promoted their web content within the Commonwealth of Pennsylvania by purchasing and distributing flyers within the Commonwealth for purposes including, but not limited to, promoting their 'documentary', humiliation of Plaintiff, and aiming at Pennsylvanians as their target audience for their web content. A true and correct photo of the flyers has been attached and incorporated hereto as Exhibit "C";

e.   Defendants have specifically promoted their web content within the Commonwealth of Pennsylvania by hiring an airplane to fly over the Scranton area with a banner for purposes including, but not limited to, promoting their 'documentary', humiliation of Plaintiff, and aiming at Pennsylvanians as their target audience for their web content. A true and correct photo of the airplane banner has been attached and incorporated hereto as Exhibit "D";

    f.  Defendants have specifically promoted their web content within the Commonwealth of Pennsylvania by hiring a mobile billboard company to drive around the Scranton area for purposes including, but not limited to, promoting their 'documentary', humiliation of Plaintiff, and aiming at Pennsylvanians as their target audience for their web content. A true and correct photo of the mobile billboard has been attached and incorporated hereto as Exhibit "E" and

    g.  Defendants have specifically promoted their web content within the Commonwealth of Pennsylvania by purchasing "…30 spots across 3 stations over 2 weeks", radio advertisements for purposes including, but not limited to, promoting their 'documentary', humiliation of Plaintiff, and aiming at Pennsylvanians as their target audience for their web content. A true and correct copy of Defendants' social media posts relating to their radio advertising has been attached and incorporated hereto as Exhibit "F."

12. Venue is properly laid in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

13. The United States District Court for the Middle District of Pennsylvania may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1332 because this is a civil action where the matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars($75,000.00), exclusive of interest and cost, and is between citizens of different states.

14. This Court has supplemental jurisdiction over state and common law claims pursuant to

28 U.S.C. § 1367.

## IV.    **FACTUAL BACKGROUND**

### A.  **Mr. Godlewski's Lawsuit Against the Scranton Times**

15. On or about May 24, 2021, Mr. Godlewski filed a defamation lawsuit against the Scranton Times and Chris Kelly in the Lackawanna County Court of Common Pleas. A true and correct copy of the Complaint is attached and incorporated hereto as Exhibit "G."

16. Specifically, Chris Kelly (hereinafter referred to as "Kelly") wrote an article that was published in the Scranton Times (hereinafter referred to as ST), which accused Mr. Godlewski of having a sexual relationship with a fifteen (15)-year-old, pursuant to a criminal matter that occurred in 2011.

17. The Defendants in that case wrote and published false statements, including but not limited to Mr. Godlewski having a sexual relationship with a minor, and implied that Mr. Godlewski was convicted of statutory rape.

18. The allegations asserted and so published were false and unfounded since Mr. Godlewski was never convicted of having a sexual relationship with a minor.

19. If Kelly and ST had done their professional due diligence as journalists and conducted a thorough investigation, they would have obtained the readily and publicly available information discrediting this assertion.

20. Defendants in this instant action have extracted portions of the litigation record involving Kelly and ST, including but not limited to the production of documents, deposition testimony, and other materials mostly not publicly available, and misconstrued selected

portions to create the false impression and narrative that Plaintiff engaged in sex with a minor.

**B. Defendants' Defamatory Statements Against Mr. Godlewski.**

21. Despite Plaintiff's innocence and continued efforts to clear his name, Defendants disregarded the ST case record and created a torrent of defamatory publications.

22. In so doing, Defendants have initiated a campaign across numerous social media outlets, wherein Defendant Alvear refers to Plaintiff as, among countless other names, a 'Pedo,' Pedophile, fraudster, grifter, criminal, and convicted pedophile.

23. Defendant Alvear has and continues to appear on numerous podcasts featured on Rumble, which were subsequently shared on other platforms. In these podcasts, he attempts to "educate" his followers by analyzing the pleadings and respective supporting documents in the case involving Kelly and ST.

24. Defendant Alvear is neither a legal professional nor an attorney.

25. Despite lacking legal training, Defendant Alvear still represents that the "evidence" from the Scranton Times case makes it "*very evident what Phil's past is.*"

26. While the First Amendment protects Defendant Alvear's opinion. However, the dissemination of misconstrued, inaccurate, false, and defamatory information as fact is neither privileged nor protected.

27. Specifically, in a 'message' published via Telegram to roughly forty-two thousand, five hundred (42,500) of Good Lion Films' subscribers, Defendants state:

> "[he] *claims to be in our movement fighting for children, yet has actually been caught and tried, for molesting one*.'

28. Mr. Godlewski has never been "caught" molesting a child, sentenced to jail for molesting a child, nor tried for molesting a child.

29. A simple review of the Plaintiff's criminal record and/or the documents filed in the Scranton Times case would have clarified this issue.

30. Moreover, a detailed review of the pleadings in the 2010 criminal matter would have clarified that Plaintiff did not withdraw a plea of guilt for all charges brought against him; instead, Plaintiff withdrew his plea of *Nolo Contendere* relating to the charge of corruption of a minor.

31. Perhaps most importantly, a detailed review of the 2010 criminal matter involving Plaintiff would have clarified that Plaintiff's guilty plea of corruption of a minor was not, in any way, related to sexual offense(s).

32. Defendants asserted as fact that text messages produced in the Scranton Times litigation proved that Mr. Godlewski was carrying on a sexual relationship with a minor.

33. Defendants did not bother to ask Mr. Godlewski whether these text messages were accurate or should be ascribed to him.

34. Notably, none of Mr. Godlewski's deposition testimony addressing these specific issues was ever appended by Defendants to their defamatory publications.

35. No court has ever determined that these 'text messages' are authentic, admissible, legitimate, that they refer to an improper sexual relationship with a minor, or that Mr. Godlewski wrote them.

36. Mr. Godlewski has denied the authenticity of any text messages relating to or referencing having sex with a minor.

37. The alleged former minor with whom Mr. Godlewski is accused of having relations has not been deposed, and the transcripts of the deposition testimony taken in the Scranton Times case do not confirm, suggest, imply, or indicate that Plaintiff ever had sex with a fifteen (15)-year-old girl.

38. Defendants' 'documentary' contains much of the same defamatory material referenced *supra*.

39. Defendants have discussed Plaintiff's business partnerships, both in writing and verbally on podcasts, and declared that he peddles fraudulent products and services to his customers.

40. Furthermore, the Defendants have gone so far as to urge followers to issue complaints against Plaintiff to the government and even provided "templates" instructing viewers how to structure and formulate the complaints. A true and correct copy of the Defendants' "templates" is incorporated in Exhibit "H."

41. In response to an e-mail sent to Defendant Alvear from Plaintiff's counsel, Defendant Alvear stated:

> *"No malice to him as a public figure with false info has been presented-they are all facts that have been kept hidden, and me as a journalist and fully allowed to share my discoveries-I can do so here, or in court, or on my telegram, it is a freedom of speech right. But trust me, many of us are sharing on the exposure of Phil and I will gladly take Scranton Times sloppy seconds".*

42. Defendants have appointed themselves as the *de facto* jury, informing thousands of people that discovery in the Scranton Times case has exposed Mr. Godlewski as a child molester.

43. On January 2, 2024, Defendant Alvear posted on X and to his forty-five thousand, two hundred eight (45,208) subscribers that Plaintiff had sex with a minor in many vacant homes for sale in Pennsylvania.

44. Plaintiff has vehemently denied, under oath, doing any such thing.

45. Defendant Alvear has acknowledged that at least one hundred seventy-seven thousand (177,000) people have seen his defamatory statements.

46. Defendant Alvear misrepresents that Plaintiff was guilty of all the charges brought against him in the 2010 Criminal Complaint and that Plaintiff does not have to register as a sex offender because Megan's Law had not yet been enforced.

47. Specifically, in a podcast posted to Defendant Good Lion's Rumble account titled "[Patriots Behind The Mic #67 - The Art of Whore - Phil Godlewski Exposed (rumble.com)](rumble.com)", Defendant Alvear presented a PowerPoint presentation titled "Extraordinary Claims Require Extraordinary Claims" to over forty thousand (40,000) viewers and was also made available for download. A true and correct copy of the Defendants' PowerPoint has been attached and incorporated hereto as Exhibit "I."

48. Defendants' presentation included an overabundance of false, defamatory, and misleading information, including but not limited to, "December 2012 – Megan's Law goes into effect, hence why Phil is not registered".

49. In the same podcast, when discussing whether or not the participants had been sued by Plaintiff, specifically at the 33:30 minute mark, Defendant Alvear states:

> "*Dude, I'm on probation for January 6, and maybe for half a second, my heart was like 'What happens if I get a lawsuit ?', but then I immediately just grabbed onto my balls and said 'Fuck it!*

*Sue me dude!' I got louder, I got more aggressive, and he's now*

*like not even touching me with a 10-foot pole."*

50. At the 38:13 minute mark, Defendant Alvear confidently asserts that the Criminal complaint, identifying Plaintiff's 2010 Criminal charges, means that Plaintiff was guilty of these charges because their description included the phrase "TO WIT."

51. Defendant Alvear states that 'as a journalist,' he can share his 'discoveries' with the thousands of people who follow him.

52. If Defendant Alvear were an honest journalist with a modicum of integrity, he would have reported that a misdemeanor was the only charge Plaintiff was ever guilty of.

53. Had the Defendant bothered to look up the phrase "to wit" in a dictionary, he would have discovered that its presence in a Criminal Complaint does not automatically imply guilt.

54. Instead, Defendants have, and continue to, assert misleading, fabricated, and/or false statements, both in writing via social media and verbally on podcasts, and represent such statements to be factual, despite Defendants' knowledge that their statements are misleading, fabricated and/or false.

55. Defendants' willful disregard for the truth and dissemination of inaccurate information is being done with malicious intent.

56. Defendants grossly and recklessly departed from accepted journalistic standards before defaming Mr. Godlewski.

57. Defendants deviated from accepted journalistic standards by neglecting to report that the former fifteen (15)-)-year-old admitted numerous times that she and Plaintiff did not have a sexual relationship while she was a minor.

58. Moreover, the Defendants deviated from accepted journalistic standards by neglecting to report that Megan's Law was actually enacted in 1995 and subsequently enforced in 1996.

59. Defendants further deviated from accepted journalistic standards by continually neglecting and failing to report that Plaintiff's plea in 2010 had no relation to sexual misconduct.

60. Instead, Defendants generated an outlandish and false narrative aimed at Plaintiff's "assassination of character" and, for the past four (4) months, have continued to make it their mission to ensure that their followers accept as true all their false and defamatory statements concerning Plaintiff, for purposes including, but not limited to, destruction of Plaintiff's reputation and destruction of Plaintiff's business partnerships.

61. The Defendants reinforced their certainty of the Plaintiff's unfounded guilt by creating a 'documentary' to' expose" him.

62. The 'documentary' doubles down on their defamatory statements *supra.*

63. On February 13, 2024, Plaintiff discovered several billboards in Pennsylvania, specifically near Plaintiff's residence, advertising Defendants' 'documentary.'

64. The following day, Plaintiff's attorneys contacted representatives for the billboard company and convinced them to cease advertising the 'documentary.'

65. Defendants became ever more determined to ensure their 'documentary' reached a larger audience, so they hired an airplane with a banner to advertise by flying over the Scranton Area.

66. On February 9, 2024, Defendants participated in a podcast streamed and posted to Zilosophy4all's Rumble account (Special Phildo NIght Live Philm Release Celebration! (rumble.com)), and at the 12:44 minute mark, Defendant Alvear states:

> "*Yeah I talked to the Scranton Times lawyer, um, just for advice, because you know Phil's been getting kinda crazy, and um, he saw it and he's like 'I saw your airplane sign today'".*

67. 18.6 K viewers viewed the video.

68. The Defendants posted a spreadsheet breaking down the cost of their "advertisements" and the receipts for the companies they contracted with. A true and correct copy of the Defendants' post containing the financial spreadsheet and receipts has been attached and incorporated hereto as Exhibit "J."

69. The Defendants' relentless defamation campaign did not end after the 'documentary' was released but intensified.

70. Defendants' crusade has included and continues to include libel via posts to Telegram and X (formerly known as Twitter).

71. Defendants assert that Plaintiff's business dealings are fraudulent and even blamed Plaintiff for the suicide of one of his clients.

72. By way of example, Defendants have posted and/or reshared posts about Plaintiff, including, but not limited to:

- January 13, 2024 – "*The best thing about my history is that I've never been so desperate for sex that I had to start going to children*";

- January 19, 2024 – "*Once upon a time, someone followed Phil's words and financial advice committed suicide.*";

- January 21, 2024 – *"Phildo has dropped 12k subscribers in the last 3 hours";*

- January 27, 2024 – *"I pray Phil does not hurt anymore children;*

- February 9, 2024 – *"Wow we are dealing with a serious evil kid grooming pedophile here. Well well… someone better check up on his kids…";*

- February 18, 2024 – *"I worry about the children that live under his roof. Whether they are actually his or not…I wouldn't put it past Phil touch them inappropriately, molest them, or corrupt their morals. Once a pedo, always a pedo…";*

- March 16, 2024 – *"This movement is meant to help the children and protect the elderly. Phil does exactly the opposite of that – he screws young girls and rips off the elderly. What we have done here is single handedly destroyed his entire operation."*

True and correct copies of Defendants' posts to Telegram from January 10, 2024, through the present have been attached and incorporated hereto as Exhibit "K."

73. Defendants also posted similar posts to X. A true and correct copy of Defendants' posts to X from December 31, 2023, through the present has been attached and incorporated hereto as Exhibit "L."

### COUNT 1 -
#### *Plaintiff v. All Defendants*
### DEFAMATION BY IMPUTATION OF CRIMES NEVER COMMITTED BY PLAINTIFF

74. The foregoing paragraphs are incorporated herein as if set forth at length.

75. Although Defendant Alvear, as a journalist, has a conditional First Amendment privilege concerning what they publish, Alvear abused that privilege by printing falsehoods about Mr. Godlewski.

76. Defendants published that the evidence showed Mr. Godlewski had an illegal sexual relationship with a minor and that this was clear from the 'evidence' in the Scranton Times case.

77. However, the Defendants' assertions are untrue.

78. Any average person reading Defendants' publications ('publications') or hearing Alvear's statements online would understand their defamatory meaning.

79. Because Defendants referenced Plaintiff by name in every post and/or podcast, there would not be any doubt that the average person reading the publications would know and/or otherwise understand that Defendants posts applied only to Plaintiff.

80. Mr. Godlewski suffered special harm due to the defamatory publications, as described below.

81. The statement, as fact, that Mr. Godlewski had sexual intercourse with an underage fifteen (15)-year-old girl is an imputation of statutory rape, which has blackened his reputation, exposed him to public hatred, and grievously injured him in the community of respectable society.

82. Defendants are, therefore, liable against Mr. Godlewski for defamation per se.

**WHEREFORE**, the Plaintiff requests the relief set forth below.

<u>**COUNT 2 -**</u>
*Plaintiff v. All Defendants*
<u>**FALSE LIGHT INVASION OF PRIVACY**</u>

83. The foregoing paragraphs are hereto incorporated as if set forth at length.

84. Defendants knew or acted in reckless disregard of their knowledge that the publicized matters were false and would place Mr. Godlewski in a false light.

85. Defendants' publications contained significant misrepresentations of Mr. Godlewski's character, history, and activities that Plaintiff did not have and did not do but which, if believed, would cast him in a false light.

86. Defendants, by way of their global distribution of their libel and slander, as described herein, placed Mr. Godlewski in a false light that would be highly offensive to a reasonable person.

87. Further, the Defendants' actions against Mr. Godlewski were done with actual malice.

**WHEREFORE**, the Plaintiff requests the relief set forth below.

**COUNT 3 -**
*Plaintiff vs. All Defendants*
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

88. The foregoing paragraphs are hereto incorporated as if set forth at length.

89. Defendants' conduct in authorizing the publication of false statements, which Defendants knew to be false, was intentional, reckless, careless, extreme, and outrageous and made for the sole purpose of causing Mr. Godlewski's injury.

90. All of the above-described statements were made with intentional or reckless disregard of the truth, were explicitly aimed at the Plaintiff and his family, and were understood by the Plaintiff to be directed toward him to harm his reputation and his business and cast him in a false light that bore no relationship to the truth.

91. As a direct and proximate result, Plaintiff has sustained personal injuries, including but not limited to depression, anxiety, insomnia, psychological and emotional distress, irreparable damage to his reputation, and loss of standing in the community. He continues to sustain these injuries due to the ongoing and widespread dissemination of Defendants' falsehoods.

92. Defendants' actions are so outrageous as to be beyond all possible bounds of decency.

93.  Defendants' actions are utterly intolerable in a civilized community

94. As a direct and/or proximate result of the foregoing intentional, reckless, careless, extreme, and outrageous conduct, Plaintiff is entitled to recover compensatory damages and punitive damages permitted by the law in an amount determined at trial.

**WHEREFORE**, the Plaintiff requests the relief set forth below.

### <u>COUNT 4 -</u>
*Plaintiff vs. All Defendants*
**<u>TORTIOUS INTERFERENCE WITH CONTRACTS, PROSPECTIVE CONTRACTS, AND BUSINESS RELATIONSHIPS</u>**

95. The foregoing paragraphs are hereto incorporated as if set forth at length.

96. Defendants' conduct in authorizing the publication of false statements, which Defendants knew to be false, was intentional, reckless, careless, extreme, outrageous, and intended to interfere with Mr. Godlewski's business and contractual relationships.

97. Mr. Godlewski is an influencer with millions of followers.

98. Mr. Godlewski is also an entrepreneur with business connections and clients.

99. Defendant Alvear casts himself as an influencer.

100.    The Defendant's purpose in publishing and continuing to publish the defamatory libel and slandering Mr. Godlewski online is to diminish Mr. Godlewski's reputation and influence on his followers and increase his own.

101.    Defendants targeted Plaintiff's followers, business connections, and customers to diminish Plaintiff's businesses by calling him a sexual predator, a convicted pedophile, and a fraud and dissuade his clients and customers from continuing to do business with him.

102.    As a direct and/or proximate result of the foregoing intentional actions, which are continuing, Mr. Godlewski continues to suffer the loss of his followers.

**WHEREFORE**, Plaintiff is entitled to recover compensatory and punitive damages permitted by the law in an amount determined at trial.

**COUNT 5 -**
***Plaintiff v. All Defendants***
**DEFAMATION BY INNUENDO**

103.    The averments of the foregoing paragraphs are hereby incorporated by reference as if set forth fully herein.

104.    Defendants' communications to others created defamatory innuendo.

105.    A particularly effective scheme in defaming Plaintiff by innuendo was Defendants' quoting of selected passages from the Scranton Times case to make it seem that there was no doubt Plaintiff was a criminal and pedophile.

106.    Further, these selected quotations were editorialized by Defendants, who explained that Plaintiff, by prosecuting the Scranton Times case, had 'outed' himself as a pedophile rapist.

107.    Defendants did this to damage Plaintiff's reputation and standing in the community and to diminish the integrity of his business relationships with his customers and clients.

108.    With these and other skillfully devised innuendos, Defendants defamed Plaintiff by portraying him as a dishonorable criminal rapist and fraudster who had hoodwinked the public and business community about his history and reputation.

109.    Defendants' defamatory statements further implied that Plaintiff is neglectful, predatory, corrupt, sinful, unwholesome, and depraved.

110.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained personal injuries including but not limited to depression, anxiety, isolation, insomnia, irreparable damage to their reputation, and loss of standing in the community.

111.     Plaintiff continues to sustain these injuries due to the ongoing and widespread dissemination of the Defendants' falsehoods.

112.     Defendants' portrayal of the Plaintiff was reckless, willful, malicious, and so extreme and outrageously false as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands the compensatory and punitive damages referenced above.

### COUNT 6 -
*Plaintiff v. All Defendants*
### DEFAMATION PER SE

113.     The foregoing paragraphs are incorporated herein as if set forth at length.

114.     Although Defendant Alvear, as a journalist, has a conditional First Amendment privilege concerning what they publish, Alvear abused that privilege by printing countless falsehoods and misrepresentations about Mr. Godlewski.

115.     The Defendants repeatedly libeled Plaintiff via social media while simultaneously repeating those same slanderous comments in podcasts that were broadcast to thousands of viewers.

116.     Any average person reading Defendants' publications ('publications') or hearing Alvear's statements online would understand their defamatory meaning.

117.     These publications constitute defamation per se because the conduct attributed to the Plaintiff was a criminal offense punishable by imprisonment.

118.    They further insinuate that the Plaintiff has committed a crime of moral turpitude, which includes but is not limited to, serious sexual misconduct with a minor.

119.    To Plaintiff's detriment and as a direct and proximate result of Defendants' myriad of denigrating statements, coupled with other acts and omissions, Plaintiff continues to suffer losses including, but not limited to, reputation, income, business opportunities, and emotional distress.

**WHEREFORE**, Plaintiff demands the compensatory and punitive damages referenced above.

## *AD DAMNUM* CLAUSE/PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor against Defendant and that it enters an Order as follows:

a.    Defendants are to compensate the Plaintiff in an amount to be determined by a jury for the actual and special damages they have caused to the Plaintiff by virtue of their vicious conduct.

b.    Plaintiff is to be awarded out-of-pocket expenses due to the defamation, for injury to his reputation, and for any other injury for which the libel or slander is the legal cause.

c.    Plaintiff is to be awarded liquidated and/or punitive damages as permitted by applicable law, in an amount set forth by statute and/or believed by the Court or trier of fact to be appropriate to punish Defendants for their defamatory conduct.

d.    Plaintiff is to be afforded any and all other equitable and legal relief as the Court deems just, proper, and appropriate.

e.      Plaintiff is to be awarded the costs and expenses of this action and reasonable

legal fees as provided by applicable state law.

f.      The Court is to maintain jurisdiction of this action after the verdict to ensure

compliance with its Orders.


                                    Respectfully Submitted,

                                    **KOLMAN LAW, P.C.**
                                    /s/ *Timothy M. Kolman*
                                    Timothy M. Kolman, Esquire

                                    /s/*Timothy Bowers*
                                    Timothy Bowers, Esquire
                                    414 Hulmeville Avenue
                                    Penndel, Pennsylvania 19047
                                    (215) 750-3134
                                    *Attorneys for Plaintiff*

Dated:  April 25, 2024

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorneys hereby certify that on this 25th day of April 2024, a true and correct copy of *Plaintiff's First Amended Complaint* was served upon all counsel of record via the Courts' CM/ECF system.

Respectfully Submitted,

**KOLMAN LAW, P.C.**

/s/ *Timothy M. Kolman*
Timothy M. Kolman, Esquire

/s/*Timothy Bowers*
Timothy Bowers, Esquire
414 Hulmeville Avenue
Penndel, Pennsylvania 19047
(215) 750-3134
*Attorneys for Plaintiff*

Dated:  April 25, 2024