# EXHIBIT
## "G"

FORMERLY
MAURICE
LACKAWANNA COUNTY

2021 MAY 24 P 2: 30

CLERK OF JUDICIAL
RECORDS CIVIL DIVISION

21 CV
2195

Court of Common Pleas of Lackawanna County

FOR CLERK OF JUDICIAL RECORDS USE ONLY

## Civil Cover Sheet

Docket Number:

| | |
|---|---|
| Plaintiff's Name<br>PHILIP GODLEWSKI | Defendant's Name<br>CHRIS KELLY |
| Plaintiff's Address<br>115 Huckleberry Lane, Duryea, PA 18642 | Defendant's Address<br>149 Penn Avenue, Scranton, PA 18503 |
| Plaintiff's Name | Defendant's Name<br>TIMES-SHAMROCK COMMUNICATIONS |
| Plaintiff's Address | Defendant's Address<br>149 Penn Avenue, Scranton, PA 18503 |
| Plaintiff's Name | Defendant's Name<br>THE SCRANTON TIMES-TRIBUNE |
| Plaintiff's Address | Defendant's Address<br>149 Penn Avenue, Scranton, PA 18503 |

| Total Number of Plaintiffs | Total No. of Defendants | Commencement of Action |
|---|---|---|
| 1 | 4 | X Complaint   Petition Action   Notice of Appeal<br>___Writ of Summons___Transfer from other<br>Jurisdiction |

| Amount of Controversy | Court Programs |
|---|---|
| In Excess of Jurisdictional Amount?<br>Yes___No ___ | Arbitration     Jury     X Non-Jury     Petition     Minor Court Appeal     Statutory<br>Appeals<br>___Other |

Case Type and Code (See Instructions)

TORT/LS

Statutory Basis for Cause of Action (See Instructions)

42 Pa.C.S.A. §§ 8341–8345, 42 Pa.C.S.A. §§ 8341–8345, 42 Pa.C.S.A. §§ 8341–8345

Remarks:

**TO THE CLERK OF JUDICIAL RECORDS:**
Please enter my appearance on behalf of Plaintiff:
Papers may be served at the address set forth below:

| NAME OF PLAINTIFF'S ATTORNEY OR PRO SE PLAINTIFF<br>Timothy M. Kolman | ADDRESS<br>414 Hulmeville Ave, Penndel, PA 19047 |
|---|---|
| PHONE NUMBER          FAX NUMBER<br>(215)-750-3134    (215)-750-3138 | |
| SUPREME COURT IDENTIFICATION NO.<br>51982 | E-MAIL ADDRESS<br>TKolman@kolmanlaw.com |
| SIGNATURE<br>/s/ Timothy M. Kolman | DATE<br>May 18, 2021 |

Civil Cover Sheet Additional Parties

| Plaintiff's Name | Defendant's Name |
|---|---|
| | LARRY HOLEVA |
| Plaintiff's Address | Defendant's Address |
| | 149 Penn Avenue, Scranton, PA 18503 |

PHILIP GODLEWSKI

Plaintiff

IN THE COURT OF COMMON PLEAS
OF LACKAWANNA COUNTY

:

:        CIVIL ACTION

:

VS.

:        JURY TRIAL DEMANDED

CHRIS KELLY,
TIMES-SHAMROCK COMMUNICATIONS,
THE SCRANTON TIMES-TRIBUNE,        :
LARRY HOLEVA

Defendant        :        No.

:    :    :    :    :    :    :        :    :    :    :    :    :    :    :    :

## *NOTICE*

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed against you by the Court without you, and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.


YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

NORTHERN PA LEGAL SERVICES        Pennsylvania Lawyer Referral Services
507 Linden Street        Lackawanna Bar Association
Suite 300        338 N. Washington Avenue
Scranton, PA  18503        Third Floor
(570) 342-0184        Scranton, PA  18503
        (570) 969-9161
        (570) 969-9170 - Business Fax

MAURI B...
LACKAWAN... COUNTY

2021 MAY 2...

CLERK OF JUDICIAL ...
RECORDS C...

**TO DEFENDANT: YOU ARE HEREBY NOTIFIED TO PLEAD TO THE ENCLOSED COMPLAINT WITHIN TWENTY (20) DAYS FROM SERVICE HEREOF OR A JUDGMENT MAY BE ENTERED AGAINST YOU.**

Timothy M. Kolman, Esquire

**KOLMAN LAW P.C.**
Timothy M. Kolman, Esquire
414 Hulmeville Avenue
Penndel, PA 19047
(215) 750-3134

Attorneys for Plaintiff
Philip Godlewski

| | |
|---|---|
| **PHILIP GODLEWSKI**<br>115 Huckleberry Lane<br>Duryea, PA 18642 | IN THE COURT OF COMMON PLEAS<br>FOR LACKAWANNA COUNTY |
| *Plaintiff* | |
| v. | |
| **CHRIS KELLY**<br>149 Penn Avenue<br>Scranton, PA 18503 | NO. |
| and | |
| **TIMES-SHAMROCK<br>COMMUNICATIONS**<br>149 Penn Avenue<br>Scranton, PA 18503 | CIVIL ACTION |
| and | |
| **THE SCRANTON TIMES-TRIBUNE**<br>149 Penn Avenue<br>Scranton, PA 18503 | |
| and | |

**LARRY HOLEVA**                              :
149 Penn Avenue                              :
Scranton, PA 18503                           :
                                             :
                                             :
    *Defendants*         :

## COMPLAINT

  Plaintiff, Philip Godlewski ("Plaintiff or Mr. Godlewski"), by and through his undersigned

counsel, Kolman Law P.C., hereby avers as follows:

### I.  PRELIMINARY STATEMENT

  1.  Mr. Godlewski brings this action for libel and libel per se, by violations of Uniform

Single Publication Act, 42 Pa.C.S.A. §§ 8341–8345 and for false light and intentional interference

with his contractual relationships, all of which arise out of the Defendants' false, defamatory, and

malicious article, published in the Scranton Times Tribune on February 14, 2021, attached herein

as Exihibit A, and demands $5 million in damages. On that day, the Scranton Times-Tribune wrote,

among other defamatory slurs, that Mr. Godlewski had had sex with a 15-year-old in 2011. The

article was malicious in both tone and substance, stating that Mr. Godlewski was a "purveyor of a

poison that has curdled the hearts and minds of millions who may never recover." Further,

Defendants juxtaposed their defamation by associating the Plaintiff with 'the seditionist mayhem

that resulted in five deaths' when the Capitol was stormed. Finally, the Defendants slurred the

professional reputation of Mr. Godlewski as a Realtor making it clear to any reader that he was

unreliable, unethical, and misrepresented, for his own interests, the properties he sold. In fact, the

opposite is the case. Mr. Godlewski has always been a top producer of property sales in the

Luzerne/Lackawanna area and had, until the Defendants destroyed it, an excellent reputation of

ethics, responsibility, and care for his clients

2

## II.    PARTIES

2.      Mr. Godlewski is a private citizen and adult individual with a residence in the Commonwealth of Pennsylvania located at 115 Huckleberry Lane, Duryea, Pennsylvania 18642. For the purposes of this complaint, by virtue of his large following, Mr. Godlewski is a public figure.

3.      Defendant Chris Kelly is an adult individual and a journalist employed by the Scranton Times-Tribune who works at 149 Penn Avenue, Scranton, PA 18503.

4.      Defendant Times Shamrock Communications is the owner and publisher of the Scranton Times-Tribune and located at 149 Penn Avenue, Scranton, PA 18503.

5.      Defendant, the Scranton Times Chronicle, is the newspaper in which the defamatory article appeared and is located at 149 Penn Avenue, Scranton, PA 18503.

6.      Defendant Larry Holeva, is an adult individual and an executive editor employed by the Scranton Times-Tribune and who works at 149 Penn Avenue, Scranton, PA 18503 and who, om information and belief was the editor who decided, along with Defendant Kelly, to run the 'story.'

## III.    JURISDICTION AND VENUE

7.      Jurisdiction over the parties in the Courts of the Commonwealth of Pennsylvania is proper pursuant to the provisions of 42 Pa.C.S. § 5301 et seq. Defendants carry on a continuous and systematic part of their general business within the Commonwealth and transact business in the Commonwealth. Defendants have caused harm and tortious injury to Mr. Godlewski in the Commonwealth by their acts in the Commonwealth, to wit, by making publishing and making public defamatory statements which were published in the greater Scranton area and beyond.

3

8.      Venue is proper in the Court of Common Pleas of Lackawanna County under Pennsylvania Rule of Civil Procedure 1006(a) and Pennsylvania Rule of Civil Procedure 2179, in as much as Lackawanna County is the place where Defendants regularly conduct business, and inasmuch as the occurrences out of which Mr. Godlewski's cause of action arises, to wit, publication of Defendants' false and defamatory statements about him took place in Lackawanna County, Mr. Godlewski felt the brunt of the harm in Lackawanna County and Defendants' defamatory statements had and continue to have the most significant impact in Lackawanna because Mr. Godlewski lives and works in Lackawanna County.

## IV.   FACTUAL BACKGROUND

### A.  <u>Mr. Godlewski's Reputation as a Commercial and Residential Realtor</u>

9.      Mr. Godlewski is a Certified Realtor and Broker who worked for Era Elite Real Estate Team until he was terminated because of the defamatory article written and published by the Defendants.

10.     Mr. Godlewski is married with three children and made his reputation as a Realtor by being trustworthy, reliable, and knowledgeable.

11.     Specifically, by virtue of his extensive knowledge, Mr. Godlewski sold real estate in very desirable neighborhoods in Lackawanna and Luzerne Counties.

12.     Since 2007, he has been one of the top producing agents in the Greater Scranton Board of Realtors garnering many awards due to his personal and business achievements.

13.     Mr. Godlewski has been a multimillion-dollar seller of real estate sales each and every year, the status he has achieved by discharging the highest ethical standards and always putting his client's interests first.

4

14.    In addition to residential real estate, Mr. Godlewski has also sold a significant number of commercial properties each year.

### B. Defendants' Libelous References to Mr. Godlewski as a Realtor

15.    On February 14, 2021, journalist Chris Kelly who accurately describes himself as "an old-school muckraker," wrote an article about Mr. Godlewski headed "QAnon Realtor sells rabbit holes on YouTube."

16.    Defendant Kelly, by virtue of this heading alone, deliberately associated the selling of "rabbit holes," thereby undermining Mr. Godlewski's integrity as a realtor.

17.    In stating that Mr. Godlewski was selling rabbit holes on YouTube, coupled with the cartoon of a real estate sign on top of which was written "RABBIT HOLE FOR SALE!" and beneath were the words UNREAL-TOR, clearly referring to Mr. Godlewski.

18.    Defendants implied that Mr. Godlewski sold valueless or devalued real estate, misrepresenting his infantry to unsuspecting clients and was therefore, not be trusted as a realtor. This cartoon is hereto attached and incorporated as Exhibit A.

19.    Further, the diagram in the center of the sign represents QAnon.

20.    Despite being totally irrelevant, the Defendants gratuitously, maliciously, unnecessarily, and inextricably linked Mr. Godlewski's professional integrity to his alleged political views using the latter to impugn his integrity as a Realtor, as set out in more detail *infra*.

### C. Mr. Godlewski As a Purveyor of Poison and an Organizer and/or a Participant in the Attack on the Capitol

21.    The article also referred to Mr. Godlewski as "a purveyor of poison that has curdled the hearts and minds of millions who may never recover."

5

22.     The term "purveyor of poison" casts Mr. Godlewski as a supplier, seller, or source of poison who, according to the article, has irreparably damaged "the hearts and minds of millions."

23.     Despite not having one wit of evidence that Mr. Godlewski's views and opinions have irreparably damaged anyone, Defendants nonetheless state this is a fact.

24.     Mr. Godlewski, therefore, is cast by the Defendants as a one-man destroyer of men and women children and families.

25.     Further, despite stating that Mr. Godlewski was not at the Capitol on January 6, 2021, the date of the insurgency, Defendants tab Mr. Godlewski as, not only a supporter, but an active participant and organizer.

26.     Specifically, Defendants' article reads, "The Capitol riot is empirical evidence that we ignore this insidious war on truth at our peril. Despite the demolition of all its so-called prophecies, the Q. movement marches on. Godlewski happily calls out the cadence."

27.     The prior paragraph to this reads: "The new video of the seditionist mayhem that resulted in 5 deaths and the airtight case made by the House managers convinced me we can't afford to ignore citizens of a separate reality who act, organize and seek to undermine and up and objective reality."

28.     By virtue of this juxtaposition, and specifically "in calling out the cadence" the Defendants place Mr. Godlewski at the heart of what the Defendants described as "seditionist mayhem that resulted in 5 deaths."

29.     In other words, Mr. Godlewski is, according to the clear implication of the article, integrally involved in the unlawful assault on the Capitol and is part of a conspiracy to overthrow the United States government by force and is thus a "seditionist."

4844-6288-8168, v. 34

30.    Sedition is a serious felony punishable by fines and up to 20 years in prison and it refers to the act of inciting revolt or violence against a lawful authority with the goal of destroying or overthrowing it.

31.    As stated, Mr. Godlewski was not at the Capitol on January 6, 2021, as acknowledged by the Defendants in their article.

32.    Determined however, in any way to link Mr. Godlewski to the riots Defendants by juxtapose a post on Mr. Godlewski's Facebook page with the false assertion that Mr. Godlewski directly participated in the insurgency.

33.    To accomplish this, the article reads in relevant part, "Shortly after the mob stormed into the Peoples house, Godlewski posted on Facebook that Vice President Mike Pence  had been arrested."

34.    Defendants directly imply that Mr. Godlewski was a willing participant and/organizer in an ongoing felonious criminal conspiracy to bring down the United States government by force.

35.    This is not an opinion. Defendants cast themselves as the arbiter of "objective reality on a mission against the insidious war on truth."

36.    As stated, Defendants place Mr. Godlewski at the very heart of the insurrection by the false statement that he was counting the cadence on behalf of the insurgents.

**D. Mr. Godlewski's Interview with Defendant Kelly**

37.    Defendants apparent excuse for their libel, as if it can ever be excused, is that Mr. Godlewski did not make himself available for an interview.

7

38.     In this regard, the article states in relevant part "this is the epitome of the self-fulfilling prophecy. Godlewski refuses to engage me as an admitted critic, ensuring that my report will be one-sided."

39.     Defendant Kelly makes two things clear: first that the article is one-sided and two that Mr. Godlewski is responsible because he did not give an interview.

40.     However, as if to highlight his own disingenuousness of Defendant Kelly blatantly contradicts himself, writing in a later sentence that the exchange of texts between him and Kelly "soon became a sporadic exchange of messages that amounted to an interview."

41.     Aside from the fact that a refusal to engage in an interview is never a consent to be libeled, in this case Defendants' admit that they got their interview with Mr. Godlewski interview through text messaging.

E.     **Mr. Godlewski As a Sexual Predator**

42.     Defendants also accuse Mr. Godlewski of having a sexual relationship with a 15-year-old pursuant to a criminal matter which occurred in 2011.

43.     The reason why the Defendants included this was because Defendant Kelly allegedly just "stumbled upon it" and considered it relevant to "Godlewski's credibility."

44.     Defendants justify bringing this issue up by stating that it had been previously published in the Times-Tribune and that Lackawanna detectives had said Mr. Godlewski had had sex with a 15-year-old girl in cars and homes.

45.     Having now written as fact that Mr. Godlewski did have sex with a 15-year-old girl, the Defendants write, immediately thereafter, in the next phrase, "Godlewski... was sentenced to 3 to 23 months..."

8

46.     Defendants, through juxtaposition of these two phrases make it appear that Mr. Godlewski actually pled guilty to having had sex with the underage girl and was sentenced to 3 to 23 months.

47.     Significantly, Defendant Kelly could not have "stumbled upon" the fact that Mr. Godlewski had sex with a fifteen-year-old girl, because that never happened.

48.     Mr. Godlewski never pled guilty to having sex with an underage girl because he never had sex an underage girl.

49.     Notably, Defendant Kelly "as an old-fashioned muckraker" could have checked the public record, wherein he would have learned (if he did not already know) that Mr. Godlewski is not, and has not been, listed as a sexual predator.

50.     Further, Mr. Godlewski never spent any time in jail.

51.     If Defendant Kelly had been an honest journalist, and not a muckraker, he would have also 'stumbled upon' the article which reported that Mr. Godlewski's pled to a misdemeanor.

52.     Further, if the Defendants were actually interested in the truth, they could have directly asked (or texted) Mr. Godlewski as to what happened in court and what the outcome was.

53.     Defendant Kelly, as if out of the goodness of his heart and because he wishes his readers to know he is a decent man, allegedly gave Mr. Godlewski a heads-up that he was going to refer to the July 2011 conviction because, according to him, he did not wish Mr. Godlewski to be "blindsided."

54.     However, Mr. Godlewski was completely blindsided because what Defendant Kelly wrote was false and Mr. Godlewski never got the heads-up opportunity, prior to publication, to correct or point out the article's blatant falsehoods.

9

55.     Instead, Defendant Kelly deliberately conflated the charges against Mr. Godlewski of having sex with a girl, with his plea to a misdemeanor charge for corruption of minors.

56.     In other words, the Defendants, by willful juxtaposition of the two phrases deliberately made it seem as if Mr. Godlewski pled to the charge of "corruption of minors" because he had sex with a 15-year-old girl.

57.     The Lackawanna detectives and the Times Tribune who allegedly reported that Mr. Godlewski had sex with a 15-year-old girl, were referring not to convictions but only to the charges which had been filed against him.

58.     At the time of that report, charges against Mr. Godlewski were only pending and at that time, as far as the law was concerned, Mr. Godlewski was entirely innocent of all the charges against him.

59.     Defendant Kelly, however, references the Lackawanna detectives and the Times Tribune to make it appear that Mr. Godlewski was either guilty of having sex with an underage girl or had been found guilty.

60.     Defendant Kelly never makes it clear that the Lackawanna detectives and the Times Tribune were referring only to the charges against Mr. Godlewski and not to the outcome of the case.

61.     There is nothing in Mr. Godlewski's criminal record which indicates, relates and/or references to Mr. Godlewski pleading guilty to having had sex with a 15-year-old girl, or any other underage girl.

### F.     The Actual Malice of the Defendants

62.     The reporting as fact, by the Defendants, that Mr. Godlewski did have sex with a 15-year-old girl, is in accordance with the entire article which takes every opportunity to slur Mr.

10

Godlewski's reputation in every way possible, accusing him of sedition and criminal conspiracy, accusing him of him of child molestation and statutory rape and accusing him of fraudulently selling real estate.

63.     The true purpose of Defendants' article is to destroy Mr. Godlewski because of Mr. Godlewski's political views to which Defendant Kelly has a visceral, unhinged, and hysterical reaction.

64.     Defendant Kelly therefore sets aside all objectivity and professionalism and uses his journalistic skills in order to smear Mr. Godlewski in every way possible.

65.     Indeed, Defendant Kelly begins his article by not even referring to Mr. Godlewski as a private person but references him as a "Clark's Summit-based Realtor" when in fact, his profession as a real estate broker has absolutely nothing to do with his political views and is not and never has been, a part of his YouTube presentation.

66.     Kelly again refers to Mr. Godlewski's profession as a realtor in the next paragraph and makes certain all the readers are informed where Mr. Godlewski lives, even though where he lives is irrelevant and given the incendiary nature of the defamatory article, actually puts Mr. Godlewski in danger.

67.     Defendant Kelly believes that he, and the other defendants, can avoid the accusation of malice by stating that he wishes Mr. Godlewski "no ill will."

68.     However, Defendants' article seethes with of ill will.

69.     For example, Defendants described Mr. Godlewski as a "purveyor of poison that has curdled the hearts and minds of millions who may never recover."

70.     There is no factual evidence that Mr. Godlewski has ever been a purveyor of any poison let alone curdled the hearts and minds of millions who may never recover.

71.    Even if not taken literally, Defendants accuse Mr. Godlewski, without any factual basis whatsoever, of permanently injuring millions of people.

72.    The Defendants also impute a leadership/organizer role to Mr. Godlewski in the "seditionist mayhem" that "resulted in 5 deaths" when the Capitol was ransacked because Mr. Godlewski called "out the cadence."

73.    According to the article, Mr. Godlewski called out the cadence which kept the rioters attacking, ransacking, and vandalizing the Capitol just as a military cadence keeps soldiers marching or running as one.

74.    By making Mr. Godlewski an integral part of the Capitol insurgency, the article labels Mr. Godlewski, not just as a seditionist insurgent and a traitor to his country, but also a murderer, complicit in the depths of five persons.

75.    Defendants justify referencing Mr. Godlewski's case from 10 years ago case by arguing that it was relevant to Mr. Godlewski's credibility but there is neither an allegation nor finding that in the 2011 case, Mr. Godlewski did not tell the truth.

76.    The Defendants' justification in bringing up Mr. Godlewski's case is bogus, malicious and in keeping with the Defendant's aim of denigrating Mr. Godlewski's reputation.

77.    Defendants also refer to current criminal charges against Mr. Godlewski, as if Mr. Godlewski had already been convicted of them. However, these charges are not convictions and have no bearing on Mr. Godlewski's "credibility."

78.    Defendants referred to both cases for the sole purpose of blackening Mr. Godlewski's character, by maliciously conflating the criminal charges against Mr. Godlewski, with actual convictions in order to persuade the average reader into believing that Mr. Godlewski did everything he was charged with.

4844-6288-8168, v. 34

79.    In any event, these charges have no possible relevance to Mr. Godlewski's political views.

80.    Defendants openly accuse Mr. Godlewski "inciting a mob overthrow the government," specifically implying he was doing it in front of an army of photojournalists while carrying a location pinging cell phone.

81.    Mr. Godlewski, according to Defendants, bears some responsibility for the "millions of Americans who have lost parents, siblings, children and friends to the QAnon cult."

82.    This accusation, along with the declaration that Mr. Godlewski is a "purveyor of poison" casts Mr. Godlewski as a quasi-cult figure breaking up families by permanently taking their parents, siblings, children, and friends.

83.    Mr. Godlewski, therefore, was according to the Defendants Mr. Godlewski leading them down the "rabbit holes from which they may never return."

84.    Once again, there is absolutely no factual basis to the bogus accusation that Mr. Godlewski disrupted and destroyed families or indeed that he led millions down a metaphorical rabbit hole which they will never return.

85.    Further, as stated, Defendants have tabbed Mr. Godlewski as the "seller" of these "rabbit holes," in accordance with their systematic intent of ruining his hard-won professional reputation.

86.    Defendants managed to convey to the average reader that Mr. Godlewski is an unprofessional, irresponsible, fraudulent, and unreliable realtor when he is just the opposite.

87.    As stated, Defendants' entire article slurs, degrades demeans and libels Mr. Godlewski's reputation in every way possible by writing that he is a seditionist, traitor, a felonious murderer, a poisoner, a permanent destroyer of millions of lives and a criminal conspirator who is

13

also a child molester and statutory rapist and who fraudulently sells real estate to unsuspecting buyers.

88.  Defendants published its article either knowing that the specific statements within, as referenced supra were false or with reckless disregard of their falsity.

### G.  Mr. Godlewski Is a Private Figure of the Standpoint of Defendants' Defamation

89.  With respect to his political views, Mr. Godlewski is a public figure, expressing these views to thousands of people on YouTube, but that is not where defamation lies.

90.  Mr. Godlewski has been defamed in his profession as a realtor in which he functions as a private individual.

91.  Mr. Godlewski also remains a private figure with respect to criminal charges which were brought against him and any plea agreement does not transform him into a public figure in that respect.

92.  Mr. Godlewski's reputation, moral character and integrity are also protectable by him as a private individual.

93.  Notably, even if Mr. Godlewski was a public figure, he is able to show actual malice on the part of the Defendants.

### COUNT 1

### Defamation by Imputation of Crimes Mr. Godlewski Never Committed
### Violation of the Uniform Single Publication Act, 42 Pa.C.S.A. §§ 8341–8345

94.  The foregoing paragraphs are incorporated herein as if set forth at length.

95.  Although Defendants, as journalists, have a conditional First Amendment privilege with respect to what they publish, they abused that conditional privilege by printing falsehoods about Mr. Godlewski.

14

96. Defendants wrote that Mr. Godlewski had had sexual intercourse with a 15-year-old girl in 2011.

97. This was untrue.

98. This article was published by the Defendants.

99. The entire article referred to Mr. Godlewski.

100. Any average person reading the article would understand its defamatory meaning.

101. The average person reading the article would also know that the article applied only to Mr. Godlewski.

102. Mr. Godlewski suffered special harm, as set out in more detail below, as a consequence of the publication of the defamatory article.

103. The statements as fact, that Mr. Godlewski had sexual intercourse with and underage 15-year-old girl blackened his reputation, exposed him to public hatred and grievously injured him in the community of respectable society.

104. Defendants are therefore liable against Mr. Godlewski for defamation per se.

WHEREFORE, the Plaintiff requests the relief set forth below.

## COUNT 2

### Defamation for Blackening Mr. Godlewski's Reputation as a Realtor
### Violation of the Uniform Single Publication Act, 42 Pa.C.S.A. §§ 8341–8345

105. The foregoing paragraphs are hereto incorporated as if set forth at length.

106. Defendants publication of the article blackens the reputation of Mr. Godlewski in his profession as a Realtor.

107. Defendants willfully impugned Mr. Godlewski's business reputation as a Realtor directly and by innuendo and with reckless regard to the truth, gratuitously, unnecessary, and maliciously referring to his profession as a Realtor.

108.    The article can be interpreted defamatory because it likened Mr. Godlewski's sales of his properties to "RABBIT HOLES."

109.    The article demeaned Mr. Godlewski by referring to him as an "UN-REALTOR."

110.    The article implied that because Mr. Godlewski had been involved in QAnon, he was, among other things, a violent, felonious poisoner of hearts and minds and *ipso facto*, not fit to sell real estate to anyone.

111.    The article depicted Mr. Godlewski as a child molester with no credibility.

112.    Defendants' depictions of Mr. Godlewski were false and untrue.

113.    Mr. Godlewski enjoyed an excellent, trustworthy reputation as a Realtor prior to Defendants' article which completely ruined it and resulted in a loss of his job.

114.    Defendants statements and innuendo have blackened Mr. Godlewski's professional and business reputation and exposed him to public hatred and grievously injured him in the community of respectable society and injured his business and professional status.

115.    Defendants are therefore liable against Mr. Godlewski for defamation per se.

WHEREFORE, the Plaintiff requests the relief set forth below.

## COUNT 3

### Defamation by Innuendo by Directly Associating Mr. Godlewski with the Insurgency on the Capitol on January 6, 2021
### Violation of the Uniform Single Publication Act, 42 Pa.C.S.A. §§ 8341–8345

116.    The foregoing paragraphs are hereto incorporated as if set forth at length.

117.    Because Mr. Godlewski was apparently counting the cadence when the insurgents stormed the Capitol, Defendants placed Mr. Godlewski at the heart of the insurgency as an organizer, activist, leader, coordinator, director, and planner.

118.    He was never any of those things.

16

119.    Because Mr. Godlewski was, according to the Defendants so involved with the insurgency, Defendant Kelly rhetorically asked in the article why Mr. Godlewski had not actually been at the Capitol building showing himself before a bevy of cameras and using a cell phone which pinged his exact location.

120.    Defendants by virtue of the foregoing and, as set forth in more detail *supra*, dubbed Mr. Godlewski a traitor, a murderer, a felonious insurgent, and critical and integral participant in the criminal conspiracy to storm the Capitol building.

121.    Mr. Godlewski was never any of those things.

122.    Defendants, by virtue of the foregoing, maliciously blackened Mr. Godlewski's reputation directly and by innuendo, grievously fracturing his standing in the community of respectable society and exposing him to public hatred.

123.    Defendants are therefore liable against Mr. Godlewski for defamation per se.

WHEREFORE, the Plaintiff requests the relief set forth below.

## COUNT 4

### False Light Invasion of Privacy

124.    The foregoing paragraphs are hereto incorporated as if set forth at length.

125.    Defendants, by way of their conduct, as set forth herein above, placed Mr. Godlewski in a false light which would be highly offensive to a reasonable person.

126.    Defendants had knowledge or acted in reckless disregard as to the falsity of the publicized matters and the consequent false light in which Mr. Godlewski would be placed.

127.    Defendants article contained major misrepresentations of Mr. Godlewski's character, history, activities, and beliefs that serious offense could reasonably be expected to be taken.

4844-6288-8168, v. 34

128.    The actions of the Defendants against Mr. Godlewski were done with actual malice.

WHEREFORE, the Plaintiff requests the relief set forth below.

## COUNT 5

### Intentional Interference with Mr. Godlewski's Contractual Relations

129.    Defendants specifically and gratuitously referenced Mr. Godlewski's profession as a Realtor, even though such reference was irrelevant.

130.    The Defendants referenced where Mr. Godlewski was employed as a realtor.

131.    The Defendants wrote their defamatory article, knowing its content would have a detrimental effect on Mr. Godlewski's business and personal reputation and therefore also, on his ability to make a living as a Realtor.

132.    The allegations Defendants made against Mr. Godlewski were false and unjustified.

133.    Defendants article was written without justification, to hurt Mr. Godlewski in every way it could including intentionally harming his relationship with his then, current employer.

134.    As a direct consequence of the article, Mr. Godlewski was terminated from his position as a Realtor.

WHEREFORE, the Plaintiff requests the relief set forth below.

## COUNT 5

### Intentional Interference with Mr. Godlewski's Prospective Contractual Relations

135.    Defendants specifically and gratuitously referenced Mr. Godlewski's profession as a Realtor, even though that reference was irrelevant.

136.    The Defendants pejoratively and gratuitously referred to Mr. Godlewski's as a Realtor.

137.    The Defendants wrote their defamatory article, knowing that it would have a detrimental effect on Mr. Godlewski's prospective business and therefore also, on his ability to make a living as a Realtor in the future.

138.    The allegations Defendants made against Mr. Godlewski were false and unjustified.

139.    Defendants article was written without justification and to hurt Mr. Godlewski in every way it could, including but not limited to, its intention to harm Mr. Godlewski in his prospective contractual relationships with potential real estate clients and other realtors.

140.    As a direct consequence of the article, Mr. Godlewski will be affected adversely in in his prospective contractual relationships.

WHEREFORE, the Plaintiff requests the relief set forth below.

## *AD DAMNUM* CLAUSE/PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court enter judgment in his favor against Defendant and that it enter an Order as follows:

a.    Defendants are to compensate the Plaintiff in the amount of $5 million for the actual and special damages they have caused to the Plaintiff by virtue of their vicious conduct.

b.    Plaintiff is to be awarded out-of-pocket expenses due to the defamation and for injury done to his reputation and for any other injury of which the libel is the legal cause.

c.    Plaintiff is to be awarded liquidated and/or punitive damages as permitted by applicable law, in an amount set forth by statute and/or believed by the Court or trier of fact to be appropriate to punish Defendants for their defamatory conduct.

4844-6288-8168, v. 34

d.      Plaintiff is to be afforded any and all other equitable and legal relief as the Court

deems just, proper, and appropriate.

e.      Plaintiff is to be awarded the costs and expenses of this action and reasonable

legal fees as provided by applicable state law.

f.      The Court is to maintain jurisdiction of this action after verdict to ensure

compliance with its Orders therein.

Respectfully Submitted,

**KOLMAN LAW, P.C.**

Timothy M. Kolman, Esquire
414 Hulmeville Ave
Penndel, PA 19047
(215) 750-3134
*Attorney for Plaintiff*

Dated: May 19, 2021

4844-6288-8168, v. 34

# EXHIBIT A

https://www.thetimes-tribune.com/opinion/columnists/chris-kelly/chris-kelly-qanon-realtor-sells-rabbit-holes-on-youtube/article_0bff9566-5089-5f5f-aa94-464021807972.html

FEATURED

# Chris Kelly: QAnon Realtor sells rabbit holes on YouTube

KELLY'S WORLD
Feb 14, 2021



One of the QAnon movement's most devoted dead-enders is a Clarks Summit-based Realtor who insists Donald Trump is still president and working behind the scenes to depose Joe Biden, impose martial law and bring final justice to elected Democrats and other Satanic child sex traffickers who unwind after a long day of evildoing with a glass of baby blood.

Over the past year or so, many readers have alerted me to the online proselytizing of Phil Godlewski, who lives in Duryea but sells homes under the name of a national real estate franchise. He sells QAnonsense to thousands of followers around the globe on a host of platforms, including a YouTube channel with more than 26,000 subscribers.

Ad removed. Details

I've reported on a few local manifestations of QAnonsense, but avoided Godlewski because I don't want to give unwarranted attention to a purveyor of a poison that has curdled the hearts and minds of millions who may never recover.

Watching the second impeachment trial of Donald Trump changed my mind. There were many Q followers in the mob of domestic terrorists who ransacked the Capitol on Jan. 6. They came from cities, towns and neighborhoods across the country. They are our neighbors, friends and family. They are Americans.

The new video of the seditionist mayhem that resulted in five deaths and the airtight case made by the House managers convinced me we can't afford to ignore citizens of a separate reality who act, organize and seek to undermine and upend objective reality.

The Capitol riot is empirical evidence that we ignore this insidious war on truth at our peril. Despite the demolition of all its so-called prophecies, the Q movement marches on. Godlewski happily calls out the cadence.

In a text message, Godlewski told me he wasn't at the Capitol on Jan. 6, but he showed up in USA Today's coverage of the riot. Shortly after the mob stormed into the People's House, Godlewski posted on Facebook that Vice President Mike Pence had been arrested.

**Do This Instead of Cleaning Gutters (It's Genius)**
LeafFilter Partner | Sponsored

Read Next Story ›

It was a lie. Godlewski didn't return the newspaper's request for comment. He has since been banned from Facebook and Twitter, but somehow is still welcome on Instagram and YouTube. A reader sent me a link to one of his latest YouTube offerings.

"I want someone to answer for me one question, logically," Godlewski said to his audience. "I want a really good explanation. Why would (Trump) walk away? Why, why would Donald Trump walk away? He knows there's election fraud. He has the proof. He has them nailed to the wall and there's no doubt about that."

The self-proclaimed "patriot reporter" went on to cite widely debunked claptrap as proof the election was stolen and argued that Trump's failure to use the Insurrection Act and a host of other powers the presidency does not grant to stay in power is actually part of a grand, hidden strategy we mere mortals can't begin to comprehend.

This is the paradox of every crackpot conspiracy theory. When nothing makes sense, it's because you don't know everything — yet. Keep believing and all will be revealed. The "Great Awakening" is always just a little further down the rabbit hole.

There is no room for doubt in the QAnon cult. Adherents believe that "Q" is a mysterious individual (or group of them) with a high-level security clearance. Q is privy to a "plan" by Trump to round up and execute the Satanic vampire pedophiles in a sweeping cataclysm called "The Storm," which will lead to a "Great Awakening."

Ashli Babbitt, the Air Force veteran tragically shot and killed by a Capitol Police officer as she climbed through a smashed window, believed she was participating in The Storm. Her belief killed her just as sure as the bullet that brought her down.

I wanted to answer the question Godlewski posed in his video, so I reached out and proposed an interview. He declined. I suggested he record our discussion, as Andrew Torba — CEO of the Clarks Summit-based right-wing antisocial media platform Gab — did a few weeks ago. No go.

**Do This Instead of Cleaning Gutters (It's Genius)**
LeafFilter Partner | Sponsored

Read Next Story ›

*"All of the things I say will be dissected into oblivion, and only the 'crazy sounding' things will make the article,"* Godlewski texted. *"It'll ultimately be painted to make me look insane, and my family will ultimately suffer in the future. I can't take that chance."*

---

I texted back in what soon became a sporadic exchange of messages that amounted to an interview:

*"I've been watching your videos and I have to ask: Do you really believe the things you say, or are you just in it for the attention? If the former, why not defend your beliefs on the record? If the latter, why pass on an opportunity to showcase yourself?"*

Godlewski's response:

*"I couldn't care less about attention. The reporting I do is because the average American Citizen can no longer get true information from the Main Stream Media. Between all platforms, I have over 75,000 followers that are depending on me for information that they can no longer get from their regular sources. I'm not the only citizen reporter. There are dozens of people like me, if not hundreds. If I wanted to 'showcase myself', in your words (not mine), I would have jumped at the opportunity to do your interview. It's not about that. It's about the truth.*

*"Again, Chris, no disrespect to you, but I know you're following an agenda. The theme of your article is already set for you. You can't go against the MSM narrative with your reporting, because you'll either 1.) get fired, or 2.) lose credibility with what the Tribune (or you) think is their "primary audience." Little do you know, your primary [focus] on subscribers should be people like me, who*

**Do This Instead of Cleaning Gutters (It's Genius)**
LeafFilter Partner | Sponsored

*seek the truth and no longer listen to the garbage MSM narrative. The focus shouldn't be on the ones the Tribune wants your article to appeal to. I understand that's not your choice, but that's the reason I cannot do the interview. Your narrative is already set."*

---

This is the epitome of a self-fulfilling prophecy. Godlewski refuses to engage me as an admitted critic, ensuring that my report will be one-sided. He is automatically the martyr. I am a witless tool of the "deep state," or worse — a willing agent of oppression.

Here's "proof." In the normal course of reporting this column, I stumbled upon some legal troubles in Godlewski's recent past. In 2011, the former Riverside High School baseball coach pleaded guilty to corruption of minors and admitted to having a sexual relationship with a 15-year-old girl.

Lackawanna County detectives said Godlewski had sex with the girl in cars and homes he had access to as a real estate agent. Godlewski, 28 at the time, was sentenced to three to 23 months, with the first three months to be served under house arrest and the balance as probation.

Last February, Godlewski was charged with theft by deception, forgery and related charges. Police said Godlewski kited a check to an area building supplier and forged bank statements to cover it up. The case is still pending.

I texted Godlewski and told him I was likely to report both cases in the column. I didn't want him to be blindsided.

**Do This Instead of Cleaning Gutters (It's Genius)**
LeafFilter Partner | Sponsored

His response:

Read Next Story ›

*"That shows your character as a journalist, Chris. You just lost all respect and credibility with me."*

In fact, my editor and I discussed whether to include the information, which is public and was previously published in The Times-Tribune. We decided it was relevant in regard to Godlewski's credibility. I have many character defects, but the last time I had sex with a 15-year-old was never.

---

Throughout the reporting of this column, I texted Godlewski to give him an opportunity to respond. Eventually, he asked me to stop.

*"Please stop messaging me. Bringing up my past only serves you, and your company. It will cause turmoil for my young children and my family. I don't want to hear from you again. Go continue your self serving nature. Karma always has a way when it comes to people that do that kind of stuff to me."*

Karma is easy to see when it affects others, not so much when it's working on you. I am telling the truth in a local newspaper. Godlewski is spreading lies across the planet. Whether he's a true believer or a cynical opportunist, the damage is the same.

If Godlewski had agreed to speak with me, I would have answered his questions logically:

■ Trump "walked away" because he lost the election and his shameless, treasonous and ultimately lethal attempt to overturn it failed. Democracy defeated Trump. On Nov. 3 and again on Jan. 6 and Jan. 20.

**Do This Instead of Cleaning Gutters (It's Genius)**
**LeafFilter Partner** | Sponsored

Read Next Story ›

■ Trump never presented a shred of evidence of mass voter fraud because there is none. If he had any legitimate proof, his lawyers would present it in a court of law. The idea that Trump would holster any "smoking gun" that bolstered his selfish claims is beyond ridiculous.

Trump didn't testify at either impeachment trial for the same reason Godlewski refused to speak with me. Trump and Godlewski don't dare leave their safe spaces — where truth is fluid and lies flow with no resistance — for fear of having to defend the indefensible. Subjecting themselves to even the slightest scrutiny makes them vulnerable to the hard lessons of accountability.

If you lose a presidential election, don't incite a mob to overthrow the government. If you choose to join that mob, don't do it in front of an army of photojournalists while carrying a location-pinging cellphone.

And if you hold yourself up as a "patriot reporter" who tells truths that can't be found anywhere else, don't traffic in lies.

Godlewski's lies have consequences beyond his immediate family. Millions of Americans have lost parents, grandparents, siblings, children and friends to the QAnon cult. They watched in helpless horror as their loved ones were led down rabbit holes from which they may never return.

Godlewski bears some responsibility for that, but I wish him no ill. It's my hope that he'll reflect on his role in curdling the hearts and minds of people who placed their trust in him and stop pushing the poison.

In that spirit, I offer a stitch of wisdom I learned the hard way, from one patriot reporter to another: It's fun to point fingers until some jerk holds up a mirror.

CHRIS KELLY, the Times-Tribune columnist, never met a patriot who had to say so.

**Do This Instead of Cleaning Gutters (It's Genius)**
LeafFilter Partner | Sponsored

Contact the writer:

Read Next Story ❯

kellysworld@timesshamrock.com,

@cjkink on Twitter.

Read his award-winning blog at times-tribuneblogs.com/kelly.

## Chris Kelly

Chris is a columnist, blogger, editor, writing coach and old-school muckraker Read More...

**Do This Instead of Cleaning Gutters (It's Genius)**
**LeafFilter Partner** | Sponsored

Read Next Story >