**ROTHENBERG & CAMPBELL**                                    *Attorneys for the Defendants*
Ryan P. Campbell, Esq. (#317838)
Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889 || Fax: 570.207.3991
E-mail:  Hrlaw04@gmail.com || Hrlaw06@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP GODLEWSKI,** | | CIVIL ACTION—LAW |
| | Plaintiff, | *(HON. JULIA K. MUNLEY)* |
| v. | | |
| **EDUARDO NICOLAS ALVEAR** | | |
| **GONZALEZ,** *AKA* **ALVEAR GONZALEZ** | | **JURY TRIAL DEMANDED** |
| **EDUARDO NICOLAS,** *AKA* | | |
| **NICOLAS ALVEAR; and** | | |
| **GOOD LION TV, LLC,** | | |
| | Defendants | No.: 3:24—CV—00344—JKM |

## MOTION TO DISMISS FIRST AMENDED COMPLAINT, IN WHOLE OR IN PART, PURSUANT TO FED. R. CIV. P. 12(B)(6) AND, IF GRANTED IN PART, MOTION TO DISMISS REMAINING CLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(1)

**AND NOW COME** Defendants, Eduardo Nicolas Alvear Gonzalez, *aka* Alvear

Gonzalez Eduardo Nicolas, *aka* Nicolas Alvear (collectively, "Individual Defendant") and

Good Lion TV, LLC ("Corporate Defendant"), by and through their counsel, Rothenberg

& Campbell, hereby move to dismiss Plaintiff's First Amended Complaint, in whole or in

part, for failure to state a claim upon which relief can be granted and, if granted in part, to

dismiss remaining claims for lack of subject matter jurisdiction pursuant to Federal Rules of

Civil Procedure 12(b)(6) and, potentially, 12(b)(1), respectively, averring as follows:

## PRELIMINARY ARGUMENT

1.      Defendants move to dismiss Plaintiff's First Amended Complaint, in whole or in part, for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6); specifically, Plaintiff still cannot properly establish wrongful conduct, causation or damages – essential ternary elements to each of Plaintiff's sextuple state-law tort claims – as they relate to *any* of the 110 Discursive Acts cited by Plaintiff as wrongful.

2.      Additionally, should this Honorable Court only agree with Defendants in part, finding dismissal appropriate as to *less than all* 110 Discursive Acts, then Defendants move for dismissal of the entire lawsuit for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) because, after a granular factual analysis, Plaintiff is unable to establish an amount in controversy equaling $75,000.00 to a legal certainty, having admitting that his online following has *increased* since the Defendants' conduct and the filing of this lawsuit.

3.      The 110 "Discursive Acts" of particular language Plaintiff alleges Defendants to have wrongfully published, each lack a defamatory meaning, or are otherwise privileged, to the extent that each Discursive Act addresses Plaintiff as an admitted public figure and/or related to a matter of public concern and substantiated by information of public record; this fact, coupled with Plaintiff's own admissions that:  (a) he is unable to prove the falsity of his acts that serve as their factual bases; and (b) his online viewership has *actually increased* since Defendants' purported conduct and the filing of this lawsuit, doom his ability to recover civil damages.

4.      Put more succinctly, of the 110 Discursive Acts cited as wrongful by Plaintiff in his First Amended Complaint, this Honorable Court must determine of each: (a) whether Plaintiff can establish, more likely than not, that Defendants had "subjective knowledge of [its] probable falsity"; and (b) if so, whether it's a "legal certainty" that Plaintiff is unable to recover damages equaling $75,000.00, when each Discursive Act occurred amidst hundreds of thousands of other comments while Plaintiff publicly litigates civil lawsuits like this one to gain income from followers.

5.      Distilled even further, Defendants contend that if this Court were to randomly select any one of the 110 Discursive Acts, after considering its defamatory nature amidst the undisputed cascading wave of public discourse surrounding Plaintiff's actions, it will be damn-near impossible for Plaintiff to show that Mr. Alvear, ***introspectively***, was aware that what he allegedly stated was "probably false";  and, ***even if Plaintiff could prove Mr. Alvear's own phenomenological awareness of probable falsehood amongst same by clear and convincing evidence***, Plaintiff ***still*** cannot establish the requisite amount in controversy to secure federal diversity jurisdiction.[1]

6.      Conclusively, not one of the 110 Discursive Acts named by Plaintiff as wrongful constitute a claim upon which relief can be granted because each occurred amidst hundreds of thousands of similar comments about the same subject matter, based on publicly

---

[1] This is, unfortunately, a sad consequence of the 21st-century-web-based free speech platform available to large audiences: ***anyone can hit it big.***  Historically, avenues of public discourse were reserved for the meritocracy, where only the smartest, richest, most qualified, or authoritative individuals (i.e., chieftains, kings, generals, and then popes, prophets, aristocrats, and later celebrities, politicians and iconoclasts) had a place at the podium.  Nowadays, any schlub with a webcam, decent appearance and a voice can put his/her likeness online and spew all types of rhetoric to gain viewership.

available information such that anyone, including Mr. Alvear, would have no conceivable way of *subjectively* believing the claims were false.

7.      This lawsuit is a trifled game orchestrated by Plaintiff to punish a perceived enemy while simultaneously – and predatorily – attracting more victims for his financial schemes.

## OPERATIVE FACTUAL & PROCEDURAL BACKGROUND

8.      Plaintiff, Philip Godlewski ("Plaintiff") initiated the instant matter by filing a Complaint in the United States District Court for the Middle District of Pennsylvania against Eduardo Nicolas Alvear Gonzalez, *aka* Nicolas Alvear ("Mr. Alvear"), Good Lion TV, LLC ("Corporate Defendant"), and Good Lion Films, LLC ("Dismissed Defendant") on February 28, 2024.  (See ECF Doc. No. 1, *generally*).

9.      Plaintiff is a resident and citizen of the Commonwealth of Pennsylvania with a listed address of 1235 Lantern Hill Road, Shavertown, Luzerne County, Pennsylvania 18708.  (Id. at ¶ 2).

10.     Mr. Alvear is a resident and citizen of the State of Tennessee, residing at 1009 8th Avenue S., Nashville, Tennessee 37203 and acting Chief Executive Officer and duly authorized agent of Corporate Defendant.

11.     Corporate Defendant is a limited liability company organized and existing under the laws of the State of Wyoming with Company ID Number 2022—001070783 and a Registered Agent listed as Cloud Peak Law, LLC, with an address of 1095 Sugar View Drive, Ste. 500, Sheridan, Wyoming 82801.  (See ECF Doc. No. 16-1).

12.     Pursuant to this Honorable Court's Order extending Defendants' right to respond to Plaintiff's Complaint, Defendants, through undersigned counsel, filed a Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), respectively, on April 5, 2024.  (See ECF Doc. Nos. 9 and 10).

13.     On or about April 25, 2024, Plaintiff filed his First Amended Complaint in this matter by right, rendering Defendants' initial Motion to Dismiss moot.  (See ECF Doc. Nos. 22 & 23, *respectively*).

14.     In his First Amended Complaint, Plaintiff alleges essentially four (4) causes of action sounding in tort:  three (3) counts[2] of Defamation (Counts I, V & VI), False Light Invasion of Privacy (Count II), Intentional Infliction of Emotional Distress ("IIED," Count III), and Intentional Interference with Business Relationships (Count IV).  (ECF Doc. No. 22, *generally*).

15.     Plaintiff argues that Defendants have asserted, and continue to assert, that he is "a convicted pedophile, a fraud, a sexual groomer of minors and that he had a sexual relationship with a girl when she was only fifteen (15) years old[,] and he was twenty-five (25) years old" and that the 110 Discursive Acts imply that Plaintiff is "neglectful[3],

---

[2] Upon information and belief, a claim for defamation in Pennsylvania includes allegations of defamation "*per se*" and "innuendo," as both modalities are different iterations of the first element.

[3] Plaintiff admitted to corrupting a minor, writing bad checks, tampering with records, lying on his application to purchase firearms, being unfaithful to his first wife, and describing his actions as having been ordained by God using messianic language.

predatory[4], corrupt[5], sinful[6], unwholesome[7], and depraved[8]." (ECF Doc. No. 22 at ¶¶ 3 and 109).

16.     More specifically, Plaintiff cites to one hundred eleven (111) instances of alleged defamatory statements published by Defendants (the "Discursive Acts"), encompassed both in his First Amended Complaint and various exhibits attached thereto; Defendants compile these 110 Discursive Acts for demonstrative and referential purposes in a document attached hereto and marked as Exhibit "A".

17.     Plaintiff further alleges that Defendants followed the lawsuit that Plaintiff filed against the "Scranton Times and Chris Kelly, [...] extracted portions of the litigation record, [and] misconstrued selected portions to create the false impression and narrative that Plaintiff engaged in sex with a minor." (ECF Doc. No. 22 at ¶ 20). A true and accurate copy of Chris Kelly's February 2021 Scranton Times article is attached hereto and marked as Exhibit "B".

18.     Collectively, Plaintiff describes himself as an "entrepreneur with business connections and clients," arguing that Defendants maliciously and recklessly published the 110 Discursive Acts, "adversely affecting his employment," including a "loss of followers" and otherwise causing him personal injuries including "depression, anxiety, isolation,

---

[4] See ftn. 3, *supra*.
[5] See ftn. 3, *supra*.
[6] See ftn. 3, *supra*. According to the Inferno, Plaintiff's actions place him in five (5) of the nine (9) Spheres of Hell: lust, greed, heresy, fraud and treachery. Alighieri, Dante, The Divine Comedy (2009). According to the Summa Theologica, Plaintiff has committed the capital sins of lust, envy, greed and pride. Aquinas, Thomas, Summa Theologica (1964).
[7] See ftn. 3, *supra*.
[8] See ftn. 3, *supra*.

insomnia, psychological and emotional distress, irreparable damage to his reputation, and loss of standing in the community." (Id. at ¶¶ 98, 7, 102 and 90, respectively).

19.     However, Plaintiff's Complaint is silent as to what specific "employment," "business connection," or "client" has been "adversely affect[ed]"; as of December 22, 2022, the Pennsylvania State Real Estate Commission revoked Plaintiff's associate broker license and broker-multi license for five (5) years due to Plaintiff's guilty pleas to charges of tampering with records and writing bad checks.  A true and accurate copy of the Commission's 12/22/22 Order is attached hereto, incorporated herein, and marked as Exhibit "B".

20.     Beginning as early as 2018, Plaintiff began using social media to broadcast several theories surrounding QAnon[9] accompanied often by his own personal thoughts and beliefs.[10]

21.     By 2021, Plaintiff had established himself within the QAnon community, cultivating followers numbering in the hundreds of thousands[11]. (See ECF Doc. No. 1 at ¶ 2).

22.     As of April 25, 2024, Plaintiff's number of followers had ballooned into the ***millions***, an amount much larger than the one that existed prior to Plaintiff's filing his lawsuit. (See ECF Doc. No. 22 at ¶ 97; but see ECF Doc. No. 1 at ¶ 2).

---

[9] Originating in 2017, QAnon is a far-right American political conspiracy theory and political movement focused on fabricated claims made by an anonymous individual or individuals known as "Q" which are relayed and developed by online communities and influences.  QAnon's core belief is that a cabal of Satanic, cannibalistic child molesters operate a global sex trafficking ring who conspired against then-President Donald Trump, often portrayed as a hero and antagonist to the movement.  See Wikipedia.org accessed on March 28, 2024 *citing* Wendling, Mike (July 22, 2020). "QAnon: What is it and where did it come from" BBC.
[10] N. M. Ramirez.  "QAnon Influencer Sues Newspaper, Gets Exposed as Alleged Child Predator." *Rolling Stone® Magazine.* (November 30, 2022).
[11] Ramirez, (November 30, 2022).

23.     Plaintiff used his new-found online popularity and self-proclaimed messianic[12] influence to make over a million dollars in advertising revenue and content-based subscriptions, including soliciting multi-level marketing schemes[13] to his followers.[14]

24.     Plaintiff admits as much in both his rounds of pleadings, calling himself a "public figure" with a "large following."  (See ECF Doc. No. 1 at ¶ 2).

25.     In early 2021, Chris Kelly of the Scranton Times-Tribune published an editorial entitled, "QAnon Realtor Sells Rabbit Holes on YouTube."  Mr. Kelly's article reads, in part:

> [...] In 2011, the former Riverside High School baseball coach [Plaintiff] pleaded guilty to corruption of minors and admitted to having a sexual relationship with a 15-year-old girl.
>
> Lackawanna County detectives said [Plaintiff] had sex with the girl in cars and homes he had access to as a real estate agent.  [Plaintiff], 28 at the time, was sentenced to three to 23 months, with the first three months to be served under house arrest and the balance as probation.
>
> Last February, [Plaintiff] was charged with theft by deception, forgery and related charges.  Police said [Plaintiff] kited a check to an area building supplier and forged bank statements to cover it up.  [...]

See Defs.' Exh. "C".

---

[12] Plaintiff states that his popularity and newfound wealth during this period was his "reward" from "God" for "helping us get to where we are" and "once it concludes [...] God would reward [him] for the rest of [his] life and that is what He has done." (See "Greatest Fraud on Earth: the Phil Godlewski Story").

[13] One of the more successful multi-level marketing schemes recommended by Plaintiff involved the purchase and sale of silver from 7k Metals; this method involves the "upline," or upside down "V", recruiter profiting off the "downline," or base, recruit's sales and subsequent recruitment of additional downline recruits.

[14] W. Sommer.  "QAnon Leaders Push Followers Into Multi-Level Marketing." The Daily Beast. (April 15, 2022).

26.     Upon reviewing Mr. Kelly's editorial, Plaintiff brought a five-count civil lawsuit

against him, the paper's executive editor and corporate owners in the Lackawanna County

Court of Common Pleas docketed at number 2021—CV—2195 ("Times-Tribune

Lawsuit").

27.     As fact discovery progressed during the Times-Tribune Lawsuit, more information

regarding Plaintiff's past criminal activity was revealed, including Plaintiff's prior criminal

convictions[15], guilty plea colloquies[16] and the sworn testimonies of Plaintiff[17], his ex-wife

Dori Gallagher[18], and Brienna L. DuBorgel ("Brienna"), the girl with whom Plaintiff

allegedly had sex when she was fifteen (15) years-old.  A true and accurate copy of Brienna's

October 31, 2022 affidavit is attached hereto and marked as Exhibit "J".

28.     In her October 31, 2022 affidavit, Brienna testified that she engaged in an

approximately year-long sexual relationship with Plaintiff beginning when she was a fifteen-

year-old freshman at Riverside High School and he was twenty-five (25) years old where

Plaintiff purchased her gifts and communicated with her regularly.  See Defs.' Exh. "J" at ¶¶

6—8.

29.     Brienna also testified that Plaintiff continued to speak with her *after* he was charged

with eight (8) criminal counts, urging her to stop cooperating with the Lackawanna County

---

[15] True and accurate copies of Plaintiff's prior criminal docket sheets are attached hereto and marked as
Exhibits "D," "E" and "F", respectively.
[16] A true and accurate copy of Plaintiff's guilty plea colloquy from the 2010 case involving inappropriate
sexual contact with a minor is attached hereto and marked as Exhibit "G".
[17] A redacted and accurate copy of Plaintiff's sworn deposition is attached hereto and marked as Exhibit "H".
[18] A redacted and accurate copy of Dori Gallagher's sworn deposition is attached hereto and marked as
Exhibit "I".

District Attorney's Office and threatening suicide if Brienna testified against him, prompting her to stop cooperating in the investigation.[19]  See Defs.' Exh. "J" at ¶¶ 10—13.

30.     Three years later, Brienna turned eighteen (18) and Plaintiff resumed his sexual relationship with her.  Id.

31.     Upon review of Brienna's 2022 Affidavit, Plaintiff brought a two-count civil lawsuit against Brienna in the Lackawanna County Court of Common Pleas docketed to number 2023—CV—1354 (the "DuBorgel Lawsuit").

32.     On May 3, 2023, Brienna's counsel filed her Answer to Plaintiff's Complaint with New Matter and a six-count Counterclaim, to which she attached an Affidavit dated March 28, 2023.  A true and accurate copy of Brienna's 2023 Affidavit is attached hereto and marked as Exhibit "K".

33.     In support of her testimony, Brienna attached over a thousand textual messages[20] purportedly exchanged between her and Plaintiff over a two-week period beginning around February 24, 2010 through March 12, 2010.  See Defs.' Exh. "K" pp. 2790—2905.

---

[19] The Docket Sheet evidences Plaintiff's Motion to Withdraw Guilty Plea filed by his then-attorney, Joseph D'Andrea, Esquire just shy of the sixty (60) day deadline but after Brienna decided not to testify against him. See Defs.' Exh. "D".

[20] In this two-week period, Plaintiff refers to sex with Brienna at least a dozen times, telling Brienna that he "loves" her more than 100 times. See Defs.' Exh. "K", *generally*.

34.     This information – made public[21] by the parties' various respective filings in the Times-Tribune and DuBorgel Lawsuits[22] – coupled with Plaintiff's notoriety in the QAnon universe and related outspoken opinions, attracted national attention, culminating in several articles about Plaintiff, his criminal past, conspiracy theorist present, and litigious future.

35.     Almost immediately, these articles went "viral," exponentially disseminated and shared by thousands of users on dozens of national and international online communities and becoming a matter of public record and concern.[23]

36.     Individual Defendant, Mr. Alvear – a documentary filmmaker and fellow outspoken social media figure – came to know about Plaintiff during this time.

37.     The perceived irony in reconciling Plaintiff's present status in the QAnon community with his criminal past in his local community seemed to Mr. Alvear the perfect subject for a documentary film.

38.     So, he made one.

39.     "The Greatest Fraud on Earth: The Phil Godlewski Story" is a film created and directed by Individual Defendant and produced by Corporate Defendant that includes scenes depicting Plaintiff's own words, postings and videos inter-cut with visual and audio

---

[21] In 2022, dozens of media companies including The Daily Beast™, Rolling Stone™ Magazine, The Independent™, George Magazine™, Yahoo News™, The Daily Kos™, Jezebel™, and the Scranton Times-Tribune, each published respective articles on Plaintiff, reporting on subjects including Plaintiff's criminal history, involvement with QAnon, the Times-Tribune Lawsuit and his multi-level marketing campaigns directed at his followers.  These stories were then posted, re-posted, commented on, and further virally disseminated by users on social media platforms like FaceBook®, Reddit®, TikTok®, Tumblr®, InstaGram®, X™ and others.

[22] See Public Docket Sheets for the Times-Tribune and DuBorgel Lawsuits and their respective filings.

[23] See United States v. Thomas, 905 F.3d 276, 280 (3d Cir. 2018); Dombrowski v. Bell Atlantic Corp., 128 F.Supp.2d 216, 217 (E.D. Pa. 2000) (quoting Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984)); and Zdrok v. Zdrok, 829 A.2d 697, 699 (Pa. Super. 2003).

depictions of the evidence produced[24] during the Times-Tribune and DuBorgel Lawsuits, respectively.  (See ECF Doc. No. 1-10).

40.     Individual Defendant also participated in general online discussion and commentary regarding Plaintiff as a public figure on several social media accounts.

41.     This public information served as the basis for all of Defendants' conduct Plaintiff cites as wrongful in his Complaint.[25]

42.     Taken together, the information divulged and publicized in Plaintiff's *other* lawsuits[26] defeat his claims for relief *in this* lawsuit.

---

[24] Defendants attach true, accurate and redacted copies of selected pages from Plaintiff's sworn testimony taken from the respective dockets for the Times-Tribune and DuBorgel Lawsuits, collectively marked as Exhibit "L".  Often, when Plaintiff is asked a direct question where independent evidence suggests he previously provided an answer inconsistent with his current theory of the case, he re-frames the initial question by injecting some "truth" or "fact" known only to him, then uses that presumption to attack the evidence as unreliable.  After inciting enough doubt, Plaintiff provides his opinion answer to ***his own*** question, seemingly confirming that he "sees more than everyone else".  Stated differently, Plaintiff is smart enough to understand the persuasive effectiveness of this rhetorical technique –the fallacy of misplaced presumption – but not strong enough to refrain himself from proselytizing *his own particular viewpoint* on the matter.  Admittedly, he's quite good at it.  But these rhetorical devices are old hat, employed by propagandists throughout history.  Darius I utilized a similar method to deify himself as the "King of Kings", earning him the Persian throne in 515 BCE.  Five centuries later, both the Gracchi brothers and Julius Caesar each employed similar tactics to gain political control over the *populares* in ancient Rome.  Reformation protestants used propaganda to eliminate their Catholic rivals, and even Benjamin Franklin hawked pamphlets of misinformation about non-existent Native American violence against colonists to stoke fear and support for the American Revolution.  Perhaps most well-known, Benito Mussolini and Joseph Goebbels used this technique to spread fascism in their respective European countries.  Plaintiff's version invokes the same rhetorical devices used in propaganda (fear, glittering generalities, misplaced presumption, name calling, bandwagon, etc.)  But, unlike those historical figures who adeptly employed propaganda in the service of power, Plaintiff is unable to hide his ultimate goal: benefitting himself.  Plaintiff's uncontrollable desire for respect, attention, wealth and notoriety unintentionally ruins the ruse, revealing this true goal: it's always about him.  He made a similar mistake in the QAnon community, transgressing the norm by exploiting his popularity to promote himself over the "cause".  Subsequent resentment towards Plaintiff grew exponentially, and later exploded after the Times-Tribune and DuBrogel lawsuits.

[25] True and accurate copies of defendants' Motion for Summary Judgment and Brief in Support thereof from the Times-Tribune Lawsuit and Brienna's Answer with New Matter and Counterclaims without their respective exhibits are each attached and incorporated herein, marked as Exhibits "M," "N" and "O", respectively.

43.   Put another way, Plaintiff's failure to articulate his specific injury caused by Defendants *in this lawsuit* coupled with the public information revealed in Plaintiff's *prior lawsuits*, result in Plaintiff's inability to show how any of the 110 Discursive Acts satisfy all three essential elements of each alleged tort[27]: wrongful conduct, causation and damages.

44.   In fact, Plaintiff's own pleadings show a marked increase in "followers", and he has repeatedly communicated publicly that the Scranton Times, DuBorgel and Alvear Lawsuits all have collectively ***increased*** his viewership and corresponding profits.  True and accurate copies of these statements are attached hereto and marked collectively as Exhibit "P".

### MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 12(B)(6)

45.   Defendants reaver, reallege and incorporate their allegations made in Paragraphs one (1) through forty-four (44), *supra*, as if more fully set forth at length herein.

46.   Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." F.R.C.P. 12(b)(6); Fraser v. Pennsylvania State University, 654 F.Supp.3d 443, 453 (M.D. Pa. 2023).

47.   Following Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

---

[27] As will be explained in their Brief in Support, Defendants invite this Honorable Court to examine each of the 110 Discursive Acts amidst the factual background contoured by the parties' pleadings – a background colored by facts admitted or assumed true for purposes of this Motion – to discover that none are legally recoverable.  Assuming this Honorable Court instead finds that one or more Discursive Acts survive dismissal at this stage, then Defendants respectfully request confirmation of subject matter jurisdiction by re-examining the legal certainty of Plaintiff's recovery of $75,000.00 based on those few remaining statements.

'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. 662, 678 (U.S. 2009) (quoting Twombly, 550 U.S. 544, 570 (U.S. 2007)).

48.     In deciding a motion to dismiss, courts within the United States Court of Appeals for the Third Circuit must follow three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of all well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief.  Fraser, 654 F.Supp.3d at 453 ftn. 57 (citing Connelly v. Lane Construction Corp., 809 F.3d 780, 787 (3d Cir. 2016)).

49.     Counts I, V and VI (collectively, Defamation) and II (False Light Invasion of Privacy) of Plaintiff's First Amended Complaint must be dismissed because all 110 Discursive Acts and related publications cited therein are true, not defamatory and/or are protected under the First Amendment of the U.S. Constitution.  See Graboff v. Colleran Firm, 744 F.3d 128 (3d Cir. 2014).

50.     Alternatively, Plaintiff, a public figure[28] speaking about matters of public concern, is unable to prove by clear and convincing evidence that Defendants' alleged 111 defamatory statements are false and published with actual malice.  See Phila. Newspapers. v. Hepps,

---

[28] Although Plaintiff has twice admitted to being a "public figure" in pleadings, he appears to be walking back this admission, claiming now to be a "private citizen" for purposes of his First Amended Complaint. Undoubtedly, Plaintiff is a "limited purpose public figure" as contoured by Third Circuit caselaw. Specifically, whether a Plaintiff qualifies as a "limited purpose public figure" is a question of law to be determined by the District Court and hinges on "(1) whether the alleged defamation involves a public controversy, and (2) the nature and extent of plaintiff's involvement in that controversy." McDowell v. Paiewonsky, 769 F.2d 942, 948 (3d Cir. 1985).  More succinctly, for the Court to determine Plaintiff a "limited purpose public figure, [Plaintiff] must voluntarily *thrust himself into the vortex of the dispute*." Marcone v. Penthouse Int'l Magazine for Men, 754 F.2d 1072, 1083 (3d Cir. 1985) (*emphasis added*).

475 U.S. 767, 770 (U.S. 1986); <u>Graboff</u>, 744 F.3d at 135—137; <u>McDowell v. Paiewonsky</u>, 769 F.2d 942, 947 (3d Cir. 1985); <u>see also</u> <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 279-80 (U.S. 1964); <u>Tucker v. Philadelphia Daily News</u>, 848 A.2d 113, 127-128 (Pa. 2004); and <u>Dibella v. Hopkins</u>, 403 F.3d 102 (2d Cir. 2005).

51.     Counts III (IIED) and IV (Intentional Interference with Business Relationships) of Plaintiff's First Amended Complaint should be dismissed because Plaintiff is unable to prove Defendants' joint and/or individual conduct was wrongful and/or that said conduct actually caused Plaintiff's injuries, which, as written, consist of pure speculation, are insufficiently specific[29] and otherwise unrecoverable under the law.

52.     Put differently, Defendants' statements and related publications cited in Plaintiff's Complaint are privileged, justified, constitutionally protected and not the type of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." <u>Davis v. Wigen</u>, 82 F.4[th] 204, 216 (3d Cir. 2023) (*quoting* <u>Hoy v. Angelone</u>, 720 A.2d 745, 753 (Pa. 1998)).

53.     As such, Plaintiff's First Amended Complaint must be dismissed, in whole or in part, for failure to state a claim upon which relief can be granted[30] pursuant to Rule 12(b)(6).

---

[29] Despite nearly doubling his number of paragraphs in this second round of pleadings, Plaintiff's own words belie a specific injury.  Plaintiff lobbies around nebulous words like "entrepreneur," "employment," "business connections," and "clients" with nary a detail as to what kind of "entrepreneur" he is, or what specific "employment," "business connection" or "client" exists, let alone been lost or adversely affected by the 110 Discursive Acts.  Defendants know *less* about Plaintiff's occupation now than they did in round one.

[30] When appropriate, a district court may "convert" a motion to dismiss into a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d) by ensuring both that "the materials submitted require conversion" and that the parties have "adequate notice of the [...] court's intention to convert."  <u>In re Rockefeller Ctr. Props., Inc. Sec. Litig.</u>, 184 F.3d 280, 287 (3d Cir. 1999).

**WHEREFORE**, Defendants, Eduardo Nicolas Alvear Gonzalez, *aka* Alvear Gonzalez Eduardo Nicolas, *aka* Nicolas Alvear and Good Lion TV, LLC, by and through their counsel, Rothenberg & Campbell, respectfully move to dismiss Plaintiff's First Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and seek an Order from this Honorable Court **GRANTING** their Motion to Dismiss, and **DISMISSING** Plaintiff's First Amended Complaint, in whole or in part, with prejudice, along with any other relief this Honorable Court finds fair and just.

## ADDITIONALLY, MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(1)

54.     Defendants reaver, reallege and incorporate their allegations made in Paragraphs one (1) through fifty-three (53), *supra*, as if more fully set forth at length herein.

55.     Federal Rule of Civil Procedure 12(b)(1) authorizes a party to move to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).

56.     A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack; the former challenges subject matter jurisdiction without disputing the facts allege in the complaint – assuming each allegation as true – whereas the latter, a factual challenge, attacks the factual allegations underlying the complaint's assertion of jurisdiction by presenting "competing facts."  Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016) (*quoting* Constitution Party of Pa. v Aichele, 757 F.3d 347, 358 (3d Cir. 2014)).

57.     A factual challenge permits "a court [to] weigh and consider evidence outside the pleadings" such that a plaintiff "will have the burden of proof that jurisdiction does in fact

exist," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. (citation omitted).

58.     "District courts shall have original jurisdiction of all civil actions where ***the matter in controversy exceeds the sum or value of $75,000.0, exclusive of interest and costs***, and is between – (1) citizens of different States." 28 U.S.C. § 1332(a)(1) (***emphasis added***).

59.     Plaintiff bears the burden of satisfying the subject matter jurisdictional threshold at the motion to dismiss stage, the Third Circuit having held:

> [T]hat burden is not especially onerous. In reviewing the complaint, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. Accordingly, the question whether a plaintiff's claims pass the "legal certainty" standard is a threshold matter that should involve the court in only minimal scrutiny of the plaintiff's claims.

Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 395 (3d Cir. 2016) (internal quotations and citations omitted).

60.     Where the parties dispute the underlying facts concerning the jurisdictional amount requirement, "the trial court is free to weigh the evidence," and determine the facts "by a preponderance of evidence." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F2d 884, 891 (3d Cir. 1977).

61.     After all disputes related to jurisdictional facts are settled, a federal court must remand a matter or otherwise dismiss same if it apparent, to a "legal certainty," that the plaintiff cannot recover an amount exceeding the jurisdictional requirement. ACE American Ins. Co. v. Guerriero, 738 F.App'x 72, 76 (3d Cir. 2018).

62.     Should this Honorable Court disagree with Defendants, dismissing *less than* all 110 Discursive Acts alleged wrongful by Plaintiff, then this Honorable Court should confirm subject matter jurisdiction by re-examining those remaining statements to determine whether, even if facially defamatory or otherwise recoverable, it is a "legal certainty" that Plaintiff will be unable to recover a sum exceeding the jurisdictional threshold of $75,000.00.

63.     Therefore, assuming *arguendo* that this Honorable Court finds less than all 110 Discursive Acts survive Defendants' initial Rule 12(b)(6) Motion to Dismiss, those few remaining acts render Plaintiff's inability to show damages equal to the jurisdictional threshold to sustain subject matter jurisdiction a "legal certainty," necessitating dismissal pursuant to Fed. R. Civ. P. 12(b)(1).

**WHEREFORE**, Defendants, Eduardo Nicolas Alvear Gonzalez, *aka* Alvear Gonzalez Eduardo Nicolas, *aka* Nicolas Alvear and Good Lion TV, LLC, by and through their counsel, Rothenberg & Campbell, respectfully move to dismiss any remaining claims contained in Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and seek an Order from this Honorable Court **GRANTING** their Motion to Dismiss by **DISMISSING** same, without prejudice, along with any other relief this Honorable Court finds fair and just.

*[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK – SIGNATURES ON NEXT PAGE]*

Respectfully Submitted,

**ROTHENBERG & CAMPBELL**

By: _____

Ryan P. Campbell, Esquire (PAID: 317838)
345 Wyoming Ave., Ste. 210
Scranton, PA 18503
p. 570.207.2889 || e. HRLaw04@gmail.com

_____

Dave W. Rothenberg, Esquire (PAID: 326483)
345 Wyoming Ave., Ste. 210
Scranton, PA 18503
p. 570.207.2889 || e. HRLaw06@gmail.com

*ATTORNEYS FOR DEFENDANTS*

Date:  May 10, 2024

**ROTHENBERG & CAMPBELL**                                    *Attorneys for the Defendants*
Ryan P. Campbell, Esq. (#317838)
Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889 || Fax: 570.207.3991
E-mail:  Hrlaw04@gmail.com || Hrlaw06@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP GODLEWSKI,** | | |
| | Plaintiff, | CIVIL ACTION—LAW & EQUITY |
| v. | | *(HON. JULIA K. MUNLEY)* |
| **EDUARDO NICOLAS ALVEAR** | | |
| **GONZALEZ,** *AKA* **ALVEAR GONZALEZ** | | **JURY TRIAL DEMANDED** |
| **EDUARDO NICOLAS,** *AKA* | | |
| **NICOLAS ALVEAR; and** | | |
| **GOOD LION TV, LLC,** | | |
| | Defendants | No.: 3:24—CV—00344—JKM |

## CERTIFICATE OF NON-CONCURRENCE

I, Ryan P. Campbell, Esquire, on behalf of Defendants, do hereby certify that I sought concurrence in Defendants' Motion to Dismiss Plaintiff's First Amended Complaint by e-mail on May 1, 2024 to Plaintiff's counsel, Timothy M. Kolman, Esq. and that Plaintiff does not concur in the instant motion.

**ROTHENBERG & CAMPBELL**

By: _____
Ryan P. Campbell, Esquire
*ATTORNEY FOR DEFENDANTS*

Date: May 10, 2024

**ROTHENBERG & CAMPBELL**                                    *Attorneys for the Defendants*
Ryan P. Campbell, Esq. (#317838)
Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889 || Fax: 570.207.3991
E-mail:  Hrlaw04@gmail.com || Hrlaw06@gmail.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PHILIP GODLEWSKI,**<br><br>Plaintiff,<br><br>v.<br><br>**EDUARDO NICOLAS ALVEAR GONZALEZ,** *AKA* **ALVEAR GONZALEZ EDUARDO NICOLAS,** *AKA* **NICOLAS ALVEAR; and GOOD LION TV, LLC,**<br><br>Defendants | CIVIL ACTION—LAW & EQUITY<br>*(HON. JULIA K. MUNLEY)*<br><br>**JURY TRIAL DEMANDED**<br><br>No.:  3:24—CV—00344—JKM |

### CERTIFICATE OF SERVICE

I, Ryan P. Campbell, Esquire, on behalf of Defendants, do hereby certify that I sent a true and accurate copy of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint with appended Exhibits in the above-captioned case on this **10th day of May, 2024** to the below named individuals *via* ECF and Electronic Mail addressed as follows:

> Timothy M. Kolman, Esq.
> e.  tkolman@kolmanlaw.com
> *ATTORNEYS FOR PLAINTIFF*

**ROTHENBERG & CAMPBELL**

By: _____
Ryan P. Campbell, Esquire
*ATTORNEY FOR DEFENDANTS*

Date:  May 10, 2024

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PHILIP GODLEWSKI,** | **CIVIL ACTION—LAW & EQUITY** |
| Plaintiff, | *(HON. JULIA K. MUNLEY)* |
| v. | |
| **EDUARDO NICOLAS ALVEAR** | |
| **GONZALEZ,** *AKA* **ALVEAR GONZALEZ** | **JURY TRIAL DEMANDED** |
| **EDUARDO NICOLAS,** *AKA* | |
| **NICOLAS ALVEAR; and** | |
| **GOOD LION TV, LLC,** | |
| Defendants | No.: 3:24—CV—00344—JKM |

## ORDER

AND NOW, this _____ day of _____, 2024, upon consideration of Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(1), responses thereto, and having determined that Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted and, any remaining claims destroying subject matter jurisdiction, it is hereby **ORDERED** and **DECREED** that Defendants' Motion is **GRANTED**.

**IT IS HEREBY ORDERED** that Plaintiff's Complaint (ECF Doc. No. 22) is hereby **DISMISSED**, due to a failure to state a claim upon which relief can be granted with any remaining claims destroying subject matter jurisdiction and would otherwise be **DISMISSED**, with prejudice.

The Clerk is instructed to amend the docket accordingly to reflect this Order and close the matter.

BY THE COURT:


_____J.
HON. JULIA K. MUNLEY, J.