GODLEWSKI V. ALVEAR, NO. 3:24—CV—00344 (JKM)
DEFS.' MOT. TO DISMS.

# EXHIBIT "M"

PHILIP GODLEWSKI,                    :    IN THE COURT OF COMMON PLEAS
     Plaintiff                   :    OF LACKAWANNA COUNTY
                                 :
     v.                          :    CIVIL DIVISION
                                 :
CHRIS KELLY, et al.                  :    JURY TRIAL DEMANDED
     Defendants.                 :
                                 :    No.: 2021-CV-2195

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, Chris Kelly and The Scranton Times, L.P. (collectively referred to herein as "Defendants"), by and through their counsel, hereby file this Motion for Summary Judgment seeking the dismissal of all claims made by Plaintiff Philip Godlewski (referred to herein as "Plaintiff" or "Godlewski") and state as follows:

1.    Plaintiff, Phillip Godlewski, filed a Complaint against Defendants on May 24, 2021.

2.    Plaintiff' Complaint alleges Defendants defamed him in an article published on February 14, 2021 in the Times-Tribune newspaper (referred to herein as the "article"). (Complaint, ¶ 1.) (A true and correct copy of the article with numbers added next to each paragraph is marked as **Exhibit "A"** and attached hereto.)

3.    The article, in form and substance, is an opinion column that appeared in the Perspective section of the Sunday newspaper.

4.    Plaintiff describes himself as a "citizen reporter" and "patriot reporter" with over 75,000 social media followers. (See Complaint, ¶¶ 2 and 89 and the 2/14/21 Article, ¶¶ 10 and 18.)

5.    On the day the article was published Plaintiff made posts on multiple social media platforms sending a link to the article for thousands of people to read it along with the message:

1



"They attempt at silencing our movement continues. It will fail." (See Plaintiff's social media posts attached hereto and marked as **Exhibit "B".)**

6.    Plaintiff also posted "I will be suing the Scranton Times Tribune for Defamation and Libel. I was hoping the reporter would do exactly what he did. He took the bait." (**Exhibit "B".)**

7.    Right after the article was published Plaintiff also posted on social media the following:

> "Things are very, very shakey right now, at best. I am very carefully navigating the waters. I purchased an AR-15 today, as well as a handgun for my wife, both for home/personal protection. I've never owned a weapon until now." (See Plaintiff's social media post attached hereto and marked **Exhibit "C".)**

8.    He admitted in his deposition he did not purchase an AR-15 due to the article or a handgun for his wife. (A true and correct copy of select pages from Philip Godlewski's deposition of 7/25/23 are marked as **Exhibit "D"** and attached hereto. See **Exhibit "D"**, pp. 287-289.)

9.    On January 18, 2023, the Court entered an Order stating Plaintiff Philip Godlewski shall be deemed to be a public figure with regard to his legal claims presented here.

10.    On January 18, 2023, the Court also filed an Order dismissing with prejudice all of Plaintiff's claims for economic or special damages.

11.    On January 2, 2024, the Court executed an Order dismissing Defendant Larry Holeva from the case.

12.    The main focus of the article is about Plaintiff being a QAnon broadcaster in our community with thousands of followers and the columnist's opinions about the absurdity and harmful affects of the QAnon movement.

13.    The core belief of the QAnon movement is that a cabal of satanic, cannibalistic

2

child molesters are operating a global child sex trafficking ring.

14.    QAnon theorists claim the cabal tortures children to extract adrenochrome from terrorized children and that adrenochrome is an elixir of youth which is ingested by cabal members.

15.    QAnon disseminators also broadcast the message that President Trump and his administration secretly fought the cabal of pedophiles when President Trump was in office.

16.    The opinion columnist, Chris Kelly, referred to Plaintiff's criminal charges and his conviction for corrupting a minor given the irony of Plaintiff's now being a leading QAnon movement broadcaster.

17.    The article pointed out that Plaintiff pled guilty to a corruption of a minor charge in 2011 which Plaintiff admits is true, and the article states he admitted to having a sexual relationship with the minor victim in connection with his guilty plea, which Plaintiff claims is false.

18.    The article also noted that "Lackawanna County detectives said Godlewski had sex with the [minor] girl in cars and homes he had access to as a real estate agent." Plaintiff admits these facts are true. (A true and correct copy of Plaintiff's Response to Defendants' Interrogatories (Set II) No. 1 is marked as **Exhibit "E"** and attached hereto, see Answer to Interrogatory No. 1.)

19.    Plaintiff claims he never had sex with the minor and he never admitted to having sex with the minor as part of his guilty plea. (Complaint, ¶¶ 87, 96 and 111.)

20.    The article states Plaintiff sells his QAnon nonsense and spreads lies to his followers on social media.

21.    The article includes Chris Kelly's opinions that QAnon is a cult whose followers

are being misled into believing in an alternate reality.

22.    The Complaint includes claims for defamation (Counts I-III), invasion of privacy (Count IV), interference with existing contractual relations (Count V) and interference with prospective contractual relations (Count VI).

23.    The Court entered a Case Management Order which closed discovery on December 31, 2023. (See Court Order dated July 11, 2023.)

24.    Since Plaintiff is a public figure the law imposes the burden on him to prove the alleged defamatory statements in the article are false.

25.    Plaintiff cannot prove by clear and convincing evidence he did not have a sexual relationship with the minor victim, or that he pled guilty to corrupting the minor for acts other than those alleged in the Criminal Complaint.

26.    With regard to whether he had sex with the minor victim, Plaintiff testified in his deposition "I can't prove that something didn't happen in this case." (See **Exhibit "D"**, pages 212-213 and 251-252.)

27.    Godlewski also testified "I can't prove a negative" and "I don't have to prove anything" when he was questioned about sex with the minor. (See **Exhibit "D"**, p. 252.)

28.    Plaintiff conceded that his corruption charge in the Criminal Complaint was for having sex with a minor child. (See **Exhibit "D"**, p. 228.)

29.    Godlewski testified that according to his guilty plea he admitted doing the things he was "charged with." (See **Exhibit "D"**, pp. 235-241, specifically p. 240.)

30.    Now in this lawsuit Godlewski is just "telling you in my opinion how I corrupted Brie." (See **Exhibit "D"**, p. 250.)

31.    Interestingly, Plaintiff did not think it was wrong to engage in sex with the minor

4

victim in 2013 (when the minor victim was 19 or 20) even though he pled guilty to corrupting

her in 2011 since he was having severe problems in his marriage. (A true and correct copy of the

herein referenced pages of the 2/6/23 Court Hearing transcript are attached hereto and marked as

**Exhibit "F"**, see pp. 83-86.)

32.    Since Plaintiff cannot prove any of the alleged defamation statements are false,

Counts I, II, and III of the Complaint must be dismissed.

33.    If Plaintiff somehow proves that any of the alleged defamatory statements in the

article were false, Plaintiff then has the burden to prove, by clear and convincing evidence, that

such false statement was made with actual malice.

34.    Actual malice requires Plaintiff to prove with clear and convincing evidence the

Defendants *knew* the defamatory statements were false at the time of publication or that they

*acted with reckless disregard* as to whether the defamatory statements were true or false at the

time of publication.

35.    In order to prove *reckless disregard* Plaintiff must produce sufficient evidence to

permit the conclusion that Defendants in fact entertained *serious doubts* as to the truth of his

published statements.

36.    The standard is a subjective one - - there must be sufficient evidence to permit the

conclusion that the defendant actually had a high degree of awareness of ...probable falsity.

*Harte-Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 688 (1989).

37.    Indeed, "the actual malice standard is a vigorous, if not impossible, burden to

meet in most circumstances." *Bartlett v. Bradford Publ'g Inc.*, 885 A. 2d 562, 566 (Pa. Super.

2005).

38.    The author of the article, Chris Kelly, has testified he absolutely believed and still

5

believes today Godlewski had sex with the victim when she was a minor. (A true and correct copy of select pages from Chris Kelly's deposition are marked as **Exhibit "G"** and attached hereto. See **Exhibit "G"**, pp. 56-58.)

39.    Chris Kelly also spoke to a confidential source who was in a position to know and this reinforced his belief that Godlewski's guilty plea was based on Godlewski's guilt to the sex charge. (See **Exhibit "G"**, p. 62.)

40.    Chris Kelly's pre-publication investigation included his review of the news article written by Denis O'Malley on July 12, 2011 under the headline: "Ex-baseball coach sentenced for sex with girl, 15". (See **Exhibit "G"**, pp. 45.) (A true and correct copy of the July 12, 2011 news article is marked as **Exhibit "H"** and attached hereto.)

41.    Since Plaintiff cannot sustain his burden to prove the defamatory statements were made with actual malice by clear convincing evidence, Counts I, II and III of the Complaint must be dismissed.

42.    Some of the statements in the article upon which Plaintiff bases his claims are just not capable of defamatory meaning.

43.    Some of the statements in the article are legally protected opinions and thus not actionable.

44.    For example, the reference to Godlewski as being a "purveyor of a poison" is simply a figure of speech and Chris Kelly's legally protected opinion.

45.    Any statements in the article which are taken from the Court records of Plaintiff's 2010-11 criminal case and the search warrant served on Plaintiff are protected by the Fair Report Privilege.

46.    For example, the statements in the article that Plaintiff pled guilty to a corruption

of minors charge and detectives said Godlewski had sex with the girl in cars and homes he had access to as a real estate agent are protected by the Fair Report Privilege since they were made as part of an official proceeding. (See **Exhibit "A"**, ¶¶ 21 and 22.)

47.     Plaintiff's False Light claim (Count IV of the Complaint) should be dismissed since the article was of legitimate concern to the public, the facts stated in the article were not private facts nor are they highly offensive to a reasonable person.

48.     Plaintiff, as a public figure, must also prove actual malice as to the statements relating to his False Light claim. Since he cannot meet this burden of proof, this claim must be dismissed.

49.     Plaintiff has failed to prove the necessary elements for a defamation claim under 42 Pa. C.S. § 8343.

50.     Plaintiff has failed to produce evidence he has suffered harm to his reputation which has "grievously fractured" his standing in the community of reputable society and thus he cannot sustain a defamation cause of action.

51.     Godlewski acknowledges that he was a "very bad" person and then he found God around the time he went to jail in the summer of 2021 due to another criminal case. (See **Exhibit "D"**, pages 309-310.)

52.     Plaintiff has not produced any evidence of harm to his reputation.

53.     Plaintiff's claims for interference with existing contractual relations and interference with prospective contracted relations (Counts V and VI of the Complaint) fail as a matter of law since his claims for economic or special damages have already been dismissed by the Court and this type of damage is a required element for these claims.

54.     Counts V and VI are specifically directed to Plaintiff's loss of business (economic

damages) as a realtor.

55.    Counts V and VI should be dismissed also since Plaintiff's license to sell real estate in Pennsylvania was revoked by the Pennsylvania Real Estate Commission on December 22, 2022 and Plaintiff testified he had no intention of selling real estate again. (A true and correct copy of the Final Adjudication and Order from the State Real Estate Commission is marked as **Exhibit "I"** and attached hereto; and see **Exhibit "D"**, pp. 211 and 313.)

56.    Plaintiff was charged with passing a bad check and tampering with bank records in 2020, prior to the publication of the article.

57.    Plaintiff failed to self-report his arrest in 2020 or his subsequent guilty plea or convictions to the PA Real Estate Commission.

58.    Plaintiff pled guilty to these crimes on February 21, 2021, which was one week after the article was published.

59.    Plaintiff was sentenced to one (1) to forty-four (44) months of imprisonment, followed by three (3) months of house arrest and one (1) year consecutive supervised probation.

60.    Plaintiff has no evidence of any existing contractual relations or prospective relations which were interfered with by Defendants.

61.    Plaintiff's claims seeking punitive damages must be dismissed since he has failed to prove Defendants acted with actual malice and common law malice when publishing the article about him.

62.    Plaintiff's first position in this case as to whether he had sex with the minor victim was in his verified answer to an interrogatory where he stated he never had sex with Brienna DuBorgel, the minor victim. (A true and correct copy of Plaintiff's Response to Defendants' Interrogatories (Set IV) No. 7 is marked as **Exhibit "J"** and attached hereto, see

8

Answer to Interrogatory No. 7.)

63.    Later in the case, after Brienna DuBorgel's text messages came out in discovery, Plaintiff testified at a Court hearing he started having sex with the victim after she turned 18. (See **Exhibit "F"**, pp. 85-86.)

64.    Plaintiff wants the Court to believe his word against the word of the minor victim he pled guilty to corrupting.

65.    With regard to his credibility, Plaintiff has been convicted recently of multiple *crimen falsi* crimes, including Tampering with Records or Identification and Bad Checks on June 22, 2021 and giving False Statements under Penalty on August 10, 2022. (True and correct copies of Plaintiff's guilty pleas to these crimes are attached hereto and marked as **Exhibit "K"**.)

66.    Plaintiff has also broadcast to his social media followers he has many degrees, including a degree and a certificate from Harvard University and a certificate from Regent University.

67.    Plaintiff even served a verified supplemental discovery response claiming Plaintiff "was at Regent University pursuing a master in the arts of law and alternative dispute online. From 2019 to 2020 he took a course 'Mastery of Negotiation' at the Harvard business school." (A true and correct copy of Plaintiff's verified Supplement Response to Defendants' Discovery is attached hereto and marked as **Exhibit "L"**, see p. 2.)

68.    Defense counsel deposed representatives of Harvard University and Harvard Business School and served a subpoena on Regent University for any records it has regarding Philip Godlewski.

69.    Harvard University, Harvard Business School and Regent University responded they have no records on Philip Godlewski and affirmed he never attended a program or obtained

9

a certificate or degree from their schools.

70.    When confronted with this information at his deposition, Plaintiff testified he has no degrees and he must have gotten "duped" somehow and he guesses he did not really take classes from these institutions. (See **Exhibit "D"**, pp. 24-25, 142-143, and 276-277.)

71.    During the pendency of this lawsuit Godlewski even offered the minor victim, Brienna DuBorgel, who is now thirty years old, a bribe of fifty thousand dollars ($50,000) if she would testify she was eighteen years of age when they started having sex. (See **Exhibit "F"**, pp. 32-34.)

72.    Prior to this in-person bribe offer, Plaintiff admits he sent Brienna a text stating "there is a very, very large, and very, very unique financial opportunity that exists in front of you." (A true and correct copy of the text messages referenced herein between Godlewski and Brienna are marked as **Exhibit "M"** and attached hereto, see p. 1459.)

73.    Godlewski sent Brienna further text messages stating the opportunity "involves the both of us. But it wont work with just one of us." And said he needed to speak with her in person, no text or phone. His text to her described it as a "a very delicate situation, and unless it's handled properly by both of us, we stand to benefit absolutely nothing." He said there is a "financial windfall here." (See **Exhibit "M"**, p. 1468.)

74.    When confronted with these texts in Court, Godlewski claims he was offering Brie an opportunity to get her involved in "an IRA, 401k rollover company" focused on precious metals and the texts had nothing to do with the Scranton Times. (See **Exhibit "F"**, pp. 116-127.)

75.    Brienna is the same person who reported to the police in 2010 she was in a sexual relationship with Godlewski leading to his arrest and the same person Godlewski described as "conniving" and a "lunatic" throughout the entire time he has known her. (See **Exhibit "D"**, pp.

72, 81-82, 114-115, 302.)

76.    Godlewski has no credibility.

77.    When Godlewski was asked why he had sex with Brienna who he considered her to be a lunatic, he said "I wasn't thinking about anything but sex." (See **Exhibit "D"**, pp. 195-196.)

78.    Godlewski's testimony was as follows:

Q. Okay. Why did it happen repeatedly with Brie? Why did you repeatedly have sex with her?
A. It was good sex.
Q. Were you using her for sex?
A. Yes -- not just for sex. I wouldn't say using her for sex. So I'm going to say no to that if I can correct. I was using it as a medicine for loss. I was really messed-up then.

(See **Exhibit "D"**, pp. 118.)

79.    Defendants have substantial evidence that Godlewski was in a sexual relationship with Brienna when she was a minor including very incriminating text messages from 2010 which will be attached to Defendants' Brief.

WHEREFORE, Defendants, Chris Kelly and The Scranton Times, L.P., respectfully request that their motion for summary judgment be granted and all of Plaintiff's claims be dismissed with prejudice.

RESPECTFULLY SUBMITTED,

HAGGERTY HINTON & COSGROVE LLP

Date: _January 16, 2024_    By: _J. T. Hinton Jr._
Timothy Hinton, Jr., Esq.
1401 Monroe Ave., Suite 2
Dunmore, PA 18509
(570) 344-9845
timhinton@haggertylaw.net
Attorneys for Defendants,
*Chris Kelly and The Scranton Times, L.P.*

11

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

_/s/ J. Timothy Hinton, Jr., Esq._
**J. TIMOTHY HINTON, JR., ESQUIRE**
**PA I.D. 61981**

| | | |
|---|---|---|
| PHILIP GODLEWSKI,<br>Plaintiff | : | IN THE COURT OF COMMON PLEAS<br>OF LACKAWANNA COUNTY |
| | : | |
| v. | : | CIVIL DIVISION |
| | : | |
| CHRIS KELLY, et al.<br>Defendants. | : | JURY TRIAL DEMANDED |
| | : | |
| | : | No.: 2021-CV-2195 |

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January 2024, I caused to be served by electronic

mail, a true and correct copy of the foregoing Motion for Summary Judgment upon all parties:

Timothy M. Kolman, Esq.
Timothy Bowers, Esq.
414 Hulmeville Ave.
Penndel, PA 19047
TKolman@kolmanlaw.com
TBowers@kolmanlaw.com
*Attorney for Plaintiff*

RESPECTFULLY SUBMITTED,

HAGGERTY HINTON & COSGROVE LLP

By: _J. T. Hinton Jr._
J. Timothy Hinton, Jr., Esq.
1401 Monroe Ave., Suite 2
Dunmore, PA 18509
(570) 344-9845
timhinton@haggertylaw.net
Attorneys for Defendants,
*Chris Kelly and The Scranton Times, L.P.*