**ROTHENBERG & CAMPBELL**                          *Attorneys for the Defendants*
Ryan P. Campbell, Esq. (#317838)
Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889 || Fax: 570.207.3991
E-mail: Hrlaw04@gmail.com || Hrlaw06@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP GODLEWSKI,** | | **CIVIL ACTION—LAW** |
| | Plaintiff, | *(HON. JULIA K. MUNLEY)* |
| v. | | |
| **EDUARDO NICOLAS ALVEAR** | | |
| **GONZALEZ,** *AKA* **ALVEAR GONZALEZ** | | **JURY TRIAL DEMANDED** |
| **EDUARDO NICOLAS,** *AKA* | | |
| **NICOLAS ALVEAR; and** | | |
| **GOOD LION TV, LLC,** | | |
| | Defendants | No.: 3:24—CV—00344 |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**AND NOW COME** Defendants, Eduardo Nicolas Alvear Gonzalez, *aka* Alvear

Gonzalez Eduardo Nicolas, *aka* Nicolas Alvear ("Individual Defendant" or "Mr. Alvear")

and Good Lion TV, LLC ("Corporate Defendant"), by and through their counsel,

Rothenberg & Campbell, and hereby file their Brief in Support of their Motion to Dismiss

Plaintiff's First Amended Complaint, arguing as follows:

## I.   PRELIMINARY ARGUMENT

Currently, there are at least three (3) active lawsuits initiated by Plaintiff here in

Lackawanna County.  (See ECF Doc. No. 26 at ¶¶ 22, 26).  On the other side of each of

1

those lawsuits exists a different group of defendants.  All three (3) defendant-groups tell the same story: (1) Plaintiff engaged in sexual relations with a minor (and, admittedly, again when she became of age); (2) Plaintiff is a fraud; and (3) Plaintiff gained popularity and wealth by exploiting both the truth and those that believed in him.  One defendant, irked by his perception of a local citizen's abuse and corruption, wrote an editorial published during the height of Plaintiff's fame, spurring the discovery of hundreds of pages of documents evidencing Plaintiff's criminal acts.  Another, deeply scarred and embarrassed, shared a different story – one involving Plaintiff first bestowing her with gifts and attention, only then to have sex with her when she was just fifteen (15) years old.  Mr. Alvear came across these stories and later produced a documentary film depicting them.  Plaintiff sued all three, naming each of them "liars" during his weekly online broadcasts.

While these facts bear little on the Motion before the Court, this juxtaposition forces the Court to take an initial position: Is Plaintiff an innocent, private citizen who, because of his controversial views and magnanimous personality, had his reputation wrongfully injured by Defendants' baseless lies and wrongful statements?  Or, is Plaintiff a gaslighting[1] fraud who, after losing his professional license by betraying his clients' trust, engaged in a global campaign disseminating misinformation, assembling a large enough audience from which to profit, and then later sell out, peddling pyramidal schemes evaporating folks' respective lifetime investments, all after betraying his marital vows by having sex with a young woman

---

[1] "Gaslighting" is an insidious form of manipulation and psychological control where proponents deliberately and systematically feed false information to others to lead victims to question what they know to be true, often about themselves.  Gaslighting involves repetitively (and often brazenly) lying to someone to manipulate, and ultimately control, the victim and the relationship, usually falling into four (4) types: outright lying, manipulation of reality, scapegoating and coercion.

both *before* and *after* she was old enough to bed and then betraying her by denying it ever

happened?  While admittedly flippant, this distinction is important:  the single word

Plaintiff claims as defamatory from the previous sentence is "*before*."  That is also the central

issue in this case.

Plaintiff's First Amended Complaint should be dismissed on the following ternary

grounds:  (1) pursuant to Rule 12(b)(6) because Plaintiff cannot meet his burden

establishing that any of the 110 statements referenced by Plaintiff were defamatory or that

Mr. Alvear published same with actual malice; (2) Plaintiff has failed to establish causation

and recoverable injuries to each of his quaternary state-law tort claims; and (3) whether

Plaintiff forfeits subject-matter jurisdiction as his inability to recover $75,000.00 in damages

on those remaining statements is a legal certainty, destroying diversity and necessitating

dismissal pursuant to Rule 12(b)(1).  More specifically, not one of the 110 statements

referenced in Plaintiff's First Amended Complaint are recoverable under any of Plaintiff's

claims for relief as the statements – *as a matter of law* – are neither defamatory, false, nor

published with a "subjective awareness" of their falsity, being posted amidst substantial

evidence suggesting their truth, and *zero* independent evidence suggesting their falsity.  As

such, even assuming the 110 statements were made by Mr. Alvear, bear a defamatory

meaning and are false, it is legally impossible for Plaintiff to legally establish actual malice,

necessitating dismissal of his First Amended Complaint.

## II.    OPERATIVE FACTUAL & PROCEDURAL BACKGROUND

Plaintiff, Philip Godlewski ("Plaintiff"), initiated the instant matter by filing a

Complaint in the United States District Court for the Middle District of Pennsylvania

3

against Eduardo Nicolas Alvear Gonzalez, *aka* Nicolas Alvear ("Mr. Alvear") and Good Lion

TV, LLC ("Corporate Defendant") on February 28, 2024. (See ECF Doc. No. 1, *generally*).

Mr. Alvear is a resident and citizen of the State of Tennessee, acting Chief Executive Officer

and duly authorized agent of Corporate Defendant, a Wyoming limited liability company.

(See ECF Doc. No. 16-1). Pursuant to this Honorable Court's Order extending

Defendants' right to respond to Plaintiff's Complaint, Defendants, through undersigned

counsel, filed a Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2)

and 12(b)(6), respectively, on April 5, 2024. (See ECF Doc. Nos. 9 and 10). On or about

April 25, 2024, Plaintiff filed, by right, his First Amended Complaint in this matter,

rendering Defendants' initial Motion to Dismiss moot. (See ECF Doc. Nos. 22 and 23).

In his First Amended Complaint, Plaintiff alleges essentially four (4) causes of action

sounding in state-law tort: three (3) counts[2] of Defamation (Counts I, V & VI), False Light

Invasion of Privacy (Count II), Intentional Infliction of Emotional Distress ("IIED," Count

III), and Intentional Interference with Business Relationships (Count IV). (ECF Doc. No.

22). Plaintiff argues that Defendants have asserted, and continue to assert, that he is "a

convicted pedophile, a fraud, a sexual groomer of minors and that he had a sexual

relationship with a girl when she was only fifteen (15) years old[,] and he was twenty-five

(25) years old" and that the 110 Discursive Acts imply that Plaintiff is "neglectful[3],

---

[2] Upon information and belief, a claim for defamation in Pennsylvania includes allegations of defamation *"per se"* and "innuendo," both modalities being different iterations of the first element.

[3] Plaintiff admitted to corrupting a minor, writing bad checks, tampering with records, lying on his application to purchase firearms, being unfaithful to his first wife, and describing his actions as having been ordained by God using messianic language.

predatory[4], corrupt[5], sinful[6], unwholesome[7], and depraved[8]." (ECF Doc. No. 22 at ¶¶ 3 and

109). Defendants' counsel has reviewed Plaintiff's First Amended Complaint with

appended exhibits and catalogued all 110 alleged defamatory statements for

demonstratively referential purposes (collectively, the "110 Discursive Acts"). (See ECF

Doc. No. 26-1).

      Plaintiff presents himself as an "entrepreneur with business connections and clients,"

arguing that Defendants maliciously and recklessly published the 110 Discursive Acts,

"adversely affecting his employment," causing him harm including a "loss of followers" and

personal injuries like "depression, anxiety, isolation, insomnia, psychological and emotional

distress, irreparable damage to his reputation, and loss of standing in the community." (Id.

at ¶¶ 98, 7, 102 and 90, *respectively*). However, Plaintiff's First Amended is silent as to what

specific "employment," "business connection," or "client" has been "adversely affect[ed]";

as of December 22, 2022, the Pennsylvania State Real Estate Commission revoked

Plaintiff's associate broker license and broker-multi license for five (5) years due to

Plaintiff's guilty pleas to charges of tampering with records and writing bad checks. (See

ECF Doc. No. 26-2).

---

[4] See ftn. 3, *supra.*
[5] See ftn. 3, *supra.*
[6] See ftn. 3, *supra.* According to the Inferno, Plaintiff's actions place him in five (5) of the nine (9) Spheres of Hell: lust, greed, heresy, fraud and treachery. Alighieri, Dante, The Divine Comedy (2009). According to the Summa Theologica, Plaintiff has committed the capital sins of lust, envy, greed and pride. Aquinas, Thomas, Summa Theologica (1964).
[7] See ftn. 3, *supra.*
[8] See ftn. 3, *supra.*

Beginning as early as 2018, Plaintiff began using social media to broadcast several theories surrounding QAnon[9] accompanied often by his own personal thoughts and beliefs.[10]  By 2021, Plaintiff had established himself within the QAnon community, cultivating followers numbering in the hundreds of thousands[11].  (See ECF Doc. Nos. 1 at ¶ 2; and 22 at ¶ 97).  Plaintiff used his new-found online popularity and self-proclaimed messianic[12] influence to make over a million dollars in advertising revenue and content-based subscriptions, including soliciting multi-level marketing schemes to his followers.[13]  Plaintiff admits as much in his Complaint, calling himself a "public figure" with a "large following," including "millions" of followers.  (Id. at ¶ 2; 22 at ¶ 97).

In early 2021, Chris Kelly of the Scranton Times-Tribune published an editorial entitled, "QAnon Realtor Sells Rabbit Holes on YouTube."  The article reads, in part:

> [...] In 2011, the former Riverside High School baseball coach [Plaintiff] pleaded guilty to corruption of minors and admitted to having a sexual relationship with a 15-year-old girl.

---

[9] Originating in 2017, QAnon is a far-right American political conspiracy theory and political movement focused on fabricated claims made by an anonymous individual or individuals known as "Q" which are relayed and developed by online communities and influences.  QAnon's core belief is that a cabal of Satanic, cannibalistic child molesters operate a global sex trafficking ring who conspired against then-President Donald Trump, often portrayed as a hero and unwilling protagonist of the movement.  See Wikipedia.org accessed on March 28, 2024 citing Wendling, Mike (July 22, 2020). "QAnon: What is it and where did it come from" BBC.
[10] N. M. Ramirez.  "QAnon Influencer Sues Newspaper, Gets Exposed as Alleged Child Predator." Rolling Stone® Magazine.  (November 30, 2022).
[11] Ramirez, (November 30, 2022).
[12] Plaintiff states that his popularity and newfound wealth during this period was his "reward" from "God" for "helping us get to where we are" and "once it concludes [...] God would reward [him] for the rest of [his] life and that is what He has done." (See "Greatest Fraud on Earth: the Phil Godlewski Story").
[13] W. Sommer.  "QAnon Leaders Push Followers Into Multi-Level Marketing." The Daily Beast. (April 15, 2022).

> Lackawanna County detectives said [Plaintiff] had sex with the girl in cars and homes he had access to as a real estate agent. [Plaintiff], 28 at the time, was sentenced to three to 23 months, with the first three months to be served under house arrest and the balance as probation.
>
> Last February, [Plaintiff] was charged with theft by deception, forgery and related charges. Police said [Plaintiff] kited a check to an area building supplier and forged bank statements to cover it up. [...]

(ECF Doc. No. 26-3).

Upon reviewing Mr. Kelly's editorial, Plaintiff brought a five-count civil lawsuit against him, the paper's executive editor and corporate owners in the Lackawanna County Court of Common Pleas docketed at number 2021—CV—2195 ("Times-Tribune Lawsuit") (See ECF Doc. No. 22-7). As fact discovery progressed during the Times-Tribune Lawsuit, more information regarding Plaintiff's past criminal activity was revealed, including Plaintiff's prior criminal convictions[14], guilty plea colloquies[15] and the sworn testimonies of Plaintiff[16], his ex-wife Dori Gallagher[17], and Brienna L. DuBorgel ("Brienna"), the girl with which Plaintiff allegedly had sex when she was fifteen (15) years-old. (See ECF Doc. No. 26-10).

In her October 31, 2022 affidavit, Brienna testified that she engaged in an approximately year-long sexual relationship with Plaintiff beginning when she was a fifteen-year-old freshman at Riverside High School and he was twenty-five (25) years old where Plaintiff purchased her gifts and communicated with her regularly. (See ECF Doc. No. 26-

---

[14] (See ECF Doc. Nos. 26-4 through 26-6).
[15] (See ECF Doc. No. 26-7).
[16] (See ECF Doc. No. 26-8).
[17] (See ECF Doc. No. 26-9).

9 at ¶¶ 6—8). Brienna also testified that Plaintiff continued to speak with her *after* he was charged with eight (8) criminal counts, urging her to stop cooperating with the Lackawanna County District Attorney's Office and threatening suicide if Brienna testified against him, prompting her to stop cooperating in the investigation.[18] Three years later, they resumed their sexual relationship, when Brienna was of legal age to consent. (<u>Id</u>).

Upon review of Brienna's 2022 Affidavit, Plaintiff brought a two-count civil lawsuit against Brienna in the Lackawanna County Court of Common Pleas docketed at number 2023—CV—1354 (the "DuBorgel Lawsuit"). On May 3, 2023, Brienna's counsel filed her Answer to Plaintiff's Complaint with New Matter and a six-count Counterclaim, to which she attached an Affidavit dated March 28, 2023. (<u>See</u> ECF Doc. No. 26-10). In support of her testimony, Brienna attached over 2,300 textual messages purportedly exchanged between her and Plaintiff over a two-week period from February 24, 2010 through March 12, 2010. (<u>See</u> ECF Doc. No. 26-9 at pp. 2790—2905).

This information – made public by the parties' various filings in the Times-Tribune and DuBorgel Lawsuits –̇ coupled with Plaintiff's notoriety in the QAnon universe and related outspoken opinions, attracted national attention, culminating in several articles about Plaintiff, his criminal past, conspiracy theorist present, and litigious future.[19] Almost immediately, these articles went "viral," exponentially disseminated and shared by

---

[18] The Docket Sheet evidences Plaintiff's Motion to Withdraw Guilty Plea filed just shy of the sixty (60) day deadline, but after Brienna decided not to testify against him. (<u>See</u> ECF Doc. No. 26-4).

[19] (<u>See</u> ECF Doc. No. 26 at ¶ 34, ftn. 21).

thousands of users on dozens of national and international online communities and becoming a matter of public record and concern.[20]

Mr. Alvear – a documentary filmmaker and fellow outspoken social media figure – came to know about Plaintiff during this time.   The perceived irony in reconciling Plaintiff's present interest in QAnon with his criminal past seemed to Mr. Alvear the perfect subject for a documentary film.  "The Greatest Fraud on Earth: The Phil Godlewski Story" is a film created and directed by Individual Defendant and produced by Corporate Defendant that includes scenes depicting Plaintiff's own words, postings and videos inter-cut with visual and audio depictions of the evidence produced during the Times-Tribune and DuBorgel Lawsuits, respectively.  (See ECF Doc. No. 1-10).  Mr. Alvear participated in general online discussions regarding Plaintiff as a public figure on several social media accounts with the public information serving as the basis for all 110 Discursive Acts.

### III.   STATEMENT OF ISSUES PRESENTED

A. WHETHER PLAINTIFF'S FIRST AMENDED COMPLAINT SHOULD BE DISMISSED AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED WHERE PLAINTIFF CANNOT ESTABLISH: (A) ALL 110 DISCURSIVE ACTS WERE WRONGFUL, OR (B) CAUSALLY RELATED TO THE ALLEGED HARM; AND/OR (C) ACTUAL INJURIES-IN-FACT TOWARDS PLAINTIFF?

*SUGGESTED ANSWER:  IN THE AFFIRMATIVE.*

---

[20] See United States v. Thomas, 905 F.3d 276, 280 (3d Cir. 2018); Dombrowski v. Bell Atlantic Corp., 128 F.Supp.2d 216, 217 (E.D. Pa. 2000) (*quoting* Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984)); and Zdrok v. Zdrok, 829 A.2d 697, 699 (Pa. Super. 2003).

B. ASSUMING *ARGUENDO* DEFENDANTS' RULE 12(B)(6) MOTION IS GRANTED
   AS TO *LESS THAN ALL* 110 DISCURSIVE ACTS, WHETHER REMAINING
   CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER
   JURISDICTION PURSUANT TO FED R. CIV. P. 12(B)(1) WHERE IT IS A LEGAL
   CERTAINTY THAT PLAINTIFF CANNOT ESTABLISH DAMAGES TOTALING
   $75,000.00, THEREBY FORFEITING DIVERSITY JURISDICTION?

   *SUGGESTED ANSWER: IN THE AFFIRMATIVE*

## IV.   ARGUMENT

### A. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in
whole or in part, when a plaintiff fails to "state a claim upon which relief can be granted."
Fed. R. Civ. P. 12(b)(6); Fraser v. Pennsylvania State University, 654 F.Supp.3d 443, 453
(M.D. Pa. 2023).   Following Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal, "[t]o
survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. 662, 678 (U.S.
2009) (*quoting* Twombly, 550 U.S. 544, 570 (U.S. 2007)).

In deciding a motion to dismiss, courts within the United States Court of Appeals for
the Third Circuit must follow three steps: (1) take note of the elements the plaintiff must
plead to state a claim; (2) identify allegations that, because they are no more than
conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of all
well-pleaded factual allegations and determine whether they plausibly give rise to an
entitlement to relief.  Fraser, 654 F.Supp.3d at 453 ftn. 57 (*citing* Connelly v. Lane
Construction Corp., 809 F.3d 780, 787 (3d Cir. 2016)).   When deciding a motion to
dismiss, courts "must consider only the complaint, exhibits attached to the complaint,

*matters of public record as well as undisputedly authentic documents if the complainant's claims are based upon these documents.*" <u>Mayer v. Belichick</u>, 605 F.3d 223, 230 (3d Cir. 2010) (*emphasis added*).  When appropriate, a court may "convert" the motion to dismiss into a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d) by ensuring that "the materials submitted require conversion" and that "the parties ha[ve] adequate notice of the ... court's intention to convert." <u>In re Rockefeller Ctr. Props., Inc. Sec. Litig.</u>, 184 F.3d 280, 287 (3d Cir. 1999); <u>see</u> <u>also</u> <u>Meyer v. Delaware Valley Lift Truck, Inc.</u>, 392 F.Supp.3d 483, 489 ftn. 2 (E.D. Pa. 2019).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack; the former challenges subject matter jurisdiction without disputing the facts allege in the complaint – assuming each allegation as true – whereas the latter, a factual challenge, attacks the factual allegations underlying the complaint's assertion of jurisdiction by presenting "competing facts." <u>Davis v. Wells Fargo</u>, 824 F.3d 333, 346 (3d Cir. 2016) (*quoting* <u>Constitution Party of Pa. v Aichele</u>, 757 F.3d 347, 358 (3d Cir. 2014)).  A factual challenge permits "a court [to] weigh and consider evidence outside the pleadings" such that a plaintiff "will have the burden of proof that jurisdiction does in fact exist," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." <u>Id.</u> (citation omitted).

"District courts shall have original jurisdiction of all civil actions where *the matter in controversy exceeds the sum or value of $75,000.0, exclusive of interest and costs*, and is between – (1) citizens of different States." 28 U.S.C. § 1332(a)(1) (*emphasis added*).

11

Plaintiff bears the burden of satisfying the subject matter jurisdictional threshold at the

motion to dismiss stage; the Third Circuit has held:

> [T]hat burden is not especially onerous.  In reviewing the complaint, the sum
> claimed by the plaintiff controls if the claim is apparently made in good faith.
> It must appear to a legal certainty that the claim is really for less than the
> jurisdictional amount to justify dismissal.  Accordingly, the question whether
> a plaintiff's claims pass the "legal certainty" standard is a threshold matter that
> should involve the court in only minimal scrutiny of the plaintiff's claims.

Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 395 (3d Cir. 2016) (internal

quotations and citations omitted).

Where the parties dispute the underlying facts concerning the jurisdictional amount

requirement, "the trial court is free to weigh the evidence," and determine the facts "by a

preponderance of evidence."  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F2d 884, 891

(3d Cir. 1977).  After all disputes related to jurisdictional facts are settled, a federal court

must remand or otherwise dispose of a matte if it apparent, to a "legal certainty," that the

plaintiff cannot recover an amount exceeding the jurisdictional requirement.  ACE

American Ins. Co. v. Guerriero, 738 F.App'x 72, 76 (3d Cir. 2018).

> **B.  TAKEN TOGETHER ALL ALLEGATIONS OF FACT EITHER ADMITTED OR
> ASSUMED AS TRUE, PLAINTIFF'S FIRST AMENDED COMPLAINT SHOULD BE
> DISMISSED PURSUANT TO RULE 12(B)(6) AS PLAINTIFF CANNOT SHOW
> THAT ANY OF THE 110 DISCURSIVE ACTS MEET ALL TERNARY ELEMENTS
> OF HIS STATE-LAW TORT CLAIMS – WRONGFUL CONDUCT, CAUSATION OR
> RECOVERABLE DAMAGES.**

> (1)  **Plaintiff's Defamation and False Light Claims Must be Dismissed
> Because Plaintiff Cannot Establish the Defamatory Nature of the
> 110 Discursive Acts, Their Falsity or Mr. Alvear's Subjective
> Awareness of Their Probable Falsity, Having Relied on Persuasive
> Information Made Public by Plaintiff's Own Litigiousness.**

"Under Third Circuit jurisprudence, the Court must apply a two-step approach when presiding over a defamation action. The Court must determine: '(1) whether the defendants have harmed the plaintiff's reputation within the meaning of state law; and (2) if so, whether the First Amendment nevertheless precludes recovery.'" Mzamane v. Winfrey, 693 F.Supp.2d 442, 476 (E.D. Pa. 2010) (internal quotations omitted). A claim for defamation under Pennsylvania law includes the following elements:

(1)  The defamatory character of the communication.
(2)  Its publication by the defendant.
(3)  Its application to plaintiff.
(4)  The understanding by the recipient of its defamatory meaning.
(5)  The understanding by the recipient of it as intended to be applied to the plaintiff.
(6)  Special harm resulting to the plaintiff from its publication. [and]
(7)  Abuse of a conditionally privileged occasion.

42 Pa. C.S.A. § 8343(a); see also Graboff v. Colleran Firm, 744 F.3d 128, 135 (3d Cir. 2014) (internal citations omitted); Martin v. Finley, 349 F.Supp.3d 391, 423 (M.D. Pa. 2018). Once a plaintiff has established these elements, the defendant bears the burden of proving:

(1)  The truth of the defamatory communication.
(2)  The privileged character of the occasion on which it was published. [or]
(3)  The character of the subject matter of defamatory comment as of public concern.

42 Pa. C.S.A. § 8343(b); Martin, 349 F.Supp.3d at 423.

Some communications, even if offensive or distasteful, do not rise to the level of defamation because the law does not extend to mere insult. Emekekwue v. Offor, 26 F.Supp.3d 348, 359 (Pa. M.D. 2014) (*citing* Beverly Enters., Inc. v. Trump, 182 F.3d 183,

187 (3d Cir. 1999)). "The nature of the audience is a critical factor" for the court in assessing the possibility of reputational harm from a statement and each allegedly defamatory statement must be examined in full context. <u>Meyers v. Certified Guaranty Company, LLC</u>, 221 A.3d 662, 670 (Pa. Super. 2019) (*quoting* 42 Pa. C.S.A. § 8343(b)). For example, expressions of opinion, without more, are not actionable. <u>Id</u>. Likewise, "[s]tatements which are merely annoying or embarrassing or [are] no more than rhetorical hyperbole or a vigorous epithet are not defamatory." <u>Beverly Enters Inc.</u>, 182 F.3d at 187. Rather, plaintiff "must have suffered the kind of harm which has ***grievously fractured his standing in the community of respective society*.**" <u>Tucker v. Philadelphia Daily News</u>, 848 A.2d 113, 124 (Pa. 2004) (***emphasis added***).

The tort of false light invasion of privacy is related to defamation. Pennsylvania has adopted the Restatement (Second) of Torts standard, which "imposes liability on a person who publishes material that 'is not true, is highly offensive to a reasonable person, and is publicized with knowledge, or in reckless disregard, of its falsity.'" <u>Graboff,</u> 744 F.3d at 136 (internal quotations and citations omitted). <u>See also</u> <u>Vogel v. W.T. Grant Co.</u>, 327 A.2d 133 (Pa. 1974). The torts false light invasion of privacy and defamation are sometimes difficult to distinguish. False light has been described by some as "the right to be left alone," whereas defamation protects one's interest in good reputation. <u>Martin</u>, 349 F.Supp. at 423 (internal quotations omitted); <u>see also</u> <u>Graboff</u>, 744 F.3d at 138 n.8.

Collectively examining all facts admitted by Plaintiff or otherwise assumed true for

purposes of this Motion[21], Plaintiff's claims for Defamation (Counts I, V & VI) and False

Light Invasion of Privacy (Count II) must be dismissed for failure to state claims upon

which relief can be granted.  Plaintiff cannot establish that any of the 110 Discursive Acts

were tortious, directly caused his particular harm, or even the existence of an actual,

physical injury.  Plaintiff's failure to plead credible evidence showing Defendants' tortious

conduct, causation or specific damages – all three (3) necessary components of every

common law tort – doom each of his Complaint's quinary tort claims.  Regarding causation

and specific damages, Defendants adopt and incorporate Defendants' Brief in Opposition to

Plaintiff's Motion for Preliminary Injunction filed simultaneously with this Brief pursuant to

Rule 10(b) as if more fully set forth herein. (See ECF Doc. No. 20-1, *generally*).  Summarily,

Plaintiff cannot show that Defendants' specific conduct caused his alleged damages, having

occurred amidst hundreds of thousands of other posted communications regarding

Plaintiff's criminal history which were later re-posted thousands of times.  (Id.)

    **a.** *Statements that Plaintiff is a "Fraud, Fraudster, Grifter, Thief, Liar,*
      *etc." – Based On Plaintiff's Prior Guilty Pleas – Lack Defamatory*
      *Meaning And Are Otherwise True.*

Regarding Defendants' statements that Plaintiff is a "fraud, fraudster, a grifter, thief,

thief, liar [and/or] a criminal," Plaintiff's own criminal record and respective pleas of

"guilty" to perjury, tampering with records and writing bad checks all constitute *crimen*

---

[21] Without waiving their legal rights to challenge factual or legal accuracy at a later date and for sole purposes of this Motion, Defendants invite this Honorable Court to assume that all 110 Discursive Acts were published by Mr. Alvear and that Plaintiff admits: (a) to be a "limited purpose public figure;" (b) that Mr. Alvear relied upon the information published in the Times-Tribune and DuBorgel Lawsuits in authoring the 110 Discursive Acts; and (c) that he has more followers now than he did prior to the acts or lawsuits.

*falsi*[22] such that these statements are true for purposes of the torts of defamation and false light invasion of privacy.  (See, *generally*, ECF Doc. No. 26-1 at pp. 1—2).  As such, these statements are legally unrecoverable.  See, e.g., Reilly v. North Hills News Record, 1998 WL 1113472 at *1 (W.D. Pa. 1998).  The remaining statements (i.e., Plaintiff has "swindled his followers based on his financial schemes") constitute insults and/or opinions and bear no defamatory character upon which relief can be granted.  Beverly Enters., Inc., 182 F.3d at 187; Emekekwue, 26 F.Supp.3d at 359.

Therefore, the first thirty-two (32) Discursive Acts referencing Plaintiff as same are true, matters of opinion and/or personal insults and should be dismissed as a matter of law. (See ECF Doc. No. 26-1 at pp. 1-2).  The remaining seventy-eight (78) Discursive Acts are each an iteration of the following statement: ***"Plaintiff had sex with Brienna when she was a minor"***.  The Court must closely examine this statement in context with all the information Plaintiff admits Defendants relied upon, especially information tending to show that Mr. Alvear had subjective awareness of falsity of ***any*** 110 Discursive Acts.  Apart from Plaintiff's own words, no independent information evidencing such falsity existed during the timeframe the statements were published.   On the contrary, all publicly available information regarding the 110 Discursive Acts strongly suggested their respective truth. Therefore, it is ***impossible*** for Mr. Alvear to have been aware of same; likely, because no such information exists.

---

[22] *Crimen falsi* is a crime (as perjury or fraud) involving deceit or falsification.  See Merriam-Webster Dictionary.  (2024) (See ECF Doc. No. 26-2, 26-4 through 26-6).

      *b. Based on Information Publicly Available At the Time, It Is Impossible for Plaintiff to Establish that Mr. Alvear Was "Subjectively Aware" of the Falsity of Any of the 78 Remaining Discursive Acts Related to Plaintiff Having Sex With Brienna When She was a Minor Because All Available Information Suggested the Statements Were True.*

As an admitted "public figure"[23] speaking about "matters of public concern," Plaintiff bears the burden to show, by clear and convincing evidence, the falsity of Defendants' alleged defamatory statements and that Defendants published those statements with actual malice. Phila. Newspapers. v. Hepps, 475 U.S. 767, 770 (U.S. 1986); McDowell v. Paiewonsky, 769 F.2d 942, 947 (3d Cir. 1985); see also New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (U.S. 1964); Tucker v. Philadelphia Daily News, 848 A.2d 113, 127-128 (Pa. 2004); and Dibella v. Hopkins, 403 F.3d 102 (2d Cir. 2005). The clear and convincing evidence standard applies even at the summary judgment stage of a defamation proceeding. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255-56 (U.S. 1986).

Plaintiff claims Defendants' statements about him having sex with a minor and being a "Pedo, a Pedophile, a [...] criminal, sexual groomer of minors and a convicted pedophile" are false. (See ECF Doc. Nos. 22 at ¶ 3; and 26-1). These statements, and their 78 different iterations, all derive from the claim that Plaintiff, while he was twenty-five (25) years old,

---

[23] Although Plaintiff has twice admitted to being a "public figure" in his pleadings, he appears to be walking back this admission, claiming to be a "private citizen" for purposes of his First Amended Complaint. He can't be both. Undoubtedly, Plaintiff is at least a "limited purpose public figure" as contoured by Third Circuit caselaw. Specifically, whether a Plaintiff qualifies as a "limited purpose public figure" is a question of law to be determined by the District Court and hinges on "(1) whether the alleged defamation involves a public controversy, and (2) the nature and extent of plaintiff's involvement in that controversy." McDowell v. Paiewonsky, 769 F.2d 942, 948 (3d Cir. 1985). More succinctly, for the Court to determine Plaintiff's status as a "limited purpose public figure, [Plaintiff] must voluntarily *thrust himself into the vortex of the dispute*." Marcone v. Penthouse Int'l Magazine for Men, 754 F.2d 1072, 1083 (3d Cir. 1985) (*emphasis added*). When it comes to civil lawsuits, Plaintiff "*lives in the vortex of the dispute*".

engaged in a sexual relationship with a minor leading to criminal conviction. (Id.). If

Plaintiff cannot prove by "clear and convincing evidence" that Defendants published any of

the 110 Discursive Acts with "actual malice" – either knowledge of their falsity or reckless

disregard of same – then there cannot be any liability to Defendants. See *supra*. Plaintiff

must do so by showing that Mr. Alvear either "entertained serious doubts as to the truth of

[his] publication," St. Amant v. Thompson, 390 U.S. 727, 731, (U.S. 1968), or had

"subjective awareness of probable falsity." McDowell v. Paiewonsky, 769 F.2d 942, 951 (3d

Cir. 1985). Absent either showing of actual malice, no liability lies for any counts in

defamation or false light invasion of privacy. Id.

The following facts are undisputed and part of the public record in the Times-

Tribune Lawsuit[24]: (1) the Lackawanna County District Attorney's Office arrested Plaintiff

on July 9, 2010 pursuant to an eight (8) count Criminal Complaint[25]; (2) on November 12,

2010, Plaintiff pled guilty to a charge of "corruption of minors,"[26] acknowledging the

allegations contained in the criminal complaint each involving inappropriate sexual contact

with Brienna[27]; (3) detectives at the time said Plaintiff had sex with Brienna in cars and

houses which were up for sale[28]; and (4) Plaintiff admitted he did in fact corrupt the morals

---

[24] District Courts may take judicial notice of any matter of public record including court documents, pleadings and related exhibits filed in a plaintiff's other lawsuit stemming from similar facts and circumstances. See Oran v. Stafford, 226 F.3d 275, 288 (3d Cir. 2000); Fed. R. Evid. 201(b).

[25] (See ECF Doc. Nos. 26-4 through 26-8).

[26] (Id.) 18 Pa. C.S.A. § 6301 was amended effective December 6, 2010 to include a new section, specifically (a)(1)(ii) relating to sexual offenses and Plaintiff could not be charged under this new section since it was not enacted at the time of his conduct or arrest; instead, law enforcement charged Plaintiff under § 6301(a)(1) for sexual related conduct.

[27] (Id.)

[28] (See ECF Doc. No. 26-4 through 26-10).

of Brienna and had sex with her after she was of legal age.[29]  Plaintiff's only contention of

fact is that he *never* had sex with Brienna *before* she reached the age of legal consent; a fact

which is *solely* based on Plaintiff's *own* testimony.

Brienna executed an Affidavit stating she was in a sexual relationship with Plaintiff

when she was 15 and he was 25.  (See ECF Doc. No. 26-10).  Brienna also testified that she

engaged in several textual messages with Plaintiff during this time where Plaintiff references

sex with her over 25 times and that he loves her over 100 times.  (See ECF Doc. No. 26-11,

*generally*).  Plaintiff's first wife, Dori Gallagher, testified to her knowledge of their

relationship. (See ECF Doc. No. 26-9 at pp. 30—34).  Plaintiff admits in his sworn

deposition that he's known Brienna since 2009, had sex with her when she was 19, and

admits "I can't prove that something didn't happen in this case." (See ECF Doc. No. 26-8

at pp. 212—213; 251—252).  He also testified, "I can't prove a negative" and "I don't have to

prove anything," when questioned about sex with 15-year-old Brienna.  (Id. at p. 252).  In

that same deposition, Plaintiff concedes his corruption charge was for *having sex with a*

*minor child* and, according to that same guilty plea, *admitted to "doing" the things he was*

*"charged with"*.  (Id. at pp. 228; 235-241).

The Merriam-Webster Dictionary defines:  "pedophilia"[30] as a "[*noun*] sexual

perversion in which children are the preferred sexual object"; "molest"[31] as "[*verb*] to make

unwanted or improper sexual advances towards (someone) or to annoy, disturb, or

---

[29] (See ECF Doc. No. 26-4 through 26-8).

[30] "Pedophilia." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/pedophila.  Accessed 5 May 2024.

[31] Id. at "Molest" [...] https://www.merriam-webster.com/dictionary/molest.

persecute [a person] especially with hostile intent or injurious effect"; "groom"[32] as "[*verb*] to build a trusting relationship with (a minor) in order to exploit them especially for nonconsensual sexual activity"; "minor"[33] as "[*noun*] a person who is not yet old enough to have the rights of an adult"; and "convict"[34] as "[*verb*] to find or prove to be guilty." Each of the remaining 110 Discursive Acts allegedly made by Mr. Alvear were based on the information disclosed in the Times-Tribune Lawsuit, made amidst a hurricane of hundreds of thousands of *other* online statements related to the dozens of articles published after Mr. Kelly's article went public.

Assuming all well-pleaded facts contained in Plaintiff's First Amended Complaint as true for purposes of this Brief, Plaintiff has not, and cannot, establish that Mr. Alvear either "entertained serious doubts as to the truth" of 110 Discursive Acts or had "subjective awareness of [their] probable falsity." St. Amant, 390 U.S. at 731; McDowell, 769 F.2d at 951. On the contrary, the opposite is true. Plaintiff admits that Defendants knew about the materials divulged in the Times-Tribune Lawsuit and used them when publishing the alleged wrongful statements. (ECF Doc. Nos. 1 at ¶¶ 13—18 and 42; and 22 at ¶¶2—24). Plaintiff further admits that Defendants' film contains "much of" of same information revealed in that case and often quotes, verbatim, from that very same record. (Id. at ¶ 18). Mr. Alvear's sworn testimony underscores Plaintiff's admissions of fact. (See ECF Doc. No. 16-1). The only "evidence" of falsity comes from Plaintiff's own mouth, existing

---

[32] Id. at "Groom" [...]  https://www.merriam-webster.com/dictionary/groom.
[33] Id. at "Minor" [...]  https://www.merriam-webster.com/dictionary/minor.
[34] Id. at "Convict" [...]  https://www.merriam-webster.com/dictionary/convict.

somewhere between his thread-bare denials of fact and hazy, unsupported challenges to the authenticity of the textual messages back in 2010. (ECF Doc. Nos. 1 at ¶¶ 22, 26, and 36; 22, *generally*).  Importantly, despite Plaintiff's allegations that Mr. Alvear should have known about the falsity of the remaining 78 Discursive Acts, there existed no contemporaneous, independent evidence suggesting that any of these statements were false, let alone that Mr. Alvear had knowledge of it.  Indeed, the only information suggesting that the remaining 78 Discursive Acts were false at that time came from Plaintiff's own testimony attacking the credibility of other defendants' evidence.  No independent, third-party evidence existed at the pertinent time tending to show these statements were false, rendering Mr. Alvear's awareness of said falsity a factual and legal impossibility.[35]

Moreover, Plaintiff's allegations of falsity contained in his First Amended Complaint are scant, amounting to an ostensible lack of proper investigation and personal *animus* towards Plaintiff on part of the Defendants. (ECF Doc. No. 22 at ¶¶ 13, 25, 40 and 41). Even pretending both are true, neither are enough to meet Plaintiff's burden.  A failure to investigate, without more, is insufficient to show actual malice; neither is a defendant's *personal feelings* toward plaintiff.  See Tucker v. Fischbein, 237 F.3d 275, 286 (3d Cir. 2001); Mallory v. S & S Publishers, 260 F.Supp.3d 453, 464 (E.D. Pa. 2017).  Plaintiff's evidence substantiating his reputational tort claims is insufficient; no further discovery will likely

---

[35] Stated differently, instead of *establishing independent proof of falsity*, Plaintiff's entire evidentiary strategy in prosecuting these Lawsuits consists of *attacking* Defendants' respective evidence, whether through his own testimony or by his retained experts.  That is not how civil lawsuits are won; Plaintiff must produce credible and persuasive evidence substantiating his claim.  Plaintiff is *not the defendant in a criminal case*, he is *the plaintiff in a civil case* and bears the burden of production and persuasion.

move the needle.[36]  The Court, assuming all Plaintiff's alleged facts are true, including that Plaintiff never had sex with Brienna while she was a minor, must answer one question: whether it is possible that Mr. Alvear, having knowledge of all information related to the Times-Tribune Lawsuit prior to publishing any allegedly wrongful statements, *had subjective awareness of their probable falsity?*  Defendants argue that the answer to that question is **"no"**; it is impossible for Plaintiff to meet his burden in this specific case. Plaintiff apparently agrees.[37]  If the Court agrees, dismissal of Counts I, II, V, and VI is proper as a matter of law.

      (2)     **Plaintiff's Intentional Interference with Business Relations and IIED Claims Must Both Be Dismissed Because the 110 Discursive Acts Were Either Privileged Or Plaintiff Is Unable to Establish Specific Damages Related to His Claim.**

Defendants adopt and incorporate their arguments related to causation and damages as set forth in their Brief in Opposition to Plaintiff's Motion for Preliminary Injunction as though set forth herein at length.  (ECF Doc. No. 20-1).  Plaintiff has established no present or future contractual or economic relationship between himself and a third-party, having failed to specifically cite to his "business" at all.  Furthermore, Defendants' statements and publications are privileged, protected by the First Amendment.  Finally, Defendants' statements are not so "extreme and outrageous" in the context of this case to warrant an

---

[36] Plaintiff has repeatedly threatened to use the civil justice system to "destroy [Mr. Alvear] and any idea of [him] that ever existed," boasting about his star "investigators," "legal team," and his ability to out-spend Defendants. (See ECF Doc. No. 20-2).

[37] (See ECF Doc. No. 26-12, *supra*).

IIED claim for unspecific damages.  As such, Counts III and IV should be dismissed as a matter of law, with prejudice.

To establish a claim for tortious interference with business relations under Pennsylvania law, a plaintiff must show:

> (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring;; (3) the absence of privilege or justification on the part of the defendant; and (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.

Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009).

Specifically, the relationship – prospective or existing – must be "of some substance, some particularity, before an inference can arises to its value to the plaintiff and the defendant's responsibility for its loss." I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko," 500 F.Supp.3d 380, 426 (E.D. Pa. 2020) (*quoting* Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P., 40 A.3d 1261, 1275 n. 14 (Pa. Super. 2012)).  For prospective relations, a plaintiff should plead "additional facts to show 'an objectively reasonable probability that [a prospective relationship would] come into existence.'" Id. (*quoting* Kernaghan v. BCI Comm., Inc., 802 F.Supp.2d 590, 592 n.1 (E.D. Pa. 2011)).

Nowhere in Plaintiff's Complaint does he allege the existence of any portended current or future contractual or business relationship other than mentioning that Defendants' allegedly wrongful statements were "adversely affecting his employment" as an

"entrepreneur with business connections and clients," including a "loss of followers" (See ECF Doc. No. 22 at ¶¶ 3, 97). Respectfully, entrepreneur of what? Business connections and clients being who? Loss of followers from when[38]? Without more, Plaintiff's claim for Tortious Interference with Business Relations must be dismissed as a matter of law. See Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 471 (Pa. 1979) (dismissing plaintiff's claim for failure to "set forth any contract right on [plaintiffs'] part which was injured through the actions of [the defendant]"); see also Wurth Baer Supply Co., v. Strouse, 627 F.Supp.3d 422 (M.D. Pa. 2022); Rototherm Corp. v. Penn Linen & Uniform Service, Inc., 1997 WL 419627 (E.D. Pa. 1997); Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc. v Hi-Tech Sys., Inc., 801 F.Supp. 1450, 1459 (E.D. 1992) ("The complaint must allege facts that, if true, would give rise to a reasonable probability that particular anticipated contracts would have been entered into."); and Multitherm Corp. v. Fuhr, 1991 WL 146233, at *22 (E.D. Pa. 1991).

Furthermore, even assuming Plaintiff has established some portended business relationship, Defendants' conduct as alleged by Plaintiff in the Complaint is constitutionally privileged by the First Amendment as "speech on matters of public concern" and "public figures" and therefore not recoverable under Pennsylvania law. See Snyder v. Phelps, 562 U.S. 443, 451 (U.S. 2011); Azzaro v. Cnty. Of Allegheny, 110 F.3d 968, 978 (3d Cir. 1991); see also, Tannous v. Cabrini University, 2023 WL 6465842 at *10 (E.D. Pa. 2023); Neish v. Beaver Newspapers, Inc., 581 A.2d 619, 625 (Pa. Super. 1990); and Jones v. City of

---

[38] As stated *intra*, Plaintiff admits that he has experienced an increase in followers since the 110 Discursive Acts and the filing of his lawsuits. (See ECF Doc. No. 26-15).

Philadelphia, 73 Pa. D. & C.4ᵗʰ 246, 273 (Phila. Co. Ct. Com. Pls. 2005).  As such, Count IV

must be dismissed as a matter of law.

To state a claim for IIED under Pennsylvania law, the plaintiff must allege

"intentional outrageous or extreme conduct by the defendant, which causes severe

emotional distress to the plaintiff" and "some type of resulting physical harm due to the

defendant's conduct."  Davis v. Wigen, 82 F.4ᵗʰ 204, 216 (3d Cir. 2023) (*quoting* Swisher v.

Pitz, 868 A.2d 1228, 1230 (Pa. Super. 2005)).  When a party seeks to dismiss a claim for

IIED "upon demurrer, the appropriate legal standard to be applied in reviewing the claim is

whether the [pleading] sufficiently pleads the claim in a manner that corresponds 'at a

minimum' with the provisions of the Restatement (Second) of Torts § 46(1)."  Toney v.

Chester County Hospital, 961 A.2d 192, 201 (Pa. Super. 2008), aff'd, 36 A.3d 83 (Pa.

2011); Reardon v. Allegheny College, 929 A.2d 477, 487 n. 12 (Pa. Super. 2007), app.

denied, 947 A.2d 738 (Pa. 2008).

Given that the definition of "outrageousness" is both subjective and nebulous, the

availability of recovery of IIED is "highly circumscribed."  Gray v. Huntzinger, 147 A.2d

924, 927-928 (Pa. Super. 2016) (internal quotation omitted).  The type of conduct required

to support an IIED claim "must be so outrageous in character, and so extreme in degree, as

to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly

intolerable in a civilized society."  Davis, 82 F.4ᵗʰ at 216 (*quoting* Hoy, 720 A.2d at 754).

"[I]t has not been enough that the [tortfeasor] has acted with intent which is tortious or even

criminal, or that he has intended to inflict emotional distress, or even that this conduct has

been characterized by 'malice' or a degree of aggravation that would entitle the [claimant] to

punitive damage for another tort." <u>Hoy</u>, 720 A.2d at 754.  Potential liability for IIED "clearly does not extend to mere insults, threats, annoyances, petty oppressions, or other trivialities," and claimants "must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind," since "[t]here is no occasion for the law to intervene in every case where [someone's] feelings are hurt." <u>Gray</u>, 147 A.3d at 927, n. 1 (*quoting* Restatement (Second) of Torts § 46, comment d).

Consequently, instances of abhorrent and malevolent conduct have been deemed insufficient as a matter of law to sustain a claim for IIED.  <u>See, e.g.</u>, <u>Hoy</u>, 720 A.2d at 754; <u>Piazza v. Young</u>, 403 F.Supp.3d 421 (Pa. M.D. 2019); <u>Miller v. Peraino</u>, 626 A.2d 637, 641 (Pa. Super. 1993).  Additionally, plaintiff must provide competent medical evidence to prove the existence of emotional distress to prevail on an IIED cause of action.  <u>Doe v. Liberatore</u>, 478 F.Supp.2d 742, 765 (M.D. Pa. 2007) (*citing* <u>Kazatsky v. King David Memorial Park, Inc.</u>, 527 A.2d 988, 995 (Pa. 1987)).

In the instant matter, assuming that Defendants' conduct is not constitutionally privileged and protected by the First Amendment, Defendants' statements as alleged in Plaintiff's Complaint and in the context of this particular case simply do not rise to the level as to "be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." <u>Davis</u>, 82 F.4th at 216 (*quoting* <u>Hoy</u>, 720 A.2d at 754).  <u>See</u> <u>Cox v. Keystone Carbon Co.</u>, 861 F.2d 390, 395 (3d Cir. 1988); <u>Williams v. Roc Nation, LLC</u>, 2020 WL 6158242 at *7 (E.D. Pa. 2020) (granting documentary filmmaker defendants' motion to

dismiss plaintiff's IIED claim despite allegations of alleged lewd and lascivious comments including "dirty, corrupt, immoral, and dishonest"); Cheney v. Daily News, L.P., 102 F.Supp.3d 708, 718 (E.D. Pa. 2015) (granting newspaper defendant's motion to dismiss firefighter plaintiff's IIED claim based on alleged lewd and lascivious conduct and alleged sex scandal).

Assuming Plaintiff has met the threshold requirement and shown "extreme and outrageous conduct" by Defendants, Plaintiff's IIED count should be dismissed for failure to adequately articulate his actual, physical injury substantiated by competent medical evidence due to Defendants' alleged wrongful comments. See Hines v. Proper, 442 F.Supp.2d 216, 224 (M.D. Pa. 2006). For those reasons, Defendants respectfully request that this Honorable Court dismiss Count III of Plaintiff's Complaint, with prejudice.

C. ASSUMING *ARGUENDO* THAT THIS HONORABLE COURT DISMISSES LESS THAN ALL 110 DISCURSIVE ACTS, THEN IT IS LEGALLY CERTAIN THAT PLAINTIFF WILL BE UNABLE TO ESTABLISH AN AMOUNT IN CONTROVERSY EQUAL TO $75,000.00 BASED ON THE REMAINING ALLEGATIONS, DESTROYING SUBJECT MATTER JURISDICTION AND NECESSITATING DISMISSAL PURSUANT TO FED. R. CIV. P. 12(B)(1).

Historically, the Third Circuit has been hesitant to dismiss or otherwise remand a diversity plaintiff's complaint based solely on a failure to meet the "amount in controversy" requirement, stating:

> In a cause instituted in the federal court the plaintiff chooses his forum. He knows or should know whether his claim is within the statutory requirement as to amount. His good faith in choosing the federal forum is open to challenge not only by resort to the face of his complaint, but by the facts disclosed at trial, and if from either source it is clear that his claim never could have amounted to the sum necessary to give jurisdiction there is no injustice in dismissing the suit.

Huber v. Taylor, 532 F.3d 237, 244 (3d Cir. 2008) (*quoting* St. Paul Mercury, 303 U.S. at

290). Recently, however, Third Circuit courts have declined to sustain subject matter

jurisdiction in diversity cases where, based on a fair reading of the complaint, a plaintiff's

allegations of damages appear ***too vague, speculative, or lack specific indicia suggesting***

***seriousness, severity and/or "bad faith" of injury***. See, e.g., Rowland v. Bissell Homecare,

Inc., 73 F.4th 177 (3d Cir. 2023) (Third Circuit found that the amount in controversy

requirement was not satisfied where plaintiff's action sought only equitable relief and

defendants relied exclusively on attorney fees to establish the amount-in-controversy);

Mena v. Lay, 650 F.Supp.3d 337 (U.S.V.I. 2023) (District Court concluded that plaintiff's

claims did not exceed the $75,000.00 amount-in-controversy limit for diversity jurisdiction

where plaintiff did not: specify her specific personal injuries; allege any hospitalization,

medical treatment or lost wages with specificity; or otherwise allege her injuries were

serious or severe); Sciarrino v. State Farm Fire and Casualty Company, 476 F.Supp.3d 91

(E.D. Pa. 2020) (District Court did not find that the amount in controversy exceeded

$75,000.00 where plaintiff-insured's complaint did not allege specific facts suggesting bad

faith); and Clarity Sports International LLC v. Redland Sports, 400 F.Supp.3d 161 (M.D.

Pa. 2019) (District Court found that plaintiff's alleged pecuniary losses were impermissibly

28

speculative, involving only possible future damages and therefore did not meet the amount-in-controversy threshold to sustain diversity jurisdiction).

As argued both *intra* and in Defendants' Brief in Opposition to Plaintiff's Motion for Preliminary Injunction, Plaintiff's allegations of injury included in his First Amended Complaint are too vague, too speculative and otherwise insufficiently specific to sustain any of his quaternary state-law tort claims. Pointedly, Plaintiff's causes of action for IIED (Count III) and Intentional Interference with Contractual Relations (Count IV) each fail to specifically identify the precise injury he sustained warranting relief from each respective tort (i.e., no alleged evidence of hospitalization or medical treatment for his IIED injury and no alleged existing or future business contracts with which Defendants purportedly tortiously interfered). Regarding Plaintiff's claims of reputational harm (Counts I, II, V, & VI), even assuming this Honorable Court finds at least one Discursive Act false and published by Mr. Alvear with "subjective awareness" of its falsity, Plaintiff's allegations of harm are too vague and speculative, involving only possible future losses.

Put differently, Plaintiff does not sufficiently articulate any present loss of business (his real estate license is suspended until 2027) and his allegations of reputational harm are undermined by his own public commentary on this lawsuit and admissions that he has *gained* followers since the 110 Discursive Acts and the lawsuit. Moreover, pretending for a moment that Plaintiff does not speak publicly about this lawsuit at least once a week and has proof of lost followers, Plaintiff does not, and cannot, trace any causal connection between the 110 Discursive Acts and the hundreds of thousands of similar comments posted contemporaneously by thousands of individuals across more than thirty (30) countries on

dozens of online publications and platforms. This world-wide exposure, amplified by postings and re-postings, of Plaintiff and his prior criminal history by the Times-Tribune Lawsuit summons the "libel-proof plaintiff doctrine," referenced herein not for its precedential value, but to underscore Plaintiff's "already tarnished reputation" and how it's admissible as a mitigating factor when weighing Plaintiff's claim for compensatory damages. See Weiser Law Firm, P.C. v. Hartleib, 665 F.Supp.3d 647, 665-66 (E.D. Pa. 2023) (*quoting* Marcone, 754 F.2d at 1079). Taken together, any statement presumed to be facially defamatory and published with actual malice will – ***to a legal certainty*** – also fail to secure Plaintiff compensatory damages of $75,000.00, necessitating dismissal of all remaining claims pursuant to Fed. R. Civ. P. 12(b)(1).

## V.   **CONCLUSION**

Plaintiff's First Amended Complaint should be dismissed on the ternary grounds argued above: pursuant to Rule 12(b)(6) because the 110 Discursive Acts are neither defamatory, false, nor published with "subjective awareness" of their falsity. Therefore, Plaintiff cannot meet his burden establishing the wrongfulness of Defendants' statements and publications cited in his pleading. Additionally, Plaintiff has failed to establish causation and recoverable injury to each of his quaternary state-law tort claims. Finally, should this Honorable Court dismiss less than all the 110 Discursive Acts, then Plaintiff's First Amended Complaint should be dismissed pursuant to Rule 12(b)(1) because any remaining claims render Plaintiff's inability to establish $75,000.00 in damages as to any named Counts a "legal certainty," destroying diversity jurisdiction.

Respectfully Submitted,

**ROTHENBERG & CAMPBELL**

By: _____

Ryan P. Campbell, Esquire (PAID: 317838)
345 Wyoming Ave., Ste. 210
Scranton, PA 18503
p. 570.207.2889 **||** e. HRLaw04@gmail.com

_____

Dave W. Rothenberg, Esquire (PAID: 326483)
345 Wyoming Ave., Ste. 210
Scranton, PA 18503
p. 570.207.2889 **||** e. HRLaw06@gmail.com

*ATTORNEYS FOR DEFENDANTS*

Date: May 10, 2024

**ROTHENBERG & CAMPBELL**                                *Attorneys for the Defendants*
Ryan P. Campbell, Esq. (#317838)
Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889 || Fax: 570.207.3991
E-mail:  Hrlaw04@gmail.com || Hrlaw06@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP GODLEWSKI,** | | |
| | Plaintiff, | **CIVIL ACTION—LAW & EQUITY** |
| v. | | *(HON. JULIA K. MUNLEY)* |
| **EDUARDO NICOLAS ALVEAR** | | |
| **GONZALEZ,** *AKA* **ALVEAR GONZALEZ** | | **JURY TRIAL DEMANDED** |
| **EDUARDO NICOLAS,** *AKA* | | |
| **NICOLAS ALVEAR; and** | | |
| **GOOD LION TV, LLC,** | | |
| | Defendants | No.: 3:24—CV—00344 |

### CERTIFICATE OF COMPLIANCE

I, Ryan P. Campbell, Esquire, on behalf of Defendants, do hereby certify that I performed a word-count on the above Brief using Microsoft® Word Version 16.83 (2024) and that the above-captioned document contains 8,487 words, excepting captions, salutatory language, signatory lines and Certificates of Compliance and Service, respectively.  As such, this filing complies with this Honorable Court's May 8, 2024 Order authorizing the filing of same.

**ROTHENBERG & CAMPBELL**

By: _____
Ryan P. Campbell, Esquire
*ATTORNEY FOR DEFENDANTS*

Date: May 10, 2024

32

**ROTHENBERG & CAMPBELL**                                    *Attorneys for the Defendants*
Ryan P. Campbell, Esq. (#317838)
Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889 || Fax: 570.207.3991
E-mail:  Hrlaw04@gmail.com || Hrlaw06@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP GODLEWSKI,** | | CIVIL ACTION—LAW & EQUITY |
| | Plaintiff, | *(HON. JULIA K. MUNLEY)* |
| v. | | |
| **EDUARDO NICOLAS ALVEAR GONZALEZ,** *AKA* **ALVEAR GONZALEZ EDUARDO NICOLAS,** *AKA* **NICOLAS ALVEAR; and GOOD LION TV, LLC,** | | **JURY TRIAL DEMANDED** |
| | Defendants | No.:  3:24—CV—00344 |

## CERTIFICATE OF SERVICE

I, Ryan P. Campbell, Esquire, on behalf of Defendants, do hereby certify that I sent a true and accurate copy of Defendants' Brief in Support of their Motion to Dismiss Plaintiff's First Amended Complaint in the above-captioned case on this **10ᵗʰ day of May, 2024** to the below named individuals *via* ECF and Electronic Mail addressed as follows:

      Timothy M. Kolman, Esq.
      e.  tkolman@kolmanlaw.com
      *ATTORNEYS FOR PLAINTIFF*

               **ROTHENBERG & CAMPBELL**

By: _____
          Ryan P. Campbell, Esquire
          *ATTORNEY FOR DEFENDANTS*

Date:  May 10, 2024

33