**ROTHENBERG & CAMPBELL**  *Attorneys for the Defendants*
Ryan P. Campbell, Esq. (#317838)
Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889 || Fax: 570.207.3991
E-mail: Hrlaw04@gmail.com || Hrlaw06@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILIP GODLEWSKI,<br><br>Plaintiff,<br>v.<br><br>EDUARDO NICOLAS ALVEAR GONZALEZ, *AKA* ALVEAR GONZALEZ EDUARDO NICOLAS, *AKA* NICOLAS ALVEAR; and GOOD LION TV, LLC,<br><br>Defendants | CIVIL ACTION—LAW<br>(HON. JULIA K. MUNLEY)<br><br>JURY TRIAL DEMANDED<br><br>No.: 3:24—CV—00344—JKM |

### DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**AND NOW COME** Defendants, Eduardo Nicolas Alvear Gonzalez, *aka* Alvear Gonzalez Eduardo Nicolas, *aka* Nicolas Alvear ("Individual Defendant" or "Mr. Alvear") and Good Lion TV, LLC ("Corporate Defendant"), by and through their counsel, Rothenberg & Campbell, and hereby file their Reply Brief in Support of their Motion to Dismiss Plaintiff's First Amended Complaint, arguing as follows:

I.   **ARGUMENT IN REPLY**

Defendants present their arguments in reply to the substantial positions taken in Plaintiff's Brief in Opposition. Regarding diversity jurisdiction, Defendants respond only

1

that this Honorable Court may question its subject-matter jurisdiction *at any time* during the pendency of an action. See Huber v. Taylor, 532 F.3d 237, 244 (3d Cir. 2008). Defendants' arguments regarding Rule 12(b)(1) dismissal were presented in a deliberate order to show the Court that, should most of the 110 Discursive Acts be dismissed with prejudice, it would be a legal certainty that any remaining statements would fail to meet the threshold amount in controversy. The following sections more particularly address Plaintiff's arguments in opposition.

    A.    THIS HONORABLE COURT MAY PROPERLY CONSIDER DEFENDANTS' EXHIBITS "B" THROUGH "O" AS THEY CONSTITUTE DOCUMENTS REFERENCED IN, INTEGRAL TO, OR EXPLICITLY RELIED UPON IN FRAMING PLAINTIFF'S FIRST AMENDED COMPLAINT AND/OR CONTAIN FACTS OF WHICH THE COURT MAY TAKE JUDICIAL NOTICE.

As a general matter, a district court may not consider matters extraneous to the pleadings when ruling on a motion to dismiss. In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). Rather, the district court should "consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record[1]." J/H Real Estate Inc. v. Abramson, 901 F.Supp. 952, 954 (E.D. Pa. 1995) (*quoting* Pension Benefit, 998 F.2d at 1196). "However, a *'document integral to or explicitly relied upon in the complaint* may be considered 'without

---

[1] A public record, for purposes of what may be considered on a motion to dismiss, includes criminal case dispositions, letter decisions of government agencies, and published reports of administrative bodies. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1197 (3d Cir. 1993). A court may also consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Id. at 1196. Additionally, a court "may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201." Abramson, 901 F.Supp. at 954 (*quoting* Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir.1991)).

2

converting the motion [to dismiss] into one for summary judgment.'" Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (*quoting* In re Burlington, 114 F.3d at 1426) (***emphasis added***). The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint – plaintiff's lack of notice – is dissipated "[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint." In re Burlington, 114 F.3d at 1426 (*quoting* Watterson v. Page, 987 F.2d 1, 3—4 (1st Cir. 1993)). This rule seeks to prevent situations where a plaintiff extracts a defendant's statement outside its full context and inserts the isolated statement into his complaint as defamatory, where the statement, if examined in its full context, would reveal that it bears no defamatory meaning. Id.

Plaintiff argues that this Honorable Court cannot consider Exhibits "D" through "P" attached to Defendants' Motion to Dismiss as none constitute a "criminal case disposition, a letter decision of a government agency, or a published report of an administrative body." (ECF Doc. No. 28 at pp. 6-7). Furthermore, Plaintiff argues that the Court cannot take judicial notice of "the fact that [Plaintiff] allegedly admitted to having sexual contact with DuBorgel while DuBorgel was a minor." (Id. at pp. 7-8). Defendants disagree. Plaintiff's references to the respective docket entries of the Times-Tribune and DuBorgel Lawsuits evidence his actual notice of – and reliance on – said materials when framing his First Amended Complaint.

3

More specifically, Exhibits "D" through "O"[2] each are explicitly integral to, or relied upon in, the framing of his First Amended Complaint. Plaintiff specifically references these particular documents in his pleading, relying on Defendants' alleged wrongful publications of "***extracted portions of the [Times-Tribune Lawsuit] record [...] including but not limited to the production of documents, deposition testimony, and other materials [...] to create the false impression and narrative that Plaintiff engaged in sex with a minor.***" (ECF Doc. No. 22 at ¶¶ 21–37) (***emphasis added***). Furthermore, Plaintiff cites to Defendants' documentary film as containing "***much of the same defamatory material.***" (Id. at ¶38) (***emphasis added***). As a party to both the Times-Tribune and DuBorgel Lawsuits, Plaintiff had actual, prior notice of these documents. Moreover, Plaintiff appends to his Brief portions of the record in those Lawsuits while arguing how Defendants "misconstrued" ***those very same*** "selected portions" – an unmistakable reliance on Exhibits "B" through "O" as integral to framing his tort claims and for that reason, equally indispensable to this Court's review.

As argued *intra*, the 110 Discursive Acts must be examined each in its full context for the Court to properly determine whether Plaintiff can recover damages on any of them, including Defendants' Exhibits "B" through "O" as explicitly integral to Plaintiff's claims. Therefore, consideration of the respective court records in both Lawsuits is appropriate without converting the motion to dismiss into one of summary judgment. See Doe v. Univ. of Sciences, 961 F.3d 203, 208 (3d Cir. 2020) (holding that report by defendants' retained

---

[2] Exhibits "D," "E," and "F" each constitute a criminal case disposition and otherwise contain facts of which the Court may properly take judicial notice as an authentic public record whose content is not disputed by plaintiff. (See ECF Doc. Nos. 26-1 through 26-5).

4

investigator was "integral" to plaintiff-employee's Title IX claim and may therefore be considered at motion to dismiss phase); Schmidt, 770 F.3d at 249; In re Burlington, 114 F.3d at 1426; and Houser v. Feldman, 600 F.Supp.3d 550, 560 (E.D. Pa. 2022) (holding that defendants' Policy on Misconduct referenced in plaintiff's amended complaint falls within the "narrowly defined types of material" that may be considered without converting a motion to dismiss into one for summary judgment). Furthermore, Exhibits "D" through "O" may be properly reviewed as judicial records of related cases referenced in Plaintiff's First Amended Complaint when considering a motion to dismiss. See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410 (3d Cir. 1999); City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); Pension Benefit, 998 F.2d at 1196; Iacoponi v. New Amsterdam Cas. Co., 379 F.2d 311, 311-12 (3d Cir. 1967); Glover v. Tacony Academy Charter School, 2018 WL 3105591 at *3 (E.D. Pa. 2018); and DiNicola v. DiPaolo, 945 F.Supp. 848, 855, ftn. 2 (W.D. Pa. 1996).

In addition to reviewing the documents referenced in Plaintiff's pleadings, this Honorable Court may take judicial notice of the facts surrounding the specific document's existence. More particularly, without noticing the veracity of the information contained therein, the Court may judicially notice undisputed facts about a document's authenticity like ***when, where,*** and ***how*** the document was available to underscore Plaintiff's admissions that Defendants had access to it and relied upon it. Stated differently, the Court may judicially notice the existence of these documents without imputing a respective and underlying truth, but rather as evidence that they were publicly available at the time the

5

110 Discursive Acts were published. In that regard, the Court may verify Plaintiff's admission that Mr. Alvear had access to that information and relied upon same.

>    B.  NONE OF THE 110 DISCURSIVE ACTS SUBSTANTIATE STATE-LAW REPUTATIONAL TORT CLAIMS BECAUSE THEY ARE OPINIONS, CHARACTERIZATIONS, TRUE, OR WERE NOT PUBLISHED WITH "SUBJECTIVE AWARENESS OF FALSITY," NECESSITATING DISMISSAL WITH PREJUDICE OF COUNTS I, II, V AND VI OF PLAINTIFF'S FIRST AMENDED COMPLAINT.

District Courts may dismiss defamation claims at the motion to dismiss stage if the statements-at-issue are not capable of defamatory meaning. See, e.g., Gibney v. Fitzgibbon, 547 F.App'x 111, 114 (3d Cir. 2013). A communication is not capable of defamatory meaning if the statement: (1) is *not* "reasonably susceptible of a defamatory meaning[3]," or (2) does *not* so tend "to harm the reputation of another as to lower him in the estimation of the community or deter third persons from association or dealing with him." U.S. Healthcare, Inc. v. Blue Cross of Greater Phila., 898 F.2d 914, 923 (3d Cir. 1990). Pure opinions, which are based on disclosed facts, are "absolutely privileged" and "cannot be defamatory ... no matter how derogatory they are." McCafferty v. Newsweek Media Group, Ltd., 955 F.3d 352, 357 (3d Cir. 2020) (*quoting* Braig v. Field Cmmc'ns, 456 A.2d 1366, 1373 (Pa. Super. 1983)). Mixed opinions, which "impl[y] the allegation of undisclosed defamatory facts as the basis for the opinion," are actionable. Braig, 456 A.2d at 1372

---

[3] Pennsylvania courts recognize a claim for defamation by innuendo when the words utilized in the statement are not defamatory in nature, but the context in which these statements are issued creates a defamatory implication. Mzamane v. Winfrey, 693 F.Supp.2d 442, 477 (E.D. Pa. 2010). The Court must determine whether the language used "could fairly and reasonably be construed to have the meaning imputed in the innuendo," and, when "the implication alleged by the plaintiff is not reasonably susceptible of a defamatory meaning, the plaintiff has failed to state a claim." Pace v. Baker-White, 432 F.Supp.3d 495, 510 (3d Cir. 2021), aff'd, 850 Fed.Appx. 827 (3d Cir. 2021).

6

(*quoting* Restatement (Second) of Torts § 566). Derogatory characterizations, without more, are not defamatory; the accusation must imply an undisclosed falsehood to be actionable. McCafferty, 955 F.3d at 358 (*citing* MacElree v. Phila. Newspapers, Inc., 674 A.2d 1050, 1055 (Pa. 1996)) (A "simple accusation of racism" is not enough to establish a defamatory meaning but calling a district attorney "the David Duke of Chester County" could be actionable because it implies that he was unlawfully "abusing his power as the district attorney [...] to further racism.").

In Pennsylvania, a defendant generally bears the burden of proof when asserting truth as a defense to defamation. Tucker v. Fischbein, 237 F.3d 275, 287 (3d Cir. 2001); 42 Pa. C.S.A. § 8343(b)(1). However, "[i]f the statement in question bears on a matter of public concern, or the defendant is a member of the media, First Amendment concerns compel the plaintiff to prove, as an element, that the alleged defamatory statement is in fact false." Kuwait & Gulf Link Transp. Co. v. Doe, 216 A.3d 1074, 1087 (Pa. Super. 2019). In a defamation action involving matters of public concern or a media defendant, the plaintiff must prove a "constitutionally-mandated minimum level of fault" which depends on plaintiff's status as a "public or private figure." Joseph v. Scranton v. Scranton Times L.P., 129 A.3d 404, 428 (Pa. 2015); accord Gertz v. Robert Welch, Inc., 418 U.S. 323, 343 (U.S. 1974). As a "limited purpose public figure," Plaintiff must plead facts sufficient to show actual malice. Id.

In Monge v. University of Pennsylvania, this Honorable Court's sister district granted publisher-author-defendants' respective motions to dismiss plaintiff-professor's defamation and false light claims alleging that defendants' article tortiously harmed

7

plaintiff's reputation by implying serious scientific misconduct by plaintiff. Monge v. University of Pennsylvania, 674 F.Supp.3d 195, 212 (E.D. Pa. 2023). The district court found that the matter involved a public concern and that plaintiff was a limited purpose public figure, having undertaken a "course of conduct that invites attention [and general public discussion], even though such attention is neither sought nor desired." Monge, 674 F.Supp.3d at 211 (quoting McDowell v. Paiewonsky, 769 F.2d 942, 948-49 (3d Cir. 1985)). Based on these holdings, the court determined that plaintiff's amended complaint failed to sufficiently allege facts evidencing actual malice. More specifically, the court found that plaintiff failed to plead sufficient facts showing defendants "had doubts as to the truth of [their] statements prior to publishing them." Id. at 212. In doing so, the district court culled out each paragraph coloring plaintiff's claim that moving defendants had some awareness of a statement's falsity, finding each to be insufficiently specific, consisting of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (U.S. 2009)).

While the Monge case is recent, its methodology is well established when dismissing reputational tort claims involving matters of public importance or public figures. Federal Courts have uniformly adopted this granular analysis, examining each alleged defamatory statement in context with all relevant pleadings to confirm a plaintiff's ability to clearly and convincingly establish actual malice by specifically articulating facts suggesting a defendant's "subjective awareness of falsity;" if a pleading fails this test, dismissal is appropriate. See, e.g., Monge. at 210-15, Wang v. Univ. of Pittsburgh, 2021 WL 6051568 at *13—16 (W.D. Pa. 2021); Pace v. Baker-White, 432 F.Supp.3d 495, 515-16 (3d Cir. 2020),

8

aff'd, 850 Fed.Appx. 827 (3d Cir. 2021); McCafferty v. Newsweek Media Group, Ltd., 2019 WL 1078355 at *7 (E.D. Pa. 2019), aff'd, 955 F.3d 352 (3d Cir. 2020); Earley v. Gatehouse Media Pennsylvania Holdings, Inc., 2015 WL 1163787 at *3 (M.D. Pa. Mar. 13, 2015); see also Biro v. Conde Nast, 807 F.3d 541, 546-47 (2d Cir. 2015); Schatz v. Republican State Leadership Comm., 669 F.3d 50, 57-58 (1st Cir. 2012); Mayfield v. NASCAR, Inc., 674 F.3d 369, 378 (4th Cir. 2012); and Pippen v. NBCUniversal Media, LLC, 734 F.3d 610, 614 (7th Cir. 2013). Mr. Alvear invites this Honorable Court to perform the same analysis, examining each Discursive Act to determine whether Plaintiff has sufficiently pled specific facts to establish defamatory meaning, Mr. Alvear's "subjective awareness of falsity" of the statement at time of publishing, causation, and actual damages. Should the Court conduct such an examination, the Court will find dismissal of Plaintiff's reputational tort claims – Counts I, II, V and VI – appropriate pursuant to the cases cited *supra*.

When considering the first thirty-two (32) Discursive Acts regarding Plaintiff being a "fraud, fraudster, grifter, thief, liar, etc.", Defendants invite the Court to revisit their initial rhetorical question: is Plaintiff an "innocent, private citizen" or a convicted "fraud"? Calling someone a "fraud" or a "liar," absent a "provable false implication," does not instantiate a defamatory meaning any more than calling someone a "fake" or "phony". Walter v. Herbert, 2024 WL 2159516 at *6 (M.D. Pa. May 14, 2024) (citations omitted). But, in the context of this case, Plaintiff has pled guilty to the *crimen falsi* of, quite literally, "fraud" and "perjury." (See ECF Doc. No. 26-3, 26-5 and 26-6). Coupled with the opinionated and otherwise characterized nature of several of these 32 Discursive Acts, none can be considered "defamatory" or "false". As such, Plaintiff's argument that Discursive

9

Acts naming him a "fraud, fraudster, grifter, thief, or liar" are defamatory because caselaw suggests such vigorous epithets are capable of defamatory meaning as a matter of law is incomplete. Rather, the Court must consider the statement's defamatory meaning *in the context of the entire publication as it relates to Plaintiff* and determine whether the accusation is *capable of being objectively proven true or false*. See Greenbelt Co-op Publ'g Ass'n v. Bresler, 398 U.S. 6 (U.S. 1960); Walter, 2024 WL 2159516 at *6; and Rapaport v. Barstool Sports, Inc., 2024 WL 88636 at *4 (2d Cir. Jan. 09, 2024). Defendants contend that the 110 Discursive Acts do not bear a respective defamatory meaning or, if defamatory, Plaintiff is unable to establish that Mr. Alvear "subjectively entertained serious doubts as to the truth of the statements." Bose Corp v. Consumers Union, 466 U.S. 485 (U.S. 1984).

If this Honorable Court does not dismiss all of the 110 Discursive Acts as either lacking a defamatory meaning[4] or verifiably "true," then the Court must dismiss the remaining Acts because it is legally and factually impossible for Plaintiff to establish Mr. Alvear's subjective awareness of the Discursive Act's falsity. Other than his own words, Plaintiff has yet to establish what additional documents, information or materials existed during the time in which the 110 Discursive Acts were purportedly published that strongly suggest any of them are false as they relate to Plaintiff allegedly having sex with Brienna while she was a minor. Instead, Plaintiff attaches his guilty plea colloquy and official charge as somehow evidencing the fact that he did not have sex with an underaged Brienna. (ECF

---

[4] The references to Plaintiff "molesting his own children," "other children" or that he "participates in child sex trafficking rings" are each taken out of respective context from the full statement from which they are derived; each of those Discursive Acts constitutes an opinion and/or characterization, bearing no defamatory meaning.

10

Doc. Nos. 28-2 and 28-3). Plaintiff then cites <u>Curran v. Philadelphia Newspapers, Inc.</u> and urges the Court to examine Mr. Alvear's supposed "reckless disregard" in the context of several factors including: (a) whether the statement was published "in the face of verifiable denials and without further investigation or corroboration;" (b) an "absence of any factual basis to support the conclusions;" and (c) "clear departures from acceptable journalistic procedures." 546 A.2d 639, 642 (Pa. Super. 1988). But, when applying the <u>Curran</u> factors to this case, it becomes clear that Plaintiff's denials were not "verifiable"[5] and that Mr. Alvear's "further investigation and corroboration" revealed not an "absence of factual bases to support his conclusions," but an *excess*.[6] The following table shows all information available to Mr. Alvear contemporaneously with the publication of the 110 Discursive Acts:

| INFORMATION SUGGESTING TRUTH OF 110 DISCURSIVE ACTS | INFORMATION SUGGESTING FALSITY OF 110 DISCURSIVE ACTS |
|---|---|
| Chris Kelly's Article (ECF Doc. No. 26-2) | Plaintiff's Times-Tribune Lawsuit Filings |
| PA Real Estate Board Discipline (26-3) | Plaintiff's DuBorgel Lawsuit Filings |
| Plaintiff's Criminal Record (26-3 – 26-6) | Plaintiff's Social Media Postings |
| Corruption of Minors Record (26-7; 28-2) | |
| Plaintiff's Deposition (26-8) | |
| Dori Godlewski Deposition (26-9) | |
| Brienna's Affidavits (26-10 and 26-11) | |
| Sanctions Hearing Transcript (26-12) | |
| Times-Tribune Docket Entries (26-13) | |
| DuBorgel Docket Entries (26-15) | |

---

[5] See <u>Castellani v. Scranton Times, L.P.</u>, 125 A.3d 1229, 1238-39 (Pa. 2015) (holding that a plaintiff's denial of the truth may be probative of actual malice only if the denial is verifiable, where, in addition to plaintiff's denial, there exists other third-party or independent evidence supporting the falsity of the statement).
[6] See <u>Smith v. Main Line Animal Rescue, Inc.</u>, 2019 WL 4464814 at *5-10 (Pa. Super. 2019) (*Offered for persuasive value only*) (affirming dismissal of defamation and false light claims against defendants where plaintiff failed to plead any evidence that defendants published the allegedly defamatory statements with actual malice).

11

A quick review of the table above shows a clear disparity between the two columns: one side includes information gleaned from at least eight (8) different entities including Plaintiff while the other side's information comes only from one person. Nevertheless, Plaintiff insists that his actual guilty plea colloquy and official criminal charge so clearly evidence Plaintiff's position that Mr. Alvear's alleged failure to publish them infers that he entertained serious doubts as to the falsity of his statements. Plaintiff's argument makes little sense. Neither document reads: "Plaintiff did not have sex with Brienna when she was a minor." Rather, the documents serve as further admissions that Plaintiff, an adult, did bad things to Brienna, a minor. Taken together with the dozens of other documents evidencing Plaintiff's inappropriate underage tryst with Brienna, actually underscores Mr. Alvear's position. Yet, Plaintiff insists that *more* discovery is required to determine Mr. Alvear's state of mind, editorial processes and adherence to journalistic standards. That is unnecessary. Mr. Alvear has been up-front as to his state of mind, what he reviewed and when; Mr. Alvear reviewed the publicly available information as outlined herein and found that information to be more credible than Plaintiff's own threadbare denials and hazy challenges to Brienna's affidavits. Respectfully, no further discovery is going to reveal anything further about Mr. Alvear's state of mind or what specific materials he relied upon prior to allegedly publishing the 110 Discursive Acts because ***nothing else exists suggesting that Plaintiff did not have sex with Brienna when she was a minor***. The only reason Plaintiff wants to move forward with discovery is to continue to cause Defendants to pay for their defense of this lawsuit, a fact that Plaintiff openly admits. (See ECF Doc. Nos. 20-1, 20-2, 20-3 and 20-4).

### C. PLAINTIFF'S ALLEGED DAMAGES ARE TOO SPECULATIVE AND UNRECOVERABLE AS HE IS UNABLE TO TRACE HOW ANY OF THE 110 DISCURSIVE ACTS CAUSED HIM HARM.

Plaintiff next argues that he has suffered damages by attaching to his Brief an Affidavit dated May 24, 2024.[7] As Plaintiff raises no additional argument that is not addressed in Defendants' initial Brief in Support, Defendants rest and rely on the arguments presented in therein and reiterate that Plaintiff has failed to sufficiently plead causation, actual damages or the absence of constitutional protection or privilege related to Counts III (IIED) and IV (Intentional Interference with Contractual Relations). As such, each should be dismissed, with prejudice.

Plaintiff wants it both ways; on the one hand, he *needs* to be seen as an influential "public figure," upon whose advice is relied by millions. On the other hand (when convenience suits him) he wants to be seen as an innocent, private citizen who, while doing God's work, has been maliciously and grievously harmed by Defendants' "reckless" publications. That class of private citizens – and their right to privacy – deserves the highest protection from unwarranted threats and intimidating language. But that protection and expectation of privacy becomes diminished when citizens regularly and openly engage the public on discursive platforms such as television, radio or social media to discuss popular political, social, economic and/or cultural issues. See Weiser Law Firm, P.C. v.

---

[7] It strikes Defendants odd that *only after he is challenged* does Plaintiff disclose information coloring in his ostensible claims against Defendants – information which, if true, could be relevant to his causes of action. These tactics are more often utilized by criminal defendants much less often by civil plaintiffs. Defendants wonder if the reason these pieces of information are concealed is because Plaintiff cares less about his compensatory damages and more about continuing this lawsuit as a form of inflicting punishment.

Hartleib, 665 F.Supp.3d 647, 666—68 (E.D. Pa. 2023) (explaining how a defamation plaintiff who voluntarily injects himself into a [public] controversy assumes the risk and consequent fairness of public figure or limited public figure status). This is especially true for those citizens who engage in the more crass and increasingly inflammatory kinds of political speech. In kind, Plaintiff's expectation of privacy and protection from the same inciteful and often volatile language he utilizes becomes greatly diminished. Id.

Stated differently, some of the 110 Discursive Statements might appear more alarming if Plaintiff never took advantage of social media as his bully pulpit. This is another fact Plaintiff ignores; he is not some "innocent private citizen," forced unwillingly into the public eye, shackled hand-to-foot. He gladly exploits social media as his public forum as he rakes in millions of dollars in content and advertising revenue by spreading conspiracy theories to the masses. See Hartleib, 665 F.Supp.3d at 667; Franklin Prescriptions, Inc., v. The New York Times Co., 267 F.Supp.2d 425, 436 (E.D. Pa. 2003) (*quoting* Steaks Unlimited, Inc. v. Deaner, 623 F.2d 264, 273 (3d Cir. 1980)) ("[P]ublic figures effectively have assumed the risk of potential unfair criticism by entering into the public arena and engaging the public's attention."). Far from being upset by some thrown tomatoes, Plaintiff instead capitalizes on these confrontations to attract and retain viewership.

By having both profited from and engaged in the mass distribution of propagandized misinformation to hundreds of thousands of viewers, Plaintiff aggressively responds to his opposition, whose online anonymity belies both the seriousness of their language and the likelihood of their threats being fulfilled. Plaintiff, a self-described prophet on a holy mission, should expect to receive a certain level of criticism, especially from the largely

anonymous online community wherein he operates; but Plaintiff amplifies that critical attention through his aggressive and often insulting responses, attacking and threatening those he deems guilty of unfair disparagement for spectacle. As a result, Plaintiff's followers usually fall into one of two categories: devoutly engaged or aggressively confrontational.

Defendants fall into the latter category, having been at first critical of Plaintiff and then – upon discovery of Plaintiff's criminal history of fraud, perjury and sexual corruption of minors – castigatory and invective[8]. Plaintiff expects this reaction and exploits it to his advantage. Most of Plaintiff's followers tuning in to his regular posts on Rumblr® do so anticipating Plaintiff's reaction to his "most recent drama." With QAnon's debunking and having no new "intel" to disclose, Plaintiff's recent postings consist of long introductory songs, advertisements for pyramidal schemes, and dilettantish musings on current events, including his legal tiffs. (See ECF Doc. No. 20, *generally*). Effectively, Plaintiff's online persona has become a reality television show, devolving from holy "Truther" to a family member on "the Kardashians". If that is true, then Plaintiff's allegations of actual harm become severely diminished, appearing more like the "cost of doing business" than a legitimate tortious injury. Plaintiff knows this and continues to double-down.

In response to the 110 Discursive Acts, Plaintiff lashed back, publishing dozens of posts attacking Defendant's credibility. The week after filing his Complaint, Plaintiff released ***his own documentary film*** criticizing Defendants' documentary while defending his

---

[8] Former President Donald Trump's continued influence on Plaintiff and his followers is relevant here to the extent that the ex-president engages in a substantially similar rhetorical methodology sounding in *ad hominem* and denial.

15

theory of the case in *see-I-can-do-this-too* fashion. After Defendants filed their Motion to Dismiss, Plaintiff played arm-chair expert on social media, summarizing the filing while providing legal commentary. (See ECF Doc. No. 20-3). So long as it invites more viewership, Plaintiff has no compunction speaking about his lawsuits on social media.

Within this universe, Plaintiff's articulation of damages is plainly unconvincing. His stated injuries are indistinct, unclear, solely supported by his testimony, and allegedly occurring within the past four (4) years – a timeframe wherein Plaintiff commenced two (2) *other* lawsuits inadvertently outing his entire criminal record, spurring the publication of dozens of articles citing his criminal history which were then re-posted *ad infinitum* across the internet. Amidst that hurricane of information, Plaintiff cannot show that it was Defendants' publications that, more likely than not, caused the injuries he describes.

### D. DISMISSAL OF PLAINTIFF'S STATE-LAW TORT CLAIMS SHOULD BE WITH PREJUDICE, AS AMENDMENT WOULD BE FUTILE OR INEQUITABLE.

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). An amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Moreover, amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" M.U. v. Downington High Sch. E., 103 F.Supp.3d 612, 631 (E.D. Pa. 2015) (*quoting* Great W. Mining, 615 F.3d at 175). Amendment is properly deemed futile where – in the pleadings relied upon by the district

court – a plaintiff admits or references information showing: (a) the *truth* of an allegedly defamatory statement; (b) *truth as a defense* is argued in the defendant's motion to dismiss or brief; and plaintiff's burden includes a showing of *actual malice*. See Wang, 2021 WL 6051568 at *13—16 (W.D. Pa. 2021); Pace, 432 F.Supp.3d at 515-16, aff'd, 850 Fed.Appx. 827; McCafferty., 2019 WL 1078355 at *7, aff'd, 955 F.3d 352; and Earley, 2015 WL 1163787 at *3.

In the instant case, Defendants have asserted the defenses of both privilege and truth and reassert each herein. After this Honorable Court's conducts the "actual malice" analysis district courts normally conduct in cases involving a public figure or matters of public concern, Defendants contend that any remaining 110 Discursive Acts found to bear a defamatory meaning should be dismissed because it is legally and factually impossible for Plaintiff to clearly and convincingly establish Mr. Alvear's "subjective awareness of falsity" held contemporaneously at the time of their respective publications. If Plaintiff cannot articulate particular facts showing the falsity of these statements existing contemporaneously with their respective publications, then his claims must be dismissed without opportunity to amend. Plaintiff's denials are not enough. Absent available, independent evidence "verifying" falsity of the 110 Discursive Acts when published, Plaintiff is unable to establish "actual malice" and his claims must be dismissed as a matter of law. Frankly, if Plaintiff hasn't been able to conjure up that important evidence by now – with three (3) civil lawsuits pending – no amount of discovery is going to change the game in his favor. The parties will be right back before this Honorable Court on Motions for Judgment on the Pleadings or Summary Judgment. As such, leave to amend would be futile.

Finally, Plaintiff has approached this lawsuit as he has the Times-Tribune and DuBorgel Lawsuits: *with an improper motive and in bad faith*. Plaintiff admits to filing this lawsuit as retaliation for Defendants' actions, done to "protect his reputation[9]" and to run up Defendants' legal bills in its prosecution. Plaintiff consistently speaks about his lawsuits on Rumblr® and other social media platforms, even placing figurines in the background of his webcasts depicting Mr. Alvear and nicknamed-in-degradation. Collectively, these sophomoric actions underscore Plaintiff's true motive in prosecuting these cases and further color the question Defendants posed in its initial Brief: is Plaintiff an "innocent private citizen," or is he something else?

Respectfully Submitted,

**ROTHENBERG & CAMPBELL**

By: _/s/ Ryan P. Campbell_
Ryan P. Campbell, Esquire (PAID: 317838)
345 Wyoming Ave., Ste. 210
Scranton, PA 18503
p. 570.207.2889 || e. HRLaw04@gmail.com

_/s/ Dave W. Rothenberg_
Dave W. Rothenberg, Esquire (PAID: 326483)
345 Wyoming Ave., Ste. 210
Scranton, PA 18503
p. 570.207.2889 || e. HRLaw06@gmail.com

***ATTORNEYS FOR DEFENDANTS***

Date: May 30, 2024

---

[9] "You took your shot. Now watch me take mine." - Plaintiff to Mr. Alvear. (ECF Doc. No. 20-4).

**ROTHENBERG & CAMPBELL**  *Attorneys for the Defendants*
Ryan P. Campbell, Esq. (#317838)
Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889 || Fax: 570.207.3991
E-mail: Hrlaw04@gmail.com || Hrlaw06@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILIP GODLEWSKI,<br><br>                          Plaintiff,<br>v.<br><br>EDUARDO NICOLAS ALVEAR GONZALEZ, *AKA* ALVEAR GONZALEZ EDUARDO NICOLAS, *AKA* NICOLAS ALVEAR; and GOOD LION TV, LLC,<br>                          Defendants | CIVIL ACTION—LAW & EQUITY<br>*(HON. JULIA K. MUNLEY)*<br><br>JURY TRIAL DEMANDED<br><br>No.: 3:24—CV—00344—JKM |

### CERTIFICATE OF COMPLIANCE

I, Ryan P. Campbell, Esquire, on behalf of Defendants, do hereby certify that I performed a word-count on the above Brief using Microsoft® Word Version 16.83 (2024) and that the above-captioned document contains 4,918 words, excepting captions, salutatory and introductory language, signatory lines and Certificates of Compliance and Service, respectively. As such, this filing complies with Local Rule 7.8.

                                                                 Respectively submitted,
                                                                 **ROTHENBERG & CAMPBELL**

                              By: _____
                                     Ryan P. Campbell, Esquire
                                     *ATTORNEY FOR DEFENDANTS*

Date: May 30, 2024

**ROTHENBERG & CAMPBELL**            *Attorneys for the Defendants*
Ryan P. Campbell, Esq. (#317838)
Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889 || Fax: 570.207.3991
E-mail: Hrlaw04@gmail.com || Hrlaw06@gmail.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILIP GODLEWSKI,<br><br>                     Plaintiff,<br>v.<br><br>EDUARDO NICOLAS ALVEAR GONZALEZ, *AKA* ALVEAR GONZALEZ EDUARDO NICOLAS, *AKA* NICOLAS ALVEAR; and GOOD LION TV, LLC,<br><br>                     Defendants | CIVIL ACTION—LAW & EQUITY<br>(HON. JULIA K. MUNLEY)<br><br>**JURY TRIAL DEMANDED**<br><br>No.: 3:24—CV—00344—JKM |

### **CERTIFICATE OF SERVICE**

      I, Ryan P. Campbell, Esquire, on behalf of Defendants, do hereby certify that I sent a true and accurate copy of Defendants' Brief in Support of their Motion to Dismiss Plaintiff's First Amended Complaint in the above-captioned case on this **30th day of May, 2024** to the below named individuals *via* ECF and Electronic Mail addressed as follows:

      Timothy M. Kolman, Esq.
      e. tkolman@kolmanlaw.com
      *ATTORNEYS FOR PLAINTIFF*

                                                                ROTHENBERG & CAMPBELL

                                                                By: _____
                                                                     Ryan P. Campbell, Esquire
                                                                    *ATTORNEY FOR DEFENDANTS*

Date: May 30, 2024