PHILIP GODLEWSKI,                         IN THE COURT OF COMMON PLEAS
                              Plaintiff,  OF LACKAWANNA COUNTY, PA

         v.                        :      No: 2021-CV-2195

CHRIS KELLY et al.,                :
                              Defendants. :     JURY TRIAL DEMANDED

<u>**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR RECONSIDERATION
OF THE COURT'S ORDER DOCKETED
SEPTEMBER 3, 2024 GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**</u>

I.                          <u>**INTRODUCTION**</u>

On August 30, 2024, the Court's Memorandum setting forth its opinion on the Motion for

Summary Judgment filed by the Defendants was entered into the docket by the Clerk of Judicial

Records.  On September 3, 2024, the Court's Order granting Defendants' Motion for Summary

Judgment was entered.   Plaintiff Philip Godlewski ("Godlewski") has filed a motion, without

waiver of any other issues that he may raise on appeal, requesting reconsideration of the Court's

finding that Godlewski is collaterally estopped from denying a sexual relationship with Brienna

DuBorgel ("DuBorgel") while DuBorgel was a minor, and the Court's finding that Godlewski

failed to demonstrate actual malice on the part of the Defendants due to the alleged redaction of

the transcript of Larry Holeva's deposition.  The Court has kindly granted an expedited briefing

schedule to enable reconsideration within the timeframes established by the Pennsylvania Rules

of Appellate Procedure.

**Exhibit 2**

**II.**                          **ARGUMENT**

Godlewski asks the Court to reconsider two of its findings set forth in the Court's August 30 Memorandum.  First, Godlewski suggests that the Court should not have concluded that Godlewski was collaterally estopped from denying the allegations concerning a sexual relationship with DuBorgel.  Second, Godlewski contends that consideration of the transcript of the Holeva deposition mandates a finding that Godlewski has adduced sufficient evidence of actual malice to proceed to trial.

**A.     THE COURT SHOULD REVERSE ITS FINDING THAT GODLEWSKI IS COLLATERALLY ESTOPPED FROM DENYING THAT HE ENGAGED IN A SEXUAL RELATIONSHIP WITH A MINOR.**

Godlewski makes three related arguments on this point:   1. Defendants waived any defense of res judicata or collateral estoppel; 2.  for purposes of determining issue preclusion as a result of a guilty plea, the Court must look to the text of the indictment, information, and written and/or oral guilty plea colloquy to determine the factual basis of the plea and not to the Criminal Complaint; and 3.  there are sufficient factual conflicts between the text of various documents in the criminal case that there is reasonable doubt as to the factual basis of the guilty plea.

**1.     Defendants have waived issue preclusion arguments.**

Pennsylvania law recognizes two theories of issue preclusion, res judicata and collateral estoppel.  See *Chada v. Chada*, 756 A.2d 39, 42-43 (Pa.Super. 2000) for a discussion of the elements of each theory.  While the Court has indicated that the theory of collateral estoppel, rather than res judicata, is operative in the case at bar, Godlewski will address the waiver issue with respect to both theories out of an abundance of caution.

The Pennsylvania Rules of Civil Procedure require that the defenses of estoppel and res judicata be pleaded in a responsive pleading under the heading "New Matter." Pa.R.C.P. 1030 (a). Further, a party waives defenses not presented by preliminary objection, answer or reply. Pa.R.C.P. 1032 (a). The Superior Court has held that "under normal circumstances [a party] would have been forced to allege collateral estoppel in its answer and new matter since this is an affirmative defense." *Shaffer v. Pullman Trailmobile, Div. of M.W. Kellogg Co.*, 368 Pa.Super. 199, 209, 533 A.2d 1023, 1028 (1987) (citing Pa.R.C.P. 1030 and 1032)). "Although Rule 1030 does not specifically list collateral estoppel as one of the affirmative defenses within the scope of the rule, its nonexclusionary language, taken together with federal decisions, indicates that the rule is to be applied to that concept." *Id.*

The Commonwealth Court has held that "trial courts should not 'act as the defendant's advocate.'" *Dyer v. Meachum*, 2018 W.L. 828395, at \*4 (Pa. Cmwlth. Feb. 13, 2018) (citing *O'Hare v. Cty. of Northampton*, 782 A.2d 7, 15 (Pa. Cmwlth. 2001)). "'For a trial court to raise an argument in favor of summary judgment *sua sponte* and grant summary judgment thereon risks depriving the court [of] the benefit of advocacy on the issue, and depriving the parties the opportunity to be heard.'" *Id.* (citing *Luitweiler v. Northchester Corp.*, 456 Pa. 530, 533 n. 5, 319 A.2d 899, 901 n. 5 (1974)). The *Dyer* court found "the trial court erred by raising affirmative defenses *sua sponte*, and dismissing Appellants' Complaint based on those affirmative defenses." *Id.*

In the case at bar, Defendants asserted neither res judicata nor collateral estoppel as affirmative defenses in their New Matter. Further, Defendants did not attempt to raise or argue these defenses in their Motion for Summary Judgment and supporting documents or even at oral

argument. Even in their Answer to Godlewski's Motion for Reconsideration, Defendants do not claim that they pled res judicata and collateral estoppel as affirmative defenses. Instead, Defendants point to paragraph 8 of their New Matter, which invokes the privilege of fair comment, and paragraph 18, which invokes the defense of truth. See Defendants' Answer to Plaintiff's Motion for Reconsideration, ¶ 9.

These arguments miss the point. Asserting the defense of truth entitles a defendant to present evidence which, if believed by a jury, would counter a plaintiff's evidence of falsehood. The defense of truth in no way precludes a plaintiff from presenting evidence of falsehood. Collateral estoppel, by contrast, effectively puts a plaintiff out of court by preventing the plaintiff from presenting evidence in the first place. There is nothing in Defendants' New Matter or their motion for summary judgment that would put Godlewski on notice that Defendants assert either res judicata or collateral estoppel. Rather, the Court raised the issue *sua sponte* but since the Defendants did not properly plead them, they are deemed waived.

Aside from the issue of collateral estoppel, the Court has already concluded that the weight of the Defendants' evidence mandates a finding of truth that fails at summary judgment due to the *Nanty-Glo* rule. See Memorandum at pp. 33-34. As the issue of collateral estoppel was impermissibly raised by the Court and was waived by Defendants for failure to plead, the Court should reverse its ruling and allow Godlewski's claims for defamation and invasion of privacy concerning Godlewski's alleged relationship with DuBorgel to proceed to trial.

2.    Permissible sources for determination of the factual basis for the plea.

Godlewski does not quarrel with the general proposition that a guilty plea in a criminal case may have a preclusive effect in a civil case involving the same facts. In the present case, the

Court noted that Godlewski entered a guilty plea in which he admitted to having "inappropriate text [m]essages" and "contact" with DuBorgel. See Memorandum, p. 36. Earlier in its Memorandum, the Court recites material from the Affidavit of Probable Cause, including an alleged statement by DuBorgel to Detective Mancuso that "they were involved in oral and vaginal sexual intercourse." Memorandum, p. 12. The Court also recites passages from the Affidavit of Probable Cause, which detail alleged text messages between Godlewski and DuBorgel. Memorandum, p. 12 - 13. The Court concluded that this material from the Affidavit of Probable Cause supplied "the factual predicate for the single count of corruption of minors..." Memorandum, p. 34. Godlewski asserts that the Court improperly looked to the Affidavit of Probable Cause to supply the factual basis for the plea.[1]

Godlewski will begin by examining the cases cited by the Court in support of its collateral estoppel ruling. Of those cases, a number do not squarely address the issue presented in this case.

In *Kedra v. Schroeter*, 876 F.3d 424 (3d Cir. 2017), the Third Circuit considered an appeal on a 12 (b)(6) dismissal for failure to state a claim rather than a motion for summary judgment.

---

[1] The Court asserts that it may take judicial notice of the facts alleged in the Affidavit of Probable Cause. Memorandum, p. 12 fn. 8. Godlewski suggests that this is an improper exercise of the power of judicial notice. Notice may only be taken of facts that are not the subject of reasonable dispute because they are either generally known in the court's jurisdiction or can accurately be determined from sources whose accuracy cannot be questioned. Pa.R.E. 201 (b)(1) and (2). The Commonwealth Court has recently healed that "[A] court may not ordinarily take judicial notice in one case of the records of another case, whether in another court or its own, even though the contents of those records may be known to the court." *Boyd v. Pennsylvania's Sentencing Scheme for Sentencing 18 Year Old's to Mandatory Life Without Parole*, 311 A.3 63, 65 n. 3 (2024) (citing *Styers v. Bedford Grange Mut. Ins. Co.*, 900 A.2d 895, 899 (Pa. Super. 2006)). "However, a limited exception to that general rule allows 'a court [considering preliminary objections] to take notice of a fact which the parties have admitted[,] or which is incorporated into the [petition] by reference to a prior court action.'" *Id.* (*Guarrasi v. Scott*, 25 A.3d 394, 398 n.3 (Pa. Cmwlth. 2011)). However, the Court cites no case law that extends this narrow exception to notice of adjudicative facts in the context of a summary judgment motion. Further, "[i]f there is uncertainty with respect to a matter in question, the court will not take judicial notice." *Cosom v. Marcotte*, 760 A.2d 886, 893 (Pa.Super. 2000). In the case at bar, the facts alleged in the Affidavit of Probable Cause are in dispute as Godlewski has denied them, and they cannot, as discussed elsewhere herein, form the factual basis for Godlewski's plea. Finally, a party is entitled to an opportunity to be heard in conjunction with taking judicial notice. Pa.R.E. 201 (e). Godlewski was not afforded such an opportunity in this case.

*Id.* at 432. While the *Kedra* court cited *Mitchell*, it did not actually rule on issue preclusion as "[Kedra] relies on the plea at this stage not to invoke issue preclusion, but only to argue that her allegations were sufficient to survive Schroeter's motion to dismiss." *Id.* at 443, n. 2. It is noteworthy, however, that the *Kedra* court specifically quoted *Mitchell* for the proposition that a guilty plea constitutes an admission of the facts in the indictment rather than in some other document. *Id.*

In *McGriff v. Vidovich*, 699 A.2d 797 (Pa.Super. 1997), the plaintiff was arrested for, and pled guilty to burglary, theft and criminal mischief. *Id.* at 798. McGriff subsequently filed two civil complaints against the arresting officer alleging false arrest. *Id.* The issue presented to the court was not whether McGriff admitted to the facts of the burglary, theft, or criminal mischief. Rather, the question was whether McGriff could challenge the existence of probable cause for the arrest, thereby supporting his claim of false arrest. The Superior Court found that, as a matter of law, "probable case is conclusively established to exist at the time the arrest was made when there is a guilty plea or conviction." *Id.* at 800. As a result, the *McGriff* court did not need to look at the factual basis for the plaintiff's prior criminal plea.[2]

Several cases cited by the Court involve direct determinations of the facts which gave rise to the guilty pleas of the parties. Godlewski will address these.

In *Com., Department of Transportation v. Mitchell*, 517 Pa. 203, 535 A.2d 581 (1987), the Superior Court held that "a guilty plea constitutes an admission to all of the facts averred in the indictment." *Id.* 517 Pa. at 212, 535 A.2d at 585 (citing *Com. ex rel. Walls v. Randle*, 414 Pa. 53, 198 A.2d 528 (1964)). *Mitchell* presented a scenario in which the defendant, Mitchell,

---

[2] *Basile v. Township of Smith*, 752 F.Supp.2d 643 (W.D. Pa. 2010) involved similar questions as to whether a guilty plea admits probable cause for arrest. The same issue was presented in *Domitrovich v. Monaca*, 2010 WL 3489137 (W.D.Pa. 2010).

previously pled guilty in federal court to one count of violating 18 U.S.C. § 1341 and §2 relating to one act of mailing materials connected with a fraudulent scheme. *Id.* 517 Pa. at 208-09, 535 A.2d at 583-4. In a subsequent civil suit brought against Mitchell by the Commonwealth, the court looked to the text of the indictment and the transcript of "a lengthy plea bargain colloquy" to determine the facts that formed the basis for Mitchell's plea in the criminal case. *Id.* The *Mitchell* court did not look to any further documents or sources of information to determine the facts that Mitchell admitted during his plea.

Similarly, in *Lynch v. Ducasse*, 2020 WL 3547375 (M.D. Pa. June 30, 2020), the Middle District made exact findings concerning the facts that Lynch admitted. *Id.* at 3. The *Lynch* court based these findings on the contents of Exhibits B and C to Document 19 filed in that case. While the Middle District did not identify in the text of its opinion just what those documents were, they are available for viewing via the court's electronic filing system. Exhibit B was the transcript of Lynch's guilty plea hearing. Exhibit C was a copy of the Unified Judicial System docket sheet for Lynch's criminal case.

In *DiJoseph v. Vuotto*, 968 F.Supp. 244 (E.D. Pa. 1997), the Eastern District examined the transcript of DiJoseph's plea hearing and sentencing to determine the operative facts behind the plea. *Id.* at 246. In the same vein, in *Dept. of the Navy, Naval Air Warfare Center, Aircraft Division Warminster v. Unemployment Compensation Board of Review*, 158 Pa.Cmwlth. 605, 632 A.2d 622 (1993), the Commonwealth Court divined the factual basis for the claimant's plea from the amended information, the plea agreement, and the government's guilty plea memorandum. *Id.* 158 Pa.Cmwlth at 609-13, 632 A.2d at 624-26.

The common thread in these cases is that they look to the indictment or information together with the documents and statements made, in conjunction with the plea, to determine the factual basis for the plea. There are sound reasons for this rooted in criminal law. It is well settled that "a guilty plea constitutes an admission of all the facts alleged in the indictment or information." *Com. v. Petrillo*, 255 Pa.Super. 225, 231-32, 386 A.2d 590, 594 (1978) (citing *Com. ex rel. Sanders v. Maroney*, 417 Pa. 380, 207 A.2d 789 (1965); *Com. ex rel. Walls v. Rundle*, 414 Pa. 53, 198 A.2d 528 (1964), *Com. ex rel. Gouch v. Myers*, 196 Pa.Super. 285, 175 A.2d 158 (1961)). This is logical as the indictment or information supersedes the criminal complaint as the charging document. It is also consistent with the longstanding principle that "[a] person who elects to plead guilty is bound by the statements he makes in open court while under oath . . ." *Com. v. Turetsky*, 925 A.2d 876, 881 (Pa.Super. 2007) (citing *Com. v. Stork*, 737 A.2d 789, 790-91 (Pa.Super. 1999)). See also *Com. v. Ramirez-Contreras*, 2024 WL 3589230 (Pa.Super. July 31, 2024) ("[A] defendant is bound by the statements [that] he makes during his plea colloquy")(internal citations omitted). Further, looking to these sources is consistent with the rule that "A guilty plea is "an admission of all the elements of a formal criminal charge." *Com. v. Mack Transport, LLC*, 305 A.3d 22, 26 (Pa.Super. 2023) (citing *Com. v. Thompson*, 466 Pa. 15, 351 A.2d 280, 282 (1976)). "In a negotiated guilty plea, the defendant admits all elements of the charge in exchange for some concession by the Commonwealth, e.g., a reduced sentence." *Id.* (citing Comment, Pa.R.Crim.P. 590). Thus, in determining the factual basis of a plea for purposes of collateral estoppel, the information or indictment supplies the elements of the formal charge and the statements made by the defendant in written and/or oral plea colloquys supply factual context.

In the criminal case, the information charging Godlewski reads as follows:

**COUNT I: CORRUPTION OF MINORS**
(18 C.P.S.A. Sec. 6301(a-1);Grade:Misdemeanor 1;$10,000.00;5 years;
unlawfully, being of the age of 18 years and upwards, corrupt or tend to corrupt the morals of any minor less than 18 years of age, or did aid, abet, entice or encourage any such minor in the commission of any crime, or did knowingly assist or encourage such minor in violating his or her parole or any order of court, to wit; the defendant did repeatedly have inappropriate text naessages and contact with a minor.

The guilty plea colloquy signed by Godlewski contains the following relevant passages:

16. The elements of the crime charged are as follows:
_Being of the Age of 16 or older, by an act corrupts of tend to corrupt the morals of a minor_

16(a) Do you understand these are the elements of the crimes charged that you are pleading to? _Yes_ .

17. The District Attorney indicates this is what you did on the date of the crime charged:
_____
_____
_____

18. Do you admit that you did the above stated act? _Yes_ .

It appears from paragraph 17 that the District Attorney did not make a written indication of the things that Godlewski allegedly did or admitted to doing. As set forth in Godlewski's Motion for Reconsideration, Godlewski attempted to obtain copies of the transcripts of his plea hearings, but they are no longer available from the Court.[3] From the evidence available concerning the plea, and consistent with the case law set forth above, the Court can only conclude that Godlewski pled to a corruption charge as evidenced by the Information and the Guilty Plea Colloquy. The only facts provided in those documents are that Godlewski "did repeatedly have inappropriate text [m]essages and contact with a minor." To use the Affidavit of Probable Cause to attempt to add more detail to the content of the text messages or the nature of the contact would, at this

---

[3] Defendants may attempt to argue without merit that Godlewski should have been more diligent in requesting the transcripts. Assuming the Lackawanna Court of Common Pleas maintains unstranscribed notes of testimony in keeping with the AOPC Record Retention and Disposition Schedule, the untranscribed notes would have only been retained for seven years. See 204 Pa.Code § 213.51 (4.3.1) As Godlewski's second plea hearing was in 2011, the retention period would have expired in 2018, some three years prior to publication of the Scranton Times article at issue in this matter.

stage, be nothing more that trial by affidavit which is not only frowned upon, but prohibited.  See

*Curran v. Philadelphia Newspapers, Inc.*, 497 Pa. 163, 183, 439 A.2d 652, 662 (1981) (citing

Goodrich-Amram 2d, s 1035 (d): 1, p 455).

Of the cases cited by the Court, only one, *Hawkins v. Unemployment Compensation*

*Board of Review*, 695 A.2d 963 (1997), purports to stand for the proposition that "[a] guilty is an

admission of the facts averred in the complaint."  *Id.* at 966.  This holding is problematic for four

reasons.  First, the *Hawkins* court cites to *Mitchell* to support its ruling.  As discussed above, the

*Mitchell* court did not look to the underlying criminal complaint to discern the factual basis for

the plaintiff's plea, nor did the *Mitchell* court state anywhere in the text of its opinion that a plea

constitutes an admission of the facts in the complaint.  Second, the *Hawkins* court does not

appear to have looked to the criminal complaint to discern the basis for the claimant's plea.

Rather, the claimant appears to have supplied those facts in his testimony.  *Id.* at 964-65.  Third,

the Commonwealth Court's holding concerning the complaint as a factual source does not appear

to have ever been adopted by the Superior Court or the Pennsylvania Supreme Court.  As such, it

is not binding precedent on the Courts which would hear this appeal.   Fourth, there is a

substantial and material change to the language of the corruption charge from the Complaint to

the Information.  In light of this change, it would not be appropriate to look back the text of the

Complaint which conflicts with the text of the Information.

Accordingly, the Court should hold that Godlewski's plea does not operate to collaterally

estop Godlewski from denying the truth of the sexual relationship allegations and permit

Godlewski's claims to move to trial.

3.  **There is reasonable doubt as to the factual basis of the guilty plea.**

The Court has opined that *Linnen v. Armainis*, 991 F.2d 1102 (3d Cir. 1993) is a controlling precedent in this matter. See Memorandum, p. 35. The *Linnen* court acknowledged that "[u]nder Pennsylvania law, a guilty plea constitutes an admission to all the facts alleged in the indictment." *Id.* at 1105 (internal citations omitted). "In Mitchell, the Pennsylvania Supreme Court held that summary judgment may be granted in a civil proceeding based upon a guilty plea in a criminal case if the operative facts in the criminal case are identical to those that would be litigated in the civil case." *Id.* "However, '[r]easonable doubt as to what was decided by a prior judgment should be resolved against using it as an estoppel[.]'" *Id.* (citing *Gregory v. Chehi*, 843 F.2d 111, 121 (3d Cir.1988) (quoting *Kauffman v. Moss*, 420 F.2d 1270, 1274 (3d Cir.), cert. denied, 400 U.S. 846 (1970)).

In the case at bar, Godlewski contends that it is not possible, as a matter of law, to conclude from the Information and the Guilty Plea Colloquy that he admitted to any facts other than that he had inappropriate text messages and contact with a minor, all of which tended to corrupt her morals. Assuming *arguendo* that it is legally possible to determine additional facts, there exists a reasonable doubt as to what those facts may be.

It is impossible to escape the fact that there is a tension between the language of the corruption charge in the Criminal Complaint and the Information, which was the operative charging document at the time of the plea. The charge in the criminal complaint reads:



The charge contains the express allegation in two places that Godlewski engaged in sexual intercourse with a minor. The corruption charge was accompanied by numerous other charges directly alleging sexual contact between Godlewski and a minor.

Contrast this with the language of the sole charge in the Information, which contains no express allegation of sexual intercourse, but only an allegation of inappropriate texting and contact. See excerpt from Information at p. 9 *supra*. The confusion caused by this discrepancy is heightened by the lack of factual allegations in the colloquy. See excerpt from Guilty Plea Colloquy at p. 9 *supra*. There are any number of possibilities that may account for the discrepancy. It is possible that the Commonwealth could not prove sexual contact, and so it charged Godlewski with other acts. The language may have changed due to negotiation between Godlewski and the Commonwealth. There is no evidence of record that conclusively resolves these or other possibilities. What is knowable is that the reason for the difference cannot be discerned from the face of the Information or from any admission that Godlewski made on the Guilty Plea Colloquy or on the record during the plea hearing. As trial by affidavit (in this case, the Affidavit of Probable Cause) is not permitted, the only way to resolve the issue is testimony at the time of trial from the participants in the plea. The credibility of that testimony must be determined by the jury alone. See *Nanty-Glo v. American Surety Co.*, 309 Pa. 326, 328, 163 A. 523, 524 (1932). Accordingly, there is reasonable doubt as to what was admitted in Godlewski's criminal case and the Court should reverse its summary judgment ruling with respect to defamation by imputation of crime.

**B.    THE COURT SHOULD, UPON CONSIDERATION FOR THE FULL RECORD, FIND THAT GODLEWSKI HAS ADDUCED SUFFICIENT EVIDENCE OF <u>ACTUAL MALICE TO PROCEED TO TRIAL.</u>**

In its Order of September 16, 2024, the Court has indicated that it will consider the clean copy of the Holeva deposition transcript.    See September 16, 2024 Order, ¶ 5, fn. 1. Accordingly, Godlewski will not argue about his entitlement to consideration of the clean transcript.  Godlewski will restate his arguments on actual malice here to prevent the Court's need to refer back to his Brief in Opposition to the Defendants' Motion for Summary Judgment. References will be to Exhibit 3 of the Motion for Reconsideration and to Exhibit 44 of Defendants' summary judgment materials.

It is well settled that a public official (or figure) "must prove that the statement was made with 'actual malice' - that is, with knowledge that it was false or with reckless disregard to whether it was false or not." *Curran v. Philadelphia Newspapers, Inc.*, 376 Pa.Super. 508, 513, 546 A.2d 639, 642 (1988).   "'Actual malice' must be proven with 'clear and convincing' evidence." *Id.* citing *Bose Corp. v. Consumers Union*, 466 U.S. 485 (1984).  Such proof must establish 'that the defendant realized that the statement was false or subjectively entertained serious doubt as to the truth of the statement.' *Id.* citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).

"The term 'reckless disregard' is not amenable to one infallible definition.  It is a term which is understood by considering a variety of factors in the context of an actual case." <u>Id.</u> Such factors may include:

a.    Whether the author published a statement in the face of verifiable denials and without further investigation or corroboration, where allegations were clearly serious enough to warrant some attempt at substantiation.

b.    Evidence of unexplained distortion or the absence of any factual basis to support an accusation.

c.    Clear departures from acceptable journalistic procedures, including lack of adequate prepublication procedures; the use of wholly speculative accusations and accusatory inferences; and the failure to utilize or employ effective editorial review.

Id., 376 Pa.Super. at 514, 546 A.2d at 642. (Internal citations omitted).

Additionally, "the Supreme Court has specifically stated that the defendant in a defamation action cannot ensure a favorable verdict 'by testifying that he published with a belief that the statements were true.'" *Curran*, 497 Pa. at 184-85, 439 A.2d at 662-63 citing *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). "Rather, '(t)he finder of fact must determine whether the publication was indeed made in good faith.'" *Id.*

In the case at bar, Defendants deviated from acceptable journalistic standards to a degree that constitutes reckless conduct. In his deposition testimony, Exective Editor Holeva testified that columns have more latitude than news articles in reflecting opinion. Ex. 3, 10: 14-23. However, the opinions need to be based in fact. Ex. 3, 11: 2. The same research must be done for a news article or an opinion column. Ex. 3, 11: 13-14. Further, journalists must base their reporting on accurately obtaining information from multiple sources, interview or documents.

Ex. 3, 12: 5-14. Reporters have an ethical standard to pursue information to the best of their ability to get a complete story. Ex. 3, 16: 8-12.

In the context of reporting on a criminal case, every reporter should examine the criminal complaint, information, and guilty plea colloquy. Ex. 3, 15: 3-18. It is known that an information supersedes a criminal complaint as a charging document. Ex. 3, 15: 7-12. Further, reporters pick up this knowledge quickly, and a veteran reporter should know it. Ex. 3, 18: 10-18. It is consistent with a journalist's ethical responsibility to review all of the documents listed in a criminal case. Ex. 3, 18: 19-23.

In the context of this case, Holeva testified that he would have expected Kelly to speak to the county detective, review paperwork available, read the history of the case, and check electronic archives. Ex. 3, 26: 20-25, 27: 1-3. Additionally, Kelly should have looked at law enforcement investigative files. Ex. 3, 37: 19-25, 38: 1-2. Kelly should have looked at court files in addition to independent interviews and any investigative work. Ex. 3, 38: 6-14.

Kelly had an ethical obligation to review the criminal complaint. Ex. 3, 27: 15-20. Kelly reviewed that document. Defendants' Summary Judgment Ex. 44, 46: 21-25. Kelly had an ethical obligation to review the information. Ex. 3, 27: 21-25. Kelly did not review the information. Defendants' Summary Judgment Ex. 44, 52: 20-23. Kelly had an ethical obligation to review the guilty plea colloquy. Ex. 1, 28: 1-6. Kelly examined the colloquy. Defendants' Summary Judgment Ex. 44, 52: 24-25, 53: 1. These documents and their relevant differences have been discussed above. Holeva admitted that one cannot conclude from these documents that Godlewski pled to or admitted to having sex with a minor. Ex. 3, 36: 12-16. Kelly admits that there is no indication in the Common Pleas documents that Godlewski pled to or admitted to

having sex with a minor. Defendants' Summary Judgment Ex. 44, 36: 12-22. Despite knowing that the guilty plea colloquy contained no admission that Godlewski had sex with a minor, Kelly did not think he should look further. Defendants' Summary Judgment Ex. 44, 58: 3-8. Further, Kelly testified that he wasn't even sure whether the language in the information resulted from something that Godlewski pled to. Defendants' Summary Judgment Ex. 44, 52: 12-19. Per Holeva, failure to do investigative work beyond review of the criminal complaint, information, and guilty plea colloquy prior to publishing that Godlewski had sex with a minor would be a breach of Kelly's ethical obligation to pursue information to the best of Kelly's ability. Ex. 3, 38: 15-22.

Kelly was well aware, from his text discussions with Godlewski, that Godlewski denied having had sex with DuBorgel while she was a minor and that he denied pleading guilty to doing so. Despite the fact that Kelly had, in the form of the guilty plea colloquy, corroborative evidence of Godlewski's denial, Kelly elected to publish his own preconceived notions concerning the criminal case without taking the simple step of actually consulting relevant documents.

Further, Kelly wrote, "my editor and I discussed whether to include the information which is public and was previously published in the Times-Tribune." Defendants' Summary Judgment Ex. 1, ST 3723. From this statement, as well as the totality of circumstances outlined, a reasonable jury could conclude that Defendants acted recklessly and with serious doubts as to the veracity of the allegations against Godlewski. Accordingly, Godlewski has adduced sufficient evidence of actual malice to proceed to trial.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Philip Godlewski respectfully requests that the Honorable Court reverse its prior determination on summary judgment and permit Godlewski's defamation and false light invasion of privacy claims related to the imputation of criminal conduct proceed to trial.

Respectfully submitted,

**KOLMAN LAW, PC**

DATE: September 20, 2024

Timothy A. Bowers, PA77980

/s/ Timothy M. Kolman
Timothy M. Kolman, PA51982

Kymberley L. Best, PA94596
414 Hulmeville Avenue
Penndel, PA 19047
(215) 750-3134
*Attorneys for Plaintiff.*

17 of 18

## COMBINED CERTIFICATE

I HEREBY CERTIFY that I have, this 20th day of September 2024, served a true and correct copy of the foregoing document by email upon the following:

> J. Timothy Hinton, Esquire
> timhinton@haggertylaw.net
> Counsel for Defendants

I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Timothy A. Bowers, PA77980