| | |
|---|---|
| PHILIP GODLEWSKI, | : IN THE COURT OF COMMON PLEAS |
| | : OF LACKAWANNA COUNTY |
| Plaintiff | : |
| | : NO. 2021 CV 2195 |
| v. | : |
| | : |
| CHRIS KELLY, and THE SCRANTON | : |
| TIMES, L.P., | : |
| | : |
| Defendants | : |

## ORDER

On August 30, 2024, a Memorandum and Order was filed granting the motion for summary judgment filed by defendants, Chris Kelly ("Kelly") and The Scranton Times, L.P. (the "Scranton Times"), in this action asserting defamation and false light invasion of privacy claims, on the grounds that plaintiff, Philip Godlewski ("Godlewski"), had not adduced sufficient evidence that Kelly and the Scranton Times published a false and defamatory statement concerning Godlewski and that they did so with "actual malice." (Docket Entry No. 116 at pp. 32-51). On September 13, 2024, Godlewski filed a motion for reconsideration, which was forwarded to the undersigned's administrative assistant on September 14, 2024, seeking reversal of the rulings "that Godlewski has not presented enough evidence of the falsehood of the claims regarding the sexual relationship with [Brienna] DuBorgel" and has not "adduced sufficient evidence of actual malice" on the part of Kelly and the Scranton Times "in light of the evidence filed of record by Godlewski." (Docket Entry No. 118 at ¶¶ 3, 5-13, 18-19, 21-24).

Since a trial court loses its authority to act upon a motion for reconsideration and its original order if it fails to expressly grant that motion within 30 days of the entry of the original

**Exhibit 4**

entered on Monday, September 16, 2024, directing (1) Kelly and the Scranton Times to file an answer to the motion for reconsideration by September 19, 2024, (2) Godlewski to file and serve his brief in support by September 23, 2024, and (3) Kelly and the Scranton Times to submit their brief in opposition on or before September 27, 2024, with copies of the parties' filings being "served upon the undersigned via nealont@lackawannacounty.org." (Docket Entry No. 121). Kelly and the Scranton Times filed their answer on September 16, 2024, and Godlewski filed his supporting brief on September 24, 2024. (Docket Entry Nos. 120, 122). Upon the filing of the opposing brief by Kelly and the Scranton Times on September 26, 2024, Godlewski's motion for reconsideration became ripe for resolution. (Docket Entry No. 123).

The first issue raised by Godlewski's motion for reconsideration relates to the conclusion that Godlewski's guilty plea in Com. v. Godlewski ("Godlewski I"), No. 10 CR 2613 (Lacka. Co.) constituted an admission by him of the facts set forth in his "inappropriate text messages" which served as the basis for his corruption of a minor plea under the 2010 version of 18 Pa.C.S. § 6301(a)(1).[1] He contends that it was error to rely upon Com., Department of Transportation v. Mitchell, 517 Pa. 203, 535 A.2d 581 (1987) and its progeny in finding that Godlewski is bound by his guilty plea admissions since Kelly and the Scranton Times had not asserted *res judicata* or collateral estoppel as defenses in their new matter under

---

[1] As reflected in the Memorandum and Order of August 30, 2024, and the op-ed article that was published by Kelly and the Scranton Times, Godlewski was also charged with various criminal offenses in Com. v. Godlewski ("Godlewski II"), No. 20 CR 664 (Lacka. Co.), and later pled guilty in that case to tampering with bank records, 18 Pa.C.S. § 4104(a), and bad checks, 18 Pa.C.S. § 4105, and was sentenced by Judge Michael J. Barrasse on June 22, 2021, to an intermediate punishment program comprised of one month imprisonment followed by three months of house arrest and four years of probation. (Docket Entry No. 116 at p. 19) (citing Godlewski II, supra, Docket Entry Nos. 3, 21). Additionally, on June 22, 2022, Godlewski was charged in Com. v. Godlewski ("Godlewski III"), No. MJ 11308-CR-008802022 (Luz. Co.) with two counts of violating 18 Pa.C.S. § 4904(b) by making false written statements "under penalty" to authorities when attempting to purchase firearms by submitting applications which did not truthfully identify his criminal record. (Deposition of Philip Godlewski dated 7/25/23, attached to Docket Entry No. 101 as Exhibit 2, at pp. 287-289; Godlewski III, supra, at Docket Entry Nos. 1-4). Godlewski pled guilty to those "unsworn falsification to authorities" offenses on August 10, 2022. (Godlewski III, supra, at Docket Entry No. 11).

Pa.R.Civ.P. 1030. (Docket Entry No. 118 at ¶¶ 6-12). Godlewski further alleges that "there are sufficient factual conflicts between the text of the criminal complaint, the affidavit of probable cause, the guilty plea colloquy, and the information" so as to "permit Godlewski's defamation and false light invasion of privacy claims to proceed to trial."[2] (Id. at ¶¶ 18-19).

Godlewski also requests reconsideration of the ruling that the summary judgment record "lacks clear and convincing evidence that Kelly or the Scranton Times either knew that the factual statements pertaining to Godlewski in the article were false, or that Kelly or the Scranton Times had a 'high degree of awareness of their probable falsity' or 'entertained serious doubts as to the truth of the publication.'" (Docket Entry No. 116 at p. 50). He takes issue with the observation that the deposition testimony of the Scranton Times' Executive Editor, Lawrence Holeva, was "somewhat difficult to decipher due to the extensive redactions in his deposition transcript that is attached to Godlewski's brief." (Id. at p. 49). According to Godlewski's motion for reconsideration, his counsel reportedly "color-highlighted text" in Holeva's deposition for some reason, (Docket Entry No. 118 at ¶ 22(d)), which highlighting

---

[2] Godlewski's motion for reconsideration represents that he "sought production of the plea hearing transcripts from Godlewski's hearings on November 12, 2010, and July 11, 2011," but that the Lackawanna County Chief Court Reporter, Cathene Nardozzi, "indicated that the transcripts were unavailable because the Court Administrator could not contact the court reporters." (Id. at ¶¶ 15-16). Per her email dated July 26, 2023, which is attached to Godlewski's motion, Ms. Nardozzi replied to Godlewski's counsel that "because of the length of time" since the 2010 and 2011 hearings, "we don't have these transcripts available" inasmuch as the "one date was a per diem that filled in for us and I have no contact info and the other reporter has left the County employ." (Docket Entry No. 118 at p. 9). Based upon Section 4.3.1 of the Record Retention Schedule contained in 204 Pa. Code § 213.51, the court reporters retained their untranscribed notes of proceedings only for a period of seven years. Accord Com. v. Byrd, 2022 WL 538139, at *1 n.3 (Pa. Super. 2022) ("When Byrd attempted to order the transcripts of the proceedings to prepare the instant petition, he was told the files were destroyed after seven years in accordance with the policy of the court reporters' office."); Com. v. Tyler, 2018 WL 3423672, at *2 (Pa. Super. 2018) (appellant was advised that the court reporters' office did not retain notes of testimony beyond seven years). Nevertheless, in response to recent inquiries from Godlewski's counsel, the Court Reporters' Office located the notes of Godlewski's guilty plea proceeding prepared by the retired court reporter, Wenda Halliday, on November 12, 2010, which notes were transcribed by Court Reporter Elizabeth V. Kedrick and approved by Judge Vito P. Geroulo on September 25, 2024. (See attached Transcript of Proceeding of Guilty Plea in Godlewski I on 11/12/10). Regrettably, a per diem court reporter was the assigned court reporter for Godlewski's sentencing hearing on July 11, 2011, and in response to inquiries regarding the existence of any stenographic notes from that sentencing proceeding more than 156 months ago, she indicated to court reporter staff that no such records remain in existence.

3

appeared as redactions in the reproduced copies of that deposition. (Docket Entry No. 108 at pp. 40-50; Docket Entry No. 121 at pp. 7-17). Having now provided a clear "copy of the deposition of Lawrence Holeva without annotations," Godlewski requests "that the court reconsider the issue of actual malice in light of the evidence filed of record by Godlewski and permit Godlewski's defamation and false light invasion of privacy claims to proceed to trial." (Docket Entry No. 118 at ¶¶ 23-24).

<u>EVIDENCE OF FALSITY</u>

Godlewski's motion for reconsideration first asserts that he has produced sufficient evidence that Kelly published a false and defamatory factual statement concerning him by stating in his op-ed column that Godlewski "pleaded guilty to corruption of minors and admitted to having a sexual relationship with a 15-year-old girl." (Docket Entry No. 1 at p. 29). The summary judgment record reflected that the forensic analysis of Godlewski's cell phones and computers conducted by law enforcement investigators retrieved text messages between Godlewski and Ms. DuBorgel which "contained conversations of sexual encounters," including the following text messages transmitted from Godlewski to Ms. DuBorgel as quoted in the Affidavit of Probable Cause supporting the criminal charges against him in <u>Godlewski I</u>[3]:

> 2/25/10:    *"I just want you to see that I really care about you, and not your body or our sex. Maybe that's the only way I can."*

---

[3] As part of their summary judgment submissions, Kelly and the Scranton Times produced the public criminal records filed in <u>Godlewski I</u> relating to Godlewski's criminal prosecution, guilty plea, and sentencing. (Docket Entry No. 101 at pp. 331-349, 352-471, 475-617; Docket Entry No. 102 at pp. 1-14). Included among those summary judgment exhibits is the Affidavit of Probable Cause filed in <u>Godlewski I</u>. (Docket Entry No. 101 at pp. 343-346, 606-609). The "inappropriate text messages" memorializing Godlewski's sexual relationship with Ms. DuBorgel, as quoted in the Affidavit of Probable Cause and the Memorandum and Order of August 30, 2024, are included in those summary judgment exhibits. (<u>Id.</u> at pp. 345-346, 608-609). In "Plaintiff's Response to Defendants' Motion for Summary Judgment" and "Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment," Godlewski did not object to the submission or consideration of those summary judgment exhibits, including the Affidavit of Probable Cause and Godlewski's text messages quoted therein.

2/28/10:      *"The only way we'd ever be sexually satisfied is if we did it like 4-5 times a day."*

3/6/10:       *"I hate my penis, idk [I don't know] why the fuck that happens. You looked so good and were giving incredible head then BOOM, gone.  Like wtf."*

Godlewski's 2 Page Day Log:

10:14 a.m.: *"Realized that you're only 15, but quickly stopped caring."*

11:39 a.m.: *"I just pulled [your] hair from my crotch area. hahahaha!!!"*

02:56 p.m.: *"Should we get a Jacuzzi suite? Hmm"*

(Docket Entry No. 116 at pp. 12-13) (quoting Godlewski I, Docket Entry No. 2 at p. 15).  The

Criminal Information charging Godlewski with Corruption of Minors under 18 Pa.C.S. §

6301(a)(1) identifies, as the factual basis for that charge, that Godlewski "did repeatedly have

inappropriate text [m]essages and contact with a minor."  (Id. at pp. 13-14) (quoting Godlewski

I, Docket Entry No. 6).

The Memorandum and Order of August 30, 2024, quoted Godlewski's signed guilty

plea colloquy in which he admitted under oath that he knew "exactly what you are charged with

and what you are pleading to," that he understood "the elements of the crime charged that you

are pleading to," and that he "admit[ted] that you did the above stated act" constituting

corruption of a minor.  (Id. at pp. 34-35) (quoting Godlewski I, Docket Entry No. 5 at pp. 1-3).

During his guilty plea hearing before Judge Vito P. Geroulo on November 12, 2010, Godlewski

expressly acknowledged that he signed and initialed that written guilty plea colloquy, and

"read, understood, and answered truthfully all questions" in it.  (Transcript of Proceedings

("T.P.") of Guilty Plea on 11/12/10 at p. 2).  Prior to accepting Godlewski's guilty plea to

corruption of a minor, Judge Geroulo directed Assistant District Attorney Patty Lafferty,

Esquire, to provide him with "the facts" supporting the corruption of a minor charge against

Godlewski. (Id. at p. 4). Assistant District Attorney Lafferty stated that "[b]etween January of 2008 and July of 2010," Godlewski "corrupted or tended to corrupt the morals of any minor less than 18 years of age" in that "[Godlewski] did repeatedly have inappropriate text messages and contact with a minor."[4] (Id. at pp. 4-5). After Assistant District Attorney Lafferty recited those facts, the following exchange transpired between Judge Geroulo and Godlewski:

> JUDGE GEROULO:    And you admit that between January of '08 and July of 2010, you engaged in the conduct just described by the District Attorney?
>
> GODLEWSKI:    Yes, your Honor.
>
> JUDGE GEROULO:    Alright, we'll accept the guilty plea, we'll defer the imposition of sentence pending the pre-sentence investigation.
>
> GODLEWSKI'S COUNSEL:    Thank you, sir.

(Id. at p. 5).

A criminal defendant like Godlewski "'who elects to plead guilty has a duty to answer questions truthfully.'" Com. v. Yeomans, 24 A.3d 1044, 1047 (Pa. Super. 2011) (quoting Com. v. Pollard, 832 A.2d 517, 523 (Pa. Super. 2003)). For that reason, "defendants are bound by statements they make during their guilty plea colloquies and may not successfully assert any claims that contradict those statements." Com. v. Culsoir, 209 A.3d 433, 437 (Pa. Super. 2019). By virtue of the conclusive effect of statements and admissions made during guilty pleas in criminal matters, a defendant who pleads guilty "cannot be heard to deny in a civil action that which was established in his prior determination of guilt without proof that his guilt was procured by fraud, perjury, or some manner of error sufficient to set aside his

---

[4] Based upon Ms. DuBorgel's date of birth set forth in her summary judgment affidavit and documented by her driver's license, she was 14 years old when Godlewski began transmitting "inappropriate text messages" and having inappropriate "contact" with her in January 2008. (Docket Entry No. 101 at p. 315).

determination of guilt." <u>Department of Navy v. Unemployment Compensation Board of Review</u>, 158 Pa. Cmwlth. 605, 623 n.13, 632 A.2d 622, 631 n.13 (1993).  Absent proof that the guilty plea was obtained by fraud, perjury, or some comparable manner of exculpatory error, a "guilty plea is an admission of facts averred in the complaint" and "is conclusive proof of the wrongdoing for which he was charged." <u>Hawkins v. Unemployment Compensation Board of Review</u>, 695 A.2d 963, 966 (Pa. Cmwlth. 1997), *app. denied*, 553 Pa. 701, 718 A.2d 786 (1998).  As a result, a court may grant summary judgment in a civil action based upon a criminal defendant's earlier admission during a guilty plea. <u>Mitchell</u>, 517 Pa. at 212, 535 A.2d at 585.

In his Complaint that he filed in this matter, Godlewski alleges that Kelly and the Scranton Times falsely stated that he acknowledged "a sexual relationship" with Ms. DuBorgel in <u>Godlewski I</u>.  (Docket Entry No. 1 at ¶¶ 42, 45, 48, 51, 55, 61).  Kelly and the Scranton Times filed an Answer to the Complaint and replied, *inter alia*, that Kelly "learned [Godlewski] pled guilty to a crime which involved sexually corrupting a 15-year-old girl."  (Docket Entry No. 6 at ¶ 51).  In their New Matter under Pa.R.Civ.P. 1030, they specifically averred that "[t]he publication complained of is a fair and accurate summary of the statements made in legal court filings and governmental records that have been placed in the public domain and open for public inspection," that "[t]he statements complained of are true or substantially true," and that "[t]he statements complained of constitute expression of opinion which cannot be proven true or false by objective evidence."  (<u>Id.</u> at pp. 21-22).  Godlewski filed a reply to that new matter and alleged that the article at issue "describes factual circumstances as if they are true, and falsity of these can be proven by objective evidence," and further denied "that because that (*sic*) these documents may be in the public domain and open for public inspection that it (*sic*) their

7

presence justifies libel against [Godlewski]." (Docket Entry No. 5 at ¶¶ 8, 20). Consequently, the parties' pleadings establish that Kelly and the Scranton Times asserted as defenses to Godlewski's claims that the statements regarding Godlewski in the op-ed column on February 14, 2021, "are true or substantially true" and constitute "a fair and accurate summary of the statements made in legal court filings" in Godlewski I, and that they learned from Kelly's review of those public records that Godlewski "pled guilty to a crime which involved sexually corrupting a 15-year-old girl," whereas Godlewski countered those identified defenses by arguing that the "falsity of these can be proven by objective evidence."

Kelly and the Scranton Times renewed those same defenses and arguments in their motion for summary judgment asserting that Godlewski has not produced sufficient evidence that the article in question published false statements about him. In addition to submitting as exhibits the above-quoted text messages contained in the Affidavit of Probable Cause in which Godlewski acknowledges and describes his sexual activity with Ms. DuBorgel, (Docket Entry No. 101 at pp. 345-346, 608-609), they specifically reference and quote that Affidavit of Probable Cause and those incriminating sexual text messages when arguing in their supporting brief that Godlewski failed to come forward with adequate evidence to prove the falsity of Kelly's representation that Godlewski "pleaded guilty to corruption of minors and admitted to having a sexual relationship with a 15-year-old girl." (Docket Entry No. 103 at pp. 11-13). Kelly and the Scranton Times also cited Godlewski's guilty plea before Judge Geroulo as conclusive evidence of his admission of a sexual relationship with the minor, Ms. DuBorgel. (Id. at pp. 14-16).

It is uncontroverted that Godlewski pled guilty to corruption of a minor based upon his express admission under oath that he "did repeatedly have inappropriate text messages and

8

contact with a minor" between January 2008 and July 2010. (T.P. 11/12/10 at pp. 4-5;

Godlewski I, supra, Docket Entry No. 6). The Memorandum and Order dated August 30, 2024

noted that "the only text messages quoted in the Affidavit of Probable Cause in Godlewski I are

those in which Godlewski acknowledged and described oral sex with Mr. DuBorgel, the

presence of her hair in his 'crotch area,' and his sexual activity with her when she was 15 years

of age." (Docket Entry No. 116 at p. 34) (citing Godlewski I, supra, Docket Entry No. 2 at p.

15). More importantly, the summary judgment ruling on August 30, 2024, underscored that

even "Godlewski's counsel conceded at the time of oral argument that 'the corruption of

minor's count in the complaint was consistent with the information in the affidavit.'" (Id.)

(quoting T.P. 8/19/24 at p. 47). Following an analysis of the relevant law, the Memorandum

and Order concluded:

> Godlewski claims that Kelly falsely reported that he "pleaded guilty to
> corruption of minors and admitted to having a sexual relationship with a 15-
> year-old girl." Based upon the content of Godlewski's text messages which
> served as the factual basis for the corruption of a minor charge set forth in the
> Criminal Information, and Godlewski's sworn plea to that specific crime in a
> court of law, both of the foregoing statements made by Kelly in his article are
> true. As a result of Godlewski's guilty plea to "inappropriate text [m]essages"
> and "contact" with Ms. DuBorgel, as set forth in the Affidavit of Probable Cause
> quoting the offending text messages admitting and memorializing a sexual
> relationship with a 15-year-old minor, Godlewski is collaterally estopped from
> denying his participation in a sexual relationship with Ms. DuBorgel in
> 2010[footnote omitted]. Mitchell, 517 Pa. at 212, 535 A.2d at 585; Hawkins, 695
> A.2d at 966; Lynch, supra, at *3-4. Thus, Godlewski has failed to come forward
> with sufficient evidence creating a genuine issue of material fact concerning the
> claimed falsity of Kelly's statement that Godlewski "pleaded guilty to
> corruption of minors and admitted to having a sexual relationship with a 15-
> year-old girl."

(Id. at pp. 36-37).

In his motion for reconsideration, Godlewski advances three reasons why it allegedly

was reversible error to conclude that, due to Godlewski's guilty plea admissions in Godlewski

I, he failed to adduce sufficient evidence of the falsity of the statement that Godlewski pled

guilty to corruption of a minor and acknowledge "having a sexual relationship" with that

minor. First, notwithstanding the foregoing defenses specifically raised by Kelly and the

Scranton Times in their pleadings and the corresponding arguments asserted in their summary

judgment submissions, Godlewski claims that Kelly and the Scranton Times were prohibited

from arguing that his guilty plea admissions constituted conclusive proof of his sexual

relationship with Ms. DuBorgel because they did not expressly raise the affirmative defense of

collateral estoppel in their new matter. (Docket Entry No. 122 at pp. 2-4). Second, referencing

Godlewski's written guilty plea colloquy which only identifies the elements of the crime

charged as acts which "corrupt or tend to corrupt the morals of a minor," and emphasizing "that

the District Attorney did not make a written indication of the things that Godlewski allegedly

did or admitted to doing" in the written plea colloquy, Godlewski contends "that the Court

improperly looked to the Affidavit of Probable Cause to supply the factual basis of the plea."[5]

(Id. at pp. 5, 9). Third, although Godlewski neglects to quote or cite a text message in the

---

[5] Citing case law addressing judicial notice of another case's records when considering preliminary objections in the nature of a demurrer, Godlewski asserts that it was "an improper exercise of the power of judicial notice" to consider the text messages quoted in the Affidavit of Probable Cause. (Docket Entry No. 122 at p. 5 n.1). Since the purpose of a demurrer is to challenge a pleading's legal basis, not its factual truthfulness, the use of judicial notice in that context is circumscribed and limited to instances where the challenged pleading references that prior court action. See Guarrasi v. Scott, 25 A.3d 394, 397 n.3 (Pa. Cmwlth. 2011); Styers v. Bedford Grange Mutual Insurance Company, 900 A.2d 895, 899 (Pa. Super. 2006). The scope of review applicable to a summary judgment motion is broader than that which governs preliminary objections and motions for judgment on the pleadings. See Pa.R.Civ.P. 1035.1. Furthermore, any argument relative to judicial notice of the Affidavit of Probable Cause is a red herring since, as stated in n.2 supra, the Affidavit of Probable Cause was included in the summary judgment record submitted by Kelly and the Scranton Times, and Godlewski did not object to the submission or consideration of those exhibits. (Docket Entry No. 101 at pp. 343-346, 606-609). As a result, Godlewski's judicial notice arguments in his motion for reconsideration are inconsequential. See Kadar-Kallen v. Old Iron Estates Homeowners Association, 243 A.3d 1001, 1006 n.6 (Pa. Cmwlth. 2020) (court took judicial notice of a document entitled "Phase Plan" which contained an illustration of the boundaries of all four phases of the development of the purported planned community since the plans were included in the original record as exhibits to the homeowners' motion for summary judgment); Wells Fargo Bank, N.A. v. Taggart, 2019 WL 3500516, at *3 (Pa. Super. 2019) ("To the extent that the documents that are the subjects of the seven motions are attached as exhibits to Taggart's motion for summary judgment or his opposition to Wells Fargo's motion for summary judgment, a separate request to take judicial notice of such documents is unnecessary as the exhibits are already part of the record."), app. denied, 658 Pa. 537, 229 A.3d 564 (2020).

Affidavit of Probable Cause or <u>Godlewski I</u> that does not concern or discuss his sexual relationship with Ms. DuBorgel, he alleges that there "is reasonable doubt as to the factual basis" for his guilty plea to corruption of minors, and "that it is not possible, as a matter of law, to conclude from the Information and the Guilty Plea Colloquy that he admitted to any facts other than that he had inappropriate text messages and contact with a minor, all of which tended to corrupt her morals." (<u>Id.</u> at p. 11).

Godlewski's first argument in his motion misconstrues the summary judgment ruling, that was premised upon the conclusive evidentiary effect of Godlewski's guilty plea admissions in his subsequent civil action, as an invocation of the doctrine of collateral estoppel which operates, as a matter of law, to prevent a party from relitigating an issue that was definitively decided in an earlier action.  The doctrine of collateral estoppel, or issue preclusion, applies if: (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. <u>Gross v. Mintz</u>, 2024 WL 3515085, at *4 (Pa. Super. 2024); <u>Bolus v. Lackawanna County Tax Claim Bureau</u>, 64 Pa. D. & C.5th 320, 325 (Lacka. Co. 2017).  In the case *sub judice*, it was merely held that Godlewski's "guilty plea is an admission of facts averred in the complaint" and "conclusive proof of the wrongdoing for which he was charged," <u>Hawkins</u>, <u>supra</u>, and that summary judgment could be granted on that basis.  <u>Mitchell</u>, <u>supra</u>.  Those conclusions stemmed from the defenses asserted by Kelly and the Scranton Times in their pleadings and the summary judgment motion that the factual statements in the article of February 14, 2021, "are

true or substantially true" and constitute "a fair and accurate summary of the statements made in legal court filings" in <u>Godlewski I</u>, and that Godlewski's guilty plea was tantamount to an admission of a sexual relationship with Ms. DuBorgel based upon the only "inappropriate text messages" quoted in the Affidavit of Probable Cause describing their sexual activities.  While the Memorandum and Order of August 30, 2024 used the wording that Godlewski was "collaterally estopped" from disputing his participation in a sexual relationship by virtue of his guilty plea to "inappropriate text messages" and "contact" with Ms. DuBorgel, the doctrine of collateral estoppel and its five elements were never cited or expressly applied in the process.  In fact, the Memorandum and Order does not make a single reference to the five-part test for determining the applicability of the doctrine of collateral estoppel.  As a result, Godlewski's first contention regarding the necessity of asserting the doctrine of collateral estoppel as an affirmative defense in new matter under Rule 1030 is completely without merit, as is his accusation that "the issue of collateral estoppel was impermissibly raised by the Court." (Docket Entry No. 122 at p. 4).

Godlewski's second and third arguments are interrelated in that they allege "that the Court improperly looked to the Affidavit of Probable Cause" in ascertaining the factual basis for Godlewski's guilty plea, and contend that there "is reasonable doubt as to the factual basis" for that plea.  As previously noted, the ***only*** "inappropriate text messages" contained in the <u>Godlewski I</u> file are those which are quoted in the Affidavit of Probable Cause and distinctly acknowledge and describe Godlewski's sexual relationship with a minor, Ms. DuBorgel. Godlewski's aforementioned argument to the contrary begs the question: if Godlewski's text messages quoted in the Affidavit of Probable Cause were not the "inappropriate text messages" that corrupted Ms. DuBorgel's morals, what alleged text messages of a nonsexual nature were

12

factually and legally sufficient to sustain a guilty plea to corruption of a minor under 18 Pa.C.S. § 6301(a)(1)?

Under Section 6301(a)(1) of the Crimes Code, "'[a]ctions that tend to corrupt the morals of a minor are those that would offend the common sense of the community and the sense of decency, propriety, and morality which most people entertain.'" Com. v. Sebolka, 205 A.3d 329, 339 (Pa. Super. 2019) (quoting Com. v. Snyder, 870 A.2d 336, 351 (Pa. Super. 2005)). Text messages with a minor describing underaged sexual activity clearly constitute "inappropriate text messages" warranting criminal charges and convictions under 18 Pa.C.S. § 6301(a)(1). See Com. v. Hummel, 2024 WL 2933346, at *1 (Pa. Super. 2024) (defendant who "engage[d] in sexual activity" with a minor texted the victim "come here I'm horny" and "offered to 'gets his hand on something' for the victim if she would have sex with him"); Com. v. Joe-Murphy, 2021 WL 463069, at *8 (Pa. Super. 2021) (defendant "convicted of corruption of minors" for "exchanging sexually explicit text messages"); Com. v. Rhinehart, 2020 WL 7398735, at *1 (Pa. Super. 2020) (defendant was "in a relationship with a minor" involving sexual activity and would "send text messages" to the minor "to discuss their encounters and profess his love to the minor"); Com. v. Aikey, 2016 WL 6651518, at *1 (Pa. Super. 2016) (defendant, who "engaged in sexual intercourse" with a minor, was convicted of corruption of minors for sending "sexually suggestive text messages" to her which "stated [his] desire to have sex" with the minor).

When Godlewski was interrogated by defense counsel regarding his guilty plea admission to the "inappropriate text messages" which corrupted the morals of Ms. DuBorgel, Godlewski testified that they were "[j]ust the consoling-type conversations" in which he "was trying to console her" and "trying to make her feel better" by assuring her that "everything's

13

going to be okay" in her life, even though he was "not qualified" to offer that advice and "should have referred her to a guidance counselor or a psychiatrist." (Deposition of Philip Godlewski dated 7/25/23, attached to Docket Entry No. 101 as Exhibit 2, at pp. 108-112). Such benign communications cannot constitute corruption of a minor under 18 Pa.C.S. § 6301(a)(1), and it is nothing short of ludicrous to suggest that "consoling-type conversations" were the "inappropriate text messages and contact with a minor" between January 2008 and July 2010 which "corrupted or tended to corrupt the morals" of Ms. DuBorgel, per the guilty plea before Judge Geroulo. *See* Com. v. Barnette, 760 A.2d 1166, 1173 (Pa. Super. 2000) (a corruption of minors conviction under 18 Pa.C.S. § 6301(a)(1) requires conduct by the defendant "'which tends to produce or encourage or to continue conduct of the child which would amount to delinquent conduct'") (quoting Com. v. Mumma, 489 Pa. 547, 555, 414 A.2d 1026, 1030 (1980)), *app. denied*, 566 Pa. 634, 781 A.2d 138 (2001). It bears noting that Godlewski also testified under oath that United Airlines Flight 93 never crashed in Somerset County on September 11, 2001, that Stephen Paddock did not shoot and kill 60 people in a mass shooting from the Mandalay Bay Hotel in Las Vegas, that former President Donald Trump had authorized and presided over the executions of President Joseph Biden, Secretary of State Hillary Clinton, and other public figures by military tribunals at Guantanamo Bay, that the late President George H. W. Bush was also executed by a military tribunal due to the Bush family's involvement with child sex-trafficking, that President John F. Kennedy was not assassinated in 1963 and lived until 2021 or 2022, and that elected and public officials were molesting children and drinking their blood to ingest adrenochrome in the basement of a Washington pizzeria. (Godlewski Depo. at pp. 158, 162-164, 166-167, 169-170, 172-177, 181-

14

187). His unsubstantiated testimony to that effect likewise does not create triable issues of fact regarding the truth of those absurd claims.

Godlewski is obligated to produce sufficient evidence that Kelly published a factual statement about him that was false. Tucker v. Philadelphia Daily News, 577 Pa. 598, 625, 848 A.2d 113, 130 (2004); Kuwait & Gulf Link Transportation Company v. Doe, 216 A.3d 1074, 1087 (Pa. Super. 2019). Pennsylvania law "'does not require perfect truth, so long as any inaccuracies do not render the substance and 'gist' of the statements untrue.'" Rubin v. CBS Broadcasting, Inc., 170 A.3d 560, 565 (Pa. Super. 2017) (quoting ToDay's Housing v. Times Shamrock Communications, Inc., 21 A.3d 1209, 1215 (Pa. Super. 2011)). In seeking summary judgment, Kelly and the Scranton Times provided evidence that based upon (a) Godlewski's guilty plea in Godlewski I and (b) the only text messages quoted or referenced in the Godlewski I file that support a corruption of minors conviction, there was no triable issue of material fact concerning the claimed falsity of Kelly's statement that Godlewski "pleaded guilty to corruption of minors and admitted to having a sexual relationship with a 15-year-old girl." (Docket Entry No. 103 at pp. 10-12, 16-17). Since Godlewski bears the burden of proof on the issue of falsity, it was incumbent upon him in response "to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof" in order "to survive summary judgment." Aita v. NCB Management Services, Inc., 2024 WL 4295288, at *2 (Pa. Super. 2024). He failed to do so by alleging that the "consoling-type conversations," which are clearly insufficient as a matter of law to sustain a conviction under 18 Pa.C.S. § 6301(a)(1), were supposedly the "inappropriate text messages" that served as the basis for his guilty plea. (Godlewski Depo. at pp. 108-112).

15

The only text messages contained in the summary judgment record which are factually and legally sufficient to support a conviction under 18 Pa.C.S. § 6301(a)(1) are those text messages quoted in the Affidavit of Probable Cause in <u>Godlewski I</u> in which Godlewski admits and references his "sexual relationship with a 15-year-old girl," Ms. DuBorgel, by apologizing for his performance during oral sex with her, discussing his discovery of her hair in his "crotch area," and otherwise describing their sexual relations. Based upon the summary judgment record submitted by the parties, any factual allegation that other unquoted, unidentified, and nonsexual text messages served as the factual and legal grounds for Godlewski's guilty plea under 18 Pa.C.S. § 6301(a)(1) does not have evidentiary support, nor is it warranted by existing case law. According to our Supreme Court, the purpose of summary judgment is "'to assess the proof in order to see whether there is a genuine need for trial.'" <u>Howarth v. Falls Township</u>, 310 A.3d 336, 343 (Pa. Cmwlth. 2024) (quoting <u>Curran v. Philadelphia Newspapers, Inc.</u>, 497 Pa. 163, 177, 439 A.2d 652, 658 (1981) (quoting <u>Phaff v. Gerner</u>, 451 Pa. 146, 151, 303 A.2d 826, 829 (1973)). For the reasons stated in the Memorandum and Order of August 30, 2024, and reaffirmed in this Order addressing Godlewski's motion for reconsideration, Godlewski has failed to adduce sufficient evidence establishing a genuine issue of material fact regarding the truth of Kelly's statement that Godlewski "pleaded guilty to corruption of minors and admitted to having a sexual relationship with a 15-year-old girl," as a result of which there is no "genuine need for trial" in this matter. *See* <u>Masson v. New Yorker Magazine, Inc.</u>, 501 U.S. 496, 516-517 (1991) (holding that the defense of substantial truth "absolve[s] a defendant even if he cannot justify every word of the alleged defamatory matter; it is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details"); <u>Rubin</u>, 170 A.3d at 565.

EVIDENCE OF ACTUAL MALICE

Submitting a readable copy of the entire deposition of the Scranton Times' Executive

Editor, Lawrence Holeva, Godlewski also requests reconsideration of the determination that he

has failed to demonstrate a triable issue of fact relative to actual malice on the part of Kelly or

the Scranton Times.  He claims that Kelly and the Scranton Times "deviated from acceptable

journalistic standards," and that "[p]er Holeva, failure to do investigative work beyond review

of the criminal complaint, information, and guilty plea colloquy prior to publishing that

Godlewski had sex with a minor would be a breach of Kelly's ethical obligation to pursue

information to the best of Kelly's ability."  (Docket Entry No. 122 at pp. 14-16).  Kelly and the

Scranton Times counter that "[t]here is no evidence, let alone clear and convincing evidence,

that Defendants subjectively entertained serious doubts that Godlewski had sex with a minor or

that his sexual contact caused him to plead guilty," and that "[Godlewski] does not even

understand the subjective nature of the proof he is required to present here."  (Docket Entry No.

123 at pp. 14, 16) (citing Plaintiff's Response to Defendants' Motion for Summary Judgment at

¶ 38).

The "actual malice" standard requires proof, by clear and convincing evidence, that the

publisher of a false and defamatory statement either knew that the factual statement was false

or recklessly disregarded whether it was true or false.  Castellani v. The Scranton Times, L.P.,

633 Pa. 230, 249, 124 A.3d 1229, 1241 (2015).  The clear and convincing evidence standard is

"the highest standard of proof for civil claims."  Kuwait & Gulf Link Transport Company, 216

A.3d at 1088.  The actual malice requirement "is not met through a showing of ill will or

malice in the ordinary sense of the term" or "the failure to investigate even when a reasonably

prudent person would have done so," Joseph v. The Scranton Times, L.P., 634 Pa. 35, 90, 129

A.3d 404, 436-437 (2015), and "requires more than consideration of whether a reasonable person would have published this statement without further investigation; rather, it requires the plaintiff to produce evidence sufficient 'to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'" <u>Castellani</u>, 633 Pa. at 250, 124 A.3d at 241 (quoting <u>St. Amant v. Thompson</u>, 390 U.S. 727, 731 (1968)). "'The fact that [defendant] could have employed a higher degree of journalistic responsibility does not constitute actual malice.'" <u>Coleman v. Ogden Newspapers, Inc.</u>, 142 A.3d 898, 906 (Pa. Super. 2016) (quoting <u>Manning v. WPXI, Inc.</u>, 886 A.2d 1137, 1144 (Pa. Super. 2005), *app. denied*, 589 Pa. 731, 909 A.2d 305 (2006)), *app. denied*, 641 Pa. 12, 165 A.3d 873 (2017).

As noted in the Memorandum and Order of August 30, 2024, "Kelly testified that in preparing the article, he reviewed 'the Times-Tribune archives,' including earlier articles about Godlewski authored by Jeremy Burton and Denis O'Malley, 'legal documents,' 'court documents,' [and] 'the criminal affidavit and his guilty plea colloquy,'" and also interviewed relevant witnesses, including Ciara O'Malley and an individual "'who was in the law enforcement process' involving the criminal charges against Godlewski." (Docket Entry No. 116 at p. 48) (quoting deposition of Christopher J. Kelly dated 12/20/23, attached to Docket Entry No. 102 as Exhibit 44, at pp. 43-46, 57-58, 62-63). The original readable portions of Mr. Holeva's deposition transcript were deemed "insufficient to establish actual malice" since they merely concerned "sources of information a journalist would have an 'ethical obligation to pursue'" and could at most "be construed as suggesting that Kelly should have exercised greater 'journalistic responsibility'" in authoring his article. (<u>Id.</u> at pp. 49-50) (quoting Holeva Depo. at pp. 36-37, 43-44).

Mr. Holeva's deposition testimony on page 10, lines 14-23, page 11, lines 2-3 and 13-14, page 12, lines 5-14, page 14, lines 3-9 and 13-15, page 15, lines 7-12, and 13-18, page 16, line 8, page 17, line 2, page 18, lines 10-23, page 19, line 20, page 21, lines 14, page 20, line 17 - page 22, line 5, page 23, lines 6-8, and 10-23, page 26, line 20, page 28, lines 6, page 28, line 19 - page 29, line 4, page 30, line 12 – page 31, line 2, page 31, lines 9-11, page 32, lines 7-15, page 32, line 24 – page 33, line 14, page 35, lines 1-9, and 16-23, page 36, lines 12-22, page 37, line 17 – page 38, line 2, page 38, lines 6-22, page 44, line 23 – page 45, line 17, page 46, lines 6-12, page 46, line 25 – page 47, line 11, page 48, line 20 – page 49, line 1, page 49, lines 22-25, page 50, line 24 – page 51, line 2, and page 51, lines 15-24 have now been read and considered in their entirety.  Not unlike the prior testimony submitted from Mr. Holeva, the complete testimony simply references a columnist's ethical obligations and journalistic responsibility.  His testimony is devoid of any indication that Kelly or the Scranton Times either knew that a factual statement concerning Godlewski was false or subjectively acted with reckless disregard as to its truth or falsity because they had a high degree of awareness of its probable falsity or entertained serious doubts as to its truth.  Menkowitz v. Peerless Publications, Inc., 653 Pa. 573, 578 n.5, 211 A.3d 797, 800 n.5 (2019); Joseph, 634 Pa. at 90, 129 A.3d at 437.  As Judge Carmen D. Minora concluded in denying Godlewski's motion for financial wealth discovery under Pa.R.Civ.P. 4003.7, (Docket Entry No. 96 at p. 3), Godlewski has failed to identify facts or evidence establishing a *prima facie* case of reckless disregard by Kelly or the Scranton Times.  (Docket Entry 116 at p. 50).  Accordingly, Kelly and the Scranton Times are independently entitled to summary judgment based upon Godlewski's failure to produce sufficient evidence of "actual malice" on their part.

19

AND NOW, this 30th day of September 2024, upon consideration of "Plaintiff's Motion [for] Reconsideration of the Court's Order Docketed September 3, 2024 Granting Defendants' Motion for Summary Judgment" and the memoranda of law submitted by the parties, and based upon the reasoning set forth above, it is hereby ORDERED and DECREED that "Plaintiff's Motion [for] Reconsideration of the Court's Order Docketed September 3, 2024 Granting Defendants' Motion for Summary Judgment" is DENIED.

BY THE COURT:

_Terrence R. Nealon_ J.

Terrence R. Nealon

*cc: Written notice of the entry of the foregoing Order has been provided to each party pursuant to Pa.R.Civ.P. 236(a)(2) and (d) by transmitting time-stamped copies via electronic mail to:*

Timothy M. Kolman, Esquire           tkolman@kolmanlaw.com
Timothy Bowers, Esquire              tbowers@kolmanlaw.com
Kymberley L. Best, Esquire          kbest@kolmanlaw.com
Kolman Law, P.C.
414 Hulmeville Avenue
Penndell, PA 19047
     *Counsel for Plaintiff*

J. Timothy Hinton, Jr., Esquire        timhinton@haggertylaw.net
Haggerty, Hinton & Cosgrove, LLP
Suite 2, 1401 Monroe Avenue
Dunmore, PA 18509
     *Counsel for Defendants*

C O U R T   O F   C O M M O N   P L E A S

LACKAWANNA COUNTY

COMMONWEALTH OF PENNSYLVANIA | X
| X
| X
| X
-vs- | X   No. 2010 CR 2613
| X
| X
PHILIP GODLEWSKI | X
| X
| X
| X

ORIGINAL

TRANSCRIPT OF PROCEEDINGS
OF GUILTY PLEA

BEFORE:    HONORABLE VITO P. GEROULO

DATE:      November 12, 2010

PLACE:     Lackawanna County Courthouse
           Courtroom 2
           200 N. Washington Avenue
           Scranton, Pennsylvania 18503

A P P E A R A N C E S

For the Commonwealth:     PATTY LAFFERTY, ESQUIRE
                          Assistant District Attorney

For the Defendant:        JOE D'ANDREA, ESQUIRE

Wenda Halliday
Official Court Reporter

2

1      THE COURT:  Philip Godlewski?

2      MS. LAFFERTY:   Judge, we're here on

3  Commonwealth versus Philip Godlewski.  It's

4  10-CR-2613.  It's my understanding that he's

5  going to plead to count one, which is a

6  corruption of minors charge carrying a 5

7  year up to $10,000 maximum fine.

8  EXAMINATION BY THE COURT:

9      Q.   And do you pronounce your name Godlewski or

10  Godlewski?

11      A.   Godlewski.

12      Q.   Godlewski.  And Mr. Godlewski, did you sign

13  and initial this document?

14      A.   Yes, sir.

15      Q.   I take that to mean that you have read,

16  understood and answered truthfully all questions in

17  this document, is that true?

18      A.   Yes.

19      Q.   So you know you don't have to plead guilty,

20  you have a right to go to trial?

21      A.   Yes.

22      Q.   And you understand that when you do plead

23  guilty, you give up your right to trial and you give up

24  all of the other rights that are contained in *this*

25  document, including the right to be presumed innocent,

3

1    do you understand that?

2         A.   Yes, your Honor.

3         Q.   Has anyone threatened you or forced you to

4    get you to plead guilty?

5         A.   No, your Honor.

6         Q.   Are you pleading guilty of your own free

7    will after consulting with Mr. D'Andrea because you

8    both believe it's in your best interest to do so?

9         A.   Yes, your Honor.

10        Q.   Do you understand the maximum penalty you

11   can receive is up to 5 years in prison and a $10,000

12   fine?

13        A.   Yes, your Honor.

14             THE COURT:  And is there a plea

15             agreement here, Mr. D'Andrea?

16             MR. D'ANDREA:  Yes, your Honor, in

17             exchange of the plea, there were some other

18             other--I never got an information.  Is there

19             only one charge on the information?

20             MS. LAFFERTY:  Uh-huh.

21             MR. D'ANDREA:  That he was pleading

22             to the information, count one of the

23             information.  And there has been a

24             stipulated sentence if the court so approves

25             for a period of 3 months of home confinement

4

1    to a maximum of 23 months.

2              THE COURT:  Okay, Commonwealth is

3    recommending that sentence, is that correct?

4              MS. LAFFERTY:  Yes, your Honor.

5  BY THE COURT:

6    Q.    Alright, so Mr. Godlewski, even though I

7  just told you the maximum penalties you can receive is

8  up to 5 years in prison and a $10,000 fine, the

9  District Attorney, as part of the plea agreement, is

10 recommending that if any sentence is determined to be

11 imposed by me, that they are recommending that it not

12 exceed 3 months of home confinement with a maximum of

13 23 months of supervision, is that your understanding of

14 the agreement?

15    A.    Yes, sir.

16    Q.    And you also understand that if after

17 completing the presentence investigation, I find that I

18 cannot impose that sentence or I'm unwilling to do so,

19 I must allow you to withdraw your plea, do you

20 understand that?

21    A.    Yes, sir.

22              THE COURT:  Okay, alright, please

23    give me the facts?

24              MS. LAFFERTY:  *Between* January of

25    2008 and July of 2010, the defendant

5

1         unlawfully being of 18 years and upwards

2         corrupted or tended to corrupt the morals of

3         any minor less than 18 years of age, or did

4         aid, abet, entice or encourage any such

5         minor in the commission of a crime, the

6         defendant commit--the defendant did

7         repeatedly have inappropriate text messages

8         and contact with a minor.

9  BY THE COURT:

10    Q.  And you admit that between January of '08

11 and January of 2010, you engaged in the conduct just

12 described by the District Attorney?

13    A.  Yes, your Honor.

14        THE COURT:  Alright, we'll accept

15        the guilty plea, we'll defer the imposition

16        of sentence pending the presentence

17        investigation.

18        MR. D'ANDREA:  Thank you, sir.

19        (WHEREUPON, the proceedings

20        concluded.)

21

22

23

24

25

6

1

2                    C E R T I F I C A T E

3

4         I hereby certify that the proceedings and

5    evidence are contained fully and accurately in the

6    notes taken by me of the above cause and that this copy

7    is a correct transcript of the same to the best of my

8    ability.

9                              /s/ Wenda Halliday
                              _____
10                            Notes taken by Wenda Halliday
                              Official Court Reporter
11                            Elizbth V Kedrick
                              _____
12                            Transcribed by Elizabeth V. Kedrick
                              Official Court Reporter

13

14                                   ORIGINAL

15         The foregoing record of the proceedings upon the

16   above cause is hereby approved and directed to be

17   filed.

18

19

20   9/25/24
     _____
21   Date                    _____
                             HONORABLE VITO P. GEROULO

22

23

24   (The foregoing certificate of this transcript does not
     apply to any reproduction of the same by any means
25   unless under the direct control and/or supervision of
     the certifying reporter.)