**ROTHENBERG & CAMPBELL**
RYAN P. CAMPBELL, ESQ. *(#317838)*
RPC@ROTHENBERGCAMPBELL.COM
DAVE W. ROTHENBERG, ESQ. *(#326483)*
DWR@ROTHENBERGCAMPBELL.COM
345 WYOMING AVENUE, SUITE 210
SCRANTON, PENNSYLVANIA 18503
*PH:* 570.207.2889 | | *FAX:* 570.207.3991

*COUNSEL FOR DEFENDANTS*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PHILIP GODLEWSKI,**<br>PLAINTIFF<br>V.<br>**EDUARDO NICOLAS ALVEAR GONZALEZ** *AKA* **ALVEAR GONZALEZ EDUARDO NICOLAS** *AKA* **NICOLAS ALVEAR;** *AND* **GOOD LION TV, LLC,**<br>DEFENDANTS | CIVIL ACTION—LAW<br>*(HON. JOSEPH F. SAPORITO, JR.)*<br><br>**JURY TRIAL DEMANDED**<br><br>NO.: 3:24—CV—00344—JFS |

# DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**AND NOW COME** Defendants, Eduardo Nicolas Alvear Gonzalez, *aka* Alvear Gonzalez Eduardo Nicolas, *aka* Nicolas Alvear, and Good Lion TV, LLC, by and through their counsel, Rothenberg & Campbell, and hereby file their Brief in Support of their Motion to Dismiss the Second Amended Complaint (ECF Doc. No. 60) filed by Plaintiff, Philip Godlewski, pursuant to Federal Rules of Evidence 12(b)(6) and 12(b)(1), arguing as follows:

## I. PRELIMINARY ARGUMENT

Two (2) years ago—when the instant lawsuit was first initiated—Plaintiff had two (2) other lawsuits filed in Pennsylvania's 45th Judicial District, each seeking damages against various entities under defamation and invasion of privacy false light, counts identical to those that appear in the instant matter. Within the last year, both of those claims for damages have been summarily dismissed by the respective jurists presiding over them by way of summary judgment. The reasoning supporting each summary dismissal is the same: ***Plaintiff's guilty plea to the corruption of minors charge back in 2015 operates as an admission to the fact that he had sex with a minor child when she was fifteen (15) and he was twenty-five (25) years of age.*** That fact—adult Plaintiff had sexual relations with a fifteen-year-old girl—is now a litigated truth that collaterally estops or otherwise precludes him from recovering under any of his civil claims contained in his Second Amended Complaint (***"AMENDED COMPLAINT"***), necessitating its dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

Summarily, Plaintiff's Second Amended Complaint should be dismissed on the following ternary grounds: (1) pursuant to Rule 12(b)(6) because Plaintiff cannot meet his burden establishing that any of the 110 statements referenced by Plaintiff were defamatory or that Mr. Alvear published same with actual malice;

(2) Plaintiff has failed to establish causation and recoverable injuries to each of his quaternary state-law tort claims; and (3) whether Plaintiff forfeits subject-matter jurisdiction as his inability to recover $75,000.00 in damages on those remaining statements is a legal certainty, destroying diversity and necessitating dismissal pursuant to Rule 12(b)(1). More specifically, Plaintiff's admission of engaging in sexual relations with a minor child now creates a defensible "truth" collaterally estopping and precluding him from recovery on any of the 110 statements referenced in Plaintiff's Amended Complaint under any of his claims for relief; those statements are—***as a matter of law***—neither defamatory, false, nor published with a "subjective awareness" of their falsity, being posted amidst substantial evidence suggesting their truth, and ***zero*** independent evidence suggesting their falsity. But even assuming the 110 statements were made by Mr. Alvear, bear a defamatory meaning and are false, it is legally impossible for Plaintiff to legally establish actual malice. Regarding his remaining civil claims, Plaintiff fails to establish the requisite specificity of damages and causation necessary to recover, requiring dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, Fed. R. Civ. P. 12(b)(1).

## II. OPERATIVE FACTUAL & PROCEDURAL BACKGROUND

Plaintiff, Philip Godlewski ***("PLAINTIFF")*** initiated the instant matter by filing a Complaint in the United States District Court for the Middle District of Pennsylvania against Eduardo Nicolas Alvear Gonzalez, *aka* Nicolas Alvear ***("MR. ALVEAR")***, Good Lion TV, LLC ***("CORPORATE DEFENDANT")***, and Good Lion Films, LLC ***("DISMISSED DEFENDANT")*** on February 28, 2024. (See ECF Doc. No. 1, *generally*). On or about May 10, 2024, Defendants filed a second Motion to Dismiss Plaintiff's First Amended Complaint, which was resolved on or about March 4, 2026 by Order of Court. (See ECF Doc. No. 56). On March 24, 2026, Plaintiff filed his Second Amended Complaint against Defendants, which is now the operative pleading. (See ECF Doc. No. 57).

In his Amended Complaint—which is essentially identical to his First Amended Complaint—Plaintiff alleges essentially four (4) causes of action in tort: three (3) counts[1] of Defamation (Counts I, V & VI), False Light Invasion of Privacy (Count II), Intentional Infliction of Emotional Distress ("IIED," Count III), and Intentional Interference with Business Relationships (Count IV). (ECF Doc. No. 57, *generally*). (See ECF Doc. No. 57, *generally*). Plaintiff argues that Defendants have asserted, and continue to assert, that he is "a convicted

---

[1] A claim for defamation in Pennsylvania includes "*per se*" defamation and by "*innuendo*", as both modalities are different iterations of the first element.

pedophile, a fraud, a sexual groomer of minors and that he had a sexual relationship with a girl when she was only fifteen (15) years old[,] and he was twenty-five (25) years old" and that the 110 Discursive Acts imply that Plaintiff is "neglectful[2], predatory[3], corrupt[4], sinful[5], unwholesome[6], and depraved[7]." (ECF Doc. No. 57 at ¶¶ 3 and 116). More specifically, Plaintiff cites to one hundred ten (110) instances of alleged defamatory statements published by Defendants (collectively, the ***"DISCURSIVE ACTS")***, encompassed both in his Second Amended Complaint and various exhibits attached thereto; Defendants compiled these 110 Discursive Acts for demonstrative and referential purposes in a document attached to their Second Motion to Dismiss, adopted by reference hereto. (See ECF Doc. No. 26—1). Collectively, Plaintiff describes himself as an "entrepreneur with business connections and clients," arguing that Defendants maliciously and recklessly published the 110 Discursive Acts, "adversely affecting his employment," including a "loss of followers" and otherwise causing him

---

2 Plaintiff admitted to corrupting a minor, writing bad checks, tampering with records, lying on his application to purchase firearms, being unfaithful to his first wife, and describing his actions as having been ordained by God using messianic language.

3 See ftn. 4, *supra.*

4 See ftn. 4, *supra.*

5 See ftn. 4, *supra.* According to the Inferno, Plaintiff's actions place him in five (5) of the nine (9) Spheres of Hell: lust, greed, heresy, fraud and treachery. Alighieri, Dante, The Divine Comedy (2009). According to the Summa Theologica, Plaintiff has committed the capital sins of lust, envy, greed and pride. Aquinas, Thomas, Summa Theologica (1964).

6 See ftn. 4, *supra.*

7 See ftn. 4, *supra.*

personal injuries including "depression, anxiety, isolation, insomnia, psychological and emotional distress, irreparable damage to his reputation, and loss of standing in the community." (See ECF Doc. No. 57 at ¶¶ 98, 7, 108 and 87, *respectively*). However, Plaintiff's Second Amended Complaint is silent as to what specific "employment," "business connection," or "client" has been "adversely affect[ed]" except for some vague and unsubstantiated allegations of subscribers; as of December 22, 2022, the Pennsylvania State Real Estate Commission revoked Plaintiff's associate broker license and broker-multi license for five (5) years due to Plaintiff's guilty pleas to charges of tampering with records and writing bad checks. (See ECF Doc. No. 26—3).

Beginning as early as 2018, Plaintiff began using social media to broadcast several theories surrounding QAnon[8] accompanied often by his own personal thoughts and beliefs.[9] By 2021, Plaintiff had established himself within the QAnon community, cultivating followers numbering in the hundreds of

---

[8] Originating in 2017, QAnon is a far-right American political conspiracy theory and political movement focused on fabricated claims made by an anonymous individual or individuals known as "Q" which are relayed and developed by online communities and influences. QAnon's core belief is that a cabal of Satanic, cannibalistic child molesters operate a global sex trafficking ring who conspired against then-President Donald Trump, often portrayed as a hero and antagonist to the movement. See Wikipedia.org accessed on March 28, 2024 *citing* Wendling, Mike (July 22, 2020). "QAnon: What is it and where did it come from" BBC.

[9] N. M. Ramirez. "QAnon Influencer Sues Newspaper, Gets Exposed as Alleged Child Predator." *Rolling Stone® Magazine*. (November 30, 2022).

thousands[10]. (See ECF Doc. No. 1 at ¶ 2). As of March 24, 2026, Plaintiff's number of followers had ballooned into the ***millions***, an amount much larger than the one that existed prior to Plaintiff's filing his lawsuit. (*cf.* ECF Doc. No. 57 at ¶ 104; but see ECF Doc. No. 1 at ¶ 2). Plaintiff used his new-found online popularity and self-proclaimed messianic[11] influence to make over a million dollars in advertising revenue and content-based subscriptions, including soliciting multi-level marketing schemes[12] to his followers.[13] Plaintiff admits as much in all three rounds of pleadings, calling himself a "public figure" with a "large following." (See ECF Doc. Nos. 1 at ¶ 2; 23 at ¶ 2; and 57 at ¶ 2).

In early 2021, Chris Kelly of the Scranton Times-Tribune published an editorial entitled, "QAnon Realtor Sells Rabbit Holes on YouTube," which included a statement that Plaintiff "pleaded guilty to corruption of minors and admitted to having a sexual relationship with a 15-year-old girl." (ECF Doc. No. 26—2). As fact discovery progressed during the Times-Tribune Lawsuit, more

---

[10] Ramirez, (November 30, 2022).

[11] Plaintiff states that his popularity and newfound wealth during this period was his "reward" from "God" for "helping us get to where we are" and "once it concludes [...] God would reward [him] for the rest of [his] life and that is what He has done." (See "Greatest Fraud on Earth: the Phil Godlewski Story").

[12] One of the more successful multi-level marketing schemes recommended by Plaintiff involved the purchase and sale of silver from 7k Metals; this method involves the "upline," or upside down "V", recruiter profiting off the "downline," or base, recruit's sales and subsequent recruitment of additional downline recruits.

[13] W. Sommer. "QAnon Leaders Push Followers Into Multi-Level Marketing." *The Daily Beast*. (April 15, 2022).

information regarding Plaintiff's past criminal activity was revealed, including Plaintiff's prior criminal convictions[14], guilty plea colloquies[15] and the sworn testimonies of Plaintiff[16], his ex-wife Dori Gallagher[17], and Brienna L. DuBorgel ***("BRIENNA")***, the girl with whom Plaintiff allegedly had sex when she was fifteen (15) years-old. (See ECF Doc. No. 26—10).

Upon reviewing Mr. Kelly's editorial, Plaintiff brought a five-count civil lawsuit against him, the paper's executive editor and corporate owners in the Lackawanna County Court of Common Pleas docketed at number 2021—CV—2195 ***("TIMES-TRIBUNE LAWSUIT")***. Upon the close of fact discovery in the Times-Tribune Lawsuit, more information regarding Plaintiff's past criminal activity was revealed, including Plaintiff's prior criminal convictions[18], guilty plea colloquies[19] and the sworn testimonies of Plaintiff[20], his ex-wife Dori Gallagher[21], and Brienna L. DuBorgel ***("BRIENNA")***, the girl with which Plaintiff allegedly had sex when she was fifteen (15) years-old. (See ECF Doc. No. 26-10). In her October 31, 2022 affidavit, Brienna testified that she engaged in an approximately

---

[14] (See ECF Doc. No. 26—4, 26—5, and 26—6, *respectively*).
[15] (See ECF Doc. No. 26—7).
[16] (See ECF Doc. No. 26—8).
[17] (See ECF Doc. No. 26—9).
[18] (See ECF Doc. Nos. 26-4 through 26-6).
[19] (See ECF Doc. No. 26-7).
[20] (See ECF Doc. No. 26-8).
[21] (See ECF Doc. No. 26-9).

year-long sexual relationship with Plaintiff beginning when she was a fifteen-year-old freshman at Riverside High School and he was twenty-five (25) years old where Plaintiff purchased her gifts and communicated with her regularly. (See ECF Doc. No. 26-9 at ¶¶ 6—8). Brienna also testified that Plaintiff continued to speak with her ***after*** he was charged with eight (8) criminal counts, urging her to stop cooperating with the Lackawanna County District Attorney's Office and threatening suicide if Brienna testified against him, prompting her to stop cooperating in the investigation. (Id). On or about August 30, 2024, Judge Terrence R. Nealon issued a Memorandum & Order in the Times-Tribune Lawsuit, granting the defendants' Motion for Summary Judgment and holding, "Godlewski is collaterally estopped from denying his participation in a sexual relationship with Ms. DuBorgel in 2010". (See ECF Doc. No. 33).

Upon review of Brienna's 2022 Affidavit, Plaintiff brought a two-count civil lawsuit against Brienna in the Lackawanna County Court of Common Pleas docketed at number 2023—CV—1354 (the ***"DuBorgel Lawsuit"***). On May 3, 2023, Brienna's counsel filed her Answer to Plaintiff's Complaint with New Matter and a six-count Counterclaim, attaching over 2,300 textual messages purportedly exchanged between her and Plaintiff over a two-week period from February 24, 2010 through March 12, 2010. (See ECF Doc. No. 26-9 at pp. ST

2790—2905). On April 17, 2025, President Judge James A. Gibbons entered a Memorandum & Order in the DuBorgel Lawsuit, granting Brienna's Motion for Partial Summary Judgment and dismissing Plaintiff's defamation and invasion of false light claims against her, holding, in part:

> We find that no genuine issue of material fact exists as to the truth of DuBorgel's statements in her affidavit. Godlewski in his Complaint claims that he and DuBorgel did not have a sexual relationship while she was a minor. [...] The precise wording of DuBorgel's affidavit states that Godlewski was charged with crimes "relating to [their] sexual relationship." There can be no dispute that this is true [...]

A true and correct copy of President Judge Gibbons' Memorandum & Order is appended hereto and marked collectively as **Exhibit "A"**.

The facts that came out during fact discovery on both the Times-Tribune and Duborgel Lawsuits was made public by the parties' various filings coupled with Plaintiff's notoriety in the QAnon universe and related outspoken opinions, attracted national attention, culminating in several articles about Plaintiff, his criminal past, conspiracy theorist present, and litigious future. Almost immediately, these articles went "viral," exponentially disseminated and shared by thousands of users on dozens of national and international online communities and becoming a matter of public record and concern.[22]

---

[22] See United States v. Thomas, 905 F.3d 276, 280 (3d Cir. 2018); Dombrowski v. Bell Atlantic Corp., 128 F.Supp.2d 216, 217 (E.D. Pa. 2000) (*quoting* Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984)); and Zdrok v. Zdrok, 829 A.2d 697, 699 (Pa. Super. 2003).

Mr. Alvear—a documentary filmmaker and fellow outspoken social media figure—came to know about Plaintiff during this time. The perceived irony in reconciling Plaintiff's present interest in QAnon with his criminal past seemed to Mr. Alvear the perfect subject for a documentary film. "The Greatest Fraud on Earth: The Phil Godlewski Story" is a film created and directed by Mr. Alvear and produced by Corporate Defendant that includes scenes depicting Plaintiff's own words, postings and videos inter-cut with visual and audio depictions of the evidence produced during the Times-Tribune and DuBorgel Lawsuits, respectively. (See ECF Doc. No. 1-10). Mr. Alvear also participated in general online discussion and commentary regarding Plaintiff as a public figure on several social media accounts. This public information served as the basis for all of Defendants' conduct Plaintiff cites as wrongful in his Amended Complaint.

Defendants file this Brief in support of their April 14, 2026 Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, if granted in part, Fed. R. Civ. P. 12(b)(1).

## III. STATEMENT OF ISSUES PRESENTED

Defendants present the following issues before the Court for disposition on their Motion to Dismiss:

**<u>FIRST</u>.** WHETHER PLAINTIFF'S SECOND AMENDED COMPLAINT SHOULD BE DISMISSED AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED WHERE PLAINTIFF CANNOT ESTABLISH: (A) ALL 110 DISCURSIVE ACTS WERE WRONGFUL, OR (B) CAUSALLY RELATED TO THE ALLEGED HARM; AND/OR (C) ACTUAL INJURIES-IN-FACT TOWARDS PLAINTIFF?

***SUGGESTED ANSWER: IN THE AFFIRMATIVE.***

**<u>SECOND</u>.** ASSUMING *ARGUENDO* DEFENDANTS' RULE 12(B)(6) MOTION IS GRANTED AS TO *LESS THAN ALL* 110 DISCURSIVE ACTS, WHETHER PLAINTIFF'S REMAINING CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED R. CIV. P. 12(B)(1) WHERE IT IS A LEGAL CERTAINTY THAT PLAINTIFF CANNOT ESTABLISH DAMAGES TOTALING $75,000.00, THEREBY FORFEITING DIVERSITY JURISDICTION?

***SUGGESTED ANSWER: IN THE AFFIRMATIVE***

## IV. <u>ARGUMENT</u>

### A. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, when a plaintiff fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); <u>Fraser v. Pennsylvania State University</u>, 654 F.Supp.3d 443, 453 (M.D. Pa. 2023). Following <u>Bell Atlantic Corp. v. Twombly</u> and <u>Ashcroft v. Iqbal</u>, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. 662, 678 (U.S. 2009) (*quoting*

Twombly, 550 U.S. 544, 570 (U.S. 2007)); see also, Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co., 967 F.3d 218, 229 (3d Cir. 2020).

In deciding a motion to dismiss, courts within the United States Court of Appeals for the Third Circuit must follow three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of all well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. Fraser, 654 F.Supp.3d at 453 ftn. 57 (*citing* Connelly v. Lane Construction Corp., 809 F.3d 780, 787 (3d Cir. 2016)). In ruling on a motion to dismiss, the Court may consider "the allegations contained in the complaint, the exhibits attached to the complaint and ***matters of public record***" together with any ***document "integral to or explicitly relied upon in [framing] the complaint."*** Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) ***(emphasis added)***; see also, Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). When appropriate, a court may "convert" the motion to dismiss into a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d) by ensuring that "the materials submitted require conversion" and that "the parties ha[ve] adequate notice of the ... court's intention to convert." In re Rockefeller

Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999); see also Meyer v. Delaware Valley Lift Truck, Inc., 392 F.Supp.3d 483, 489 ftn. 2 (E.D. Pa. 2019).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack; the former challenges subject matter jurisdiction without disputing the facts allege in the complaint – assuming each allegation as true – whereas the latter, a factual challenge, attacks the factual allegations underlying the complaint's assertion of jurisdiction by presenting "competing facts." Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016) (*quotation omitted*). A factual challenge permits "a court [to] weigh and consider evidence outside the pleadings" such that a plaintiff "will have the burden of proof that jurisdiction does in fact exist," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. (*citation omitted*).

"District courts shall have original jurisdiction of all civil actions where ***the matter in controversy exceeds the sum or value of $75,000.0, exclusive of interest and costs***, and is between – (1) citizens of different States." 28 U.S.C. § 1332(a)(1) (***emphasis added***). Plaintiff bears the burden of satisfying the subject matter jurisdictional threshold at the motion to dismiss stage; the Third Circuit has held:

> [T]hat burden is not especially onerous. In reviewing the complaint, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

> Accordingly, the question whether a plaintiff's claims pass the "legal certainty" standard is a threshold matter that should involve the court in only minimal scrutiny of the plaintiff's claims.

Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 395 (3d Cir. 2016) *(internal quotations and citations omitted).*

Where the parties dispute the underlying facts concerning the jurisdictional amount requirement, "the trial court is free to weigh the evidence," and determine the facts "by a preponderance of evidence." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F2d 884, 891 (3d Cir. 1977). After all disputes related to jurisdictional facts are settled, a federal court must remand or otherwise dispose of a matte if it apparent, to a "legal certainty," that the plaintiff cannot recover an amount exceeding the jurisdictional requirement. ACE American Ins. Co. v. Guerriero, 738 F.App'x 72, 76 (3d Cir. 2018).

### B. TAKEN TOGETHER ALL ALLEGATIONS OF FACT EITHER ADMITTED OR ASSUMED AS TRUE, PLAINTIFF'S SECOND AMENDED COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) AS PLAINTIFF CANNOT SHOW THAT ANY OF THE 110 DISCURSIVE ACTS MEET ALL TERNARY ELEMENTS OF HIS STATE-LAW TORT CLAIMS – WRONGFUL CONDUCT, CAUSATION OR RECOVERABLE DAMAGES.

#### (1) Plaintiff's Defamation and False Light Claims Must be Dismissed Because Plaintiff Cannot Establish the Defamatory Nature of the 110 Discursive Acts, Their Falsity or Mr. Alvear's Subjective Awareness of Their Probable Falsity, Having Relied on Persuasive Information Made Public by Plaintiff's Own Litigiousness.

"Under Third Circuit jurisprudence, the Court must apply a two-step approach when presiding over a defamation action. The Court must determine: (1) whether the defendants have harmed the plaintiff's reputation within the meaning of state law; and (2) if so, whether the First Amendment nevertheless precludes recovery." Mzamane v. Winfrey, 693 F.Supp.2d 442, 476 (E.D. Pa. 2010) *(internal quotations omitted)*. A claim for defamation under Pennsylvania law includes the following elements:

> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
> (6) Special harm resulting to the plaintiff from its publication. [and]
> (7) Abuse of a conditionally privileged occasion.

42 Pa. C.S.A. § 8343(a); see also Graboff v. Colleran Firm, 744 F.3d 128, 135 (3d Cir. 2014) *(internal citations omitted)*; Martin v. Finley, 349 F.Supp.3d 391, 423 (M.D. Pa. 2018). Once a plaintiff has established these elements, the defendant bears the burden of proving:

> (1) The truth of the defamatory communication.
> (2) The privileged character of the occasion on which it was published. [or]
> (3) The character of the subject matter of defamatory comment as of public concern.

42 Pa. C.S.A. § 8343(b); Martin, 349 F.Supp.3d at 423.

Some communications, even if offensive or distasteful, do not rise to the level of defamation because the law does not extend to mere insult. Emekekwue v. Offor, 26 F.Supp.3d 348, 359 (Pa. M.D. 2014) (*citing* Beverly Enters., Inc. v. Trump, 182 F.3d 183, 187 (3d Cir. 1999)). "The nature of the audience is a critical factor" for the court in assessing the possibility of reputational harm from a statement and each allegedly defamatory statement must be examined in full context. Meyers v. Certified Guaranty Company, LLC, 221 A.3d 662, 670 (Pa. Super. 2019) (*quoting* 42 Pa. C.S.A. § 8343(b)). For example, expressions of opinion, without more, are not actionable. Id. Likewise, "[s]tatements which are merely annoying or embarrassing or [are] no more than rhetorical hyperbole or a vigorous epithet are not defamatory." Beverly Enters Inc., 182 F.3d at 187. Rather, plaintiff "must have suffered the kind of harm which has ***grievously fractured his standing in the community of respective society***." Tucker v. Philadelphia Daily News, 848 A.2d 113, 124 (Pa. 2004) (***emphasis added***).

The tort of false light invasion of privacy is related to defamation. Pennsylvania has adopted the Restatement (Second) of Torts standard, which "imposes liability on a person who publishes material that 'is not true, is highly offensive to a reasonable person, and is publicized with knowledge, or in reckless disregard, of its falsity.'" Graboff, 744 F.3d at 136 *(internal quotations and citations*

*omitted).* See also Vogel v. W.T. Grant Co., 327 A.2d 133 (Pa. 1974). The torts false light invasion of privacy and defamation are sometimes difficult to distinguish. False light has been described by some as "the right to be left alone," whereas defamation protects one's interest in good reputation. Martin, 349 F.Supp. at 423 *(internal quotations omitted)*; see also Graboff, 744 F.3d at 138 n.8.

Collectively examining all facts admitted by Plaintiff or otherwise assumed true for purposes of this Motion[23], Plaintiff's claims for Defamation (Counts I, V & VI) and False Light Invasion of Privacy (Count II) must be dismissed for failure to state claims upon which relief can be granted. Plaintiff cannot establish that any of the 110 Discursive Acts were tortious, directly caused his particular harm, or even the existence of an actual, physical injury. Moreover, the findings by Judges Nealon and Gibbons in the Times-Tribune and DuBorgel Lawsuits respectively collaterally estop Plaintiff from now arguing the falsity of the following statement: *Plaintiff did not have sexual relations with a fifteen-year-old girl in 2010.* Plaintiff's failure to plead credible evidence showing Defendants' tortious conduct, causation or specific damages—all three (3) necessary components of every

[23] Without waiving their legal rights to challenge factual or legal accuracy at a later date and for sole purposes of this Motion, Defendants invite this Honorable Court to assume that all 110 Discursive Acts were published by Mr. Alvear and that Plaintiff admits: (a) to be a "limited purpose public figure;" (b) that Mr. Alvear relied upon the information published in the Times-Tribune and DuBorgel Lawsuits in authoring the 110 Discursive Acts; and (c) that he has more followers now than he did prior to the acts or lawsuits.

common law tort—doom each of his Amended Complaint's quinary tort claims. Regarding causation and specific damages, Defendants adopt and incorporate Defendants' Brief in Opposition to Plaintiff's Motion for Preliminary Injunction filed simultaneously with this Brief pursuant to Rule 10(b) as if more fully set forth herein. (See ECF Doc. No. 20-1, *generally*). Summarily, Plaintiff cannot show that Defendants' specific conduct caused his alleged damages, having occurred amidst hundreds of thousands of other posted communications regarding Plaintiff's criminal history which were later re-posted thousands of times. (Id.)

**a.** *Statements that Plaintiff is a "Fraud, Fraudster, Grifter, Thief, Liar, etc." – Based On Plaintiff's Prior Guilty Pleas – Lack Defamatory Meaning And Are Otherwise True.*

Regarding Defendants' statements that Plaintiff is a "fraud, fraudster, a grifter, thief, thief, liar [and/or] a criminal," Plaintiff's own criminal record and respective pleas of "guilty" to perjury, tampering with records and writing bad checks all constitute *crimen falsi* such that these statements are true for purposes of the torts of defamation and false light invasion of privacy. (See, *generally*, ECF Doc. No. 26-1 at pp. 1—2). As such, these statements are legally unrecoverable. See, e.g., Reilly v. North Hills News Record, 1998 WL 1113472 at *1 (W.D. Pa. 1998). The remaining statements (i.e., Plaintiff has "swindled his followers based

on his financial schemes") constitute insults and/or opinions and bear no defamatory character upon which relief can be granted. Beverly Enters., Inc., 182 F.3d at 187; Emekekwue, 26 F.Supp.3d at 359.

Therefore, the first thirty-two (32) Discursive Acts referencing Plaintiff as same are true, matters of opinion and/or personal insults and should be dismissed as a matter of law. (See ECF Doc. No. 26-1 at pp. 1-2). The remaining seventy-eight (78) Discursive Acts are each an iteration of the following statement: ***"Plaintiff had sex with Brienna when she was a minor".*** The Court must closely examine this statement in context with all the information Plaintiff admits Defendants relied upon, especially information tending to show that Mr. Alvear had subjective awareness of falsity of ***any*** 110 Discursive Acts. Apart from Plaintiff's own words, no independent information evidencing such falsity existed during the timeframe the statements were published. On the contrary, all publicly available information regarding the 110 Discursive Acts strongly suggested their respective truth. Therefore, it is ***impossible*** for Mr. Alvear to have been aware of same; likely, because no such information exists.

*b. It Is Impossible for Plaintiff to Establish that Mr. Alvear Was "Subjectively Aware" of the Falsity of Any of the 78 Remaining Discursive Acts Related to Plaintiff Having Sex with Brienna When She was a Minor Because All Available Information at the Time Suggested the Statements Were True.*

As an admitted "public figure"[24] speaking about "matters of public concern," Plaintiff bears the burden to show, by clear and convincing evidence, the falsity of Defendants' alleged defamatory statements and that Defendants published those statements with actual malice. Phila. Newspapers. v. Hepps, 475 U.S. 767, 770 (U.S. 1986); McDowell v. Paiewonsky, 769 F.2d 942, 947 (3d Cir. 1985); see also New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (U.S. 1964); Tucker v. Philadelphia Daily News, 848 A.2d 113, 127-128 (Pa. 2004); and Dibella v. Hopkins, 403 F.3d 102 (2d Cir. 2005). The clear and convincing evidence standard applies even at the summary judgment stage of a defamation proceeding. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255-56 (U.S. 1986).

Plaintiff claims Defendants' statements about him having sex with a minor and being a "Pedo, a Pedophile, a [...] criminal, sexual groomer of minors and a convicted pedophile" are false. (See ECF Doc. Nos. 57 at ¶ 3; and 26-1). These statements, and their 78 different iterations, all derive from the claim that

---

[24] Plaintiff has twice admitted to being a "public figure" in his pleadings. Undoubtedly, Plaintiff is at least a "limited purpose public figure" as contoured by Third Circuit caselaw. Specifically, whether a Plaintiff qualifies as a "limited purpose public figure" is a question of law to be determined by the District Court and hinges on "(1) whether the alleged defamation involves a public controversy, and (2) the nature and extent of plaintiff's involvement in that controversy." McDowell v. Paiewonsky, 769 F.2d 942, 948 (3d Cir. 1985). More succinctly, for the Court to determine Plaintiff's status as a "limited purpose public figure, [Plaintiff] must voluntarily ***thrust himself into the vortex of the dispute***." Marcone v. Penthouse Int'l Magazine for Men, 754 F.2d 1072, 1083 (3d Cir. 1985) (***emphasis added***).

Plaintiff, while he was an adult, engaged in a sexual relationship with a minor leading to criminal conviction. (Id.). If Plaintiff cannot prove by "clear and convincing evidence" that Defendants published any of the 110 Discursive Acts with "actual malice"—either knowledge of their falsity or reckless disregard of same—then no liability exist upon which to impugn upon Defendants. See *supra*. Plaintiff must do so by showing that Mr. Alvear either "entertained serious doubts as to the truth of [his] publication," St. Amant v. Thompson, 390 U.S. 727, 731, (U.S. 1968), or had "subjective awareness of probable falsity." McDowell v. Paiewonsky, 769 F.2d 942, 951 (3d Cir. 1985). Absent either showing, no liability lies for any counts in defamation or false light invasion of privacy. Id.

The following facts are undisputed and part of the public record in the Times-Tribune Lawsuit[25]: (1) the Lackawanna County District Attorney's Office arrested Plaintiff on July 9, 2010 pursuant to an eight (8) count Criminal Complaint[26]; (2) on November 12, 2010, Plaintiff pled guilty to a charge of "corruption of minors,"[27] acknowledging the allegations contained in the criminal

---

[25] District Courts may take judicial notice of any matter of public record including court documents, pleadings and related exhibits filed in a plaintiff's other lawsuit stemming from similar facts and circumstances. See Oran v. Stafford, 226 F.3d 275, 288 (3d Cir. 2000); Fed. R. Evid. 201(b).

[26] (See ECF Doc. Nos. 26-4 through 26-8).

[27] (Id.) 18 Pa. C.S.A. § 6301 was amended effective December 6, 2010 to include a new section, specifically (a)(1)(ii) relating to sexual offenses and Plaintiff could not be charged under this new section since it was not enacted at the time of his conduct or arrest; instead, law enforcement charged Plaintiff under § 6301(a)(1) for sexual related conduct.

complaint each involving inappropriate sexual contact with Brienna[28]; (3) detectives at the time said Plaintiff had sex with Brienna in cars and houses which were up for sale[29]; and (4) Plaintiff admitted he did in fact corrupt the morals of Brienna and had sex with her after she was of legal age.[30] Plaintiff's only contention of fact is that he ***never*** had sex with Brienna ***before*** she reached the age of legal consent; a fact which is ***solely*** based on Plaintiff's ***own*** testimony.

Brienna executed an Affidavit stating she was in a sexual relationship with Plaintiff when she was 15 and he was 25. (See ECF Doc. No. 26-10). Brienna also testified that she engaged in several textual messages with Plaintiff during this time where Plaintiff references sex with her over 25 times and that he loves her over 100 times. (See ECF Doc. No. 26-11, *generally*). Plaintiff's first wife, Dori Gallagher, testified to her knowledge of their relationship. (See ECF Doc. No. 26-9 at pp. 30—34). Plaintiff admits in his sworn deposition that he's known Brienna since 2009, had sex with her when she was 19, and admits "I can't prove that something didn't happen in this case." (See ECF Doc. No. 26-8 at pp. 212—213; 251—252). He also testified, "I can't prove a negative" and "I don't have to prove anything," when questioned about sex with 15-year-old Brienna. (Id. at p. 252).

---

28 (Id.)
29 (See ECF Doc. No. 26-4 through 26-10).
30 (See ECF Doc. No. 26-4 through 26-8).

Moreover, Defendants argue that this issue is identical to the issues presented in both the Times-Tribune and DuBorgel Lawsuits, respectively. In those matters, Plaintiff had a full and fair opportunity to litigate this issue before Judges Nealon and Gibbons, with each issue resulting in a final judgment on the respective merits. Therefore, Plaintiff is now collaterally estopped from asserting his position that "he did not have inappropriate sexual relations with a fifteen-year-old child." See Peloro v. United States, 488 F.3d 163, 175 (3d Cir. 2007). When a federal court considers precluding a specific issue that has been previously (and finally) litigated in state court, the court must apply that state's substantial law. See Allen v. McCurry, 449 U.S. 90, 96 (1980); Anela v. City of Wildwood, 790 F.2d 1063, 1068 (3d Cir. 1986).

Collateral estoppel, or issue preclusion, "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (*internal quotation omitted*). Collateral estoppel will only apply where:

> (1) The issue decided in the prior case is identical[31] to the one presented in the later action; (2) there was a ***final[32] adjudication on the merits[33]***; the party against whom the plea is asserted ***was a party or in privity with a party*** in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a ***full and fair opportunity to litigate the issue***[34] in the prior proceedings; and (5) the determination in the prior proceeding was ***essential[35] to the judgment***.

Cole v. PA Dept. of Env'l Protection, 329 A.3d 1228, 1239 n. 45 (Pa. 2025) (*quoting* Office of Disciplinary Counsel v. Keisewetter, 889 A.2d 47, 50-51 (Pa. 2005)); see also, Skotnicki v. Ins. Dept., 175 A.3d 239, 247 (Pa. 2017) ("Collateral estoppel relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication.").

---

31 "To defeat a finding of identity of the issues for preclusion purposes, the difference in the applicable legal standards must be 'substantial.'" Raytech Corp. v. White, 54 F.3d 187, 191 (3d Cir. 1995).

32 "[F]or purposes of issue preclusion... 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Witkowski v. Welch, 173 F.3d 192, 200 (3d Cir. 1999) (*quoting* Restatement (Second) of Judgments § 13 (1982)).

33 A determination on the merits "may be based on a failure of the pleading or proof as well as on the sustaining of the burden of proof." Witkowski, 173 F.3d at 201 (*quotation omitted*).

34 The "full and fair opportunity to litigate" requirement is generally met if the procedures involved in the earlier proceedings complied with due process protections, either Federal or state created. See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 483 n. 24 (1982); Peloro, 488 F.3d at 175; Siegel v. Goldstein, 657 F. Supp. 3d 646 (E.D. Pa. 2023).

35 When determining whether the issue was "essential" to the previous judgment, courts look to whether the issue was "critical to the judgment or merely dicta." O'Leary v. Liberty Mut. Ins. Co., 923 F.2d 1026, 1067 (3d Cir. 1991).

The Merriam-Webster Dictionary defines: "pedophilia"[36] as a "[*noun*] sexual perversion in which children are the preferred sexual object"; "molest"[37] as "[*verb*] to make unwanted or improper sexual advances towards (someone) or to annoy, disturb, or persecute [a person] especially with hostile intent or injurious effect"; "groom"[38] as "[*verb*] to build a trusting relationship with (a minor) in order to exploit them especially for nonconsensual sexual activity"; "minor"[39] as "[*noun*] a person who is not yet old enough to have the rights of an adult"; and "convict"[40] as "[*verb*] to find or prove to be guilty." Each of the remaining 110 Discursive Acts allegedly made by Mr. Alvear were based on the information disclosed in the Times-Tribune Lawsuit, made amidst a hurricane of hundreds of thousands of ***other*** online statements related to the dozens of articles published after Mr. Kelly's article went public.

Assuming all well-pleaded facts contained in Plaintiff's Second Amended Complaint as true for purposes of this Brief, Plaintiff has not, and cannot, establish that Mr. Alvear either "entertained serious doubts as to the truth" of 110 Discursive Acts or had "subjective awareness of [their] probable falsity." St.

---

36 "Pedophilia." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/pedophila. Accessed 5 May 2024.
37 Id. at "Molest" [...] https://www.merriam-webster.com/dictionary/molest.
38 Id. at "Groom" [...] https://www.merriam-webster.com/dictionary/groom.
39 Id. at "Minor" [...] https://www.merriam-webster.com/dictionary/minor.
40 Id. at "Convict" [...] https://www.merriam-webster.com/dictionary/convict.

Amant, 390 U.S. at 731; McDowell, 769 F.2d at 951. On the contrary, the opposite is true. Plaintiff admits that Defendants knew about the materials divulged in the Times-Tribune Lawsuit and used them when publishing the alleged wrongful statements. (ECF Doc. Nos. 1 at ¶¶ 13—18 and 42; and 22 at ¶¶2—24). Plaintiff further admits that Defendants' film contains "much of" of same information revealed in that case and often quotes, verbatim, from that very same record. (Id. at ¶ 18). Mr. Alvear's sworn testimony underscores Plaintiff's admissions of fact. (See ECF Doc. No. 26-1). The only "evidence" of falsity comes from Plaintiff's own mouth, existing somewhere between his thread-bare denials of fact and hazy, unsupported challenges to the authenticity of the textual messages back in 2010. (ECF Doc. Nos. 1 at ¶¶ 22, 26, and 36; 57, *generally*). Importantly, despite Plaintiff's allegations that Mr. Alvear should have known about the falsity of the remaining 78 Discursive Acts, there existed no contemporaneous, independent evidence suggesting that any of these statements were false, let alone that Mr. Alvear had knowledge of it. Indeed, the only information suggesting that the remaining 78 Discursive Acts were false at that time came from Plaintiff's own testimony attacking the credibility of other defendants' evidence. No independent, third-party evidence existed at the

pertinent time tending to show these statements were false, rendering Mr. Alvear's awareness of said falsity a factual and legal impossibility.

Moreover, Plaintiff's allegations of falsity contained in his Second Amended Complaint are scant, amounting to an ostensible lack of proper investigation and personal *animus* towards Plaintiff on part of the Defendants. (ECF Doc. No. 57 at ¶¶ 13, 25, 40 and 41). Even pretending both are true, neither are enough to meet Plaintiff's burden. A failure to investigate, without more, is insufficient to show actual malice; neither is a defendant's *personal feelings* toward plaintiff. See Tucker v. Fischbein, 237 F.3d 275, 286 (3d Cir. 2001); Mallory v. S & S Publishers, 260 F.Supp.3d 453, 464 (E.D. Pa. 2017). Plaintiff's evidence substantiating his reputational tort claims is insufficient; no further discovery will likely move the needle. The Court, assuming all Plaintiff's alleged facts are true, including that Plaintiff never had sex with Brienna while she was a minor, must answer one question: *whether it is possible that Mr. Alvear, having knowledge of all information related to the Times-Tribune Lawsuit prior to publishing any allegedly wrongful statements, **had subjective awareness of their probable falsity?*** Defendants argue that the answer to that question is **"no"**; it is impossible for Plaintiff to meet his burden in this specific case. If the Court agrees, dismissal of Counts I, II, V, and VI is proper as a matter of law.

### (2) Plaintiff's Intentional Interference with Business Relations and IIED Claims Must Both Be Dismissed Because the 110 Discursive Acts Were Either Privileged Or Plaintiff Is Unable to Establish Specific Damages Related to His Claim.

Defendants adopt and incorporate their arguments related to causation and damages as set forth in their Brief in Opposition to Plaintiff's Motion for Preliminary Injunction as though set forth herein at length. (ECF Doc. No. 20-1). Plaintiff has established no present or future contractual or economic relationship between himself and a third-party, having failed to specifically cite to his "business" at all. Furthermore, Defendants' statements and publications are privileged, protected by the First Amendment. Finally, Defendants' statements are not so "extreme and outrageous" in the context of this case to warrant an IIED claim for unspecific damages. As such, Counts III and IV should be dismissed as a matter of law, with prejudice.

To establish a claim for tortious interference with business relations under Pennsylvania law, a plaintiff must show:

> (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring;; (3) the absence of privilege or justification on the part of the defendant; and (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.

Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009).

Specifically, the relationship – prospective or existing – must be "of some substance, some particularity, before an inference can arises to its value to the plaintiff and the defendant's responsibility for its loss." I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko," 500 F.Supp.3d 380, 426 (E.D. Pa. 2020) (*quoting* Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P., 40 A.3d 1261, 1275 n. 14 (Pa. Super. 2012)). For prospective relations, a plaintiff should plead "additional facts to show 'an objectively reasonable probability that [a prospective relationship would] come into existence.'" Id. (*quoting* Kernaghan v. BCI Comm., Inc., 802 F.Supp.2d 590, 592 n.1 (E.D. Pa. 2011)).

Nowhere in Plaintiff's Amended Complaint does he allege the existence of any portended current or future contractual or business relationship other than mentioning that Defendants' allegedly wrongful statements were "adversely affecting his employment" as an "entrepreneur with business connections and clients," including a "loss of followers" (See ECF Doc. No. 22 at ¶¶ 3, 97). Respectfully, entrepreneur of what? Business connections and clients being who? Loss of followers from when? Without more, Plaintiff's claim for Tortious Interference with Business Relations must be dismissed as a matter of law. See Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 471 (Pa. 1979) (dismissing

plaintiff's claim for failure to "set forth any contract right on [plaintiffs'] part which was injured through the actions of [the defendant]"); see also Wurth Baer Supply Co., v. Strouse, 627 F.Supp.3d 422 (M.D. Pa. 2022); Rototherm Corp. v. Penn Linen & Uniform Service, Inc., 1997 WL 419627 (E.D. Pa. 1997); Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc. v Hi-Tech Sys., Inc., 801 F.Supp. 1450, 1459 (E.D. 1992) ("The complaint must allege facts that, if true, would give rise to a reasonable probability that particular anticipated contracts would have been entered into."); and Multitherm Corp. v. Fuhr, 1991 WL 146233, at *22 (E.D. Pa. 1991).

Furthermore, even assuming Plaintiff has established some portended business relationship, Defendants' conduct as alleged by Plaintiff in the Amended Complaint is constitutionally privileged by the First Amendment as "speech on matters of public concern" and "public figures" and therefore not recoverable under Pennsylvania law. See Snyder v. Phelps, 562 U.S. 443, 451 (U.S. 2011); Azzaro v. Cnty. Of Allegheny, 110 F.3d 968, 978 (3d Cir. 1991); see also, Tannous v. Cabrini University, 2023 WL 6465842 at *10 (E.D. Pa. 2023); Neish v. Beaver Newspapers, Inc., 581 A.2d 619, 625 (Pa. Super. 1990); and Jones v. City of Philadelphia, 73 Pa. D. & C.4th 246, 273 (Phila. Co. Ct. Com. Pls. 2005). As such, Count IV must be dismissed as a matter of law.

To state a claim for IIED under Pennsylvania law, the plaintiff must allege "intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff" and "some type of resulting physical harm due to the defendant's conduct." Davis v. Wigen, 82 F.4th 204, 216 (3d Cir. 2023) (*quoting* Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. 2005)). When a party seeks to dismiss a claim for IIED "upon demurrer, the appropriate legal standard to be applied in reviewing the claim is whether the [pleading] sufficiently pleads the claim in a manner that corresponds 'at a minimum' with the provisions of the Restatement (Second) of Torts § 46(1)." Toney v. Chester County Hospital, 961 A.2d 192, 201 (Pa. Super. 2008), aff'd, 36 A.3d 83 (Pa. 2011); Reardon v. Allegheny College, 929 A.2d 477, 487 n. 12 (Pa. Super. 2007), app. denied, 947 A.2d 738 (Pa. 2008).

Given that the definition of "outrageousness" is both subjective and nebulous, the availability of recovery of IIED is "highly circumscribed." Gray v. Huntzinger, 147 A.2d 924, 927-928 (Pa. Super. 2016) (*internal quotation omitted).* The type of conduct required to support an IIED claim "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Davis, 82 F.4th at 216 (*quoting* Hoy, 720 A.2d at 754). "[I]t has not been

enough that the [tortfeasor] has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by 'malice' or a degree of aggravation that would entitle the [claimant] to punitive damage for another tort." Hoy, 720 A.2d at 754. Potential liability for IIED "clearly does not extend to mere insults, threats, annoyances, petty oppressions, or other trivialities," and claimants "must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind," since "[t]here is no occasion for the law to intervene in every case where [someone's] feelings are hurt." Gray, 147 A.3d at 927, n. 1 (*quotation omitted*).

Consequently, instances of abhorrent and malevolent conduct have been deemed insufficient as a matter of law to sustain a claim for IIED. See, e.g., Hoy, 720 A.2d at 754; Piazza v. Young, 403 F.Supp.3d 421 (Pa. M.D. 2019). Additionally, plaintiff must provide competent medical evidence to prove the existence of emotional distress to prevail on an IIED cause of action. Doe v. Liberatore, 478 F.Supp.2d 742, 765 (M.D. Pa. 2007) (*citing* Kazatsky v. King David Memorial Park, Inc., 527 A.2d 988, 995 (Pa. 1987)).

In the instant matter, assuming that Defendants' conduct is not constitutionally privileged and protected by the First Amendment, Defendants'

statements as alleged in Plaintiff's Complaint and in the context of this particular case simply do not rise to the level as to "be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Davis, 82 F.4th at 216 (*quoting* Hoy, 720 A.2d at 754). See Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988); Williams v. Roc Nation, LLC, 2020 WL 6158242 at *7 (E.D. Pa. 2020) (granting documentary filmmaker defendants' motion to dismiss plaintiff's IIED claim despite allegations of alleged lewd and lascivious comments including "dirty, corrupt, immoral, and dishonest"); Cheney v. Daily News, L.P., 102 F.Supp.3d 708, 718 (E.D. Pa. 2015) (granting newspaper defendant's motion to dismiss firefighter plaintiff's IIED claim based on alleged lewd and lascivious conduct and alleged sex scandal).

Assuming Plaintiff has met the threshold requirement and shown "extreme and outrageous conduct" by Defendants, Plaintiff's IIED count should be dismissed for failure to adequately articulate his actual, physical injury substantiated by competent medical evidence due to Defendants' alleged wrongful comments. See Hines v. Proper, 442 F.Supp.2d 216, 224 (M.D. Pa. 2006). For those reasons, Defendants respectfully request that this Honorable Court dismiss Count III of Plaintiff's Complaint, with prejudice.

### C. ASSUMING *ARGUENDO* THAT THIS HONORABLE COURT DISMISSES LESS THAN ALL 110 DISCURSIVE ACTS, THEN IT IS LEGALLY CERTAIN THAT PLAINTIFF WILL BE UNABLE TO ESTABLISH AN AMOUNT IN CONTROVERSY EQUAL TO $75,000.00 BASED ON THE REMAINING ALLEGATIONS, DESTROYING SUBJECT MATTER JURISDICTION AND NECESSITATING DISMISSAL PURSUANT TO FED. R. CIV. P. 12(B)(1).

Historically, the Third Circuit has been hesitant to dismiss or otherwise remand a diversity plaintiff's complaint based solely on a failure to meet the "amount in controversy" requirement, stating:

> In a cause instituted in the federal court the plaintiff chooses his forum. He knows or should know whether his claim is within the statutory requirement as to amount. His good faith in choosing the federal forum is open to challenge not only by resort to the face of his complaint, but by the facts disclosed at trial, and if from either source it is clear that his claim never could have amounted to the sum necessary to give jurisdiction there is no injustice in dismissing the suit.

Huber v. Taylor, 532 F.3d 237, 244 (3d Cir. 2008) (*quoting* St. Paul Mercury, 303 U.S. at 290). Recently, however, Third Circuit courts have declined to sustain subject matter jurisdiction in diversity cases where, based on a fair reading of the complaint, a plaintiff's allegations of damages appear ***too vague, speculative, or lack specific indicia suggesting seriousness, severity and/or "bad faith" of injury***. See, e.g., Rowland v. Bissell Homecare, Inc., 73 F.4th 177 (3d Cir. 2023) (Third Circuit found that the amount in controversy requirement was not satisfied where plaintiff's action sought only equitable relief and defendants relied exclusively on

attorney fees to establish the amount-in-controversy); Mena v. Lay, 650 F.Supp.3d 337 (U.S.V.I. 2023) (District Court concluded that plaintiff's claims did not exceed the $75,000.00 amount-in-controversy limit for diversity jurisdiction where plaintiff did not: specify her specific personal injuries; allege any hospitalization, medical treatment or lost wages with specificity; or otherwise allege her injuries were serious or severe); Sciarrino v. State Farm Fire and Casualty Company, 476 F.Supp.3d 91 (E.D. Pa. 2020) (*same*, where plaintiff-insured's complaint did not allege specific facts suggesting bad faith); and Clarity Sports International LLC v. Redland Sports, 400 F.Supp.3d 161 (M.D. Pa. 2019) (*same*, where plaintiff's alleged pecuniary losses were impermissibly speculative, involving only possible future damages and therefore did not meet the amount-in-controversy threshold to sustain diversity jurisdiction).

Plaintiff's allegations of injury included in his First Amended Complaint are too vague, too speculative and otherwise insufficiently specific to sustain any of his quaternary state-law tort claims. Pointedly, Plaintiff's causes of action for IIED (Count III) and Intentional Interference with Contractual Relations (Count IV) each fail to specifically identify the precise injury he sustained warranting relief from each respective tort (i.e., no alleged evidence of hospitalization or medical treatment for his IIED injury and no alleged existing or future business

contracts with which Defendants purportedly tortiously interfered). Regarding Plaintiff's claims of reputational harm (Counts I, II, V, & VI), even assuming this Honorable Court finds at least one Discursive Act false and published by Mr. Alvear with "subjective awareness" of its falsity, Plaintiff's allegations of harm are too vague and speculative, involving only possible future losses.

Put differently, Plaintiff does not sufficiently articulate any present loss of business (his real estate license is suspended until 2027) and his allegations of reputational harm are undermined by his own public commentary on this lawsuit and admissions that he has ***gained*** followers since the 110 Discursive Acts and the lawsuit. Moreover, pretending for a moment that Plaintiff does not speak publicly about this lawsuit at least once a week and has proof of lost followers, Plaintiff does not, and cannot, trace any causal connection between the 110 Discursive Acts and the hundreds of thousands of similar comments posted contemporaneously by thousands of individuals across more than thirty (30) countries on dozens of online publications and platforms. This world-wide exposure, amplified by postings and re-postings, of Plaintiff and his prior criminal history by the Times-Tribune Lawsuit summons the "libel-proof plaintiff doctrine," referenced herein not for its precedential value, but to underscore Plaintiff's "already tarnished reputation" and how it's admissible as a mitigating

factor when weighing Plaintiff's claim for compensatory damages. See Weiser Law Firm, P.C. v. Hartleib, 665 F.Supp.3d 647, 665-66 (E.D. Pa. 2023) (*quoting* Marcone, 754 F.2d at 1079). Taken together, any statement presumed to be facially defamatory and published with actual malice will – ***to a legal certainty*** – also fail to secure Plaintiff compensatory damages of $75,000.00, necessitating dismissal of all remaining claims pursuant to Fed. R. Civ. P. 12(b)(1).

## V. CONCLUSION

Plaintiff's Second Amended Complaint should be dismissed on the ternary grounds argued above: pursuant to Rule 12(b)(6) because the 110 Discursive Acts are neither defamatory, false, nor published with "subjective awareness" of their falsity. Therefore, Plaintiff cannot meet his burden establishing the wrongfulness of Defendants' statements and publications cited in his pleading. Additionally, Plaintiff has failed to establish causation and recoverable injury to each of his quaternary state-law tort claims. Finally, should this Honorable Court dismiss less than all the 110 Discursive Acts, then Plaintiff's First Amended Complaint should be dismissed pursuant to Rule 12(b)(1) because any remaining claims render Plaintiff's inability to establish $75,000.00 in damages as to any named Counts a "legal certainty," destroying diversity jurisdiction.

Respectfully Submitted,

**ROTHENBERG & CAMPBELL**

By: ______________________________

Ryan P. Campbell, Esq. (#317838)
345 Wyoming Ave., Ste. 210
Scranton, Pennsylvania 18503
*PH:* 570.207.2889 | *FAX:* 570.207.3991
*EMAIL:* rpc@rothenbergcampbell.com

By: ______________________________

Dave W. Rothenberg, Esq. (#326483)
345 Wyoming Ave., Ste. 210
Scranton, Pennsylvania 18503
*PH:* 570.207.2889 | *FAX:* 570.207.3991
*EMAIL:* dwr@rothenbergcampbell.com

***COUNSEL FOR DEFENDANTS***

Date: April 27, 2026

**ROTHENBERG & CAMPBELL**
RYAN P. CAMPBELL, ESQ. *(#317838)*
RPC@ROTHENBERGCAMPBELL.COM
345 WYOMING AVENUE, SUITE 210
SCRANTON, PENNSYLVANIA 18503
*PH:* 570.207.2889 || *FAX:* 570.207.3991

*COUNSEL FOR DEFENDANTS*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PHILIP GODLEWSKI,**<br>PLAINTIFF<br>V.<br>**EDUARDO NICOLAS ALVEAR GONZALEZ** *AKA* **ALVEAR GONZALEZ EDUARDO NICOLAS** *AKA* **NICOLAS ALVEAR;** *AND* **GOOD LION TV, LLC,**<br>DEFENDANTS | CIVIL ACTION—LAW<br>*(HON. JOSEPH F. SAPORITO, JR.)*<br>**JURY TRIAL DEMANDED**<br>NO.: 3:24—CV—00344—JFS |

## CERTIFICATE OF COMPLIANCE

I, Ryan P. Campbell, Esquire, on behalf of Defendants, do hereby certify that I performed a word-count on the above Brief using Microsoft® Word Version 16.83 (2024) and that the above-captioned document contains 8,495 words, excepting captions, citation to the record, salutatory language, signatory lines and Certificates of Compliance and Service, respectively. As such, this filing complies with this Honorable Court's April 15, 2026 Order authorizing the filing of same.

Respectfully submitted:
**ROTHENBERG & CAMPBELL**

By: ______________________
Ryan P. Campbell, Esquire
***COUNSEL FOR DEFENDANTS***

DATE: APRIL 27, 2026

**ROTHENBERG & CAMPBELL**
RYAN P. CAMPBELL, ESQ. *(#317838)*
RPC@ROTHENBERGCAMPBELL.COM
345 WYOMING AVENUE, SUITE 210
SCRANTON, PENNSYLVANIA 18503
*PH:* 570.207.2889 | | *FAX:* 570.207.3991

*COUNSEL FOR DEFENDANTS*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PHILIP GODLEWSKI,**<br>PLAINTIFF<br>V.<br>**EDUARDO NICOLAS ALVEAR GONZALEZ** *AKA* **ALVEAR GONZALEZ EDUARDO NICOLAS** *AKA* **NICOLAS ALVEAR;** *AND* **GOOD LION TV, LLC,**<br>DEFENDANTS | CIVIL ACTION—LAW<br>*(HON. JOSEPH F. SAPORITO, JR.)*<br>**JURY TRIAL DEMANDED**<br>NO.: 3:24—CV—00344—JFS |

**CERTIFICATE OF SERVICE**

I, Ryan P. Campbell, Esquire, on behalf of Defendants, do hereby certify that I sent a true and accurate copy of Defendants' Brief in Support of their Motion to Dismiss in the above-captioned case on this **27th day of April, 2026** to the below named individuals *via* ECF and Electronic Mail addressed as follows:

Timothy M. Kolman, Esq.
tkolman@kolmanlaw.com
***COUNSEL FOR PLAINTIFF***

Timothy Bowers, Esq.
timbowers@timbowerslaw.com
***COUNSEL FOR PLAINTIFF***

Respectfully submitted:
**ROTHENBERG & CAMPBELL**

By: ______________________
Ryan P. Campbell, Esquire
***COUNSEL FOR DEFENDANTS***